RICHARD H. ZELICHOV (SBN 193858)
richard.zelichov@kattenlaw.com
CHRISTINA L. COSTLEY (SBN 227134)
christina.costley@kattenlaw.com
PAUL S. YONG (SBN 303164)
paul.yong@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471

*Attorneys for Stamps.com Inc., Kenneth McBride,
Kyle Huebner, and Jeff Carberry*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> STAMPS.COM, INC., KENNETH MCBRIDE, KYLE HUEBNER, and JEFF CARBERRY, <br><br> Defendants. | Case No. 2:19-cv-01828-MWF (SK) <br><br> DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT <br><br> Judge:  Hon. Michael W. Fitzgerald <br> Courtroom:  5A <br> Date:  January 13, 2020 <br> Time:  10:00 a.m. |
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Lead Plaintiff, <br><br> vs. <br><br> STAMPS.COM, INC., KENNETH McBRIDE, KYLE HUEBNER, and JEFF CARBERRY, <br><br> Defendants. | |

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.   INTRODUCTION .................................................................................1

II.  FACTUAL BACKGROUND ................................................................3

   A.   Indiana Public Retirement System ..........................................3

   B.   Stamps.com ..............................................................................3

   C.   United States Postal Service ....................................................4

   D.   The USPS and Stamps Respond to Decreased Mail Volume..............5

   E.   Both Stamps and the USPS Publicly Discuss Stamps' Sales to Small-Volume and Existing USPS Customers ...................................6

   F.   Stamps Warns About Its Dependence on the USPS ...........................8

   G.   USPS and Stamps Do Not Reach Agreement on Extension of Incentive Agreement ........................................................................9

   H.   Plaintiff Sues .........................................................................12

ARGUMENT ...............................................................................................12

I.   STANDARD OF REVIEW .................................................................12

II.  PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION ...........................................................13

   A.   Plaintiff's Puzzle Pleading Does Not Satisfy the Reform Act ...........15

   B.   The Complaint Should Be Dismissed Because the Alleged Omissions Were Fully Disclosed ..........................................................16

   C.   Stamps' Statements About Its Relationship with the USPS Were Not Misleading ........................................................................17

      1.   Plaintiff Has Not Pled a Breach or a Statutory Violation.........19

      2.   No Omission Based on Unnamed USPS Employees ..............20

      3.   Plaintiff Has at Most Pled a "Difference of Opinion".............22

   D.   Stamps Did Not Mislead Investors by Reporting Historic Results.........................................................................................23

   E.   Statements about a Future Partnership Did Not Mislead....................26

III. PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER .................28

   A.   Pleading Standard .................................................................28

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

i

B.     Plaintiff Fails to Plead Scienter Based on Stock Sales ........................ 29

C.     Plaintiff's Reliance on Disfavored Methods of Pleading Scienter Does Not Contribute to a Strong Inference of Scienter ....... 32

D.     Plaintiff Fails to Plead a Holistic Inference of Scienter ..................... 34

IV.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ............................... 36

V.    PLAINTIFF'S SECTION 20A CLAIM FAILS ........................................... 39

VI.   DISMISSAL SHOULD BE WITH PREJUDICE ........................................... 39

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3Com Sec. Litig.*,
1999 WL 1039715 (N.D. Cal. July 8, 1999) ...................................................... 39

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ...................................................... 33

*Arkansas Teacher Ret. Sys. v. OSI Sys., Inc.*,
2019 WL 2895625 (C.D. Cal. May 7, 2019) ...................................................... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................... 12, 19

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ...................................................... 14

*In re Blue Earth, Inc. Sec. Class Action Litig.*,
2015 WL 12001274 (C.D. Cal. Nov. 3, 2015) ...................................................... 37

*In re Blue Rhino Corp. Sec. Litig.*,
2004 WL 5681763 (C.D. Cal. Oct. 7, 2004) ...................................................... 22

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) ...................................................... 31, 36

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) ...................................................... 14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...................................................... 28

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ...................................................... 22

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) ...................................................... 20

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ...................................................... 32

*In re Convergent Techs. Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991) ...................................................... 24

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ...................................................... 25, 31, 33

*In re Countrywide Fin. Corp. Sec. Litig.*,
2009 WL 943271 (C.D. Cal. Apr. 6, 2009) ...................................................... 39

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

iii

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ..................................................................25, 27, 28

*Diaz v. N. Dynasty Minerals Ltd.*,
   2018 WL 5099749 (C.D. Cal. Apr. 30, 2018) .................................................. 22

*In re Dot Hill Sys. Corp. Sec. Litig.*,
   594 F. Supp. 2d 1150 (S.D. Cal. 2008) ..................................................... 18, 37

*In re ECOtality, Inc. Sec. Litig.*,
   2014 WL 4634280 (N.D. Cal. Sept. 16, 2014).................................................. 15

*In re Express Scripts Holdings Co. Sec. Litig.*,
   773 F. App'x 9 (2d Cir. 2019)..................................................................... 18, 35

*Gammel v. Hewlett-Packard Co.*,
   905 F. Supp. 2d 1052 (C.D. Cal. 2012)............................................................ 36

*Greebel v. FTP Software*,
   194 F.3d 185 (1st Cir. 1999) ........................................................................... 30

*Greenstone v. Cambex Corp.*,
   777 F. Supp. 88 (D. Mass. 1991), *aff'd*, 975 F.2d 22 (1st Cir. 1992) ............... 24

*Haberland v. Bulkeley*,
   896 F. Supp. 2d 410 (E.D.N.C. 2012) ............................................................. 20

*In re Hansen Nat. Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007)...................................................... 13, 33

*In re Herbalife, Ltd. Sec. Litig.*,
   2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) ................................................. 37

*In re Impax Labs., Inc. Sec. Litig.*,
   2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) .................................................. 24

*In re Kalobios Pharm., Inc. Sec. Litig.*,
   258 F. Supp. 3d 999 (N.D. Cal. 2017) ............................................................. 17

*Kane v. Madge Networks N.V.*,
   2000 WL 33208116 (N.D. Cal. May 26, 2000) ................................................ 18

*Karam v. Corinthian Colls., Inc.*,
   2012 WL 8499135 (C.D. Cal. Aug. 20, 2012) .................................................. 21

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)........................................................................... 13

*Lapiner v. Camtek, Ltd.*,
   2011 WL 445849 (N.D. Cal. Feb. 2, 2011)...................................................... 15

*Lefter v. Yirendai Ltd.*,
   2017 WL 2857535 (C.D. Cal. June 20, 2017).................................................. 14

*Lifschitz v. NextWave Wireless Inc.*,
   2011 WL 5839682 (S.D. Cal. Nov. 21, 2011) .................................................. 21

iv

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ........................................................................ 39

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ..................................................................... 37, 38

*Magro v. Freeport McMoran Inc.*,
2018 WL 3725781 (D. Ariz. Aug. 3, 2018) ..................................................... 32

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .......................................................................................... 14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ................................................................... *passim*

*Miller v. PCM, Inc.*,
2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) ................................................... 34

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .............................................................................. 39

*In re Neustar Sec. Litig.*,
83 F. Supp. 3d 671 (E.D. Va. 2015) ............................................................... 34

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
730 F.3d 1111 (9th Cir. 2013) ........................................................................ 37

*In re Nvidia Corp. Sec. Litig.*,
2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) ................................................. 31

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ........................................................................ 28

*Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*,
2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ........................................... 29, 31

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ...................................................... 14, 36, 37, 38

*Plevy v. Haggerty*,
38 F. Supp. 2d 816 (C.D. Cal. 1998) .............................................................. 30

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ................................................................... *passim*

*Prodanova v. H.C. Wainwright & Co., LLC*,
2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ................................................ 13

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) .................................................................. 13, 14

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ........................................................................... 27

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001) ................................................................... 13

*Siegel v. Lyons*,
 1996 WL 438793 (N.D. Cal. Apr. 26, 1996) ........................................... 16

*In re Silicon Graphics Inc. Sec. Litig.*,
 183 F.3d 970 (9th Cir. 1999) ....................................................... 13, 34, 35

*In re Sina Corp. Sec. Litig.*,
 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006) ........................................ 30

*In re Skechers U.S.A., Inc. Sec. Litig.*,
 2004 WL 1080174 (C.D. Cal. May 7, 2004) ........................................... 25

*In re Sofamor Danek Grp., Inc.*,
 123 F.3d 394 (6th Cir. 1997) ................................................................... 24

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ................................................................... 12

*In re Stac Elecs. Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996) ....................................................... 12, 22, 33

*Steamfitters Local 449 Pension Plan v. Molina Healthcare*,
 2018 WL 6787349 (C.D. Cal. Dec. 13, 2018) ........................................ 25

*Tellabs, Inc. v. Makor Issues & Rights*,
 551 U.S. 308 (2007) .................................................................... 28, 34, 35

*In re Vantive Corp. Sec. Litig.*,
 283 F.3d 1079 (9th Cir. 2002) ........................................................... 29, 30

*In re Verifone Sec. Litig.*,
 11 F.3d 865 (9th Cir. 1993) ..................................................................... 39

*In re Verifone Sec. Litig.*
 784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd sub nom.* 11 F.3d 865
 (9th Cir. 1993) .......................................................................................... 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
 258 F. Supp. 3d 1037 (N.D. Cal. 2017) .................................................. 20

*Webb v. SolarCity Corp.*,
 884 F.3d 844 (9th Cir. 2018) ............................................................. 12, 28

*Welgus v. TriNet Group, Inc.*,
 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ........................................ 30

*Wenger v. Lumisys, Inc.*,
 2 F. Supp. 2d 1231 (N.D. Cal. 1998) ...................................................... 24

*In re Wet Seal, Inc. Sec. Litig.*,
 518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................. 34, 39

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Wietschner v. Monterey Pasta Co.*,
294 F. Supp. 2d 1102 (N.D. Cal. 2003) ............................................................... 30

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ............................................................................... 35

*In re Zillow Grp., Inc. Sec. Litig.*,
2018 WL 4735711 (W.D. Wash. Oct. 2, 2018) .................................................. 36

*Zucco Partners v. Digimarc Corp*,
552 F.3d 981 (9th Cir. 2009) ........................................................................ *passim*

**Statutes**

15 U.S.C. § 78u-4(b)(1) ....................................................................................... 13

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................. 28

15 U.S.C. § 78u-4(b)(3)(A) ................................................................................. 28

39 U.S.C. § 501 ...................................................................................................... 4

39 U.S.C. § 502 ...................................................................................................... 4

39 U.S.C. § 3633 .................................................................................................... 5

**Regulations**

39 C.F.R. § 501.1 ................................................................................................... 4

39 C.F.R. § 501.21 ................................................................................................. 4

39 C.F.R. § 3015.7 ................................................................................................. 5

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

## NOTICE OF MOTION AND MOTION TO DISMISS

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on January 13, 2020, at 10:00 a.m., or as soon thereafter as this Motion may be heard in Courtroom 5A of the above-captioned Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, California, 90012, defendants Stamps.com Inc. ("Stamps" or the "Company"), Kenneth McBride, Kyle Huebner, and Jeff Carberry (the "Individual Defendants") (collectively, "Defendants") will and hereby do move to dismiss with prejudice all claims asserted against them in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Complaint" or "¶") (Dkt. No. 71) filed by lead plaintiff Indiana Public Retirement System ("Plaintiff"). Defendants' Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6), and 15 U.S.C. §§ 78u-4, *et seq*. Defendants' Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 24, 2019, and is based on the accompanying Memorandum of Points and Authorities, Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference, the Declaration of Paul S. Yong and exhibits thereto ("Yong Decl." and "Exs."), all pleadings and papers on file in this action, and such other matters as may be presented to the Court at the time of the hearing.

Dated:  October 4, 2019            KATTEN MUCHIN ROSENMAN LLP

By:   */s/ Richard. H. Zelichov*

Richard H. Zelichov
richard.zelichov@kattenlaw.com
Christina L. Costley
christina.costley@kattenlaw.com
Paul S. Yong
paul.yong@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471
*Attorneys for Stamps.com Inc., Kenneth McBride, Kyle Huebner, and Jeff Carberry*

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Complaint substitutes hindsight and innuendo for the factual particularity required to state a claim for securities fraud.  Plaintiff alleges that Stamps deceived investors by failing to disclose that it was selling postage to small-volume shippers and existing USPS customers using discounted, reseller rates.  Plaintiff further alleges that these sales violated an unidentified contract between Stamps and the USPS and unspecified USPS "governance" that allowed Stamps and/or the resellers to provide discounts only to new, high-volume shippers.  As a result of these so-called violations and claimed abuse, Plaintiff speculates, the USPS terminated its package business incentive agreement with Stamps, causing Stamps' stock price to decline.

Plaintiff's attempts to characterize Stamps' conduct as a secret scheme is inexplicable, however, because both Stamps and senior executives at the USPS repeatedly disclosed that Stamps and others were selling discounted postage to small-volume and existing USPS customers through the USPS reseller program.  As early as 2015, Stamps wrote in a periodic filing with the SEC that it was providing reseller discounts to "lower volume customers."  Likewise, during a publicly broadcast and transcribed conference call in mid-2016, Stamps confirmed that it was using resellers to extend "discounted rates to smaller shippers" and "existing" USPS customers.  Stamps openly disclosed these practices yet again in a conference call in mid-2017.

The USPS also has never asserted any claim against Stamps for violating any statute, regulation, or contract.  Rather, the USPS has acknowledged that Stamps, other PC Postage providers, and the resellers were making discounted sales to small-volume and existing USPS customers.  In 2016, the former head of the Postal Regulatory Commission ("PRC") confirmed to financial analysts that the reseller program was for "small businesses and start-ups" and for "new or existing

1

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

customers." In August 2017, the USPS's Chief Marketing Officer ("CMO") stated that the "reseller" program was mostly for "small, medium-sized businesses," for "smaller volume shippers," and to "help[] keep existing business" and that "PC Postage providers" (like Stamps) and resellers are "excellent partners on bringing the best solution to customers." And, in 2018, the USPS's Chief Financial Officer ("CFO") stated during a USPS quarterly conference call that "resellers" and "PC Postage partners" are very important to the USPS "in order to be able to reach small and medium business" and are "very, very important partners for us in terms of increasing volumes and from year-to-year have been a major contributor to the double digit growth we saw in the last 3 years in packages." The thorough disclosure of discounted, reseller rate sales to small-volume and existing USPS customers by both Stamps and the USPS serves as an absolute bar to Plaintiff's attempts to characterize these sales as a secret (or wrongful).

Plaintiff's allegations are also speculative. Plaintiff alleges that Stamps' fully-disclosed conduct constituted a secret "scheme" to violate USPS rules, but Plaintiff fails to identify a single law, regulation, or contractual agreement that prohibited Stamps from making these sales. Plaintiff simply rehashes claims from old shortseller and market reports that themselves were previously discredited. Indeed, and as noted above, senior executives at the USPS publicly expressed the view that discounted sales to small-volume and existing USPS customers were not just permissible but actually desirable.

Plaintiff also fails to plead scienter, *i.e.*, specific, particularized allegations about what the Individual Defendants actually knew. Instead, Plaintiff alleges that scienter can be inferred from stock sales, high-level corporate positions, and the importance of the USPS to Stamps. But Plaintiff has grossly exaggerated the number of stock sales, by both extending the putative class period and adding sales by individuals who did not make any of the challenged statements. Moreover, because most of the challenged statements are forward-looking or statements of opinion,

2

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Plaintiff cannot rely on circumstantial allegations and instead must specifically allege facts supporting a strong inference that Defendants had actual knowledge the challenged statements were false when made. Because Plaintiff does not even attempt to meet this standard, the Complaint should be dismissed.

Plaintiff also does not, and cannot, plead loss causation. Stamps' practice of selling discounted postage to low-volume shippers and existing USPS customers could not have caused Stamps' February and May 2019 stock price drops because these practices had been known to the market for years. Instead, and as Plaintiff admits in the Complaint, Stamps' stock price fell when it issued guidance for 2019 that was lower than what analysts expected because Stamps discontinued its exclusive relationship with the USPS and announced an increased likelihood that the USPS might change its contract terms with the third-party resellers – neither of which revealed the allegedly concealed "scheme."

For these reasons, and as more fully discussed below, the Complaint should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    Indiana Public Retirement System

This Court appointed Indiana Public Retirement System lead plaintiff on June 5, 2019. Dkt. No. 62. Plaintiff claims that it purchased Stamps common stock starting in September 2017 and at various times through March 15, 2019, with the vast majority of its purchases occurring in November 2018. Dkt. No. 76.

### B.    Stamps.com

Stamps has been a nimble market leader from its inception, able to evolve its business model to get ahead of rapidly changing market conditions in the mail and shipping industry. It was founded in 1996 with the goal of making the process of sending mail more convenient. Ex. 2, at 5-8; ¶ 2. Before that, customers had to drive to a post office and wait in line or lease an expensive postage meter from Pitney Bowes. *See id*. In 1999, Stamps became the first ever software-only, USPS-

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

3

approved PC Postage provider, allowing customers to print electronic stamps directly onto envelopes and labels using an ordinary printer. Ex. 4, at 4; ¶¶ 2, 28.[1]

As the use of the mail decreased due to the explosion of email and internet advertising, Stamps focused on supporting e-commerce merchants, developing its own e-commerce shipping software and acquiring e-commerce shipping companies including ShipStation and ShipWorks (2014), Endicia (2015), and ShippingEasy (2016). *See* Ex. 4, at 5; *see also* ¶ 43.

Throughout the class period, Stamps operated primarily under five brands in the United States, including its lead brands, Stamps.com and Endicia, and also under ShipStation, ShipWorks, and ShippingEasy. *Id.* During most of the class period, Stamps.com and Endicia were exclusive to the USPS while ShipStation, ShipWorks, and ShippingEasy are multi-carrier solutions offering the option to use private carriers like UPS and FedEx in addition to the USPS. *See id.*; ¶ 108.

### C.    United States Postal Service

The USPS is an independent agency of the executive branch of the federal government responsible for providing postal service in the United States. Ex. 24. It delivers mail and packages to over 155 million residences, businesses, and post office boxes in the United States. *Id.* It has nearly 32,000 retail locations and employs over 500,000 individuals. *Id.* Another independent agency of the federal government, the Postal Regulatory Commission ("PRC"), regulates the USPS. *See* 39 U.S.C. §§ 501, 502; *see also* ¶¶ 40, 55 & n.4. Despite popular misconception, *the USPS is not taxpayer funded.* It funds its operations solely through the sale of postage, products and services. Ex. 24.

---

[1]    The USPS acts as the regulator for the PC Postage industry to ensure that each PC Postage provider conforms with the relevant requirements. *See, e.g.*, 39 C.F.R. §§ 501.1-501.21. The USPS does not regulate a PC Postage provider's contracts with customers, partners, or even many contracts with the USPS itself. These contracts are simply arms-length commercial agreements between two or more parties.

4

### D. The USPS and Stamps Respond to Decreased Mail Volume

In 2006, Congress passed the Postal Accountability and Enhancement Act (the "Postal Act"), which allowed the USPS to customize negotiated service agreements ("NSAs") to better compete with private carriers (*e.g.*, FedEx, UPS, Amazon, and DHL). *See* ¶¶ 30, 36. To prevent the USPS from using its "monopoly" in "market dominant products" (standard mail, first class mail, periodicals) to subsidize prices for "competitive products" (first-class packages, parcel select, and priority mail – which private package delivery services also offer), the Postal Act requires: (1) an NSA for a competitive product to cover the direct costs for shipping that product; and (2) NSAs for competitive products as a whole to cover a minimum of the USPS's fixed, institutional costs. *See* 39 C.F.R. § 3015.7; 39 U.S.C. § 3633. The PRC reviews NSAs before they are signed to ensure compliance. *See, e.g.*, Ex. 21.

In addition to NSAs with marketplaces, like eBay and Etsy, and companies that ship their own products directly, like Amazon, the PRC has approved NSAs with postal "resellers," including Express 1, IntuiShip, and Parcel Partners. *See* ¶ 31. Reseller NSAs permit these companies to buy postage from the USPS at one price and resell postage at a higher price, with the contractual right to the spread between these prices (a wholesale model common to numerous industries). *See* Ex. 11, at 4; ¶ 33. These NSAs are also subject to PRC review on the same basis as marketplace and direct NSAs. *See* Ex. 11, at 5.

The USPS also entered into certain incentive or revenue share arrangements with third parties – including Stamps – to encourage them to promote the USPS for package shipments. *See* ¶ 25; Ex. 2, at 10. These agreements are not NSAs; they are not governed by the Postal Act (or other statute) and are not subject to PRC review. Pursuant to Stamps' package business incentive agreement, the USPS paid Stamps part of the USPS's revenue from shipping certain "competitive products," and, in return, Stamps provided software, sales, and support to shippers using USPS

5

for packages and agreed that its two leading brands (Stamps.com and Endicia) would partner "exclusively" with the USPS.  *See* ¶¶ 25, 124; Ex. 15, at 9.

Stamps also works with resellers to support certain package shipments, and Stamps has certain contracts with the resellers.  *See* ¶ 33.  The USPS is not a party to these agreements.  These contracts provide that Stamps will receive some portion of the reseller's "spread" – the difference between the price the reseller paid for the postage and the price that the reseller charged for the postage – in a revenue-sharing business arrangement.  *See* Ex. 11, at 4; ¶ 33.

### E.    Both Stamps and the USPS Publicly Discuss Stamps' Sales to Small-Volume and Existing USPS Customers

Stamps disclosed as early as 2015 (well before the putative class period) that it was using the reseller program to sell discounted postage to both "lower volume"/"downmarket" customers and to existing USPS customers.  On August 7, 2015, Stamps stated that "[t]hrough our partnership with [a reseller], Stamps.com and our subsidiaries are able to provide [the reseller's] shipping discounts to our lower volume customers."  Ex. 1, at 3.

On July 28, 2016, in response to shortseller attacks, Stamps stated that: (1) "resellers are explicitly authorized by the USPS to offer discounted rates to smaller shippers"; (2) "the reseller program was meant to provide attractive rates to lower-volume shippers"; (3) "another important goal [of the reseller program] is the retention of existing customers"; (4) Stamps had offered discounted reseller rates to approximately 19,000 existing USPS customers; and (5) customers "acquired onto our multicarrier solutions – ShipStation, ShipWorks, and Shipping Easy" are "utilizing reseller rates."  Ex. 11, at 4-7.  And on August 2, 2017, Stamps explained that:  (1) resellers help the USPS "on existing business, because it's very competitive"; (2) "resellers are important, both for keeping existing business and for growing new business"; (3) "resellers were an excellent opportunity to bring the USPS brand and shipping solutions downmarket to smaller volume shippers"; and

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

6

(4) "the USPS reseller program . . . is providing solutions downmarket where the USPS doesn't have the sales team to interact." Ex. 14, at 3; ¶ 74.

Stamps also disclosed in its SEC filings that it earns revenue in "several different ways," including "compensat[ion] directly by the USPS for certain qualifying customers under our USPS partnership," and "compensation by offering customers a discounted postage rate that is provided to the customers by our integration partners." Ex. 2, at 14; Ex. 4, at 17. It similarly stated on its quarterly conference calls with financial analysts that it had revenue-share arrangements with both the USPS and resellers. *See, e.g.*, Ex. 11, at 8 (affirming that "revenues today come from resellers in the form of . . . revenue-share arrangements"); Ex. 12, at 2 ("[s]hipping numbers . . . include service fees and partner revenue shares"); Ex. 13, at 9, 11 ("[a]s we've mentioned many times, shippers have additional revenue shares that we have with various partners"; "I think – I tried to point out . . . the USPS . . . revenue share they've offered out to us"). Stamps even listed the resellers with whom it worked, noting that it had a "partnership with Express 1" that was going to "continue and expand going forward" and identifying IntuiShip and Parcel Partners as integration partners on its website. Ex. 1, at 2-3; *see also* Ex. 25, at 6 (screenshot from Stamps' website identifying IntuiShip and Parcel Partners as integration partners).

The USPS and public commentators made similar statements confirming that using reseller rates for low-volume or existing customers was not abusive. During a conference call, the former Chairwoman of the Postal Regulatory Commission confirmed that the reseller program was intended to grow package volume for small-volume shippers and regardless of whether a customer was new or existing. Ex. 27; *see also* Ex. 26, at 2 ("[i]t is a common and accepted process, per the experts, to aggregate volume of smaller shippers to receive price breaks, which is part of the role of the resellers").

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

7

Similarly, the Chief Customer and Marketing Officer of the USPS, Jim Cochrane (who reported directly to the Postmaster General), explained that the USPS used NSAs "*to attract new clients, and . . . keep existing business*" and that "resellers were an excellent opportunity to bring our brands and our shipping solutions *down-market to smaller volume shippers*."  Ex. 18, at 3, 5; *see also* Ex. 28, at 2 (USPS spokesperson told reporter that the USPS was pleased with the reseller program and even stated that "some coverage in the media regarding the reseller program has been both inaccurate and misleading").

Consistent with these statements, in mid-2017, the USPS and Stamps entered into a new package business incentive agreement, with terms more favorable for Stamps.  *See* Ex. 14, at 8 (Stamps was "able to get a couple of our contracts [with the USPS] renewed at improved terms"); ¶ 74.

F.    **Stamps Warns About Its Dependence on the USPS**

Stamps also expressly warned investors about the possibility that changes in USPS policies could adversely affect Stamps' business.  For example, Stamps stated in its February 28, 2018 Form 10-K that:

> **The USPS could modify or terminate agreements and other financial compensation arrangements, which would have an adverse effect on our revenues and operating results.**
>
>  . . . if the USPS decides to amend or renegotiate our arrangements under which we are compensated directly by the USPS for shipping customers or integration partners who print a certain amount of postage, our revenue and operating results may be negatively impacted.  If the USPS decides to terminate our agreements or our integration partners' agreements under which we are compensated directly or indirectly by the USPS or integration partners for shipping customers who print a certain amount of postage, our revenue and operating results would suffer.
>
> \*\*\*\*\*\*
>
> **Strategic business partners or carriers could modify or terminate agreements and other financial compensation arrangements, which could materially adversely affect our results of operations and prospects.**
>
> Strategic business partners, such as the USPS . . . could decide to amend, renegotiate or terminate agreements or financial compensation arrangements that exist now or in the future.  For instance, if these partners amend,

8

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

renegotiate or terminate agreements allowing us to integrate their services with our products and services, our revenues and operating results could suffer and our ability to attract customers that rely on these services could suffer.

Ex. 4, at 14; *see also* Ex. 2, at 10-11.

In addition, Stamps warned that the USPS could terminate its relationship with the third-party resellers: "The USPS or our integration partners could cause discounts our customers receive to be diminished or terminated, which would have an adverse effect on our results of operations, reputation and competitiveness." Ex. 4, at 14. Stamps further stated that: "We also earn compensation by offering customers a discounted postage rate that is provided to the customers by our integration partners. If the USPS decides to withdraw certain discounts or even remove the discounts entirely, our revenue and operating results will suffer." *Id.* And it disclosed that the resellers could stop making their discounts available to Stamps and Stamps' customers. *Id.* ("[t]hese discounts are subject to terms and conditions of agreements between third parties and the USPS, and there can be no assurance that our integration partners will continue to have access to such discounts or that they will continue to make them available to our customers on favorable terms or at all"); *see also* Ex. 2, at 10-11.

### G. USPS and Stamps Do Not Reach Agreement on Extension of Incentive Agreement

The USPS and Stamps continued to build USPS package volume throughout 2017 and 2018. In the second quarter of 2018, the President of the United States issued a series of tweets complaining about the USPS's contracts with Amazon. *See* Ex. 31. Following these tweets, on April 12, 2018, the President issued an executive order creating a Task Force on the USPS. Ex. 22; ¶¶ 9, 63.

On August 9, 2018, the USPS's CFO, Joseph Corbett, reaffirmed the USPS's strong relationship with its PC Postage partners and resellers, stating during a conference call that:

9

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

> [W]e have resellers, we have PC Postage partners, we also have negotiated service agreements with large customers. And in order to be able to further our sales efforts . . . they're very, very important partners for us in terms of increasing volumes and from year to year have been a major contributor to the double digit growth we saw in the last three years in packages and also continue to contribute to the growth we're seeing this year of about 6.5% in packages. ***So they're very important to us in order to be able to reach small and medium businesses and grow the business***.

*See* Ex. 19, at 17 (emphasis added).

Shortly thereafter, on August 31, 2018, the Senate announced that it was cancelling postal service hearings and that the Task Force Report would be delayed. Ex. 32.

On December 4, 2018, the Task Force issued a report that suggested greater use of public-private partnerships to help reduce certain USPS costs. Ex. 23, at 9 (the "Task Force Report"). It also, however, called on the USPS to "price its competitive products in a manner that is not geared simply toward maximizing volume, but instead toward generating income that can be used to fund its capital expenditures and long-term liabilities." *See id.* at 58; *see also* ¶¶ 9, 63.

While the Task Force was conducting its analysis (but without any reference to it by the USPS), the USPS requested renegotiation of Stamps' package business incentive agreement. Ex. 6, at 6. Although Stamps expected that these negotiations would be similar to the prior ones and would result in better terms for Stamps, it nonetheless added a new risk disclosure to its Form 10-Q for the second quarter of 2018 warning that:

> While we believe that this agreement is mutually beneficial to the USPS and to us, there is a risk that renegotiation is unsuccessful and leads to materially less favorable terms or that the USPS decides to not renew one or more of these financial compensation arrangements. In such case, our revenue and operating results will be materially affected unless we are successful in timely replacing the lost revenue with similar compensation from other potential partners.

Ex. 6, at 6.

10

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

Stamps and the USPS continued to negotiate until early 2019, but Stamps was ultimately unwilling to agree to a deal that would prohibit its leading brands, Stamps.com and Endicia, from working with other carriers. Ex. 15, at 9; *see* ¶¶ 93, 94.

On February 21, 2019, Stamps disclosed to its shareholders that it had "decided to discontinue our shipping partnership with the USPS," "revenue and operating results will be adversely affected," and its revenue and income in 2019 would be lower than in 2018. Ex. 15, at 9; Ex. 7, at 6; *see* ¶ 94. Stamps also explained that it intended to "fully embrace partnerships" with other package carriers including FedEx, UPS, and Amazon. Ex. 15, at 8-9. Even though Stamps had warned that the renegotiation with the USPS might fail in its August 8, 2018 Form 10-Q, Stamps' stock price reacted negatively to the disclosure, falling from $198 to $84 per share. *See* ¶ 10; Ex. 6, at 6.

After its failed renegotiation with Stamps in 2018 and early 2019, the USPS began renegotiating the terms of its NSAs with some of the resellers with whom Stamps had contracts. Stamps updated its prior risk warnings in May 2019, stating that while it had "limited visibility given that the negotiations are being conducted solely between the USPS and the resellers," the USPS's attempts to decrease the economics for the resellers also would negatively affect Stamps' financial results. Ex. 16, at 3; *see* ¶ 97. Stamps also reduced its revenue and income projections. *Id.* Its stock price reacted negatively, falling from $83 to $37 per share. *See* ¶ 12. Just one quarter later, however, Stamps increased its guidance as the USPS reversed course by deciding not to alter its contracts with the resellers in 2019. Ex. 17, at 3. Stamps' stock price increased on this news from $46 to $59. Ex. 34, at 1.

At this time, although Stamps no longer has a package business incentive agreement with the USPS, it still holds two of only four existing PC Postage licenses. Ex. 7, at 4. The third-party resellers – including Express 1, IntuiShip, and Parcel Partners – still have NSAs with the USPS that were approved by the PRC, and

11

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Stamps still earns income from its revenue-sharing agreements with the resellers. *See* Ex. 17, at 3, 5. Stamps is still able to offer the same products and services that it offered before the discontinuation of the package business incentive agreement with the USPS. *See* Ex. 15, at 15. Stamps also has never received any notice of violation of any statute, regulatory requirement, or contract with the USPS, let alone been subject to a lawsuit by the USPS making such a claim.

### H.  Plaintiff Sues

Shortly after Stamps' first stock drop on February 22, 2019, purported stockholders filed putative class action complaints alleging violations of the Securities Exchange Act. This Court appointed a lead plaintiff on June 5, 2019, and the lead plaintiff filed the Complaint on August 5, 2019. The lead plaintiff largely copied theories previously set forth in shortseller and other reports about Stamps from 2016 and thereafter, and claimed, based on these old reports (but without even acknowledging the source of its allegations), that shareholders had been defrauded.

## ARGUMENT

## I.  STANDARD OF REVIEW

To state a claim under Rule 10b-5, Plaintiff must plead specific facts showing: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Webb v. SolarCity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018) (citation omitted). The Court need not accept conclusions stated as "facts" or any other unsupported, conclusory allegations. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Nor should the Court accept as true unsupported factual assertions, bare legal conclusions, unwarranted inferences, or allegations contradicted by documents subject to judicial notice. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

12

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

(9th Cir. 2001); *see also Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at \*9 (C.D. Cal. Dec. 11, 2018).

Under the Private Securities Litigation Reform Act's ("Reform Act") heightened pleading standard, allegations sufficient to survive a conventional motion to dismiss governed by Rule 8 or even Rule 9(b), are not adequate in a securities class action. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008) (plaintiffs in securities class actions face particularly "formidable pleading requirements"). The Reform Act requires plaintiffs to plead "the who, what, when, where and how." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 998 (9th Cir. 1999). It also requires that, when "an allegation regarding [a defendant's] statement or omission is made on information and belief," plaintiff also must "state with particularity *all facts* on which that belief is formed." 15 U.S.C. § 78u–4(b)(1) (emphasis added); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1152 (C.D. Cal. 2007) (the "all facts" requirement is "the PSLRA's single most important weapon against pleading fraud by hindsight because it forces plaintiffs to reveal whether they base their allegations on an inference of earlier knowledge drawn from later disclosures or from contemporaneous documents or other facts").

## II.   PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION

To plead falsity under the Reform Act, Plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). For a statement to be false or misleading, it must be "capable of objective verification." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017). In other words, plaintiff must allege facts that directly contradict the statement at issue. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018); *see also Ronconi v. Larkin*, 253 F.3d 423, 432-33 (9th Cir. 2001) (statement

13

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

not false where facts alleged "not necessarily inconsistent" with statement). "[V]ague statement of optimism" and statements not "capable of objective verification" do not suffice. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).

Moreover, where, as here, Plaintiff attempts to bring suit based on omissions, it must do more than simply identify a material omission. "Silence, absent a duty to disclose is not misleading under Rule 10b-5." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). "Often, a statement will not mislead even if it is incomplete or does not include all relevant facts." *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Rather, a plaintiff must allege that the omission "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.*; *see also Retail Wholesale*, 845 F.3d 1268 at 1278; *Arkansas Teacher Ret. Sys. v. OSI Sys., Inc.*, 2019 WL 2895625, at *3-4 (C.D. Cal. May 7, 2019); *Lefter v. Yirendai Ltd.*, 2017 WL 2857535, at *6-7 (C.D. Cal. June 20, 2017) (Fitzgerald, J.).

Plaintiff here alleges that Stamps misled investors by failing to disclose that it was "engaged in a secret . . . scheme" to sell discounted postage to small-volume and existing USPS customers upon which Stamps' financial results were dependent. It also alleges that Stamps' positive statements about its relationship with the USPS were false or misleading for failing to disclose that Stamps violated some contractual agreement with the USPS and/or "USPS governance." Plaintiff claims that Stamps' historical financial results were misleading because such results would not continue into the future. And plaintiff alleges that Stamps' positive statements about working with the USPS in the third and fourth quarters of 2018 were false or misleading. Each of Plaintiff's theories is wrong as described in more detail below in Parts II.B (addressing Plaintiff's theory of a "secret scheme" which Stamps fully disclosed);

14

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

II.C (discussing Plaintiff's claim that Stamps engaged in some type of unspecified wrongdoing); II.D (explaining that the accurate disclosure of historical results does not constitute a guarantee of future results, especially when Stamps provided detailed warnings concerning the future); and II.E (noting that Stamps included numerous specific warnings concerning potential future agreements with the USPS).

## A.   Plaintiff's Puzzle Pleading Does Not Satisfy the Reform Act

As a threshold matter, the Complaint should be dismissed because Plaintiff fails to meet even the most basic requirements of the Reform Act.  Instead of identifying particular misstatements and specifying why they are false, Plaintiff resorts to "puzzle-pleading," *i.e.*, copying Stamps' public statements, "highlight[ing] certain portions . . . with bold and italic type," and then listing "various alleged deficiencies" without "connect[ing] any of the allegedly misleading statements with contradictory facts known to defendants at the time." *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *3 (N.D. Cal. Sept. 16, 2014) ("The Court will not attempt to divine Plaintiffs' intentions by trying to match potentially misleading statements with the alleged problems facing [Defendant]."); *see Lapiner v. Camtek, Ltd.*, 2011 WL 445849, at *4 (N.D. Cal. Feb. 2, 2011) ("[T]he Court is not required 'to search through' the [complaint] in an effort to link the allegedly false statements to the reasons those statements purportedly are false.").

Defendants are unable to discern why Plaintiff alleges that many of the quoted statements are false.  For example, in paragraph 81, Plaintiff quotes a February 22, 2018 earnings release that states: "We achieved strong financial results driven by exceptional performance in our shipping business.  We believe we are well positioned for 2018 and we remain excited about our long-term business opportunities."  Plaintiff alleges this statement was false, but does not specify whether it challenges the results themselves, Stamps' vague characterization of the results as "strong" and its performance as "exceptional," Stamps' opinion (also phrased in general terms) that it was "well positioned" for 2018, or Stamps'

15

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

forward-looking statement about "long-term business opportunities." ¶ 81. Two paragraphs later, Plaintiff lists ten alleged "omissions" that purportedly rendered Stamps' statements from November 6, 2017 to February 22, 2018 false, but Plaintiff does not specifically connect any of the alleged omissions to any of the misstatements. ¶ 83. Similar examples abound throughout the Complaint. *See, e.g.*, ¶¶ 66-70, 71; 72-76, 77; 78-82, 83; 84-92, 93. Standing alone, this is grounds for dismissal.

**B.      The Complaint Should Be Dismissed Because the Alleged Omissions Were Fully Disclosed**

Plaintiff repeatedly characterizes Stamps' use of the reseller program to sell discounted postage to low-volume and existing USPS customers as "secret" and "clandestine." *See, e.g.*, ¶¶ 71(a), (g); 77(e), (g); 83(f), (h); 93(f). These allegations, however, have no factual basis because Stamps repeatedly disclosed that it was utilizing the reseller program to sell discounted postage to small and existing USPS customers. *Siegel v. Lyons*, 1996 WL 438793, at *4 (N.D. Cal. Apr. 26, 1996) ("[w]here SEC filings actually disclose allegedly omitted information, dismissal of a claim premised upon nondisclosure is proper").

For example, Plaintiff alleges that Stamps failed to disclose that it "was engaged in a secret, unsustainable reseller scheme to bundle small-volume shippers." ¶¶ 71(a), 77(a); *see also* ¶¶ 71(e); 77(b), (c); 83(a), (b), (g); 93(a), (b), (g), (j). Stamps, however, has disclosed since at least 2015 (years before the putative class period) that, through its "partnership" with resellers, it was "able to provide [the reseller's] shipping discounts to our lower volume customers." Ex. 1, at 3. Stamps also disclosed in 2016 that "resellers are explicitly authorized by the USPS to offer discounted rates to *smaller shippers*." Ex. 1, at 3 (emphasis added). And Stamps disclosed in 2017 that "resellers were an excellent opportunity to bring the USPS brand and shipping solutions downmarket to smaller volume shippers." Ex. 14, at 3.

Plaintiff also alleges that Stamps failed to disclose that it was "secretly aggregating and bundling" existing customers and selling discounted postage through the reseller program.  ¶¶ 77(g), 83(h), 93(h); *see also* ¶¶ 71(c), (e); 77(b), (c); 83(a), (b), (g); 93(a), (b), (g), (j).  But Stamps disclosed in 2016, before the putative class period, that "the retention of existing customers" was one of the reseller program's key purposes and that Stamps had used "reseller rates in order to retain" customers with the USPS. Ex. 11, at 4-5.  Stamps also stated that the reseller program "is meant both for the acquisition of new volume and the retention of existing volume." *Id.* at 7.  Stamps repeated these points again in August 2017 by stating that resellers are "important . . . for keeping existing [USPS] business." *See* Ex. 14, at 3; ¶ 74.  Based on these disclosures, no reasonable investor would have been misled about whether Stamps was using the reseller program to sell discounted postage to existing USPS customers.[2]

C. **Stamps' Statements About Its Relationship with the USPS Were Not Misleading**

Plaintiff alleges that Stamps' positive statements about its relationship with the USPS and its position in the market were misleading because:  (a) Stamps was violating a USPS contract and/or "governance" that might have affected its relationship with the USPS; and (b) unidentified USPS employees purportedly criticized the prices Stamps was charging.  ¶¶ 71(b), (c); 77(a), (c), (g), (i); 83(b), (e), (h); 93(d), (h).

---

[2]   The shortsellers from whom Plaintiff borrowed the allegations in the Complaint also have reported on Stamps' discounted postage sales – and their supposition that it violates USPS policies – in detailed attacks starting in April 2016.  *See* Ex. 11, at 4-7.  Since this information was actually disclosed, it cannot be the basis for a securities fraud claim.  *In re Kalobios Pharm., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1008 (N.D. Cal. 2017) (where information plaintiff claims was not disclosed by defendant was "made available to the market through a different source," plaintiff cannot assert a claim for securities fraud).

17

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

As an initial matter, these allegations fail because the challenged statements are inactionable as corporate puffery. *Intuitive Surgical*, 759 F.3d at 1060 (defining "puffery" as "vague statement of general optimism"); *Kane v. Madge Networks N.V.*, 2000 WL 33208116, at \*2 (N.D. Cal. May 26, 2000) (statements that companies were "working together" and "made great strides" are "immaterial puffery"); *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1159-60 (S.D. Cal. 2008) (reference to relationship as "excellent," "highly positive and mutually beneficial," and "a success" inactionable puffery); *In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 13 (2d Cir. 2019) ("[S]tatements that the relationship was 'great' and 'very, very solid' and [the Company] 'really enjoys' the relationship are expressions of puffery and optimism."). Because puffery "cannot be false or misleading," Plaintiff cannot, as a matter of law, state a claim based on Stamps' positive statements about the USPS or Stamps' position in the market. For this reason alone, this Court should dismiss the vast majority of the statements Plaintiff challenges. *See, e.g.*, ¶¶ 66 ("strong growth"; "very excited"); 68 ("common goal of growing USPS package volume"; "great partnership"; "win-win model"; "USPS is very happy"); 70 ("USPS is very happy"); 72 ("very excited"); 74 ("excellent partners"; "great partnership"; "win-win model"; "partnership . . . is continuing to be stronger and stronger"); 78 ("solid top line"; "strong margin profile"; "well positioned"; "very excited"); 80 ("we succeed when they succeed"; "we were happy"); 81 ("strong financial results"; "remain excited"); 86 ("create value"; "help them be successful"); 87 ("we are excited about our long-term business opportunities"); 90 ("strong organic performance"; "solid results"; "well positioned"; "we remain very excited").

Even if this Court were to hold that these statements are not puffery, however, these allegations should still be dismissed because Plaintiff has not pled an actionable omission or other facts establishing falsity.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

## 1. Plaintiff Has Not Pled a Breach or a Statutory Violation

Plaintiff alleges that Stamps' positive statements about its relationship with the USPS were false because Stamps failed to disclose that its sales to small-volume and existing USPS customers violated either Stamps' contract with the USPS or unspecified USPS "governance," but Plaintiff does not specify either the contract or the statute/regulation that Stamps purportedly breached. *See, e.g.*, ¶ 74 ("we have multiple contracts and various partnerships . . . we were able to get a couple of our contracts renewed at improved terms"); *see also* ¶¶ 77(c); 83(d); 93(b).

Instead, Plaintiff attempts to plead a breach of contract based solely on an August 2, 2016 letter to a completely different company, IntuiShip, stating that, "[i]f it is determined that *this* is the case" – Plaintiff does not specify what "this" is – "your NSA is subject to termination due to violation of the agreed upon terms of the agreement." ¶ 53 (emphasis added). But IntuiShip and Stamps did not even have similar USPS contracts; Plaintiff alleges that IntuiShip had a NSA (¶¶ 30, 31), whereas Stamps had a package business incentive agreement (*i.e.*, revenue sharing agreement). *See* ¶¶ 25, 61. Nor does Plaintiff allege that Stamps also did whatever the "this" referenced in the IntuiShip letter was. In fact, Plaintiff does not and cannot even allege that IntuiShip's NSA was terminated for whatever "this" conduct was such that the conduct actually violated Intuiship's NSA with the USPS.[3]

Plaintiff also alleges that "USPS governance" required Stamps to obtain USPS approval prior to extending reseller rates to small and/or existing customers. Plaintiff, however, cites a statute that spans the bulk of an entire title of the US Code (Title 39), without identifying which section within that title purports to impose this requirement. ¶ 36. There is no such provision because there is no such requirement. As for the "regulation" Plaintiff paraphrases (¶ 37), it governs a completely different

---

[3]   Plaintiff alleges, without support and without even defining the term, that IntuiShip was a Stamps "affiliate." *See* ¶¶ 6, 33, 52. This is insufficient even under Rule 8. *Iqbal*, 556 U.S. at 678.

19

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

situation (the information that an entity must provide to apply for its own NSA, *not* the entity to whom postage may be resold once a NSA with a reseller is approved by the PRC) that is not applicable to Stamps.  *See* Ex. 20.

Even if Plaintiff had pled particularized facts establishing that Stamps had violated a contract, statute, or regulation (which it has not), dismissal would still be required because Stamps had no duty "to accuse itself of wrongdoing."  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1043 (N.D. Cal. 2017).  "Disclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *see also Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 426 (E.D.N.C. 2012) ("neither a company's board nor its corporate executives is required to engage in self-flagellation" (internal alterations omitted)).

### 2.    No Omission Based on Unnamed USPS Employees

Plaintiff also alleges that Stamps' positive statements about its relationship with the USPS were false because Stamps did not disclose that unidentified USPS employees told unidentified Stamps employees that the USPS might have preferred that Stamps charge customers more.

Plaintiff primarily relies on allegations attributed to:  (1) one former Field Sales Representative, employed by Stamps' subsidiary (Endicia) until Stamps acquired it on November 18, 2015, then by Stamps until May 2019, who "confirmed that the USPS had definitely ('absolutely') been upset 'for a few years' with Stamps/Endicia for making available discounted postal rates for customers that did not individually meet the USPS's annual shipping requirements" (¶ 48); and (2) a second Field Sales Representative, employed by Stamps from March 2014 to October 2018, who purportedly stated that "certain USPS teams and District Managers would express their displeasure to Stamps/Endicia sales representatives" (¶ 49).

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

20

Courts are "generally skeptical" of allegations attributed to confidential witnesses. *Lifschitz v. NextWave Wireless Inc.*, 2011 WL 5839682, at \*2 (S.D. Cal. Nov. 21, 2011). To rely on confidential witness allegations, Plaintiff must describe the confidential witnesses with sufficient particularity to establish their reliability and personal knowledge and must allege that "a person in the position occupied by the source would possess the information alleged." *Zucco Partners v. Digimarc Corp*, 552 F.3d 981, 995 (9th Cir. 2009). Plaintiff has not done so here.

First, Plaintiff's allegations are double hearsay in which an unnamed former employee purportedly reported information from unnamed USPS employees. Such allegations are not sufficiently reliable to plead falsity under the Reform Act. *See Zucco*, 552 F.3d at 996. Plaintiff also fails to specify who made these statements, what exactly the USPS employees said, and what basis the USPS "teams and District Managers" have to describe overall USPS policies or impressions concerning Stamps. Absent such allegations, these confidential witness allegations are inadequate, as a matter of law, to plead falsity. *See Intuitive Surgical*, 759 F.3d at 1063 (securities claim may not rest on "impression of a low-level employee" lacking "substance or context"); *Karam v. Corinthian Colls., Inc.*, 2012 WL 8499135, at \*11 (C.D. Cal. Aug. 20, 2012) ("anecdotal accounts of the CWs are insufficient to demonstrate . . . a materially widespread practice").

Plaintiff also alleges that "Stamps received an August 2017 letter from its reseller partner, Parcel Partner[s], which disclosed the USPS's position and new restrictions designed to reign in abuse of the reseller program." ¶ 58; *compare with* ¶ 71(d).[4] When relying on written documents, plaintiff must "provide the title and

---

[4] Once again, Plaintiff does not specify which alleged statements were purportedly rendered false by nondisclosure of the Parcel Partners letter. To the extent that Plaintiff challenges Stamps' May 3, 2017 statement that there was no letter to resellers (¶ 70), this allegation also fails because Plaintiff does not allege that the Parcel Partners letter existed prior to "August 2017." ¶ 58 (referring to the "August 2017 letter").

21

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

author of the document, the date it was prepared and, if not a publicly-available document, name of the person or persons who reviewed it." *In re Blue Rhino Corp. Sec. Litig.*, 2004 WL 5681763, at \*10 & n.12 (C.D. Cal. Oct. 7, 2004) (quoting *In re Autodesk Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 846 (N.D. Cal. 2000)). Here, however, Plaintiff fails to provide the author of the letter, the contents of the underlying attachment from the USPS that serves as the apparent basis for the letter, the person(s) at Stamps who purportedly reviewed the letter, or when the Stamps employees purportedly saw it. *See id.*; *Diaz v. N. Dynasty Minerals Ltd.*, 2018 WL 5099749, at \*7 (C.D. Cal. Apr. 30, 2018) (allegations based on internal reports must allege "such facts as may indicate their reliability"). Again, just like the purported IntuiShip letter, Plaintiff does not allege that the USPS or Parcel Partners ever implemented these restrictions. In any event, the letter is about Parcel Partners – not Stamps – and therefore does not refute Stamps' statements about its relationship with the USPS.

### 3. Plaintiff Has at Most Pled a "Difference of Opinion"

Finally, even if this Court were inclined to credit allegations from anonymous witnesses and an inadequately described precatory letter, Plaintiff has at most pled "a difference of opinion" between anonymous, low-level employees and the USPS's senior executives, which is not sufficient to state a securities fraud claim. *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170-71 (3d Cir. 2014) ("a difference of opinion within [the organization]" is not sufficient to state a securities fraud claim); *see also Metzler*, 540 F.3d at 1069 (internal disagreement is not sufficient); *Stac*, 89 F.3d at 1407 (company does not have to disclose what third party has told it concerning its plans because company does not know what third party will actually do).[5] As discussed in the statement of facts, the USPS's senior executives not only

---

[5] Plaintiff also alleges that Stamps' sale of discount postage to small and existing USPS customers was "cannibalizing" revenue from the USPS at a rate of \$235 million per year. *See* ¶¶ 5, 11, 71(e), 77(b), 83(a), 93(a). Again, however, Plaintiff does not and cannot plead a factual basis for this allegation. The apparent

disclosed that Stamps and others were selling discounted postage to low-volume shippers and existing USPS customers, they used phrases identical to those used by Stamps when characterizing the relationship between Stamps and the USPS. *See, e.g.*, Ex.18, at 3, 5 (August 1, 2017 statement by USPS CMO that the USPS uses NSAs "to attract new clients, and . . . keep existing business" and that "resellers were an excellent opportunity to bring our brands and our shipping solutions down-market to smaller volume shippers"); Ex. 19, at 17 (August 9, 2018 statement by USPS CFO that resellers and PC Postage partners (like Stamps) are "very, very important partners for us in terms of increasing volumes and from year to year have been a major contributor to the double digit growth we saw in the last three years in packages" and are "very important in order to be able to reach small and medium businesses and grow the business").

### D.    <u>Stamps Did Not Mislead Investors by Reporting Historic Results</u>

Plaintiff also alleges that Stamps' discussion of, and positive statements about, its past and future financial results were misleading. *See* ¶¶ 71(a), (e); 77(b)-(c); 83(a), (c)-(d); 93(a)-(c). Although Plaintiff does not specify the basis for these allegations, Plaintiff appears to allege that Stamps misled investors by failing to disclose that its future results would not be as strong as its past results. *See, e.g.*, ¶¶ 65 ("defendants touted the Company's strong financial performance, including revenue and earnings growth, while concealing that these financial metrics were the product of an unsustainable and improper reseller scheme to inflate Stamps' financial results"); 70(e); 77(b); 83(a); 93(a) (Stamps misled investors by reporting its financial results without disclosing that its revenue was "entirely dependent" on

___

source of the allegation – a January 31, 2019 report prepared by the self-proclaimed "Taxpayers Protection Alliance" – actually refutes it. *See* Ex. 33, at 2 (citing "Taxpayers Protection Alliance" report claiming that the USPS lost a total of $235 million each year due to *multiple* entities mislabeling or misweighing packages, ***not*** from reseller rates or NSAs).

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

the reseller program); 93(m) ("defendants had no reasonable basis to expect and did not expect Stamps' revenue and earnings growth to continue indefinitely").[6]

It is well settled, however, that a company cannot be liable for securities fraud if it has accurately "report[ed] past performance," even if such performance might not continue in the future. *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513, 516 (9th Cir. 1991); *see also In re Verifone Sec. Litig.* 784 F. Supp. 1471, 1485 (N.D. Cal. 1992), *aff'd sub nom.* 11 F.3d 865 (9th Cir. 1993); *In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at \*4-5 (N.D. Cal. Apr. 17, 2008) (collecting cases); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("Disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.").

Nor is a company's accurate discussion of its historical results rendered misleading by failure to disclose that those results purportedly resulted from wrongdoing. *See In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 & n.3 (6th Cir. 1997) ("[i]t is clear that a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data" even where such historical financials resulted from alleged wrongdoing); *Greenstone v. Cambex Corp.*, 777 F. Supp. 88, 91 (D. Mass. 1991) (dismissing securities claim because the plaintiff did "not allege that the revenues actually received by [the Company] differed from those reported to the SEC," but argued "instead that the reports would have been more accurate and complete if the defendants had revealed their improper activities because such activities allegedly influenced the financial success of [the Company]"), *aff'd*, 975 F.2d 22 (1st Cir. 1992).

---

[6]    Plaintiff does not allege that the financial results were actually untrue. *Compare* ¶¶ 66, 72-93 (no allegation that Stamps restated its financial results or that the auditors withdrew any clean audit opinion), *with Metzler*, 540 F.3d at 1068-69 (affirming dismissal where the complaint "does not allege that [the company's] external auditors counselled against the practice or that [defendant] admitted or was aware it was improper"). Similarly, Plaintiff does not allege that Stamps ever missed any of the financial projections it provided to the market.

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Moreover, because the alleged omission (a decline in future results) did not occur until 2019, well after the alleged misstatements, Stamps' discussion of its financial results, to the extent that Plaintiff wants to interpret them as predicting the future, is also shielded by the Reform Act's safe harbor for forward-looking statements. *See In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004) (a present-tense statement may qualify as forward-looking "if the truth or falsity of the statement cannot be discerned until some point in time after the statement is made"); *see also Steamfitters Local 449 Pension Plan v. Molina Healthcare*, 2018 WL 6787349, at *2 (C.D. Cal. Dec. 13, 2018). Forward-looking statements are inactionable *either* if they are: (1) accompanied by "meaningful cautionary language," *or* (2) Plaintiff fails to plead that Defendants did not actually believe the statements. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 (9th Cir. 2010). Both grounds exist here.

First, Stamps used extensive cautionary language when describing both its historical and future results. It expressly warned that "[o]ur historical results are not necessarily indicative of the results to be expected for any future period and the results for any interim period are not necessarily indicative of the results to be expected in the full year." Ex. 4, at 16; Ex. 2, at 12; *see also In re Skechers U.S.A., Inc. Sec. Litig.*, 2004 WL 1080174, at *1, 7 (C.D. Cal. May 7, 2004). It also warned that "the modification or termination of financial compensation arrangements with the USPS, strategic business partners and other carriers" may "limit our growth, adversely affect our business and cause the price of our common stock to decline" and "might cause our revenues, margins and operating rates to fluctuate." Ex. 4, at 12-13. It detailed two further pages of risks related to its relationship with the USPS and the industry in which it operated in both the 2017 and 2018 Form 10-Ks, including that:

- The USPS could decide to amend, renegotiate or terminate agreements or financial compensation arrangements that exist now or in the future;

25

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

- We also earn compensation by offering customers a discounted postage rate that is provided to the customers by our integration partners. If the USPS decides to withdraw certain discounts or even remove the discounts entirely, our revenue and operating results will suffer; and

- These discounts are subject to terms and conditions of agreements between third parties and the USPS, and there can be no assurance that our integration partners will continue to have access to such discounts or that they will continue to make them available to our customers on favorable terms or at all.

Ex. 4, at 14-15; *see also* Ex. 2, at 10-11. Because Stamps expressly warned about the exact risks that came to pass, the Reform Act's safe harbor applies and requires dismissal of Plaintiff's allegations about Stamps' future growth. *See Intuitive Surgical*, 759 F.3d at 1059-60.

Finally, and as further discussed below, Plaintiff does not and cannot allege that Defendants did not actually believe any optimistic statements about its future results.

### E. Statements about a Future Partnership Did Not Mislead

Plaintiff also challenges Stamps' forward-looking statements between August 2, 2018 and October 31, 2018 about its hopes for a continued partnership with the USPS, including a new package business incentive agreement. *See* ¶¶ 89-92.

Again, Stamps had specifically and expressly warned that "[t]he USPS could modify, discontinue or terminate agreements and other financial compensation arrangements, which would have an adverse effect on our revenues and operating results." Ex. 6, at 6; Ex. 4, at 12; Ex. 2, at 10. It also disclosed that it competed with the USPS, stating: "We compete with all of the alternate ways that consumers and businesses may access the services of the USPS, including . . . USPS online products [and] USPS software solutions." Ex. 4, at 6-7; Ex. 2, at 5-7. And it added a very specific warning in its Form 10-Q for the second quarter of 2018 concerning the package business incentive agreement, stating that "[d]uring the previous calendar quarter, the USPS provided a notice requiring the renegotiation of one of our

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

26

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

important financial compensation arrangements." Ex. 6, at 6.  It further noted that: "While we believe that this agreement is mutually beneficial to the USPS and to us, there is a risk that renegotiation is unsuccessful and leads to materially less favorable terms or that the USPS decides to not renew one or more of these financial compensation arrangements.  In such case, our revenue and operating results will be materially affected unless we are successful in timely replacing the lost revenue with similar compensation from other potential partners."  *Id.*  These disclosures alone are a sufficient basis for dismissal.  *See Intuitive Surgical*, 759 F.3d at 1059-60; *Cutera*, 610 F.3d at 1112-13.

As further discussed below, Plaintiff also does not, and cannot, plead that Stamps did not actually believe its statements about a continued partnership with the USPS because the USPS's CFO reiterated in that same time period that online postage sellers and resellers are "very, very ***important partners*** for us."  Ex. 19, at 17 (emphasis added); *see also Rombach*, 355 F.3d at 174 ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage.").[7]

---

[7]    Plaintiff also might be challenging Stamps' statement of reasons for the discontinuation of the package business incentive agreement with the USPS.  *See* ¶¶ 94, 95.  Plaintiff, however, relies solely on completely unsupported speculation in an article from *The American Conservative* to make this argument.  *See* Ex. 33.  The article cites no source for its claim.  The article also demonstrates a lack of understanding of the USPS ecosystem as:  (1) the very title of the article – *Taxpayers Win as the Postal Service Gives Stamps.com the Boot* – reflects the common misunderstanding that the USPS is taxpayer funded (*see* Ex. 24), and (2) it is written as if the package business incentive agreement between Stamps and the USPS and the NSAs between the USPS and the third-party resellers are the same thing (which they are not).  *See generally* Ex. 33.

27

## III.   PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER

### A.   <u>Pleading Standard</u>

To state a claim under the Reform Act, Plaintiff must "state with particularity facts giving rise to a strong inference" of scienter.   15 U.S.C. § 78u-4(b)(2)(A). Scienter "refers to a mental state embracing intent to deceive, manipulate, or defraud." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014).

Because the challenged statements here are primarily, if not all, statements of opinion or forward-looking statements, Plaintiff must allege that the person who made those statements either did not actually believe them (statements of opinion) or had actual knowledge the statements were false (forward-looking statements). *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017); *Cutera*, 610 F.3d at 1113.

To state a claim based on any other statements, Plaintiff must plead deliberate recklessness or conscious misconduct.   *See id.*   "[M]ere recklessness or a motive to commit fraud and opportunity to do so" are insufficient.   *Zucco*, 552 F.3d at 991. Rather, deliberate recklessness "is an *extreme* departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Webb*, 884 F.3d at 851 (emphasis in original).

In determining whether Plaintiff has pled the requisite "strong inference" of scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."   *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 323-24 (2007).   Courts consider scienter allegations holistically.   *Id.* at 326.   "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."   *Id.* at 324.   This "bar set by *Tellabs* is not easy to satisfy."   *Webb*, 884 F.3d at 855.   A complaint not meeting these high pleading requirements "shall" be dismissed.   15 U.S.C. § 78u-4(b)(3)(A).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

28

## B. **Plaintiff Fails to Plead Scienter Based on Stock Sales**

Despite the Ninth Circuit's admonition that "[i]nsider stock sales are not inherently suspicious," Plaintiff devotes 13 pages of the Complaint to allegations that all of Stamps' directors and officers (even those not named in this lawsuit) were motivated to commit fraud because they sold stock during the over two-year putative class period. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002); CC at 47-60. These allegations fail for several reasons.

First, the extraordinarily long putative class period of over two years itself precludes an inference of scienter based on stock sales. *Vantive*, 283 F.3d at 1092 (63-week class period is "unusually long"); ¶ 1 (alleging 105-week class period); *see also Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *35 (C.D. Cal. Apr. 14, 2015). This is particularly so because, here, Plaintiff appears to have selected May 3, 2017 as the start of the putative class period solely to exaggerate the appearance of class period stock sales. Plaintiff alleges that the class period began "just after President Trump took office and subsequently announced his intent to eliminate business practices detrimental to the USPS" (¶ 101), but President Trump did not sign the executive order forming the Task Force concerning the USPS until almost one year later in April 2018 (Ex. 22; ¶¶ 9, 63), the USPS continued to make positive statements about Stamps publicly until at least August 2018 (Exs. 18, 19, 27), and the Task Force did not release its report until December 2018 (Ex. 23; ¶¶ 9, 63). Had Plaintiff used either August 2018 or December 2018 as the beginning of the putative class period, however, Plaintiff would not have been able to allege stock sales at all because *none* of the named defendants sold any shares after March 2018 nearly one full year before Stamps' first stock price drop. *See Metzler*, 540 F.3d at 1067 (no scienter where class period stock sales took place before government disclosed to defendants that it had initiated investigation of "allegedly" improper practices); *see also Vantive*, 283 F.3d at 1093-94 (stock sales over a year before the adverse disclosure and below class period highs do not help

29

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

establish scienter); *In re Sina Corp. Sec. Litig.*, 2006 WL 2742048, at \*12 (S.D.N.Y. Sept. 26, 2006); ¶ 98.

Second, Plaintiff attempts to exaggerate the volume of stock sales by listing sales from individuals not named as defendants and not alleged to have made any challenged statements.[8] ¶¶ 98, 99. A non-defendants' transactions "are irrelevant to alleging scienter against the [] named Defendants," and their inclusion in the Complaint is "misleading." *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 834 n.12 (C.D. Cal. 1998); *see also Vantive*, 283 F.3d at 1994 (sales by company chairman "not alleged to have uttered a word" during the class period provide no basis "for finding circumstantial evidence of fraud"). Plaintiff even identifies non-defendants who sold stock as they were leaving the Company (Biswas, Bortnak, Miller, and Weisberg), which courts routinely hold is neither unusual nor suspicious. *See, e.g.*, *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1116 (N.D. Cal. 2003); *Greebel v. FTP Software*, 194 F.3d 185, 206 (1st Cir. 1999).[9]

Third, Plaintiff ignores that all of the class period stock sales by the three named defendants (as well as almost all the sales by the non-defendants) were made pursuant to SEC Rule 10b5-1 trading plans, which "allow[] corporate insiders to set a schedule by which to sell shares." *Wietschner*, 294 F. Supp. 2d at 1117; Ex. 8, at 5-9 (McBride Form 4s); Ex. 9 (Huebner Form 4s); Ex. 10 (Carberry Form 4s). Sales according to Rule 10b5-1 plans "may rebut [] an inference of scienter." *Metzler*, 540 F.3d at 1067 n.11 (9th Cir. 2008); *see also Wietschner*, 294 F. Supp. 2d at 1117; *Welgus v. TriNet Group, Inc.*, 2017 WL 6466264, at \*18 (N.D. Cal. Dec. 18, 2017).

---

[8] The listed non-defendants are Ananda, Biswas, Bortnak, Buerba, Clem, Jones, Khechfe, Lipson, Miller, and Weisberg.

[9] Biswas, a former CTO, left February 27, 2018 (Ex. 30, at 1); Bortnak, a former Co-President and Corporate & Business Development Officer, left August 2, 2017 (Ex. 29, at 1); Miller, a former outside director, resigned for health reasons in January 2018 (Ex. 5, at 2); and Weisberg, Stamps' former Chief Legal Officer, transitioned to a part-time role in January 2018 (Ex. 3, at 2).

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

30

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Fourth, Plaintiff fails to plead that the timing of Defendants' stock sales is suspicious. To the contrary, Plaintiff admits that one of the named Defendants, Huebner, sold more stock in the two years prior to the class period than during the class period. *See* ¶¶ 98, 99 (approximately 155,000 shares in the two years before the class period, compared to approximately 52,000 during the class period); *Copper Mountain*, 311 F. Supp. 2d at 874 (no scienter where person sold more stock before class period than during the class period). Plaintiff fails to plead any trading history at all for Carberry. *See, e.g.*, *Zucco*, 552 F.3d at 1005 ("[e]ven if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history"). And Plaintiff completely understates the pre-class period sales by McBride, the final named defendant, alleging that he sold 15,000 shares when he actually sold 85,000 shares. *Compare* ¶ 99, *with* Ex. 8, at 1-4. Any inference of scienter is further rebutted by the fact that the stock sales occurred shortly after the Defendants received new option grants in April and/or August 2017. *See* Ex. 5, at 3-5; *see also Ixia*, 2015 WL 1775221 at *41 (defendant's stock sales not suspicious where more plausible inference was that sales were to "maintain his overall holdings at a similar level").

Finally, Plaintiff attempts to supplement its deficient stock sale allegations by pointing to Stamps' $300 million stock repurchases, but stock repurchases actually negate an inference of scienter. *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) ("it is illogical that [the Company] would have been repurchasing its shares had it been aware of facts that would indicate the price would fall" (citing *In re Cisco Sys., Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013))); *see also In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at *11 n.11 (N.D. Cal. Oct. 19, 2010)). Plaintiff tries to avoid this by inventing a plan by Stamps' executives to "buy back" stock in order to increase the price at which their own shares were sold, but as the chart Plaintiff includes in the Complaint establishes, Stamps actually bought back the *least* stock in the quarters in which its insiders

31

bought the most (and vice versa).  *See* ¶ 102.  For example, in the third quarter of 2017, Plaintiff alleges that stock sales by insiders were at their highest, but this was also when share repurchases were at their lowest.  *Id.*  By contrast, Stamps repurchased the most stock in fourth quarter of 2018, when Defendants sold nothing and total sales by all insiders were less than $1 million.  *See id.*; ¶ 98.

### C.   Plaintiff's Reliance on Disfavored Methods of Pleading Scienter Does Not Contribute to a Strong Inference of Scienter

In the absence of specific and particularized facts establishing that Defendants knew that Stamps' historical relationship with the USPS and financial results would not continue, Plaintiff asks this Court to infer scienter based on various disfavored doctrines that try to substitute assumptions for factual particularity.  *See* ¶¶ 114-120.

First, Plaintiff invokes the "core operations" doctrine, asking this Court to simply assume that Defendants knew what the USPS would do because of the USPS's importance to Stamps.  ¶¶ 114-116.  These allegations fail, however, because the core operations doctrine cannot be used to plead "actual knowledge," as Plaintiff here must do for forward-looking statements and statements of opinion.  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1063, 1069 (N.D. Cal. 2012) (rejecting core operations where plaintiffs failed to allege defendants had "actual knowledge that their future projections were false at the time they made them").  Plaintiff also cannot rely on the core operations inference to plead scienter with respect to acts that had not transpired – here, termination of Stamps' package business incentive agreement with the USPS – at the time when the challenged statements were made.  *See Magro v. Freeport McMoran Inc.*, 2018 WL 3725781, at *7-8 (D. Ariz. Aug. 3, 2018) (core operations theory based on defendants' knowledge that "the [contract] negotiations were not going well and that [defendants'] important mining operations might encounter difficulties" insufficient to plead scienter).  And once again, even if Stamps did a lot of business with the

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

32

USPS, it could not know what the USPS might actually do since it is a third party. *Copper Mountain*, 311 F. Supp. at 872; *Stac*, 89 F.3d at 1407.

Second, Plaintiff asks this Court to infer knowledge from the Individual Defendants' senior roles at the company. *See* ¶¶ 117-119. Numerous courts, however, have confirmed that "the high rank of various Individual Defendants . . . is insufficient, without more, to infer a strong inference of scienter." *Hansen*, 527 F. Supp. 2d at 1158; *see also In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at \*29 (C.D. Cal. Jan. 16, 2013) ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud" (quoting *In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 993 (D. Ariz. 1999))).

Third, Plaintiff alleges that Stamps' "President and former CFO" resigned "after 20 years of service." ¶ 120; *see Zucco*, 552 F.3d at 1002 ("Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter."). Absent particularized allegations that he resigned because of wrongdoing or other misconduct, however, this resignation does not contribute to the strong inference of scienter Plaintiff must plead. *Id.* ("[A] plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one."). In addition, if Huebner had engaged in wrongdoing, then the Company would not have had him continue to do part-time work for Stamps. *See* Ex. 15, at 2.

Fourth, in a glaring example of circular reasoning, Plaintiff alleges that scienter can be inferred from the fact that Stamps purportedly made false exculpatory statements about the contract negotiations and the reasons that Stamps' contract with the USPS was terminated. ¶¶ 106-109.[10] Scienter requires Plaintiff to plead actual

___

[10] Plaintiff also cites McBride's August 2017 statement that Stamps "continue[d] to enjoy a great partnership with the Postal Service." ¶ 104. Plaintiff alleges this "falsely assured" investors, but Plaintiff does not specify what exactly McBride was providing reassurance about. *See id.* In any event, Stamps' August

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

facts, not just innuendo. *See Silicon Graphics*, 183 F.3d at 985. Absent admissions by Stamps, regulatory findings, or, indeed, any particularized facts establishing falsity, Plaintiff cannot rely on Stamps' statements themselves to plead scienter. *See In re Neustar Sec. Litig.*, 83 F. Supp. 3d 671, 685 (E.D. Va. 2015) ("Lead Plaintiff used the [shortseller] reports to detail its allegations in the Amended Complaint and then holds out the Amended Complaint as corroboration for the allegations. Such circularity does not qualify as corroboration.").

Finally, Plaintiff cites critical commentary by a shortseller about impending lawsuits by the USPS. ¶ 110; *see Miller v. PCM, Inc.*, 2018 WL 5099722, at \*8-9 (C.D. Cal. Jan. 3, 2018) (shortseller speculation regarding dissolution of key partnership did not provide strong inference of scienter). But the USPS has not brought claims against Stamps on any grounds – statute, regulation, or contract – even though Stamps has been under public attack by shortsellers and others on the exact issues raised in this lawsuit for over three years.

### D.   <u>Plaintiff Fails to Plead a Holistic Inference of Scienter</u>

To plead scienter, Plaintiff must allege facts that, when taken together and weighed against any competing, non-culpable explanation for the defendants' conduct, support an inference of scienter that is at least as strong as any competing, non-fraudulent inference. *See Tellabs*, 551 U.S. at 323-24. Plaintiff fails to meet this burden because the facts undermining scienter far outweigh any culpable inferences.

***First***, Stamps' fulsome disclosures – including its express and repeated statements that it was using resellers "to provide [the reseller's] shipping discounts to our lower volume customers" and that "[r]esellers are important . . . for keeping existing USPS business" (Ex. 1, at 3; Ex. 14, at 3; ¶ 74) – weigh strongly against an inference of scienter. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 

2017 statement simply summarized the positive statements that the USPS CMO made publicly that same month. *See* Ex. 18.

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

34

1171-72 (C.D. Cal. 2007) (no scienter where defendants repeatedly disclosed allegedly improper practice; "if such a situation 'guaranteed' failure, the industry would have been alert to it").

***Second***, the lack of any claim by the USPS itself that Stamps violated any statute, regulation, or contract and the repeated public statements by "the most senior executive[s]" at the USPS and PRC weigh decisively against scienter. *See* ¶ 68; Ex. 18, at 5 (referring to Stamps as an "excellent partner[]"); Exs. 19, 27; *Express Scripts*, 2017 WL 3278930 at *18 (no scienter where third-party partner "stated publically that it was 'hopeful' that it would reach resolution with [defendants]").[11] Plaintiff does not, and cannot, identify any intervening facts that would have undermined the Individual Defendants' good-faith belief in the assurances by these senior officials. Consequently, these statements rebut any conceivable inference that Stamps did not actually believe it had a strong relationship with the USPS that would continue into the future.

***Third***, Stamps' detailed disclosure of risks to Stamps' agreements with the USPS, the agreements between resellers and the USPS, and Stamps' agreements with resellers, all undermine any inference of scienter. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994).

***Fourth***, Plaintiff fails to allege that any of the alleged omissions had even transpired, let alone been communicated to the Individual Defendants, when Stamps made the challenged statements. *See Silicon Graphics*, 183 F.3d at 988 ("Congress enacted the [Reform Act] to put an end to the practice of pleading 'fraud by hindsight.'"). For example, Plaintiff alleges that Stamps' positive statements about its relationship with the USPS were misleading because Stamps did not disclose critical comments by unidentified USPS employees, but Stamps made most of the challenged statements about its relationship with the USPS on or before August 2,

---

[11] The Supreme Court has specifically held that judicially noticeable documents must be considered when analyzing scienter. *Tellabs*, 551 U.S. at 322.

35

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

2017, *before* Plaintiff alleges any of the critical comments were made. *Compare* ¶¶ 66-70, 72-76, *with* ¶ 58 (alleging that the Parcel Partners letter was sent to Parcel Partners on an unspecified date in August 2017); ¶¶ 46-50 (no allegations about when the USPS salespeople made critical comments to former Stamps salespeople). Plaintiff similarly alleges that Stamps misled investors on or before October 31, 2018 by making optimistic statements about future financial results and contract renegotiations without disclosing that "the USPS had in fact rejected Stamps' business model and was in the process of terminating" its contract with Stamps. *See* ¶ 93(l). Again, however, the "omitted" acts transpired after the "misstatement" – the Task Force did not release its report until December 2018 (Ex. 23; ¶¶ 9, 63), and Plaintiff does not allege that contract negotiations broke down prior to 2019 (*see* ¶¶ 11, 63, 94). *See In re Zillow Grp., Inc. Sec. Litig.*, 2018 WL 4735711, at \*16 (W.D. Wash. Oct. 2, 2018) (no inference of scienter where challenged statements touting Company's regulatory compliance were made prior to the initiation of the government investigation). Plaintiff's attempt to plead fraud by hindsight weighs strongly against an inference of scienter. *See Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1079 (C.D. Cal. 2012) (where the "inevitable demise of the webOS strategy became apparent to Defendants *after* they made their optimistic statements . . . those statements could not have been *intentionally* false when made") (emphasis in original).

**Finally**, any conceivable inference of scienter is negated by the fact that the company bought stock in the fourth quarter of 2018 and first quarter of 2019, even after it received the Task Force Report. *See Bodri*, 252 F. Supp. 3d at 933; ¶ 102.

## IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Plaintiff also fails to plead "loss causation" – a "causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014). To plead loss causation, Plaintiff must allege

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

36

particularized facts establishing that the market "learned of and reacted to th[e] fraud."[12] *Metzler*, 540 F.3d at 1063; *see also Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014). Plaintiff does not meet this standard with respect to either the February 21, 2019 and May 8, 2019 announcements because these disclosures do not correspond to Plaintiff's theory of fraud.

Although the Complaint identifies Stamps' February 21, 2019 announcement that it had discontinued its package business incentive agreement with the USPS as a "corrective disclosure" purportedly revealing its scheme, Plaintiff does not assert that this disclosure actually revealed the alleged fraud. *See* ¶¶ 122, 130; Ex. 15. To the contrary, even after this disclosure, Plaintiff alleges that "defendants ***continued to conceal the truth*** about the Company's unsustainable reseller scheme." ¶¶ 96, 126; *see In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1164 (S.D. Cal. 2008) (no loss causation where the complaint contradicts allegations regarding corrective disclosure). Stamps, in fact, explicitly stated that it still had its "revenue sharing arrangements" with "the resellers" by which it sold discounted postage to small-volume and existing USPS customers. *See* Ex. 15, at 15. Plaintiff further fails to plead particularized facts explaining how the announcement of the end of this contract between Stamps and the USPS demonstrates that Stamps was improperly selling discounted postage to small-volume and existing USPS customers. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120, 1123 (9th Cir. 2013) (plaintiffs must allege that the market learned of the "very facts" previously concealed); *In re Blue Earth, Inc. Sec. Class Action Litig.*, 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3, 2015) ("To be corrective, a disclosure must relate back to the misrepresentation and not to some other negative information about the

---

[12] Plaintiffs must plead loss causation with "particularity." *Or. Pub. Emps. Ret. Fund*, 774 at 605; *In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 1245191, at *2 (C.D. Cal. Mar. 16, 2015).

37

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

company." (citation omitted)).[13]

Plaintiff likewise fails to plead particularized facts establishing that Stamps' May 8, 2019 announcement was corrective. *See* ¶¶ 127, 130; Ex. 16. In this announcement, Stamps revealed only that it had become aware of ***"potential"*** amendments, renegotiations, and terminations of NSAs ***between the USPS and the third-party resellers***. ¶ 127; *see also* Ex. 16. Stamps did not reveal that the USPS was in fact terminating or changing its NSAs with the third-party resellers (only that it was "potential"),[14] nor did Stamps reveal that the resellers – let alone Stamps itself – had committed "actual wrongdoing." *Loos*, 762 F.3d at 890 & n.3 ("the announcement of an investigation, standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything"). At most, the May 8 announcement revealed that the USPS was increasing its attention on certain reseller practices in the "industry as a whole," which the Ninth Circuit has held is insufficient to establish loss causation. *Apollo*, 774 F.3d at 608 (no loss causation on basis of government report that "revealed a systemic practice of manipulative and deceptive recruitment practices within [defendant]'s industry").

In short, Plaintiff's theory of fraud was not revealed: Stamps remains an authorized USPS PC Postage provider and is now able to partner with growing private carriers like Amazon, FedEx, UPS, and Uber; the USPS reseller program remains in effect; and Stamps' agreements with the third-party resellers by which it can sell discounted postage to small-volume and existing USPS customers continue generating revenue for Stamps. *See* Ex. 7, at 4; Ex. 15, at 8-9, 15. The Complaint should be dismissed for this reason as well.

---

[13] The stock price appears to have dropped in response to the negative news reducing Stamps' expected revenue. *See* Ex. 15, at 11; ¶ 122.

[14] The following quarter, Stamps announced that the "potential" risk had not come to pass, and the stock price rebounded. *See* Ex. 17, at 3; Ex. 34, at 1.

38

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## V.   PLAINTIFF'S SECTION 20A CLAIM FAILS

Plaintiff's claim under Section 20A of the 1934 Act against McBride fails as a matter of law because Plaintiff fails to plead an underlying 10(b) violation. *In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).[15]

The claim also fails for the independent reason that Plaintiff does not plead particularized facts establishing that McBride sold shares on the basis of material non-public information. *See In re 3Com Sec. Litig.*, 1999 WL 1039715, at \*8 (N.D. Cal. July 8, 1999) (boilerplate allegation that defendants had "material adverse non-public information" is "too conclusory to give rise to liability for insider trading under Section 20A"); *Wet Seal*, 518 F. Supp. 2d at 1181; *see also In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 943271, at \*4 (C.D. Cal. Apr. 6, 2009) (dismissing 20A claim where the trades were executed pursuant to Rule 10b5-1 trading plans).[16]

## VI.   DISMISSAL SHOULD BE WITH PREJUDICE

Leave to amend need not be granted if amendment would be futile.  The problems with the Complaint stem from a flawed theory of liability, not just a shortage of well-pled facts.  Those problems cannot be cured by amendment as Stamps publicly disclosed the conduct Plaintiff claims was not disclosed, *see* Part II.B above; the USPS has never asserted any statute, regulatory, or contract breach against Stamps (indeed, senior USPS officials publicly stated that Stamps' conduct was perfectly appropriate), *see* Part II.C above; and Stamps provided ample

---

[15]   Plaintiff's Section 20(a) claim should also be dismissed because Plaintiff failed to plead a primary violation of Section 10(b). *Zucco*, 552 F.3d 981 at 990.

[16]   Plaintiff's failure to identify the sale on which it bases this claim alone requires dismissal. *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993) ("contemporaneous trading must be pleaded with particularity under Rule 9(b)"). For purposes of this Motion, Defendants assume the sale upon which the claim is based occurred on December 18, 2017 (*see* Dkt. No. 76) – the only date on which McBride sold stock and Plaintiff purportedly purchased it – and was therefore made pursuant to a Rule 10b5-1 trading plan. *See infra* at Part III.B; Ex. 8, at 6.

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

warnings concerning potential changes or termination to its agreements with the USPS and others, *see* Parts II.D-E above.  The Complaint should be dismissed with prejudice.

Dated:  October 4, 2019                    KATTEN MUCHIN ROSENMAN LLP

By:    */s/ Richard H. Zelichov*
Richard H. Zelichov
richard.zelichov@kattenlaw.com
Christina L. Costley
christina.costley@kattenlaw.com
Paul S. Yong
paul.yong@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471
*Attorneys for Stamps.com Inc., Kenneth McBride, Kyle Huebner, and Jeff Carberry*

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

40