# Exhibit 1

10-Q 1 form10q.htm STAMPS.COM 10-Q 6-30-2015

---

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-Q

**(Mark One)**

☑     **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the quarterly period ended June 30, 2015**

**OR**

☐     **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the transition period from _____ to _____**

**Commission file number: 000-26427**

# Stamps.com Inc.

(Exact name of registrant as specified in its charter)

| **Delaware** | **77-0454966** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**1990 E. Grand Ave**
**El Segundo, CA 90245**
(Address of principal executive offices, including zip code)

**(310) 482-5800**
(Registrant's telephone number, including area code)

---

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑                   Accelerated filer ☐

Non-accelerated filer ☐ (Do not check if a smaller reporting company)     Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☑

As of July 31, 2015, there were 16,489,489 shares of the Registrant's Common Stock issued and outstanding.

Ex. 1, at 1

## STAMPS.COM INC AND SUBSIDIARY
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
### (UNAUDITED)

Stamps.com and Newell have certain rights to terminate the Stock Purchase Agreement including if the closing of the Transaction has not occurred on or prior to the date that is six months from the date of the Stock Purchase Agreement ("Termination Date"), provided, however, that the Termination Date will be automatically extended up to a date that is eighteen months after the date of the Stock Purchase Agreement in circumstances principally related to antitrust approval having not yet been obtained; provided, further, that under certain circumstances Newell can reduce the Termination Date to be a date that is twelve (12) months after the date of the Stock Purchase Agreement if we have not provided certain assurances as to extensions of our credit arrangements for the Transaction or other alternatives to such extensions.

In the event that the Stock Purchase Agreement is terminated under certain circumstances related to the failure to obtain antitrust regulatory approval, the Stock Purchase Agreement provides for us to pay to Newell $10,750,000.

Concurrent with the signing of the Stock Purchase Agreement, we entered into a financing commitment letter ("Commitment Letter") with Wells Fargo Bank, National Association ("Wells Fargo Bank"), Wells Fargo Securities, LLC, Bank of America, N.A. ("Bank of America"), Merrill Lynch, Pierce, Fenner & Smith Incorporated, J.P. Morgan Chase Bank, N.A. ("JPMorgan" and, collectively with Wells Fargo Bank and Bank of America, the "Lead Lenders"), and J.P. Morgan Securities LLC. The Commitment Letter provides, on the terms and subject to the conditions set forth in the Commitment Letter, for a secured term loan facility in an aggregate principal amount of $82.5 million ("Term Loan") and a secured revolving credit facility in an aggregate principal amount of $82.5 million (the "Revolving Credit Facility," and together with the Term Loan, the "Credit Facilities"). The proceeds of the Term Loan will be used to finance a portion of the Purchase Price and for the payment of fees and expenses incurred in connection with the entering into the Stock Purchase Agreement and the Credit Facilities. The Revolving Credit Facility will be used to finance a portion of the Purchase Price and for our ongoing working capital and other general corporate purposes. We expect the financing under the Commitment Letter, together with cash balances, to be sufficient to provide the financing necessary to pay the Purchase Price. The financing commitments of the Lead Lenders are subject to certain limited conditions set forth in the Commitment Letter.

During the second quarter, Stamps.com and Newell have each received a Request for Additional Information, or a "second request," from the United States Department of Justice (DOJ) in connection with the DOJ's review of Stamps.com's proposed acquisition of PSI Systems, Inc. (d/b/a Endicia) from Newell under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the Act). This second request from the DOJ is a standard part of the full regulatory process. The transaction, which was announced March 24, 2015, is subject to satisfaction of customary closing conditions, including expiration or termination of the waiting period under the Act. The effect of the second request is to extend the waiting period imposed by the Act until 30 days after Stamps.com and Newell have substantially complied with the second request, unless that period is extended voluntarily by the parties or terminated sooner by the DOJ. Stamps.com and Newell are gathering information to respond promptly to the second request and are cooperating with the DOJ in connection with its review

### 3.    Commitments and Contingencies

_Legal Proceedings_

On August 14, 2014, Rapid Enterprises, LLC, D/B/A Express 1, filed suit against ShipStation and some of its executives in the Third Judicial District Court for Salt Lake County, Utah, alleging, among other claims, that ShipStation breached its contract with Express 1 by violating an exclusivity provision. Express 1 seeks an injunction, damages, attorneys' fees and court costs. On December 12, 2014, Express 1 added additional claims and Stamps.com and our Chief Executive Officer as named defendants.

On August 6, 2015, Stamps.com and Express 1 entered into a settlement agreement that resolves all disputes between the parties. Stamps.com agreed to pay Express 1 $10,000,000 in exchange for Express 1's dismissal and permanent withdrawal of Express 1's tort claims.  In addition, the parties agreed to continue and expand their business relationship going forward.

9

**STAMPS.COM INC AND SUBSIDIARY**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
(UNAUDITED)

Express 1 is a sales and support business partner for the United States Postal Service that provides discounted shipping rates and technology solutions to lower volume USPS shippers.  Though our partnership with Express 1, Stamps.com and our subsidiaries are able to provide Express 1's shipping discounts to our lower volume customers, and Express 1 is able to utilize our systems and software to better serve its customers.

The above settlement related to events that occurred prior to June 30, 2015. Therefore the $10,000,000 litigation settlement expense and associated liability were included in our consolidated financial statements as of and for the three and six months ended June 30, 2015.

We are a party to various legal proceedings, including those noted in this section. We have established loss provisions only for matters in which losses are probable and can be reasonably estimated. Although management at present believes that the ultimate outcome of these proceedings, individually and in the aggregate, will not materially harm our financial position, results of operations, cash flows, or overall trends, legal proceedings are subject to inherent uncertainties, and unfavorable rulings or other events could occur. An unfavorable outcome for an amount in excess of management's present beliefs may result in a material adverse impact on our business, results of operations, financial position, and overall trends.

*Commitments*

The following table is a schedule of our significant contractual obligations and commercial commitments, which consist only of future minimum lease payments under operating leases as of June 30, 2015 (in thousands):

| Twelve Month Period Ending June 30, | Operating Lease Obligations | |
|---|---|---|
| 2016 | $ | 373 |
| 2017 | | 263 |
| 2018 | | 269 |
| 2019 | | 136 |
| Thereafter | | — |
| Total | $ | 1,041 |

**4.   Net (Loss) Income per Share**

Net (loss) income per share represents net (loss) income attributable to common stockholders divided by the weighted average number of common shares outstanding during a reported period. The diluted net (loss) income per share reflects the potential dilution that could occur if securities or other contracts to issue common stock, including stock options (commonly and hereafter referred to as "common stock equivalents"), were exercised or converted into common stock. Diluted net (loss) income per share is calculated by dividing net (loss) income during a reported period by the sum of the weighted average number of common shares outstanding plus common stock equivalents for the period.

10

*Table of Contents*

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

STAMPS.COM INC.
(Registrant)

August 7, 2015 By: /s/ KEN MCBRIDE

**Ken McBride**
**Chairman and Chief Executive Officer**

August 7, 2015 By: /s/ KYLE HUEBNER

**Kyle Huebner**
**Co-President and Chief Financial Officer**

31

Ex. 1, at 4