RICHARD H. ZELICHOV (SBN 193858)
richard.zelichov@kattenlaw.com
CHRISTINA L. COSTLEY (SBN 227134)
christina.costley@kattenlaw.com
PAUL S. YONG (SBN 303164)
paul.yong@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471

*Attorneys for Stamps.com Inc., Kenneth McBride, Kyle Huebner, and Jeff Carberry*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STAMPS.COM, INC., KENNETH MCBRIDE, KYLE HUEBNER, and JEFF CARBERRY,<br><br>Defendants. | Case No. 2:19-cv-01828-MWF (SK)<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT<br><br>Judge:  Hon. Michael W. Fitzgerald<br>Courtroom:  5A<br>Date:  January 13, 2020<br>Time:  10:00 a.m. |
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Lead Plaintiff,<br><br>vs.<br><br>STAMPS.COM, INC., KENNETH McBRIDE, KYLE HUEBNER, and JEFF CARBERRY,<br><br>Defendants. | |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION ..................................................... 2

    A.    Plaintiff's Puzzle Pleading Does Not Satisfy the Reform Act ............ 2

    B.    Defendants Disclosed the Allegedly Omitted Fact(s) ........................ 3

    C.    Stamps' Statements About Its Relationship With the USPS Were Not Misleading ..................................................................... 5

        1.    Plaintiff Has Not Alleged That Stamps' Conduct Violated Any Statute, Regulation, or Contract .......................... 6

        2.    Plaintiff Has Not Alleged USPS Displeasure With Stamps ............................................................................... 8

        3.    Plaintiff Has at Most Pled a "Difference of Opinion" ............. 11

        4.    Defendants' Statements About Its Relationship With the USPS Were Not Misleading ....................................... 12

    D.    Stamps' Historical Results Did Not Mislead Investors ..................... 13

    E.    The Reform Act's Safe Harbor Applies to Stamps' Forward-Looking Statements ...................................................................... 14

II.    PLAINTIFF FAILS TO PLEAD SCIENTER ........................................... 16

    A.    Defendants' Stock Sales Do Not Support an Inference of Scienter .............................................................................. 16

    B.    Plaintiff's Reliance on Anecdotal Statements By Anonymous Former Stamps Employees Fails ........................................ 20

    C.    Plaintiff Cannot Rely Upon Disfavored Scienter Doctrines ............. 21

    D.    Plaintiff Fails to Plead a Holistic Inference of Scienter ................... 23

III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ............................. 23

IV.    PLAINTIFF'S SECTION 20(A) AND 20A CLAIMS FAIL ...................... 25

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adams Golf, Inc. Sec. Litig.*,
381 F.3d 267 (3d Cir. 2004) ................................................................................. 7

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ............................................................ 8, 9

*Ansell v. Laikin*,
2011 WL 3274019 (C.D. Cal. Aug. 1, 2011) ....................................................... 2

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ............................................................... 10

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ................................................... 17

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ............................................................................... 12

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) .......................................................... 21

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ...................................................... 17

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ............................................................................. 12

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) ............................................................... 15

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .......................................................................... 1, 12

*Browning v. Amyris, Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ................................................... 20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................. 19

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

ii

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014) .................................................................................... 11

*City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) .................................................................................. 10

*City of Roseville Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092 (E.D. Wash. 2013), aff'd, 691 F. App'x 393
    (9th Cir. 2017) ......................................................................................................... 6

*City of Taylor Gen. Emp. Ret. Sys. v. Magna Int'l Inc.*,
    967 F. Supp. 2d 771 (S.D.N.Y. 2013) .................................................................... 18

*Comm's Workers of America Plan for Emps.' Pension and Death
    Benefits v. CSK Auto Corp.*,
    2007 WL 951968 (D. Ariz. Mar. 28, 2007) ............................................................ 18

*In re Convergent Techs. Sec. Litig.*,
    948 F.2d 507 (9th Cir. 1991) .................................................................................. 13

*In re Copper Mountain Sec. Litig.*,
    311 F. Supp. 2d 857 (N.D. Cal. 2004) .................................................................... 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................... 19

*Diamond S.J. Enter., Inc. v. City of San Jose*,
    395 F. Supp. 3d 1202 (N.D. Cal. 2019) .................................................................... 3

*In re Dot Hill Sys. Corp. Sec. Litig.*,
    594 F. Supp. 2d 1150 (S.D. Cal. 2008) .................................................................... 6

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v.
    The Clorox Company*,
    353 F.3d 1125 (9th Cir. 2004) ................................................................................ 15

*Eng v. Edison Int'l*,
    2018 WL 1367419 (S.D. Cal. Mar. 16, 2018) ........................................................ 24

*Evanston Police Pension Fund v. McKesson Corp.*,
    2019 WL 5587311 (N.D. Cal. Oct. 30, 2019) ........................................................ 14

*In re Express Scripts Holding Co. Sec. Litig.*,
    2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017), *aff'd*, 773 F. App'x 9
    (2d Cir. 2019) ...................................................................................................... 6, 13

*In re Facebook, Inc. Sec. Litig.*,
2019 WL 4674347 (N.D. Cal. Sept. 25, 2019)........................................................7

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008).....................................................................7

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016)..........................................................3

*Galati v. Commerce Bancorp, Inc.*,
220 F. App'x 97 (3d Cir. 2007)............................................................................14

*Glazer Capital Mgmt. LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008)................................................................................16

*Huang v. Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) .......................................................7

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008)..................................................................5

*Jenkins v. Cty. of Riverside*,
398 F.3d 1093 (9th Cir. 2005)................................................................................5

*Karam v. Corinthian Colls., Inc.*,
2012 WL 8499135 (C.D. Cal. Aug. 20, 2012).......................................................8

*Kessman v. Myriad Genetics, Inc.*,
2019 WL 1330363 (D. Utah Mar. 25, 2019)..........................................................7

*Lefter v. Yirendai Ltd.*,
2017 WL 2857535 (C.D. Cal. June 20, 2017).......................................................13

*Lifschitz v. NextWave Wireless Inc.*,
2011 WL 5839682 (S.D. Cal. Nov. 21, 2011) ........................................................8

*In re Lions Gate Entm't Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016)........................................................................7

*In re Maxwell Techs., Inc. Sec. Litig.*,
18 F. Supp. 3d 1023 (S.D. Cal. 2014)..................................................................21

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)........................................................................11, 24

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

iv

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) ................................................................... 24, 25, 26

*In re New Century*,
   588 F. Supp. 2d 1206 (C.D. Cal. 2008) ............................................................... 9

*Nguyen v. Maxpoint Interactive, Inc.*,
   234 F. Supp. 3d 540 (S.D.N.Y. 2017) ................................................................. 4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*,
   135 S. Ct. 1318 (2015) ...................................................................................... 12

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ............................................................................ 25

*Patel v. City of S. El Monte*,
   2019 WL 1785440 (C.D. Cal. Jan. 14, 2019) ...................................................... 5

*In re PetroChina Co. Ltd. Sec. Litig.*,
   120 F. Supp. 3d 340 (S.D.N.Y. 2015), *aff'd sub nom.*, 644 F.
   App'x 13 (2d Cir. 2016) ...................................................................................... 6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ...................................................................... 8, 23

*Prodanova v. H.C. Wainwright & Co., LLC*,
   2019 WL 4143301 (C.D. Cal. July 2, 2019) ..................................................... 21

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) .......................................................................... 17

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v.
   Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) .......................................................................... 13

*Rok v. Identiv, Inc.*,
   2018 WL 807147 (N.D. Cal. Feb. 9, 2018), *aff'd*, 716 F. App'x
   663 (9th Cir. 2018) ........................................................................................... 24

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ............................................................................ 17

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2018) ............................................................... 14

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
266 F. Supp. 2d 1150 (C.D. Cal. 2003) ................................................................. 17

*Shaw v. Digital Equipment Corp.*
82 F.3d 1194 (1st Cir. 1996) (Opp. ) ..................................................................... 20

*Siegel v. Lyons*,
1996 WL 438793 (N.D. Cal. Apr. 26, 1996) .......................................................... 4

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .......................................................................... 10, 16

*In re Sofamor Danek Grp., Inc.*,
123 F.3d 394 (6th Cir. 1997) ................................................................................ 13

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 1082 ................................................................................... 20

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ................................................................................ 11

*Teamsters Loyal 456 Pension Fund v. Universal Health Services*,
396 F. Supp. 3d 413 (E.D. Pa. 2019) .................................................................... 14

*In re Tibco Software, Inc. Sec. Litig.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006) ......................................................... 8

*Veal v. Lending Club Corp.*,
2019 WL 5698072 (N.D. Cal. Nov. 4, 2019) ......................................................... 21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
258 F. Supp. 3d 1037 (N.D. Cal. 2017) ................................................................... 7

*Zee v. Green Dot Corp.*,
2013 WL 12133841 (C.D. Cal. May 2, 2013) ........................................................ 15

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

vi

**INTRODUCTION**

Plaintiff's Opposition admits that Stamps actually disclosed exactly what the Complaint accuses Stamps of omitting: "the fact that Stamps had a reseller program and that some low-volume customers got discounted rates." Opp. at 14. The Opposition similarly concedes that "**Stamps itself was not directly accused of breaching any contract or violating USPS governance**." Opp. at 22. In other words, and in stark contrast to the Complaint's allegations, Stamps' sales practices were neither secret (they were disclosed) nor abusive (they complied with all statutes, regulations, and contracts). These concessions alone require dismissal with prejudice.

The Opposition instead resorts to an argument that Stamps purportedly failed to disclose that the USPS was not "happy" with Stamps because Stamps was putting existing, low-volume USPS customers on reseller rates, thereby jeopardizing the reseller program. But Stamps disclosed this practice, too, and Plaintiff still does not and cannot plead that there was any statutory, regulatory, or bar on these sales. While Plaintiff repeatedly asserts that the reseller program was intended only for large-volume, new USPS customers, Plaintiff cites no source for this assertion, which has been contradicted by public statements by senior USPS officers (including the Chief Marketing Officer and Chief Financial Officer). The reseller program also remains in place more than three years after these accusations were publicly made by short sellers and Stamps' revenue continues to "come from resellers in the form . . . revenue-share arrangements."

Plaintiff also has not alleged that Stamps' sales practices rendered any public statements that it made false or misleading. Plaintiff argues that Stamps' disclosures were incomplete, but ignores settled law holding that "Rule 10b-5 . . . prohibit[s] *only* misleading and untrue statements, not statements that are incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Stamps' statements about its sales practices, its relationship with the USPS,

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1

its historical financial results, and the strength of its shipping business were all entirely accurate and did not create any misleading impressions that the USPS and Stamps agreed on every aspect of the shipping market (as they were competitors in addition to partners) or that all contracts between them would continue in perpetuity.

In short, Plaintiff is simply seeking insurance for investment losses. These hindsight-based claims should be dismissed.

<u>**ARGUMENT**</u>

## I.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION

Plaintiff alleges that Stamps misled investors by making positive statements about its relationship with the USPS and its historical financial results without disclosing that, as Plaintiff argues, Stamps was "engaged in a secret . . . scheme" to sell discounted postage to small-volume, existing USPS customers. Plaintiff's theory fails as a matter of law, as discussed in further detail in Parts I.A (Plaintiff's puzzle pleading); I.B (Plaintiff's incorrect assertion that Stamps failed to disclose its use of reseller rates for existing, low-volume customers); I.C (Plaintiff's inadequate challenges to Stamps' vague statements about its relationship with the USPS and complete failure to allege any wrongdoing by Stamps); I.D (Stamps' accurate historical financial results); and I.E (Stamps' forward looking statements about negotiations concerning the package business incentive agreement).

### A.    <u>Plaintiff's Puzzle Pleading Does Not Satisfy the Reform Act</u>

The Opposition does not dispute that the Complaint relies on the sort of allegations that courts have historically criticized as "puzzle pleading": "a list of statements made by defendants followed by a list of observations which supposedly render the statements false, but make no effort to link the observations to any particular statement." *Ansell v. Laikin*, 2011 WL 3274019, at *4 (C.D. Cal. Aug. 1, 2011) (cited in Opp. at 13, n.7).

2

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Instead, Plaintiff argues that, in this district, it may rely on such allegations so long as the Complaint "set[s] forth with some degree of clarity in the succeeding paragraphs why the bolded and italicized statements were false and misleading." *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at \*9 (C.D. Cal. June 9, 2016). Plaintiff argues that it has satisfied this rule by submitting "Exhibit A" to the Opposition. Exhibit A, however, does not even meet the minimal requirements Plaintiff proposes. Just as one example, although Stamps noted in the Motion to Dismiss that Plaintiff had failed to specify which specific clause in Paragraph 81 was false (Mot. at 15-16), in Exhibit A, Plaintiff simply repeats the entire paragraph, without any attempt to identify a specific portion as misleading. Plaintiff then repeats four of ten "true facts" that followed Paragraph 81 in the Complaint, without explaining how Defendants (or the Court) were to have guessed that the other six "true facts" did not apply. Plaintiff also still has not specified how the remaining four "true facts" rendered any part of Paragraph 81 false or misleading.

Finally, even setting aside these infirmities with Exhibit A, Plaintiff may not amend the complaint in the Opposition, which effectively is what Exhibit A purports to do. *See Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019).

**B.    Defendants Disclosed the Allegedly Omitted Fact(s)**

The Opposition abandons the Complaint's primary theory: that Stamps "was secretly bundling small-volume postage customers . . . then purchasing postage from the USPS at discounted rates to which small-volume customers were not entitled." ¶ 5; *see also* ¶¶ 3; 6; 71(a), (e), (g); 77(a), (b), (c), (e); 83(a), (b), (d), (f), (g); 93(a), (b), (e), (g), (j). In the Opposition, Plaintiff admits that Stamps did, in fact, "disclose the fact that [it] had a reseller program and that some low-volume customers got discounted rates." Opp. at 14.

Plaintiff now relies on a secondary argument: that Stamps purportedly failed to disclose that it was using resellers to sell discounted postage to "*existing* low-

3

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

volume customers" of the USPS.  Opp. at 14 (emphasis added).[1]  Again, however, this allegation cannot be reconciled with Stamps' express and repeated disclosures. Stamps disclosed in a Form 10-Q filed on August 7, 2015 that "[t]hrough our partnership with [a reseller], Stamps.com and our subsidiaries are able to provide [the reseller's] shipping discounts to *our* lower volume customers."  Mot. at 16 (citing Ex. 1, at 3) (emphasis added).  Since Stamps had an exclusive relationship with the USPS at that point in time (¶ 3) and its customers were already USPS customers, this could only have meant that Stamps was using the reseller discounts for *existing*, low-volume USPS customers.  *See, e.g.*, *Nguyen v. Maxpoint Interactive, Inc.*, 234 F. Supp. 3d 540, 547-48 (S.D.N.Y. 2017) (investors are able to engage in deductions from explicitly disclosed facts).  Similarly, Stamps again disclosed in 2016, before the putative class period, that "high volume shippers do not need to work with resellers at all" and that it had put 19,000 existing, USPS customers on reseller rates.  *See* Ex. 11, at 4-5, 11.  Again, this could only have meant that Stamps was using reseller rates for *existing*, low-volume customers because high-volume shippers did not need to work with resellers.  The Opposition completely ignores these disclosures, any one of which is fatal to Plaintiff's claims. *See Siegel v. Lyons*, 1996 WL 438793, at *4 (N.D. Cal. Apr. 26, 1996) ("[w]here SEC filings actually disclose allegedly omitted information, dismissal of a claim premised upon nondisclosure is proper").  Standing alone, this is grounds for dismissal.

Even if Stamps had not made these disclosures, Plaintiff does not identify any statement rendered misleading by these alleged omissions because Stamps never

---

[1]     Plaintiff repeatedly uses the word "cannibalization," but this is nothing more than a pejorative way to describe sales channel conflicts that are an ordinary part of commercial operations.  Stamps, the USPS, and all the various other entities marketing USPS package services no more cannibalize USPS sales than Best Buy cannibalizes sales of an Apple iPhone from an Apple Store (or all of the various other channels in which Apple iPhones are sold).

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

4

stated that it offered reseller rates only to customers who would be new or high-volume customers of USPS shipping services.[2]

### C. Stamps' Statements About Its Relationship With the USPS Were Not Misleading

Defendants explained in the Motion that, because its statements about its relationship with the USPS and its position in the market are not subject to objective verification, they are inactionable "puffery." *See, e.g.*, Mot. at 14, 17-18 (citing *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)). The Opposition fails to address, and therefore concedes, that Stamps' statements about its position in the market are inactionable on this basis. *Patel v. City of S. El Monte*, 2019 WL 1785440, at *10 (C.D. Cal. Jan. 14, 2019) ("plaintiffs do not address this claim in their [opposition] and therefore concede this point"); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

Plaintiff argues that Stamps' few statements about its relationship with the USPS – the "great partnership with the USPS" and "that the USPS is very happy," ¶¶ 68, 70, 74 – are not puffery because, Plaintiff asserts, a statement "can only be characterized as puffery if it is so 'exaggerated' or 'vague' that no reasonable investor would rely on it." Opp. at 16. The case Plaintiff cites for this point, *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096-97 (C.D. Cal. 2008), however, expressly holds that phrases like "strong," "better than expected," "robust," "well-positioned," "solid," and "improved" are "generally hyperbole" and "not actionable as material misrepresentations."

---

[2] Plaintiff's argument, that "existing" customers were not permitted to use reseller rates, is both inadequately described and nonsensical. Although the Opposition does not specify whether "existing" refers to "existing" USPS customers or "existing" Stamps customers, the Complaint only includes allegations about "existing USPS customers." *See, e.g.*, ¶ 26. But if that were the case, this would prohibit every single person or entity in the United States from obtaining reseller discounts because everybody in the United States uses the USPS.

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

5

Plaintiff also argues, without citation, that Stamps' statements about its relationship with the USPS are not puffery because the USPS was one of Stamps' "most important business partners." Opp. at 16. Stamps' important partnership with the USPS does not mean that its statements about the USPS cannot be puffery. Numerous courts have held that identical statements about a company's biggest customer remain inactionable puffery. *See, e.g.*, *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *3, 11-14 (S.D.N.Y. Aug. 1, 2017) (statement such as "we've got a great relationship with" largest customer is inactionable puffery even after receipt of notice of breach of contract), *aff'd*, 773 F. App'x 9, 13 (2d Cir. 2019); *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1159-60 (S.D. Cal. 2008) (reference to relationship with largest customer as "excellent," "highly positive and mutually beneficial," and "a success" inactionable puffery). Standing alone, this is grounds to dismiss these allegations with prejudice.

### 1. Plaintiff Has Not Alleged That Stamps' Conduct Violated Any Statute, Regulation, or Contract

The Opposition completely abandons the Complaint's generalized allegations that Stamps' use of the reseller rates for small-volume and/or existing USPS customers violated either unspecified "USPS governance" (¶ 36) and/or the "terms and spirit of the parties' contractual agreements" (¶ 83(d)). Plaintiff now admits that "**Stamps itself was not directly accused of breaching any contract or violating USPS governance**." Opp. at 22 (emphasis added). Plaintiff argues – again, without citation – that "such action is not required," but numerous courts have confirmed that a plaintiff's failure and inability to "identify a specific law or regulation violated by Defendants" requires dismissal. *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1140 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017); *see also In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 361 (S.D.N.Y. 2015), *aff'd sub nom.*, 644 F. App'x 13 (2d Cir. 2016) (granting motion to dismiss where "[p]laintiffs have not identified a specific requirement of [Chinese

6

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

law], NYSE, or SEC that PetroChina was violating at the time of its statements"); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 353-54 (S.D.N.Y. 2008) (dismissing complaint because plaintiff did not plead the underlying alleged wrongful conduct with particularity); *Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at *5-6 (D. Utah Mar. 25, 2019).

Plaintiff's only effort to claim a contract breach depends on emails and a letter supposedly reflecting an "investigation" into Move Method/Intuiship's sales practices. In the Complaint, Plaintiff (falsely) alleged that this investigation "targeted Stamps and its affiliates." ¶ 51. Plaintiff abandons this allegation in the Opposition, instead arguing that it does not matter whether Stamps' contracts with the USPS were similar to Intuiship's contracts with the USPS. Opp. at 22. But this is not the law. *Huang v. Higgins*, 2019 WL 1245136, at *6 (N.D. Cal. Mar. 18, 2019) (government investigations of third parties for improper marketing practices do not establish improper practices by company); *see also In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 278 (3d Cir. 2004) (no duty to disclose problems facing third parties). Plaintiff also concedes that the USPS did not terminate Intuiship's NSA but argues that "[t]he issue . . . whether [the NSA] was technically breached is also a red herring." Opp. at 22. Again, however, Plaintiff cites no support for this point. Indeed, even if the USPS was investigating Stamps, which it was not, Stamps would not have had to disclose a preliminary investigation that did not result in formal proceedings or a finding of wrongdoing. *See, e.g.*, *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("a government investigation, without more, does not trigger a generalized duty to disclose"); *see also In re Facebook, Inc. Sec. Litig.*, 2019 WL 4674347, at *17 (N.D. Cal. Sept. 25, 2019) (statement not rendered misleading by failure to disclose that "FTC only stated an intent to investigate Facebook, but had not made any formal finding"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1043 (N.D. Cal. 2017).

7

### 2.    Plaintiff Has Not Alleged USPS Displeasure With Stamps

Having abandoned its allegations that Stamps violated a statute, regulation, or contract, Plaintiff instead argues that Stamps' conduct "was not fully authorized by the USPS," Opp. at 7, 18, and/or that the "USPS never gave its approval to this process." Opp. at 14.  Plaintiff, however, still fails to specify any statute, law, or contract that required Stamps to obtain "full[] authorization" or "approval" from the USPS.  Plaintiff instead argues, based on second-hand information from two former low-level Stamps employees and a letter from yet another third party, that Stamps failed to disclose that the USPS was not "very happy" with Stamps.

Courts are "generally skeptical" of "confidential witness" allegations. *Lifschitz v. NextWave Wireless Inc.*, 2011 WL 5839682, at *2 (S.D. Cal. Nov. 21, 2011).  This is particularly so where, as here, the CWs are former, low-level employees who did not work at headquarters and who are merely repeating "anecdotal accounts" from other unidentified sources.  *In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 1469654, at *22 (N.D. Cal. May 25, 2006) (information that does not come from headquarters is less probative); *Intuitive Surgical*, 759 F.3d at 1063 (securities claim may not rest on "impression of a low-level employee" lacking "substance or context"); *Karam v. Corinthian Colls., Inc.*, 2012 WL 8499135, at *11 (C.D. Cal. Aug. 20, 2012) ("anecdotal accounts of the CWs are insufficient to demonstrate . . . a materially widespread practice").  This "skepticism" should be especially high when even the first level of hearsay purportedly from lower-level USPS employees to lower-level Stamps employees reflects nothing more than ordinary sales channel conflicts as discussed in n.1 above.

Plaintiff relies on the Central District's decision in *Amgen*, but *Amgen* and the cases on which it relies are fatal to Plaintiff's claim.  Opp. at 18 (*In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1032-33 (C.D. Cal. 2008)).  The *Amgen* court harmonized two strands of cases involving confidential witnesses, holding that when CW allegations are pled in "convincing detail" – for example, when the witnesses

8

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

are "numerous and consist[ing] of persons who from their job descriptions were in a position to know *at first hand* the facts to which they are prepared to testify" – such allegations may be credited. 544 F. Supp. 2d at 1032 (emphasis added). On the other hand, when the complaint merely cites "'three ex-employees' and 'two consultants' of the defendant," such allegations must be "steep[ly] discount[ed]." *Id.* The allegations here – from just two former employees, one of whom may not have even been employed by Stamps at the relevant time, and *both of whom* purportedly repeat double hearsay from unidentified sources at the USPS, *not* firsthand knowledge – are even less compelling than the "deeply discounted" allegations in *Amgen.*

Plaintiff also argues that it "need not name [its] sources as long as [other facts] provide an adequate basis for believing that the defendants' statements were false." Conspicuously absent from both the Opposition and the Complaint, however, are any such corroborating allegations. *See* Opp. at 18-19 (arguing that the "former employee's statements are corroborated from other sources" but not identifying any such source); *compare In re New Century*, 588 F. Supp. 2d 1206, 1225 (C.D. Cal. 2008) (cited Opp. at 18) (citing "an array of confidential witness statements" and "data, that corroborates the witnesses, showing a proliferation of high-risk loans such as adjustable-rate mortgages provided to less-qualified borrowers").

Plaintiff also cites an August 2017 email from Parcel Partners which Plaintiff argues "disclosed the USPS's position and new restrictions designed to reign in abuse of the reseller program." ¶ 58. Plaintiff admits it has not pled "precise details" about the email, including the name of the person or persons at Stamps who purportedly reviewed it, but argues that, because the email is offered only to establish falsity and is not alleged to include a "false" statement, Plaintiff only needs to plead, generally, that the email was sent to Stamps by Parcel Partners. Opp. at 19. The Ninth Circuit, however, has held that to satisfy the Reform Act, plaintiffs must specify, *inter alia*, "which officers reviewed [the document], and from whom

9

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

[plaintiff] obtained the information." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999); *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 759-60 (7th Cir. 2013) ("[T]he reference to *internal* e-mails implied that someone inside Boeing was aiding the plaintiffs. But as no such person was identified . . . [t]he district judge therefore rightly refused to give any weight to the 'internal e-mails' to which the complaint referred."). The Reform Act requirements are also not limited only to documents alleged to be false. *Silicon Graphics*, 183 F.3d 970 at 984; *see also In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 840 (N.D. Cal. 2000) (plaintiff "must specify the contents [and] recipients" when offered to establish what is "true").

This is not burdensome: if Plaintiff's counsel has personally reviewed the Parcel Partners email to verify its existence, as counsel is required to do, Plaintiff should be able to list the specific person(s) listed in the "to" line. *See City of Livonia*, 711 F.3d at 759-60 (plaintiff's counsel must "verify the allegations" including a claim by one confidential witness that he had seen "copies of internal electronic communications to defendants").[3]

In any event, like the IntuiShip letter, the August 2017 Parcel Partners email does not state that the USPS had prohibited discounted sales to small-volume and/or existing USPS customers, nor does it make any statements, at all, about Stamps. Plaintiff also does not and cannot allege that the USPS implemented the restrictions that Parcel Partners suggests it might. ¶ 58. Thus, the email is irrelevant for the same reason that the Intuiship letter is irrelevant. *See* Part I.C above.

---

[3] The Opposition's Statement of Facts refers repeatedly to an April 2017 email from Parcel Partners to Stamps, an allegation that appears nowhere in the Complaint. Opp. at 7, 9, 10. In *City of Livonia*, the Seventh Circuit discussed prior instances in which "[t]he plaintiffs' law firm—Robbins Geller Rudman & Dowd LLP—was criticized for misleading allegations, concerning confidential sources, made to stave off dismissal of a securities-fraud case much like this one." 711 F.3d at 762. If Plaintiff's counsel intends to rely on a April 2017 email, they must plead them in a complaint verified under Rule 11 with the details required by the Reform Act.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

In short, Plaintiff has not alleged facts with particularity demonstrating that Stamps had issues with the USPS that conflicted with its statements about a "great partnership" or that the USPS was "very happy."

### 3. Plaintiff Has at Most Pled a "Difference of Opinion"

The Opposition also does not dispute that the critical statements Plaintiff attributes to low-level former Stamps employees are at odds with the many positive statements made by the USPS's CMO,[4] CFO, and former Chairperson of the PRC about the relationship between the USPS and Stamps and the appropriate uses of the reseller program. *See* Mot. at 23.[5] Instead, Plaintiff argues that these differences raise a "factual dispute" that cannot be resolved in a pleading motion. Opp. at 20 n.11. But that is not so. As Stamps explained in the Motion to Dismiss, even if this Court were to credit the confidential witness allegations, at most, they establish a difference of opinion. As a matter of law, this is not sufficient for a securities fraud claim. *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170-71 (3d Cir. 2014); *see also Metzler*, 540 F.3d at 1069 (internal disagreement is not sufficient). This is the exact scenario – in which "junior [employees] expressed doubts about a practice's legality, when [several] more senior colleagues gave a stamp of approval" – that the United States Supreme Court recently held does not require disclosure

---

[4] Plaintiff implies – but does not expressly state – that the USPS's CMO was disciplined for his statements about use of the reseller program for sales to small-volume and/or existing customers. Opp. at 20 n.11. Plaintiff, however, offers no details about this. In any event, the CMO is not the only USPS employee who has expressed this opinion. Another spokesperson made similar statements at the same time and the USPS's CFO confirmed that partners (like Stamps and resellers) are "very important in order to be able to reach small and medium businesses and grow the business." Mot. at 23. Plaintiff does not dispute the accuracy of these statements.

[5] Plaintiff tries to cast this as a difference of opinion between Stamps' senior executives and Stamps' employees (Opp. at 2), but the difference of opinion Plaintiff alleges was actually between the USPS's senior executives and "certain USPS teams and District Managers." ¶ 49. As discussed in the Motion and entirely ignored by Plaintiff, Stamps did not have to disclose the USPS's plans because Stamps could not have known what the USPS would do with respect to the reseller program. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996).

11

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

because "a reasonable investor does not expect that every fact known to an issuer supports its opinion statement." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 135 S. Ct. 1318, 1329 (2015).

Plaintiff also argues that *City of Edinburgh*, and the other cases Defendants have cited for this point, are limited to cases in which opinions differed over "complicated assessments." Yet again, however, Plaintiff cites no support for his argument.[6] Nor does Plaintiff explain how or why the permissibility of Stamps' use of the reseller program – which Plaintiff itself has been unable to cite a single statute or contract provision prohibiting and which the USPS itself changed positions between May 2019 and August 2019 – is not a "complicated assessment."

### 4. Defendants' Statements About Its Relationship With the USPS Were Not Misleading

Even if the Court were to reject every argument set forth above, Plaintiff still has not alleged how Stamps' statements about its relationship with the USPS were anything more than "incomplete." As Stamps explained in the Motion, "Rule 10b-5 . . . prohibit[s] *only* misleading and untrue statements, not statements that are incomplete." *Brody*, 280 F.3d at 1006; *see Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) ("[The duty to disclose rule] does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise . . . ."). Rather, a plaintiff must allege that the omission "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* Plaintiff argues that Stamps' positive statements about its relationship with the USPS gave the impression that everybody at the USPS agreed with Stamps on every issue, but Stamps made no such guarantees. *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845

---

[6] Plaintiff cites *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008), but in *Berson* the dispute was over facts (whether the stop-work orders had, or had not, expired), *not* over opinions (let alone opinions at a third party).

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

12

F.3d 1268, 1278 (9th Cir. 2017) ("promotion of ethical conduct at HP did not reasonably suggest that there would be no violations of Standards of Business Conduct"); *Lefter v. Yirendai Ltd.*, 2017 WL 2857535, at *6-7 (C.D. Cal. June 20, 2017) (Fitzgerald, J.).   Plaintiff's other theory seems to be that these positive statements gave the impression that Stamps and the USPS would continue to renew all of their contracts on better and better terms for Stamps, but this completely overreads these statements.   *Express Scripts*, 2017 WL 3278930 at *13 ("the allegations in the CAC amount to little more than a suggestion that Defendants should have somehow guessed the outcome of the ongoing negotiations sooner or approached their negotiations with Anthem more pessimistically").   Plaintiff's claimed impression from these statements constitutes a further stretch in light of the detailed disclosure of the risks to Stamps' agreements with the USPS, the agreements between resellers and the USPS, and Stamps' agreements with the resellers.  *See* Mot. at 8-9, 10, 25-26.

### D.   <u>Stamps' Historical Results Did Not Mislead Investors</u>

Plaintiff does not, and cannot, dispute that Stamps' discussion of its historical financial results was literally accurate.  *See* Opp. at 21.  Instead, Plaintiff argues that Stamps' disclosures were misleading because Stamps did not also state that its financial results "were not sustainable."  *Id.*  It is well settled, however, that a company cannot be liable for securities fraud if it has accurately "report[ed] past performance," even if it might not continue in the future.  *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513, 516 (9th Cir. 1991); *see also* Mot. at 24 (citing cases). Plaintiff argues those cases did not involve forecasts, but Plaintiff does not and cannot allege that Stamps ever missed a single one of its forecasts so this distinction is irrelevant.  *See* Mot. at 24 n.6.  Plaintiff also argues that *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997) and other cases that hold that "a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data" are inapplicable because they "merely stand for the

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

unremarkable proposition that quantitatively accurate financial statements themselves cannot be alleged to be false" (Opp. at 22), but Plaintiff similarly challenges Stamps' quantitatively accurate results. *Id*.; *see also In re Sanofi Sec. Litig*., 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2018).

Plaintiff's final argument, that Stamps had to disclose its alleged "abuse" of the reseller program because it put the source of its financial success at issue, misunderstands the law. First, the Opposition admits that Stamps did not violate any statute, regulation, or contract. *See* Opp. at 22. Plaintiff cites six paragraphs of the Complaint that, Plaintiff argues, demonstrate that Stamps put the source of its revenue at issue, but all Stamps stated in these paragraphs was that its shipping business was strong. Opp. at 21 (citing ¶¶ 72, 76, 78, 81, 87, 90). This is nothing more than a disclosure "with more fanfare" of Stamps' financial results, which does not become "misleading" even if the "strength" was based on wrongful conduct. *See, e,g.*, *Sanofi*, 155 F. Supp. 3d at 404; *Galati v. Commerce Bancorp, Inc*., 220 F. App'x 97, 102 (3d Cir. 2007).[7]

E.    **The Reform Act's Safe Harbor Applies to Stamps' Forward-Looking Statements**

The Reform Act's safe harbor for forward-looking statements likewise bars any conceivable claim based on Stamps' hopes for a continued partnership[8] with the USPS (¶¶ 89-92) and its future financial results (¶¶ 66, 72, 76, 78, 81).

---

[7]    Plaintiff cites *Evanston Police Pension Fund v. McKesson Corp*., 2019 WL 5587311, at *10 (N.D. Cal. Oct. 30, 2019) as support for its theory. Stamps' statements, however, are more similar to McKesson's "general discussion of its growth" that the court held were not actionable for failing to disclose antitrust violations than to the specific attribution of revenue growth to "drug . . . price increases" which the court held were actionable. *Id*.; *see also Teamsters Loyal 456 Pension Fund v. Universal Health Services*, 396 F. Supp. 3d 413, 458 (E.D. Pa. 2019) ("not every statement about the source of a company's success triggers the duty to disclose").

[8]    Plaintiff fails to identify any misstatement of historical fact whatsoever with respect to Stamps' statements about its future partnership with the USPS.

14

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Plaintiff asserts that the safe harbor is inapplicable because Stamps' historical results are a "materially false or misleading statement about current or past facts." Opp. at 24.  But Plaintiff fails to explain how Stamps' historical results are false (*see supra* at I.D); it is the then-unmaterialized omission (that Stamps' revenue would not continue to grow at the same rate in the future), *not* the financial results themselves, which Plaintiff challenges.  *See In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004) (a present-tense statement may qualify as forward-looking "if the truth or falsity of the statement cannot be discerned until some point in time after the statement is made"); *see also Zee v. Green Dot Corp.*, 2013 WL 12133841, at *7 (C.D. Cal. May 2, 2013) ("'present tense statement[s]' and '[h]istorical statements' are forward-looking where they are 'factors underlying a projection or economic forecast,' and the Complaint is effectively challenging the allegedly misleading guidance issued by Defendants" (citation omitted)).

Plaintiff also contends that Stamps' cautionary statements are inadequate to trigger the safe harbor because the warning statements used conditional language such as "could" or "if."  Opp. at 25.  Courts have long recognized, however, that risk warnings that use conditional language are sufficient to invoke the safe harbor.  *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 930-31 (N.D. Cal. 2017); *see also Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. The Clorox Company*, 353 F.3d 1125, 1133 (9th Cir. 2004).  Although Plaintiff argues in the Opposition that the conditions to which Stamps' referred in conditional terms had "already occurred" at the start of the Class Period, Plaintiff fails to cite a single allegation in the Complaint supporting this argument.  To the contrary, the Complaint fails to allege that the USPS took *any* action adverse to Stamps or even the resellers with whom Stamps had contracts during the putative class period.  *See* Opp. at 22.  Because Plaintiff does not otherwise dispute the adequacy of Stamps' risk warnings, this is standing alone grounds for dismissal.

## II.    PLAINTIFF FAILS TO PLEAD SCIENTER

At a minimum, pleading scienter requires the allegation of specific facts creating a strong inference of "some degree of intentional or conscious misconduct" by Defendants with respect to the public statements.   Mot. at 28; *Silicon Graphics*, 183 F.3d at 977.  For statements that are forward-looking or opinions, the scienter requirement is even greater, and requires, respectively, specific allegations of actual knowledge of falsity or that the speaker did not actually believe the expressed opinions.  Mot. at 28 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 856 F.3d 605, 616 (9th Cir. 2017)).  That a defendant could have discovered or "should have known" of misconduct "is not sufficient to meet the stringent scienter pleading requirements of the PSLRA."  *Glazer Capital Mgmt. LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008).

As explained in the Motion, Plaintiff has failed to meet this standard. Defendants' stock sales were not unusual; the former employee allegations are unreliable and fail to meet the specificity requirements of the Reform Act; Plaintiff cannot rely upon disfavored methods of pleading scienter, such as the core operations inference; there was nothing "abrupt" about Huebner's retirement after twenty years as an executive at Stamps; and the facts undermining scienter clearly outweigh any effort to establish intentional misconduct.  Mot. at 29-36.  Plaintiff's Opposition entirely fails to address the facts and inferences undermining scienter and simply restates and stretches the same flawed scienter allegations that the Motion explained were inadequate.  This is a separate basis for dismissal.

### A.    Defendants' Stock Sales Do Not Support an Inference of Scienter

The Opposition argues that Defendants' stock sales are unusual and suspicious, because: (1) McBride, Huebner, and Carberry "sold over 302,000 of their Stamps shares (or 58%, 83%, and 47%, respectively)" during the class period; and (2) the sales were "predominantly made between August 2017 and June 2018, just as President Trump took office and subsequently announced his intent to eliminate

16

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

business practices detrimental to the USPS."  Opp. at. 29-32.  But stock sales are only unusual and suspicious if they are "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from the undisclosed inside information."  *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).[9]

Here, while Defendants sold 302,351 shares during the two-year class period, Huebner and McBride alone sold 240,454 shares (or about 80% of the class period sales) in the two-years before the class period.  At the individual level, Huebner sold nearly three times as many shares before the class period than during it (155,454 v. 52,183).  Mot. at 31; ¶¶ 98-99.  Plaintiff has pled no trading history for Carberry, which precludes any claim that his stock sales were unusual or suspicious even if his trading history is not available.  Mot. at 31 (citing *Zucco*, 552 F.3d at 1005).  And McBride sold 25.9% of his holdings before the class period in just over a 40 day period.  ¶ 99; Ex. 8, at 1-4.  Compared to this, McBride's sales of about 45% of his stock and options over the two-year class period are not unusual or suspicious.[10]  Ex. 5, at 3-5.  Plaintiff also fails to address the fact that all of the Defendants' stock sales occurred shortly after they received new options grants.  Mot. at 31.

Nor does Plaintiff's Opposition provide any support for the allegation that the timing of Defendants' stock sales was suspicious.  As the Motion highlights, Plaintiff

---

[9]  Plaintiff's cites for the proposition that Defendants' sales percentages alone create an inference of scienter (Opp. at 30) actually underscore this point.  *See Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) (defendants "traded their stock in large amounts at sensitive times," with one selling "almost six times more stock than he had during the twelve months preceding the class period"); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *14-15 (C.D. Cal. July 1, 2008) (defendants had not sold any stock in prior four years and sold around the time the alleged scheme ended and the announcement of negative news); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1168 (C.D. Cal. 2003) (sales were timed to coincide with defendants' alleged misstatements); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *19 (N.D. Cal. Nov. 27, 2018) (sales timed to coincide with positive announcements and were of three times as many shares as pre-class period sales).

[10]  The Complaint does not provide McBride's total holdings for the class period or the source for the allegation that McBride sold 58.2% of his holdings during the class period.  ¶ 98.

17

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

alleges that the corrective disclosures and supposedly related stock drops did not occur until February and May 2019, yet not one of the Defendants sold any stock after March 9, 2018 – almost an entire year earlier. Mot. at 29; ¶ 98; *Comm's Workers of America Plan for Emps.' Pension and Death Benefits v. CSK Auto Corp.*, 2007 WL 951968, at *7 (D. Ariz. Mar. 28, 2007) (timing of stock sales not suspicious where defendants did not sell in the five weeks prior to the negative disclosure) (citing *In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031, 1040 (N.D. Cal. 2000); *City of Taylor Gen. Emp. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 800 (S.D.N.Y. 2013) (stock sales not indicative of scienter where none of the defendants sold any stock in the final 100 days of the class period – the exact timing "when insiders would have 'rushed to cash out'"). Plaintiff's Opposition ignores this timing incongruity, arguing instead that the sales were suspicious because they were "predominantly" made between "August 2017 and June 2018, just after President Trump took office and subsequently announced his intent to eliminate business practices detrimental to the USPS." Opp. at 30. Plaintiff's use of this arbitrary nearly year-long period underscores why courts find long class periods to be inherently suspect (*see* Mot. at 29 (citing cases)) and confirms Plaintiff's inability to tie any of the stock sales to actual events. President Trump took office in January 2017. The Task Force was not announced until April 2018. ¶ 63. Carberry sold in October 2017, Huebner sold in early March 2018, and McBride sold in late November 2017 and early March 2018. ¶ 98. So Plaintiff's claim here is that Defendants were so concerned about President Trump's impact on Stamps' relationship with the USPS that they waited at least nine months after his inauguration to sell stock, and then, once President Trump actually announced the USPS Task Force in April 2018, they were so concerned that they did not sell any stock through the end of the class period over a year later. This makes no sense.[11]

---

[11]   Sales at $200/share are not indicative of scienter because this is far below the class period high of $285.75 on June 18, 2018. *See City of Dearborn Heights*, 856

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Plaintiff's challenge to Stamps' stock repurchases (Opp. at 31-32) also does not work. As the Motion explained (Mot. at 31), Stamps repurchased fewer shares of stock in the months in which the insiders sold than in the months when insiders did not sell, which is the opposite of what one would find had the purpose of the repurchases been to inflate Stamps' share price so the insiders could sell at a premium, as Plaintiff claims. Opp. at 31-32. Also, had the repurchases been undertaken for some fraudulent reason, they should have only begun around the start of the class period. In actuality, the repurchases were a continuation of an ongoing program that pre-dated the class period by many years.[12] *See* ¶ 102; Ex. 12, at 5. Plaintiff also cannot allege that the repurchases inflated Stamps' stock price because it has failed to compare the amount of the repurchases with Stamps' trading volume. As discussed in the Motion and ignored by Plaintiff, the repurchases actually undermine any claim of scienter. Mot. at 31.

Having failed to plead that Defendants' stock sales were unusual or suspicious, Plaintiff improperly attempts to add stock sales of certain non-defendant "insiders." Opp. at 31. Courts within the Ninth Circuit have repeatedly rejected this tactic, describing such sales as "irrelevant" and even "misleading." Mot. at 30 (citing cases); *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *17 n.5 (N.D. Cal. Mar. 24, 2014); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1082 n.22 (N.D. Cal. 2001). Plaintiff's reliance on *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1224 (1st Cir. 1996) (Opp. at 31), an out of circuit case is,

---

F.3d at 622 (stock sales at $25.21 and $26.26 per share not suggestive of scienter where stock price reached a class period high of $39.17); Ex. 34, at 9.

[12] *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) (cited in Opp. at 32), is inapposite. The court was troubled by the fact that while stock repurchases, like Stamps', are normally funded with cash on hand, Countrywide took the unusual step of raising capital for this purpose. Countrywide also had no history of stock repurchases and the company repurchased $2.4 billion in stock in two quarters during which defendants sold around $150 million in stock – not the situation here. *Id.* at 1187-88.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

therefore, misguided.[13]   In any event, Plaintiff has failed to show that the non-defendants' sales are themselves suspicious for the reasons explained in the Motion.

### B. Plaintiff's Reliance on Anecdotal Statements By Anonymous Former Stamps Employees Fails

The only basis Plaintiff alleges to show that Defendants even could have been aware that the USPS was allegedly displeased with its use of the reseller discounts consists of a few anecdotes from low-level Stamps employees supposedly relaying negative feedback from a few low-level "USPS teams and District Managers." Opp. at 33-34.   As the Motion showed, however, the lack of any detail, let alone specificity, concerning when the complaints were made or how and when they were brought to Defendants' attention does not meet the Reform Act's heightened particularity requirements.   Mot. at 35-36.   The Opposition simply asserts that they pass muster, ***without citing a single case*** to support the adequacy of these non-particularized allegations.   Opp. at 33-34.

Even putting aside the particularity issues, the limited reports from "certain" individuals suggest that such views were not widespread or even common among USPS employees, let alone USPS's senior management and decision-makers.   Mot. at 21.[14]   Nor does the bald allegation that a Stamps employee raised the complaint with his "superior[]" or that Stamps' National Sales Manager was informed at some point, show the Defendants were aware of the alleged complaints.   *Veal v. LendingClub Corp.*, 2019 WL 5698072, at *19 (N.D. Cal. Nov. 4, 2019) (scienter cannot be inferred from CW allegations "lumping 'management' and 'executives'

---

[13]   Plaintiff also wrongly argues (Opp. at 32) that Rule 10b5-1 trading plans cannot be considered on a motion to dismiss.  The cases Plaintiff cites involve allegations concerning plans that were entered into during the class period, went through "unusual" modifications, or where defendants sold virtually all of their stock at all-time highs.  No such allegations exist here.  Mot. at 30 (citing cases).

[14]   The USPS has 74 District Managers.  *See* https://about.usps.com/strategic-planning/cs09/CSPO_09_078.htm.

20

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

together").[15]  None of the former employees are alleged to have had any direct contact with any of the Defendants about any topic, let alone the subject matter of the Complaint.  *Id.* at \*18 (rejecting CW allegations as a basis for scienter where "[n]one of the CWs had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into the Defendants' state of mind") (citing *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 (9th Cir. 2019)); *Bao v. Solarcity Corp.*, 2016 WL 54133, at \*6 (N.D. Cal. Jan. 5, 2016) (same).  Even if the alleged feedback had been directly reported to Defendants, Plaintiff does not explain why Defendants would infer from low-level reports that the reseller program would end or that the USPS would sever its relationship with Stamps (neither of which has ever happened), either from the allegations alone or in light of the repeated public comments during the Class Period by high-level PRC and USPS executives concerning the positive relationship between Stamps and the USPS.  Mot. at 35.

### C.    Plaintiff Cannot Rely Upon Disfavored Scienter Doctrines

Having failed to provide any specific scienter allegations, Plaintiff trots out a series of unsubstantiated theories through which it attempts to subvert the particularity requirements of the Reform Act.  Opp. at 27-29, 34-36.  First, citing to ¶¶ 61, 68, 74, 89, 92, 104, 106-08, Plaintiff argues that scienter can be inferred based on "specific admissions from top executives that they are involved in every detail of the company" and "had access to information contradicting their public statements." Opp. at 27 (quoting *Daou*, 411 F.3d at 1022).  None of these paragraphs identify any specific admissions of pervasive involvement in "every detail" of Stamps'

---

15    Plaintiff's indication that Ms. Booth "clearly can be characterized as a senior executive at Stamps" seems to be an effort to rely on a theory of "collective scienter." Opp. at 34.  Courts in this circuit require much more to find scienter on behalf of the corporation based on information allegedly reported to a non-defendant, non-speaker where falsity has not been alleged (let alone obvious).  *See, e.g.*, *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1032-33 (S.D. Cal. 2014); *Prodanova v. H.C. Wainwright & Co., LLC*, 2019 WL 4143301, at \*11 (C.D. Cal. July 2, 2019).

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

operations. They merely reflect that Stamps executives maintained high-level contacts with the USPS and had formulated opinions concerning the state of the Stamps-USPS relationship and ongoing contract negotiations based upon past experience. This is not enough under Ninth Circuit law. For example, in *Daou*, a strong inference of scienter was found only upon specific allegations that defendants "personally directed" the company's recognition of revenue, financial reporting and public statements, and personally implemented a revenue recognition system that was not in compliance with GAAP. 411 F.3d at 1023.[16] No such specific admissions of direct involvement are alleged here. Nor, as discussed above, does Plaintiff explain what specific information Defendants possessed that contradicted their statements or that Stamps violated any law or breached any contract.

Second, Plaintiff's argument that the core operations doctrine applies is similarly flawed and based solely on hindsight. Mot. at 32-33; Opp. at 32-33. Plaintiff claims that Defendants must have been aware that the relationship with its "largest client" was frayed. Opp. at 32-33. As discussed above, however, the Opposition does not provide any basis for the assertion that use of the reseller discounts damaged the Stamps-USPS relationship, that Defendants knew or acted with extreme recklessness in not knowing this, or that Defendants admitted to detailed involvement in any relevant corporate minutia. Under such circumstances, no inference of scienter can be drawn from the core operations doctrine. *See Intuitive Surgical*, 759 F.3d at 1062 (proof under the core operations doctrine "is not easy," and requires "either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data

---

[16] The other decisions Plaintiff cites do not apply because they involved specific events that had already transpired at the defendant corporation, *not* alleged criticisms by low-level employees at a completely different company. *See* Opp. at 32-33. Plaintiff's related argument that Defendants' exculpatory statements are indicative of scienter (Opp. at 34-36) is similarly flawed because McBride never suggested that he was aware of the low-level complaints concerning the reseller discounts.

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

22

monitoring, . . . or witness accounts demonstrating that executives had actual involvement in creating false reports").

Lastly, Plaintiff's claim that Huebner's retirement in 2019 is suspicious because Huebner "had just been promoted to President of Stamps in August 2017" is disingenuous. Opp. at 36. In actuality, Huebner had served as co-President of Stamps since early 2012 and was elevated to President in 2017. Ex. 14, at 5. There was nothing "abrupt" about his retirement. Opp. at 36. Moreover, the mere concurrence of a retirement with a corrective disclosure cannot, on its own, create an inference of scienter. *See* Mot. at 33 (citing *Zucco*, 552 F.3d at 1002). A plaintiff must allege that the wrongdoing in question caused the retirement (*see id.*), which Plaintiff has failed to do.

### D.    Plaintiff Fails to Plead a Holistic Inference of Scienter

For all of the reasons discussed above and in the Motion, Plaintiff has failed to plead a holistic strong inference of scienter. A far more compelling inference here is that Defendants believed that the reseller discounts were proper (indeed, the USPS publicly supported Stamps' practices and has continued the program), the longstanding relationship with the USPS was in good shape (it continues to this day), and based upon past experience with the USPS, Stamps expected the renegotiations to be successful, but the parties were unexpectedly unable to reach an agreement.

## III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

The Opposition does not respond to the loss causation deficiencies identified in Defendants' Motion. Plaintiff now concedes that the February 21 and May 8, 2019 announcements did not "correct" any prior misstatements or "reveal" any fraud regarding the USPS reseller program. *See* Opp. at 38, 39 (admitting that the "details of the fraud were *not* disclosed to investors" in either announcement (emphasis added)). Nor can Plaintiff identify a single corrective disclosure, at any time, which actually revealed Stamps was allegedly "abusing" the reseller program.

Plaintiff instead argues that, under *Mineworkers' Pension Scheme v. First*

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

*Solar Inc.*, 881 F.3d 750 (9th Cir. 2018), it does not need to demonstrate the announcements "revealed" the alleged fraud but instead may rely solely on allegations that the stock price reacted negatively when Stamps announced its 2019 guidance. Opp. at 37-38. But the Ninth Circuit has expressly rejected that approach where – as here – "plaintiffs plead a causation theory based on market revelation of the fraud." *Rok v. Identiv, Inc.*, 2018 WL 807147, at *8 (N.D. Cal. Feb. 9, 2018), *aff'd*, 716 F. App'x 663 (9th Cir. 2018) (since plaintiff "pled a theory of loss causation based on market revelation of the fraud . . . [t]he Court's analysis [is] consistent with, and is unchanged by, *Mineworkers*");[17] *see also Eng v. Edison Int'l*, 2018 WL 1367419, at *2 (S.D. Cal. Mar. 16, 2018) ("because Plaintiff himself advanced" a market revelation theory, under *Mineworkers*, "the Court's analysis was appropriate"). Thus, in *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008), the Ninth Circuit held that "[s]o long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud. . . . Loss causation requires more."

On **February 21, 2019**, Stamps announced the discontinuation of its package business incentive agreement with the USPS and issued 2019 guidance that was lower than what analysts expected. Plaintiff does not dispute that Stamps ***expressly disclosed*** to the market that discontinuation of the package business incentive agreement had nothing to do with the USPS reseller program. *See* Ex. 15, at 15

---

[17] Plaintiff's loss causation allegations are identical to the "market revelation" allegations in *Rok*. *Compare Rok*, 2018 WL 807147 at *6, 8 ("The price of those securities declined significantly when information disclosed to the market for the first time corrected those material misrepresentations and omissions"; "decline in the value of Identiv securities when the truth was revealed"), *with* ¶ 121 ("As the truth about defendants' prior misrepresentations and fraudulent conduct reached the market, it caused Stamps' stock price to fall precipitously"), ¶ 130 ("the subsequent significant decline in value of Stamps stock when defendants' prior misrepresentations and other fraudulent conduct were revealed").

24

(disclosing that Stamps' revenue sharing agreements with the resellers would be unchanged). Standing alone, this defeats any argument that the February 21 announcement was a corrective disclosure. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("[T]he market must learn of and react to [the] particular practices" that "plaintiff contends are fraudulent.").

On **May 8, 2019**, Stamps announced it had become aware of "potential" changes to the USPS's agreements with the third-party resellers and further reduced its FY19 guidance. ¶ 127. Again, Stamps did not disclose that these potential changes were in any way related to alleged improper conduct by Stamps. *See* Ex. 16, at 3 (reducing guidance because Stamps was "one of the 125 organizations that ha[s] a revenue share arrangement with the resellers"). Although Plaintiff attempts to distinguish Defendants' analogy to *Loos* by arguing that "disclosure of an EPS reduction . . . is sufficient" (Opp. at 39), *Mineworkers* did not jettison the requirement that the fraud eventually must be disclosed to the market – which Plaintiff here does not allege. 881 F.3d at 754 ("even if the market was unaware *at the time* that fraud had concealed the miss . . . [f]raud simply causes a *delay* in the revelation of those facts" (emphasis added)). On the contrary, Stamps announced on August 7, 2019 that the "potential" changes to the reseller program had not happened and the stock price rebounded. *See* Ex. 17, at 3; Ex. 34, at 1.[18] Consequently, Plaintiff fails to plead loss causation as to either disclosure.

## IV.   PLAINTIFF'S SECTION 20(A) AND 20A CLAIMS FAIL

Plaintiff's Section 20(a) and 20A claims should be dismissed for the same reasons as its Section 10(b) claim.

---

[18]   The contrast between Plaintiff's citation to *Mineworkers*, and the allegations in the Complaint, only highlight its deficiencies. In *Mineworkers*, the plaintiffs alleged that the company had concealed certain design defects, ***which the company later acknowledged in a corrective disclosure***. *See* 881 F.3d at 752. No such subsequent disclosure exists here.

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Dated:  December 9, 2019

KATTEN MUCHIN ROSENMAN LLP

By:   */s/ Richard H. Zelichov*

Richard H. Zelichov
richard.zelichov@kattenlaw.com
Christina L. Costley
christina.costley@kattenlaw.com
Paul S. Yong
paul.yong@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471
*Attorneys for Stamps.com Inc., Kenneth McBride, Kyle Huebner, and Jeff Carberry*

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

26