ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH (116086)
JASON A. FORGE (181542)
ERIC I. NIEHAUS (239023)
HILLARY B. STAKEM (286152)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
jforge@rgrdlaw.com
eniehaus@rgrdlaw.com
hstakem@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> STAMPS.COM, INC., et al., <br><br> Defendants. | Case No. 2:19-cv-01828-MWF-SK <br><br> <u>CLASS ACTION</u> <br><br> RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER RE: DEFENDANTS' MOTION TO DISMISS <br><br> DATE: July 20, 2020 <br> TIME: 10:00 a.m. <br> CTRM: 5A <br> JUDGE: Hon. Michael W. Fitzgerald |

4841-9820-5633.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................ 2

   A.    Defendants Misapprehend the Nature of a Scheme to Defraud ........... 2

   B.    Defendants' Scheme Plainly Encompasses the Statements
         Defendants Demand the Court Reconsider ........................................... 5

III.  CONCLUSION ......................................................................................... 9

4841-9820-5633.v1

## I.     INTRODUCTION

The machinations underlying Defendants' scheme to delay this litigation rival those of their scheme to defraud investors.  Beginning with their failed motion to dismiss followed by their failed request to bifurcate discovery and their failed proposed litigation schedule, Defendants are using every trick in the book to avoid the merits of this case.  For every step forward the Court orders, Defendants do nothing for months and then try to send the litigation two steps backward.  Over five months after the Court denied their motion to dismiss, they are back with a so-called motion for clarification that is nothing more than an untimely (and bloated) motion for reconsideration.  Nearly two months after the Court denied their fully briefed request to bifurcate discovery (including a "Supplemental Statement"), Defendants are still withholding what they concede are discoverable merits documents.  And nearly two months after the Court denied their arguments for a prolonged litigation schedule, Defendants are demanding an even slower schedule than what the Court rejected, including a nearly four-month delay of their document production (Plaintiff has completed its document production).

Defendants' refusal to engage in good-faith discovery and attempt to prolong the Court's pretrial schedule are the subjects of separate filings.  This memorandum addresses Defendants' attempt to rewrite the Court's January 17, 2020 Order (the "Order") denying their motion to dismiss.  Defendants' dissatisfaction with the Court's Order does not obscure its unambiguous holding that Plaintiff sufficiently alleged a scheme to defraud investors through misleading statements about the strength of Defendants' partnership with the USPS and the USPS's approval of Defendants' use of its reseller program.  ECF No. 89 at 1.  It does not take a new paint-by-numbers' order to understand what this means in terms of discovery, expert testimony, dispositive motions, and relevant statements.  Accordingly, Plaintiff respectfully requests that the Court deny Defendants' so-called motion for clarification.

- 1 -

4841-9820-5633.v1

## II.   ARGUMENT

One of the clearest tells that Defendants[1] are trying to delay everything rather than clarify anything is their motion's morbid obesity.  How can anyone say with a straight face that it takes 473 pages of briefing and exhibits to "clarify" whether six paragraphs of Plaintiff's complaint relate to the fraud scheme this Court's 33-page Order sustained?  As upheld, Defendants' scheme is quite simple:  They conveyed the misleading impression "that Stamps had a strong relationship with USPS and that USPS fully approved Stamps' use of the [USPS] reseller program," when in reality "USPS as a whole was unhappy with Stamps' business practices and . . . was working on stopping Stamps from continuing with its reseller program."  ECF No. 89 at 1, 24.  With the Court having confirmed the clear framework of Defendants' scheme, it is easy to see that each paragraph Defendants' motion identifies relates to this scheme.

### A.   Defendants Misapprehend the Nature of a Scheme to Defraud

The Court does not owe Defendants any clarification of its Order denying their motion to dismiss and confirming the scope of their alleged scheme to defraud, but Defendants' motion betrays an obscured view of such schemes in general and how they are proved.  This misperception is manifest throughout their motion, most prominently through multiple references to "which statements remain in the case." ECF No. 111 at 5, 6, 7.

Securities and Exchange Commission Rule 10b-5 makes it unlawful:

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact . . . or

---

[1]   The "Defendants" are Stamps.com, Inc. ("Stamps" or the "Company"), Kenneth McBride, Kyle Huebner and Jeff Carberry.  All "¶" and "¶¶" refer to the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 71). Citations are omitted and emphasis is added unless otherwise noted.

- 2 -

4841-9820-5633.v1

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit . . . in connection with the purchase or sale of any security."

17 C.F.R. §240.10b-5.  Plaintiff's complaint charges all three subsections.  ¶145.

Consistent with the plain language of this regulation, a scheme to defraud extends beyond isolated misleading statements.  As the Supreme Court explained last year, "[t]hese provisions capture a wide range of conduct."  *Lorenzo v. Sec. & Exch. Comm'n*, __ U.S. __, 139 S. Ct. 1094, 1101 (2019).  For example, "[w]hat might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation."  *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989).  Likewise, lulling communications are a classic means of perpetuating a scheme to defraud by "reassur[ing] the victim that all is well, discouraging him from investigating and uncovering the fraud."  *United States v. Jones*, 712 F.2d 1316, 1321 (9th Cir. 1983).  Here, when the USPS's ever-growing discontent finally led it to end their partnership with Stamps, Defendants used a lulling communication to try to "reassure[ investors] that all is well, discouraging [the]m from investigating and uncovering the fraud" by spinning USPS's termination of the partnership into the following:  "we've decided to discontinue our shipping partnership with the USPS so that we can fully embrace partnerships with other carriers who we think will be well-positioned to win in the shipping business in the next five years."  ¶94.[2]  *See also* ECF No. 89 at 23 ("If the USPS had indicated its unhappiness during the negotiations process, and ultimately decided to terminate the relationship, [Defendants'] statements otherwise would be false and would further support an inference of scienter").

---

[2]    *See* Maggie Fitzgerald, *Stamps.com crashes nearly 50% after discontinuing partnership with USPS*, CNBC (Feb. 21, 2019), https://www.cnbc.com/2019/02/21/stampscom-crashes-nearly-50percent-after-discontinuing-partnership-with-usps.html.

- 3 -

4841-9820-5633.v1

Defendants' scienter is a critical element of the scheme that Plaintiff must prove, and the "context of [a defendant's] alleged misstatements is certainly relevant to the issue of scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 741 (9th Cir. 2008). Plaintiffs are even "entitled to test, through discovery, whether . . . statement[s] made prior to the Class Period – [were], in fact, misleading." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *7 n.16 (C.D. Cal. Mar. 12, 2012). Of course, circumstantial evidence is essential to establishing a defendant's state of mind. *See, e.g.*, *United States v. $1,002,327.00 in U.S. Currency seized from Fid. Inv. Account No. xxxxx9730*, 2015 WL 5098069, at *7 (D. Nev. Aug. 31, 2015) (absent defendant admissions, "the Government must prove scienter through circumstantial evidence"); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999) ("'unusual' or 'suspicious' stock sales by corporate insiders may constitute circumstantial evidence of scienter").

Likewise, the materiality element that Plaintiff must prove depends on the "total mix" of information available to investors, which necessarily includes all Defendants' statements related to the strength of their USPS partnership. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) ("to fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available").

Given this backdrop, which neither the Court nor Plaintiff should have to explain, it cannot be credibly questioned that everything Defendants said, and did not say,[3] when addressing Stamps' relationship with the USPS throughout the Class

---

[3] By its express terms, Section 10b-5 prohibits misleadingly incomplete statements. That is, schemes "to omit to state a material fact necessary in order to make the statements made . . . not misleading." 17 C.F.R. §240.10b-5(b). In other words, even an objectively true statement "may be misleading if it omits material information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008-09 (9th Cir. 2018); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (holding that an omission is actionably misleading when it "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists"). *See*

- 4 -

4841-9820-5633.v1

Period "remain[s] in the case." Certainly, as set forth below, each alleged statement Defendants demand the Court reconsider is clearly part of their overarching scheme to give investors the misleading impression "that Stamps had a strong relationship with USPS and that USPS fully approved Stamps' use of the [USPS] reseller program," when in reality "USPS as a whole was unhappy with Stamps' business practices and . . . was working on stopping Stamps from continuing with its reseller program." ECF No. 89 at 1, 24.

### B. Defendants' Scheme Plainly Encompasses the Statements Defendants Demand the Court Reconsider

Paragraph 69 alleges that, on May 3, 2017, in response to a question about its relationships with partners – with the USPS being the only mentioned partner – Defendant McBride represented, in part, "we don't really expect any material changes to any kind of the underlying economics or the revenue share agreements that we have." ¶69. McBride's statement to investors about no expected material changes to revenue sharing agreements with a partner such as the USPS is, at a minimum, inconsistent with his awareness (as alleged) that "USPS as a whole was unhappy with Stamps' business practices and . . . was working on stopping Stamps from continuing with its reseller program." ECF No. 89 at 1, 24. It is easy to see that McBride would have conveyed a significantly different message had he also mentioned this omitted information. Accordingly, the statement alleged in paragraph 69 relates to Defendants' scheme.

Paragraph 75 alleges that on August 2, 2017, Defendant Huebner represented the following about Stamps' relationship with the USPS:

> Yes, I would just say, I mean, we've been saying over the last year
> that it's a win-win partnership. And so the more successful we both are

*also* ECF No. 89 at 23 ("Because Defendants touted its strong relationship with USPS and USPS's approval of Stamps' business model, Stamps had a duty to disclose adverse information that cut against this positive information, including USPS's opposition to Stamps' reseller business practice and its efforts to prevent such practices from continuing.").

- 5 -

4841-9820-5633.v1

in helping the USPS compete, then I think that benefits both of us, and so I think it was really meant to highlight the win-win nature of the partnership and how both sides are succeeding.

¶75. The whole point of Defendants' scheme was to portray Stamps' relationship with the USPS as a "win-win partnership" when, in fact, they knew that the USPS viewed it as a "win-lose" partnership and was growing increasingly frustrated about being on the losing end. Perhaps Defendants will convince a jury that the USPS was just sick of winning. Perhaps a jury will conclude that it is hard to imagine a statement that more clearly and succinctly perpetuated Defendants' scheme than the one alleged in paragraph 75. Either way, there is no question that paragraph 75 "remain[s] in the case."

Much like paragraph 75, paragraph 80 alleges that on November 2, 2017, Defendant McBride made the following statement regarding the USPS: "As you know, we succeed when they succeed. So we were happy with the percentages we saw." ¶80. The "we succeed when they succeed" mantra was just a "win-win" remix and it perpetuated the scheme in the same manner because it concealed what was really a "we succeed when they fail" situation from the USPS's perspective. Again, this statement clearly advanced the scheme's overall objective of misleadingly portraying a partnership that derived strength from its mutual benefits, when in fact it was an ever-weakening partnership whose deterioration was due to the USPS's discontent with its one-sidedness.

Sticking with this same theme of their scheme, paragraph 86 alleges that on May 3, 2018, Defendant Huebner represented that,

> [W]e continue to focus on how to create value for the USPS, how to help them be successful in the e-commerce package market. And so to the extent that we are successful in creating value and helping the USPS be successful in that part of the market, then those create the type

- 6 -

4841-9820-5633.v1

of long-term partnership opportunities that we've seen over the past decade.

¶86.  Here, Defendant Heubner is again conveying to investors that the Stamps-USPS partnership was strong – so strong, due to the value that Stamps created for USPS, that it was the kind of partnership that could spawn other long-term partnership opportunities.  There is no question that such a statement fits squarely within Defendants' scheme, which is why Defendants do not even attempt to explain how it could possibly be reconciled with the true state of affairs:  "USPS as a whole was unhappy with Stamps' business practices and . . . was working on stopping Stamps from continuing with its reseller program."  ECF No. 89 at 1, 24.

Unsurprisingly, a few months later, on August 1, 2018, Defendant McBride was beating the same drum when responding to analyst questions about the USPS Task Force investigation:  "We don't know the specifics in the report.  But we do think that based on our conversations that the report will come out strongly in favor of the partnerships between the USPS and private industry like the partnerships we've had with the USPS."  ¶89.  There is no doubt that here McBride was conveying that the Stamps-USPS partnership was so strong and so beneficial for the USPS that the Task Force would not only support it but would come out "strongly in favor" of more of these partnerships.  Defendants do not even attempt to spin this statement as conveying anything other than this false impression, which directly contradicts McBride and the other Defendants' awareness that Stamps' USPS partnership was so weak that the USPS was determined not just to avoid replicating it but also to end it altogether.

Three months later, on October 31, 2018, McBride was right back at it with the following statements, among others, in response to more analyst questions about the impending Task Force investigation report:

- 7 -

We would further expect that any commentary on the report on postal partnerships would reflect the very positive effect of partnerships like ours have had on growth in the USPS' package volumes.

*        *        *

In general, we expect that updates to our agreements with the USPS will continue to reflect the critical role that we play in their e-commerce package business, including that we have the largest private sales force focused on driving USPS growth.

*        *        *

I think when we look at the various reports that are out there, the conversations we've had with folks that are working on these reports, the general view is the idea of USPS increasingly embracing partnerships like ours makes a ton of sense for them.

¶92.  Boasting about the "very positive effect of partnerships like ours," the "critical role that we play [with the USPS], "driving USPS growth," and "the idea of USPS increasingly embracing partnerships like ours makes a ton of sense for them" unmistakably conveys the notion of a strong partnership between Stamps and the USPS.  No one could rationally draw a different impression from these statements, which confirms that Defendants' feigned confusion is a contrived delay tactic.  That is true for all the statements Defendants demand the Court reconsider, the consistency of which is compelling evidence of Defendants' intent.  This was a scheme to cultivate a false impression of a strong partnership with the USPS that Defendants executed through many thematically similar statements made over the course of many months, not some sort of one- or two-off slip of the tongue.

The foregoing statements' obvious connection to Defendants' overarching scheme exposes the incredulity of Defendants' feigned need for clarification and their equally implausible assertions that such statements have any meaningful impact on their discovery obligations, the areas of relevant expert testimony, or the scope of any

- 8 -

4841-9820-5633.v1

potential dispositive motions. These statements are all wholly consistent with, and lie well within, the factual and legal landscape of the alleged scheme that the Court's Order sustained. So instead of substance, Defendants' motion just tosses in empty platitudes such as "the Court's clarification of the Order to specify the statements which remain in the case will simplify matters going forward" (ECF No. 111 at 7), as if they will trigger some sort of Pavlovian response and validate a motion that should never have been filed. No one who dumps 473 pages of briefing and exhibits into an argument about six statements is seeking to simplify anything.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court deny Defendants' motion in its entirety.

DATED: June 29, 2020                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH
JASON A. FORGE
ERIC I. NIEHAUS
HILLARY B. STAKEM
KEVIN S. SCIARANI

s/ Jason A. Forge
JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

- 9 -

4841-9820-5633.v1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 29, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Jason A. Forge
JASON A. FORGE

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  jforge@rgrdlaw.com

- 10 -

4841-9820-5633.v1

**Mailing Information for a Case 2:19-cv-01828-MWF-SK Matt Karinski v. Stamps.com, Inc. et al**

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christina Lucen Costley**
  christina.costley@kattenlaw.com,tamara.vazquez@katten.com,courtalertlax@katten.com

- **Jason A Forge**
  jforge@rgrdlaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com

- **John T Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,edewan@scott-scott.com,tlaughlin@scott-scott.com,aweas@scott-scott.com,efile@scott-scott.com

- **Adam C McCall**
  amccall@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw

- **Steven W Pepich**
  stevep@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Kevin S Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Hillary B Stakem**
  hstakem@rgrdlaw.com

- **Paul Satoshi Yong**
  paul.yong@kattenlaw.com,paula.phillips@katten.com,courtalertlax@katten.com,victoria.lippman@katten.com

- **Richard H Zelichov**
  richard.zelichov@katten.com,tamara.vazquez@katten.com,courtalertlax@katten.com,jonathan.rotenberg@katten.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

- 11 -