# EXHIBIT 9

**2029 Century Park East**
**Suite 2600**
**Los Angeles, CA  90067-3012**
**+1.310.788.4400 tel**
**katten.com**

**RICHARD H. ZELICHOV**
richard.zelichov@katten.com
+1.310.788.4680 direct
+1.310.712.8433 fax

June 9, 2020

*Via Email*

Eric I. Niehaus
Kevin Sciarani
Hillary Stakem
Robbins Geller Rudman & Dowd
655 West Broadway, Suite 1900
San Diego, CA 92101-8498

**Re:**   *Karinski v. Stamps.com, Inc.*, **No. 2:19-cv-01828-MWF-SK (C.D. Cal.)**

Dear Counsel:

We write in response to your letter dated June 3, 2020, concerning the ongoing meet and confer process relating to Defendants' response to Plaintiff's first set of discovery requests.  While Defendants disagree with Plaintiff on a number of issues, we appreciate that the parties have made progress.[1]

## A.   The Remaining Statements

The Court's Order dated January 17, 2020, is crystal clear.  The only statements that survived the motion to dismiss are those in which, according to the Court, Defendants "touted" Stamps's "strong relationship with USPS and USPS's approval of its reseller business model."  Order at 23.  This includes only some of the statements in paragraphs 68, 70, and 74 of the CAC.  Contrary to Plaintiff's claim, the statements in paragraphs 69, 75, 80, 86, 89, and 92 do not characterize the relationship; they merely acknowledge its existence.  This is a far cry from touting and clearly outside the scope of the Court's Order.  Your assertions concerning an ongoing duty to disclose is also inconsistent with the Court's Order and, frankly, the CAC.

---

[1] Defendants hereby: (1) reserve all rights to stand on the objections set forth in Defendants' objections and responses to Plaintiff's first set of requests for production of documents if Plaintiff does not accept this offer or if the disputes are ultimately brought to the Court for resolution; (2) reserve all rights to request that the Court bifurcate discovery and/or otherwise prioritize class certification discovery over merits discovery; and (3)  note that by making this proposal, they are not conceding that the terms and documents described below are relevant to the issues that remain in this case after the Court's Order

KATTEN MUCHIN ROSENMAN LLP

CENTURY CITY     CHARLOTTE     CHICAGO     DALLAS     HOUSTON     LOS ANGELES

NEW YORK     ORANGE COUNTY     SHANGHAI     WASHINGTON, DC

A limited liability partnership including professional corporations

LONDON: KATTEN MUCHIN ROSENMAN UK LLP

Exhibit 9
- 205 -

Eric I. Niehaus
June 9, 2020
Page 2

While acknowledging this disagreement, your letter downplays it as it relates to the discovery disputes between the parties, calling it "irrelevant," and claiming that "[e]ven under defendants' interpretation of the Court Order, materials from the Class Period are relevant in assessing falsity of the statements that remain at issue and whether they were made with the requisite intent." Niehaus Ltr. at 1.  This is flatly wrong and we do not really understand how Plaintiff can make such a claim.

Falsity is determined by whether a statement is false or misleading when made, not in hindsight. Similarly, scienter hinges on what the speaker knew when he made the statement at issue, not months or years later.  The statements in paragraphs 68, 70, and 74, were made on May 3, 2017 and August 2, 2017.  Therefore, Defendants believe that falsity and scienter hinge on events on or shortly prior to those dates, with appropriate and proportionate periods added on both sides to pick up documents from outside their immediate proximity.  We also recognize that plaintiff's remaining theory alleges that the "truth" was purportedly disclosed in February and May 2019 (though Defendants' disagree with this assertion).  In contrast, the introduction of paragraphs 80 (November 2, 2017), 86 (May 3, 2018), 89 (August 1, 2018), and 92 (October 31, 2018), would more than quintuple the relevant time period in question with respect to falsity and scienter.  It also significantly bears on proportionality.  What is proportional for pre and post statement context is obviously far narrower than what is proportional for the time period in which actionable statements were actually made.

### B.    Scope of Production

Relevance and proportionality also play a significant role in the parties' dispute concerning the scope of production.  Defendants have appropriately offered to produce documents related to the only claim that survived the motion to dismiss – that a few of Defendants' positive statements about its relationship with the USPS and the USPS's views concerning the reseller program were misleading for failing to disclose that the USPS was considering making changes to the reseller program.  Defendants' identified and agreed to produce documents in nine categories that more than covers anything relevant and proportional to the issues remaining in the case.  Your letter fails to articulate any rubric or guiding principle in response.  It just complains that Defendants' proposed categories are not broad enough because Plaintiff needs to "evaluat[e] the nature of the relationship between Stamps and the USPS by independently assessing Stamps' internal conduct with respect to its USPS relationship, the reseller program and the Package Business Incentive Agreement."  Reading between the lines, Defendants can only surmise that Plaintiff is demanding each and every document regarding those three very broad categories for the relevant time period regardless of whether they have any bearing on the Stamps-USPS relationship.  Plaintiff makes no attempt to link these categories to the claims remaining in the case or at limiting the scope of discovery, which is the definition of disproportionate.

Exhibit 9
- 206 -

Eric I. Niehaus
June 9, 2020
Page 3

### C.       Search Terms

We acknowledge Plaintiff's effort to modify the search strings to address the concerns expressed in Defendants' May 26, 2020 letter.  We also believe that the parties will be able to reach an agreement on search strings once there is an agreement or order with respect to custodians and the time period.  We have attempted to analyze some of the searches for complete mis-hits but do not want to spend too much time doing so without more certainty on the other aspects.  Some of our preliminary analysis indicates that terms like "end*" in String 49 are pulling in every notice to Endicia employees.  Similarly, that same string includes numerous non-responsive documents related to the end of employment of every person leaving Stamps and the end of anything at Stamps.  In String 69, the term "group*" is hitting on numerous documents about "user groups" and "customer groups" that have no relation at all to what we understand the concept behind the search to encompass.  In addition (and again just by way of example), the term "lead*" in multiple strings results in numerous mis-hits.  Again, we expect that the parties can agree on search strings once some of the other issues are resolved.

### D.       Relevant Time Period

Defendants believe that their prior offer on date ranges for the search terms was more than appropriate given the few remaining statements at issue.  Nevertheless, in an effort to close the gap between the parties, Defendants will revise its proposal to the following periods: (1) March 1, 2017 through August 31, 2017; and (2) June 1, 2018 through August 31, 2019.  This represents a significant move by Defendants and a commitment to provide documents from a period that, frankly, has no bearing on the elements that Plaintiff needs to prove for its case.

We appreciate that Plaintiff agreed to move the start date of its date range proposal from January 1, 2014 to February 1, 2016.  This, however, does not go far enough.  February 1, 2016 is not an appropriate start date.  It is 15 months before the start of the class period.  It is 15 months before the first misleading statement alleged in the complaint.  The statements still at issue concern the USPS-Stamps relationship in May and August 2017 and we simply do not see how documents from 2016 can be relevant to the state the USPS-Stamps relationship 15 months later.  The tens of thousands of additional documents that tacking on this unnecessary additional period will undoubtedly add is unjustified and disproportionate.

### E.       Custodians

Plaintiff's revised proposal still demands that Defendants search and produce documents for 35 persons, most of whom did not have regular (or even irregular) communications with the individual defendants or other Stamps executives.  Most of these persons also had no contact whatsoever with senior personnel at the USPS or even any personnel at the USPS with responsibility for USPS

Exhibit 9
- 207 -

Eric I. Niehaus
June 9, 2020
Page 4

policy or contractual relationships.[2] Most would not even have had contact with the resellers (even if such contact were somehow relevant to the claims remaining in the case). In addition, many of the proposed custodians that Plaintiff requests had left Stamps before this lawsuit was filed (or shortly thereafter) so that Stamps does not have access to their emails anymore. One of the proposed custodians did not even start at Stamps until April 2020. Also, Stamps's legal officers will have so many privileged communications that it is unduly burdensome and disproportionate to the needs of the case for them to be custodians.

Thus, in response, Defendants stand on their proposal to search for documents for the ten custodians identified in their May 26, 2020 letter: Nicholas Barranca, Sebastian Buerba, Candi Booth, Jeffrey Carberry, Kyle Huebner, Amine Khechfe, Kenneth McBride, Steven Rifai, Suzanne Park, and Melissa Crawford. These individuals constitute almost everybody who had any contact with senior officials at the USPS. These individuals would be involved in any non-trivial dispute between Stamps and the USPS. These individuals constitute the persons who would have been in contact with the resellers (again even if such contact were somehow relevant to the claims remaining in the case). However, Defendants are making this offer without prejudice to Plaintiff's right to request additional custodians at a later date, as well Defendants' right to challenge that request.

F.    **Plaintiff's Request for Additional Targeted Pulls**

In response to Plaintiff's requests for additional targeted pulls, Defendants state as follows:

1. **Documents from Stamps' Annual Sales Meetings**: Plaintiff has not articulated why these documents are relevant and, as a result, Defendants do not see a basis for this request. Defendants are willing to produce these documents to the extent that they discuss the topics set forth in our May 26, 2020 letter.

2. **ShippingEasy NSA, other subsidiary NSAs and modifications and amendments thereto**: Defendants will agree to produce these documents for the period at issue.

3. **Stamps's agreements with postage resellers**: Plaintiff has not articulated why these documents are relevant and, as a result, Defendants do not see a basis for this request. Furthermore, the financial terms of these agreements are summarized in the Board presentations that Stamps has already produced.

---

[2] Plaintiff identified a different group of 33 Stamps's current and former employees in its initial disclosures dated March 12, 2020 and yet a further different group of 47 Stamps's current and former employees in its discovery proposal on May 19, 2020.

Exhibit 9
- 208 -

Eric I. Niehaus
June 9, 2020
Page 5

4. **Stamps's agreements with the USPS**: This case involves, at most, one agreement between Stamps and the USPS – the 2017 PBIA which was signed on June 13, 2017 and discontinued on December 31, 2018. Plaintiff has not articulated why the other multitude of agreements between Stamps and the USPS, including Stamps' PC Postage license, are relevant. Furthermore, Stamps's status as an authorized PC Postage Provider is not set forth in an "agreement." Rather, it is reflected in the inclusion of Stamps.com as an Authorized PC Postage Provider in the USPS Domestic Mail Manual. Moreover, despite the complete speculation in one Capitol Forum report, Stamps's PC Postage license has never been at risk.

5. **Board minutes for the full relevant time period for document production as agreed by the parties or ordered by the Court**: Defendants will agree to produce these documents.

## G.   Proposal to Avoid Court Intervention

While Defendants believe that the offers set forth above and in our May 26, 2020 letter constitute more than a complete production for the lawsuit and the few statements that survived Defendants' motion to dismiss, Defendants will agree to produce documents for the full period from March 1, 2017 to August 31, 2019 provided that Plaintiff agree to the scope limits and custodians Defendants proposed in our letter dated May 26, 2020 as full and complete production for this lawsuit (subject to Plaintiff's right to request additional custodians at a later date, as well Defendants' right to challenge that request).

## H.   Amended Schedule

Lastly, the parties have had some brief conversations concerning the case schedule in light of the various external events that make litigating during this time period more time consuming. Plaintiff mentioned that it might need some additional time to file its motion for class certification and Defendants will definitely need more time to respond to Plaintiff's motion and for the collection and production of documents (and otherwise). To that end, Defendants propose the schedule below.

| Event | Current Deadlines | Proposed Dates (Defendants) |
|---|---|---|
| Answer | January 31, 2020 | January 31, 2020 |
| Discovery to commence | February 27, 2020 | February 27, 2020 |
| Rule 26 disclosures | March 12, 2020 | March 12, 2020 |

Exhibit 9
- 209 -

Eric I. Niehaus
June 9, 2020
Page 6

| Event | Current Deadlines | Proposed Dates (Defendants) |
|---|---|---|
| Lead Plaintiff to file class certification motion | June 29, 2020 | July 6, 2020 |
| Defendants to respond to Lead Plaintiff's class certification motion | August 10, 2020 | September 28, 2020 |
| Lead Plaintiff's reply in support of class certification motion | September 21, 2020 | November 9, 2020 |
| Deadline for completion of Defendants' document productions | August 28, 2020 | December 1, 2020 |
| Last Date to Hear Motion to Amend Pleadings/Add Parties | December 14, 2020 | January 3, 2021 |
| Non-Expert Discovery Cut-Off | January 19, 2021 | March 1, 2021 |
| Expert Disclosure (Initial) | February 16, 2021 | March 15, 2021 |
| Expert Disclosure (Rebuttal) | March 15, 2021 | May 14, 2021 |
| Expert Discovery Cut-Off | March 29, 2021 | July 1, 2021 |
| Dispositive motions and/or *Daubert* motions due | April 5, 2021 | July 15, 2021 |
| Responses to dispositive and/or *Daubert* motions due | May 17, 2021 | August 30, 2021 |
| Reply to dispositive and/or *Daubert* motions due | June 28, 2021 | October 5, 2021 |
| Last Date to *Hear* Motions | August 2, 2021 | November 6, 2021 |
| Last Date to Conduct Settlement Conference | August 16, 2021 | November 30, 2022 |

Exhibit 9
- 210 -

Eric I. Niehaus
June 9, 2020
Page 7

| Event | Current Deadlines | Proposed Dates (Defendants) |
|---|---|---|
| **For Jury Trial:**<br><br>File Memorandum of Contentions of Fact and Law, LR 16-4<br><br>File Exhibit and Witness Lists, LR 16-5.6<br><br>File Status Report Regarding Settlement<br><br>File Motions *in Limine* | September 27, 2021 | January 8, 2022 |
| **For Jury Trial:**<br><br>Lodge Pretrial Conference Order, LR 16-7<br><br>File Agreed Set of Jury Instructions and Verdict Forms<br><br>File Statement Regarding Disputed Instructions, Verdicts, etc.<br><br>File Oppositions to Motions *in Limine* | October 4, 2021 | January 15, 2022 |
| Final Pretrial Conference | October 18, 2021 at 10:00 a.m. | January 28, 2022 at 11 a.m. |
| Jury Trial | November 9, 2021 at 8:30 a.m. | February 22, 2022 at 8:30 a.m. |

We believe that Defendants' various proposals (and Plaintiff's acceptance of those proposals) constitute the best way forward for this litigation. Nevertheless, if Plaintiff insists on seeking Court intervention on these discovery disputes, Defendants reserve all rights to seek clarification

Exhibit 9
- 211 -

Eric I. Niehaus
June 9, 2020
Page 8


on the motion to dismiss order, bifurcation of discovery, and a protective order other limiting discovery in accordance with the views expressed above and Defendants' objections to Plaintiff's document requests.

Sincerely,

*/s/ Richard H. Zelichov*

Richard H. Zelichov

Exhibit 9
- 212 -