EXHIBIT 10

# Katten

**2029 Century Park East
Suite 2600
Los Angeles, CA  90067-3012
+1.310.788.4400 tel
katten.com**

**RICHARD H. ZELICHOV**
richard.zelichov@katten.com
+1.310.788.4680 direct
+1.310.712.8433 fax

May 26, 2020

*Via Email*

Eric I. Niehaus
Kevin Sciarani
Hillary Stakem
Robbins Geller Rudman & Dowd
655 West Broadway, Suite 1900
San Diego, CA 92101-8498

**Re:**    *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828-MWF-SK (C.D. Cal.)

Dear Counsel:

We write to continue the meet and confer process concerning defendants' responses to plaintiff's first set of requests for production of documents.  While we believe that the parties have had some productive discussions and appreciate the effort plaintiff put into the list of 92 search strings, as discussed below, several significant areas of dispute remain.  We are hopeful that these issues can be resolved so that Court intervention does not become necessary.

## A.    Only the May 3, 2017 and August 2, 2017 Statements Remain in the Case

Defendants firmly disagree with Plaintiff's stated position that the nine statements found in paragraphs 68-70, 74-75, 80, 86, 89 and 92 of the CAC remain in this case.  *See* Plaintiff's May 7, 2020 Letter at 5.  As set forth in Defendants' portion of the Joint Rule 26(f) Report and subsequent correspondence, the Court dismissed claims related to any statements alleged to be misleading in the Complaint except certain limited statements made on May 3 and August 2, 2017, set forth in Paragraphs 68, 70, and 74 of the CAC.  *See generally* Dkt. 89 (Order dated January 17, 2020 ("Order")).  These few statements discuss Stamps's "great" and "very successful partnership" with the USPS and Stamps's view that the USPS was "very happy with the relationship with Stamps.com" and with the USPS "business model" making use of resellers.  CAC ¶¶ 68, 70, and 74; Dkt. No. 100 at 7, 12-13; Defendants' Letter dated May 13, 2020 at 2-3.  The Court held that because these statements "touted" Stamps's "strong relationship with USPS and USPS's approval of its reseller business model, Stamps had a duty to disclose [allegedly] adverse information that cut against this positive information."  Order at 23.

The clear import of the Court's Order is that statements that merely reference the Stamps-USPS partnership but do not expressly tout it, triggered no such duty.  The statements made in the remaining paragraphs in Plaintiff's list, in particular paragraphs 80, 86, 89, and 92 do not tout

Exhibit 10
- 213 -

# Katten

Eric I. Niehaus
May 26, 2020
Page 2

Stamps's "positive relationship" with the USPS.  Accordingly, they are inactionable under the Court's Order.  This disagreement is not academic and has a significant impact on the time periods for which Defendants are willing to search for and produce documents and the issues remaining in the case.  Nonetheless, in the interest of compromise and to try avoid burdening the Court with a discovery dispute, Defendants make what we consider to be a generous proposal set forth below.[1]

**B.      Targeted Collections**

Despite the current disagreements between the parties, in a good faith effort to advance discovery even further, Defendants will agree to search and produce the following non-privileged documents to Plaintiff as targeted pulls:

    a.  Document retention policies in effect from May 3, 2017 to May 31, 2019.  (RFP No. 1)

    b.  Organizational charts identifying direct reports to McBride, Huebner, Carberry, Booth, and Khechfe.  (RFP No. 2)

    c.  Identities of secretaries/assistants for the individual defendants.  (RFP No. 4)

    d.  Package Business Incentive Agreement between Stamps and the USPS, dated June 13, 2017.  (RFP No. 24)

    e.  Board of Directors minutes and presentations from March 1, 2017 to August, 31, 2017 and December 1, 2018 to May 31, 2019.  (RFP No. 26)

    f.  Stamps' insider trading, media, social media, code of business conduct and ethics, and corporate disclosure policies in effect from May 3, 2017 to May 31, 2019.  (RFP No. 35)

    g.  Compensation policies, terms, and agreements for the individual defendants in effect from May 3, 2017 to May 31, 2019.  (RFP No. 37)

    h.  Rule 10b5-1 plans for stock sales by the individual defendants in effect from May 3, 2017 to May 31, 2019.  (RFP No. 38)

---

[1] Defendants reserve all rights to stand on the objections set forth in Defendants' objections and responses to Plaintiff's first set of requests for production of documents if Plaintiff does not accept this offer or if the disputes are ultimately brought to the Court for resolution.  Defendants further note that by making this proposal, they are not conceding that the terms and documents described below are relevant to the issues that remain in this case after the Court's Order.

Exhibit 10
- 214 -

# Katten

Eric I. Niehaus
May 26, 2020
Page 3

    i.   Communications concerning the opening and closing of trading windows from May 3, 2017 to May 31, 2019.  (RFP No. 38)

    j.   Communications from the individual defendants, and responses thereto, concerning their transactions in Stamps stock between May 3, 2017 to May 31, 2019.  (RFP No. 38)

    k.   Documents and communications concerning defendant Huebner's resignation from Stamps from December 1, 2018 to February 21, 2019.  (RFP No. 40)

    l.   Indemnification agreements for the individual defendants in effect between May 3, 2017 to May 31, 2019.  (RFP No. 43)

## C.   Document Custodians

With respect to email searches, Defendants believe that the relevant custodians are the eight individuals identified in Defendants' Rule 26 Initial Disclosure.  These eight individuals are: (1) Nicholas Barranca, (2) Sebastian Buerba, (3) Candi Booth, (4) Jeffrey Carberry, (5) Kyle Huebner, (6) Amine Khechfe, (7) Kenneth McBride, and (8) Steven Rifai.  As a further accommodation to plaintiff, we will add Suzanne Park as a ninth custodian and Melissa Crawford as a tenth custodian. Ms. Park served as Stamps's Vice President, Finance and head of investor relations during the class period alleged in the Complaint.  Ms. Crawford had overall responsibility for existing account management during the class period alleged in the Complaint.  In all, these ten custodians encompass the senior executive team at Stamps with responsibility over the conduct of Stamps' business relevant to the allegations in the Complaint.

## D.   Search Terms for Electronic Documents

Stamps will run search terms 88, 90-92 from the document entitled Plaintiff's Proposed ESI Parameters sent to us on May 19, 2020 at 6:32 p.m. with respect to these custodians for the period from May 3, 2017 to May 31, 2019.  Stamps will produce those documents that hit on these search strings that discuss or reflect (1) dates when Stamps opened and closed trading windows between May 3, 2017 and May 31, 2019; (2) stock trades by the individual defendants between May 3, 2017 to May 31, 2019; and (3) Stamps' buyback of stock between May 3, 2017 and May 31, 2019.

Stamps will run search string 89 from the document entitled Plaintiff's Proposed ESI Parameters sent to us on May 19, 2020 at 6:32 p.m. with respect to these custodians for the period from December 1, 2018 to February 21, 2019.  Stamps will produce those documents that hit on this search string that discuss Mr. Huebner's retirement from Stamps.

Exhibit 10
- 215 -

# Katten

Eric I. Niehaus
May 26, 2020
Page 4

Stamps will run search strings 3-74, 76-77, 79-84, 86-87 from the document entitled Plaintiff's Proposed ESI Parameters sent to us on May 19, 2020 at 6:32 p.m. with respect to these custodians for the periods from March 1, 2017 to August 31, 2017 and December 1, 2018 to May 31, 2019. To the extent the targeted collections and other searches described above do not more specifically encompass a particular issue, Stamps will produce those documents that hit on these search terms that discuss (1) the USPS's views concerning its relationship with Stamps, (2) USPS's views concerning the reseller program and potential changes being made thereto, (3) USPS's views concerning Stamps's use of reseller rates for low-volume and/or existing USPS customers and potential changes or limits to such uses, (4) USPS's views concerning Express1's, Intuiship's, and Parcel Partners's use of reseller rates for low-volume and/or existing USPS customers; (5) changes and potential changes to any agreements being negotiated between Stamps and the USPS in these time periods, (6) Stamps's contributions to and the results of the task force that on the United States Postal System that ultimately issued a report entitled United States Postal Service: A Sustainable Path Forward in December 2018; (7) Stamps's contributions to and the results of any investigation by the USPS Office of the Inspector General about the PC Postage Industry or USPS reseller program; (8) Stamps's stock prices on May 4, 2017, August 3, 2017, February 22, 2019 and May 9, 2019; and (9) the text of Stamps' disclosures on May 3, 2017, August 2, 2017, February 21, 2019 and May 8, 2019.

Stamps is not agreeing to run searches 1, 2, 75, 78, and 85 from the document entitled Plaintiff's Proposed ESI Parameters sent to us on May 19, 2020 at 6:32 p.m. as the terms set forth in those searches are overbroad and to the extent possibly relevant to this litigation are otherwise encompassed in the other 87 searches which Defendants are agreeing to conduct. Please note that while Stamps agrees to run the 87 search strings discussed above in principle (and would run over 80 of them "as is" under the terms set forth in this letter), it must reserve its rights to modify them because, until the parties reach an agreement on custodians and the date range for the searches, Stamps cannot know the volume of documents that might need to be reviewed as a result of these search strings (nor know the volume of complete mis-hits generated).

The terms of this letter would set forth a full and complete response by Defendants to plaintiff's first request for production of documents.

Sincerely,

*/s/ Richard H. Zelichov*

Richard H. Zelichov

Exhibit 10
- 216 -