ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH (116086)
JASON A. FORGE (181542)
ERIC I. NIEHAUS (239023)
HILLARY B. STAKEM (286152)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
jforge@rgrdlaw.com
ericn@rgrdlaw.com
hstakem@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>STAMPS.COM, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:19-cv-01828-MWF-SK<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PURSUANT TO LOCAL RULE 37-2.3<br><br>[Discovery Document: Referred to Magistrate Judge Steve Kim]<br><br>DATE:　TBD<br>TIME:　TBD<br>CTRM:　540<br>JUDGE:　The Honorable Steve Kim |

Cases\4815-5413-2674.v1-7/15/20

# TABLE OF CONTENTS

**Page**

I.     Documents Concerning Stamps' Use of the Reseller Program and the Related Agreements Should Be Produced ........................................................ 1

II.    Lead Plaintiff's Proposed Time Period for Discovery Coincides with Relevant Events Alleged in the Complaint ....................................................... 5

     A.     Highly Relevant Materials Will Be Found Pre-Class Period .............. 5

     B.     By Definition, Relevant Documents Will Be Dated Throughout the Class Period ...................................................................................... 5

     C.     Post-Class Period Documents Are Relevant to Lead Plaintiff's Claims ................................................................................................... 7

III.   Defendants Should Not Be Granted Blanket Veto Rights over Custodians ................................................................................................... 8

IV.    Lead Plaintiff's Motion Solely Concerns Proportional Discovery ................. 9

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Gilpin v. McCormick*,
921 F.2d 928 (9th Cir. 1990) .................................................................................. 8

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ............................................................................................... 6

*In re Bridgestone Educ., Inc.*,
2014 WL 3867495 (S.D. Cal. Aug. 6, 2014) ....................................................... 2

*In re New Century*,
2009 WL 9568860 (C.D. Cal. July 8, 2009) ..................................................... 5, 6

*Moulton v. AmeriCredit Fin. Servs., Inc.*,
2005 WL 1522237 (N.D. Cal. June 28, 2005) ..................................................... 5

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942, 970 (N.D. Cal. 2014) .......................................................... 6

*Oakes v. Halvorsen Marine Ltd.*,
179 F.R.D. 281 (C.D. Cal. 1998) ........................................................................ 10

*Stewart Title Guar. Co. v. Credit Suisse*,
2015 WL 1481341 (D. Idaho Mar. 31, 2015) ...................................................... 8

*United States v. Bibo-Rodriguez*,
922 F.2d 1398 (9th Cir. 1991) ............................................................................. 7

*Washington v. Autozoner, Inc.*,
2009 WL 2914173 (D. Del. Feb. 6, 2009) ........................................................... 2

**STATUTES, RULES AND REGULATIONS**

Local Rules of the Central District of California
Rule 37-2.3 ........................................................................................................... 1

Federal Rules of Civil Procedure
Rule 26 .................................................................................................................. 9

Federal Rules of Evidence
Rule 404(b) ........................................................................................................ 7, 8

Cases\4815-5413-2674.v1-7/15/20

Pursuant to Local Rule 37-2.3 and the Court's July 2, 2020 Order (ECF No. 130), Lead Plaintiff[1] submits this supplemental memorandum in support of its motion to compel and in response to defendants' section of the Joint Stipulation that was filed in connection with this motion.

Judge Fitzgerald's July 14, 2020 order on defendants' motion to clarify resolves many of the issues raised in the Joint Stipulation in Lead Plaintiff's favor. The Court held that Lead Plaintiff had adequately alleged the statements in paragraphs 68, 69, 70, 74, 75, 89, and 92 of the Complaint were false and misleading. Ex. A at 5.[2] Because these statements are dated between May 2017 and October 2018, defendants' refusal to provide discovery for the period September 1, 2017 through May 1, 2018 must be rejected here. The Court further recognized that Lead Plaintiff is not, as defendants argue here, "foreclosed from" discovery into dismissed statements. Ex. A at 7.

## I.  Documents Concerning Stamps' Use of the Reseller Program and the Related Agreements Should Be Produced

Defendants argue that they "have **already agreed** to produce documents" relating to nine topics or categories of information that they proffered while disingenuously ignoring their stated intent to filter out of the documents returned by ESI search terms any document that does not reflect ***the "USPS's views concerning***" four of the nine topics on which they have agreed to produce documents. Joint Stip. at 46 (emphasis in original). The Complaint charges defendants with a scheme to defraud, and no Court has ever held that co-schemers' (*i.e.*, co-conspirators') internal discussions are not relevant to proving their intent, deceptiveness, etc. Indeed, such

[1]   Capitalized terms not defined herein have the meaning given to them in Lead Plaintiff's section of the Joint Stipulation Regarding Lead Plaintiff's Motion to Compel Discovery from Defendants (ECF No. 133) (the "Joint Stip."). Lead Plaintiff's Motion to Compel Discovery from Defendants (ECF No. 124) is herein defined as the "Motion."

[2]   All lettered exhibit references are to the Declaration of Eric I. Niehaus in Support of Lead Plaintiff's Supplemental Memorandum in Support of Its Motion to Compel Pursuant to Local Rule 37-2.3, filed concurrently herewith.

- 1 -

Cases\4815-5413-2674.v1-7/15/20

evidence is typically the most compelling, which explains why defendants are taking the unprecedented position that in a fraud, only the victims' perspective is relevant. Thus, if two Stamps employees exchanged emails discussing (or reflecting) how badly Stamps was taking advantage of the USPS, defendants would not produce such an email. This is obviously untenable. Internal records relating to Stamps' practices and misuse of the Reseller Program are critical to understanding the nature of Stamps' relationship with the USPS and to proving that Stamps was well aware that its reseller business model was not creating a "win-win partnership" with the USPS[3] – directly contrary to defendants' public representations to investors. Joint Stip. at 19-22; ECF No. 116 at 2-5; Ex. 2, ¶¶68, 74.[4]

The District Court has rejected defendants' arguments premised on dismissed claims. In its July 14, 2020 clarification order, the Court held "Plaintiff is not foreclosed from using the same set of [dismissed] statements to prove its argument that Stamps misrepresented that it had a strong relationship with the USPS or that the USPS was 'very happy' with Stamps' business practice." Ex. A at 7; *see also Washington v. Autozoner, Inc.*, 2009 WL 2914173, at *1 (D. Del. Feb. 6, 2009) ("the fact that some claims for relief have been dismissed does not diminish the relevance of the evidence vis-à-vis remaining claims"). For example, defendants falsely claim that the Court's dismissal of allegations that defendants failed to disclose its use of the Reseller Program renders the particulars of Stamps' use of the Reseller Program irrelevant to the surviving claims. Joint Stip. at 47. But unlike the guidance defendants cite from *In re Bridgestone Educ., Inc.*, 2014 WL 3867495, at *1 (S.D. Cal. Aug. 6, 2014), the discovery requested here does not "***only***" relate to dismissed claims. The same discovery is also relevant to assess the strength of the USPS

---

[3]    In its clarification order, the Court also confirmed that statements regarding a "win-win partnership" or "win-win model" are still actionable false or misleading statements. Ex. A at 7.

[4]    Unless otherwise stated, references to Exs. 1-3 are to the Declaration of Eric I. Niehaus in Support of Lead Plaintiff's Motion to Compel Discovery from defendants (ECF No. 125).

- 2 -

Cases\4815-5413-2674.v1-7/15/20

relationship, which concerns claims that were explicitly upheld by the Court. It is also relevant to defendants' awareness of their exploitation of the Reseller Program. For example, if one Stamps employee wrote to another that, "I can't believe we're getting away with this," that would clearly be probative as to whether defendants knew, or recklessly disregarded, the likelihood that the USPS was not "very happy" with their exploitation of the program. As such, defendants' assertion that the "manner" in which Stamps used the Reseller Program has no bearing on the USPS relationship does not withstand scrutiny. Joint Stip. at 47. Indeed, the Court itself specifically relied on allegations that Stamps manipulated the Reseller Program to infer that the USPS was unhappy with its partnership with Stamps. *See* Joint Stip. at 3 (citing Order (Ex. 1) at 23).

Defendants also put forth a strawman argument, erroneously contending that Lead Plaintiff demands production of all documents "merely touching" upon Stamps' use of the Reseller Program and so calls for every record relating to "Stamps's internal practices for offering customers reseller rates, internal discussions concerning Stamps offering reseller rates to these 60,000 customers, or discussion with these 60,000 customers concerning offering their accounts reseller rates." Joint Stip. at 47-48. This is not an honest argument, as Lead Plaintiff's requests do not seek such a wide universe of documents. Rather, the requests are focused on documents sufficient to allow Lead Plaintiff to understand the nature and practices surrounding Stamps' reseller business model – the very issue at the center of this case – and the requests are further cabined by the parties' agreement on search terms and near-agreement on custodians. Accordingly, any purported burden is minimal and will be resolved by the fact that there will be only a limited number of custodians, and the agreed-to search terms will return a finite universe of records from these individuals' files. Neither defendants nor Lead Plaintiff envisions that this limited set of custodians would ever result in the production of specific communications with, or daily records and invoices for, 60,000 individual Stamps customers.

- 3 -

Tellingly, defendants do not (and cannot) provide any factual support for their contention that application of agreed-upon search terms to 18 custodians would result in the production of individualized records and communications concerning each and every customer, or otherwise be disproportionate to a case with hundreds of millions of dollars at stake. These document requests are targeted at key executives, tethered to Stamps' relationships with the USPS and approximately five resellers, and designed to obtain critical information relating to Stamps' general policies and practices with respect to postal customers and the Reseller Program. These relevant matters all concern hotly disputed factual issues, for which discovery is absolutely warranted and the universe of responsive documents is not unduly burdensome to produce.[5]

Defendants' hyperbole aside,[6] the Motion seeks just three categories of agreements: (1) commission-based agreements like the Package Business Incentive Agreement ("PBIA") and the PC Postage Agreement that were put at issue as a result of the alleged conflict between Stamps and USPS, and which resulted in the cancellation of the PBIA as disclosed on February 21, 2019 (*see* Ex. 2, ¶¶33, 51, 94); (2) agreements between Stamps and the resellers, or any reseller NSA that Stamps might have had with the USPS – *i.e.*, the agreements the Company anticipated would be terminated and/or amended by the USPS as disclosed by defendants on May 8, 2019 (*see* Ex. 2, ¶97); and (3) any other presently unknown agreement that might have been the source of the alleged ongoing dispute between Stamps and the USPS that is equally relevant to the allegations. Producing such records is not disproportionately burdensome.

---

[5]   While documents related to customer issues with the USPS are responsive – such as former USPS customers who were cannibalized by Stamps or customers provided unauthorized discounts – the use of search terms and individual sales representative custodians would make it unlikely that anything but a representative sample of relevant customer issues need to be reviewed and produced.

[6]   Defendants also baselessly argue that Lead Plaintiff seeks production of 50 Stamps agreements. But even if defendants had to produce 50 agreements in a case with hundreds of millions of dollars at stake, it cannot be credibly argued that doing so would be at all burdensome, let alone disproportionately so.

- 4 -

## II. Lead Plaintiff's Proposed Time Period for Discovery Coincides with Relevant Events Alleged in the Complaint

### A. Highly Relevant Materials Will Be Found Pre-Class Period

The Court relied on pre-Class Period communications from 2016 to hold that Lead Plaintiff sufficiently alleged defendants' statements were knowingly false or misleading when made.  Ex. 1 at 22-23.  As such, the discovery time period should reflect the Court's reasoning and begin in February 2016.  This is hardly a groundbreaking perspective: "In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."  *In re New Century*, 2009 WL 9568860, at *2 (C.D. Cal. July 8, 2009).  Defendants respond that the Complaint does not identify Stamps as a recipient of the February 2016 communications about postage reseller Move Method's cannibalization of USPS business.  Joint Stip. at 53.  Their contention, however, does not foreclose the very realistic possibility that they received similar communications during that time period.  In particular, Lead Plaintiff has alleged that defendants received information on the same subject matter shortly thereafter via a July 16, 2016 communication **to Stamps executives** Booth and Khechfé.  Ex. 2, ¶54.  Lead Plaintiff is entitled to discovery of relevant evidence where it is reasonably likely to be found.  *See* Joint Stip. at 22.  As defendants have not provided any other basis for Lead Plaintiff to truncate its proposed discovery period, their refusal to provide documents from the entire relevant period is untenable.  Plainly, discovery is not limited to confirming what parties already know; in fact, "the purpose of discovery is to 'facilitate open and evenhanded development of facts underlying a dispute.'"  *Moulton v. AmeriCredit Fin. Servs., Inc.*, 2005 WL 1522237, at *4 (N.D. Cal. June 28, 2005).

### B. By Definition, Relevant Documents Will Be Dated Throughout the Class Period

Defendants identify no legal support for their novel assertion that they can unilaterally carve up the Class Period so as to withhold documents dated between September 1, 2017 and May 31, 2018 (*i.e.*, the middle of the Class Period) solely

- 5 -

Cases\4815-5413-2674.v1-7/15/20

because they dispute that they continued to make misleading statements throughout the entire class period.  Defendants' position is meritless.  *See, e.g.*, *New Century*, 2009 WL 9568860, at *2 (presuming relevance of documents dated within the "liability period").

Defendants erroneously limit the relevant time frame to just a fraction of the statements that furthered their scheme.[7]  In its July 14 clarification order, the District Court rejected defendants' unreasonable arguments that the scheme at issue here is limited to two statements in 2017.  Ex. A at 5-7.  Now there is not even an unreasonable question that defendants' scheme included actionably misleading statements throughout the Class Period.  Lead Plaintiff is entitled to the same scope of discovery throughout the entire relevant period, which naturally includes the Class Period.

As alleged in the Complaint, discovery is warranted into defendants' years-long scheme to extract the lion's share of postal revenue from the USPS while falsely claiming to investors that the USPS approved of its conduct as a "win-win" relationship.  ECF No. 116.  Lead Plaintiff is also entitled to discovery on circumstantial evidence of scienter or recklessness – which typically is proven through continuous and pervasive conduct over a period of time.  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) ("proof of scienter in fraud cases is often a matter of inference from circumstantial evidence"); *see also Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014) ("scienter is strengthened by the allegation of pervasive and long standing problems which allegedly were covered up as a matter of policy"); *see also* Ex. A at 4 (recognizing the scope of discovery into

---

[7]  Defendants also put at issue facts during the period when they want to bar discovery.  For instance, defendants dispute the facts alleged in the Complaint by asserting that a subscription-based *Capitol Forum* report released on August 24, 2017, fully corrected defendants' misstatements.  Joint Stip. at 40-41.  Their request to exclude all discovery dated just a week later until June 2018 is incompatible with this defense.  It would be impossible to assess this disputed fact without comparing evidence from the time period between the publication of this report and Lead Plaintiff's alleged corrective disclosures at the end of the Class Period.

- 6 -

scienter and materiality is "properly in front of the Magistrate Judge").  For example, evidence concerning the materiality of Stamps' reseller misconduct and defendants' scienter is likely to be found throughout the entire Class Period, particularly as Stamps is alleged to have been hiding its conduct from the USPS at the same time the USPS was investigating that conduct.  *See* Joint Stip. at 3-4; Ex. 2, ¶50.

### C.   Post-Class Period Documents Are Relevant to Lead Plaintiff's Claims

Defendants unacceptably seek to withhold all relevant materials that search terms identify between June 1 and December 31, 2019, except for those materials that are relevant to their factual defenses.  Joint Stip. at 52.  Defendants previously offered to produce all relevant documents from the period June 1, 2019 through August 31, 2019.  Though they now offer to expand the time period through the end of the year, they want to limit the scope of the production to exclude post-Class Period evidence that would provide necessary context to Lead Plaintiff's claims.[8]  Again, defendants' position ignores the reality of proving misconduct generally and proving a defendant's state of mind in particular.  Consistent with the text of Rule 404(b) of the Federal Rules of Evidence, courts have long recognized that "404(b) does not distinguish between 'prior' and 'subsequent' acts" and that "subsequent 'other act' evidence [is admissible] to prove knowledge."  *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400-01 (9th Cir. 1991).  Worse, defendants have refused to provide post-Class Period discovery Lead Plaintiff has requested while contending that their defense extends to the Company's February 19, 2020 disclosure concerning the changes to the Reseller Program.  *See* ECF No. 137 at 7 n.7.[9]  At a ***minimum***, the relevant period should

---

[8]   For instance, documents describing the materiality of the corrective disclosures or the causes of the decline of Stamps' stock (which defendants have disputed), particularly the May 8, 2019 disclosure, could only be dated after the Class Period and should be produced.  In addition, retrospective discussions or admissions concerning relevant facts that occurred during the Class Period are also relevant and should not be withheld if identified.

[9]   Defendants' lengthy factual recitation demonstrates the danger of defendants' tactics as they invite the Court to decide issues of fact without providing Lead Plaintiff

- 7 -

extend to February 29, 2020. Defendants' proposal to limit the post-Class Period production scope defies Rule 404(b) and would add further delays to this case by burdening Lead Plaintiff with the task of drafting a new set of search terms – despite the immediate availability of search terms to which the parties have already agreed and have spent considerable time creating. Contrary to defendants' assertions, the same universe of relevant documents should be applicable for this post-Class Period time frame using the same search terms already agreed upon by the parties. Defendants' desire to cherry-pick post-Class Period documents while limiting Lead Plaintiff's discovery from the same period simply confirms their one-sided approach, even though "'discovery must be a two-way street.'" *Gilpin v. McCormick*, 921 F.2d 928, 931 (9th Cir. 1990); *see also Stewart Title Guar. Co. v. Credit Suisse*, 2015 WL 1481341, at *2 (D. Idaho Mar. 31, 2015) (not allowing reciprocal discovery would be "simply unjust").

## III. Defendants Should Not Be Granted Blanket Veto Rights over Custodians

Defendants belatedly propose compromises for the first time in the Joint Stipulation and misleadingly accuse Lead Plaintiff of refusing to resolve an issue that defendants have continued to make a moving target. Joint Stip. at 56-57. But the parties' correspondence unambiguously confirms that it was Lead Plaintiff who proposed the eight-custodian compromise, and then tweaked it to address defendants' privilege concerns. Ex. 3 at 2-4. *Defendants rejected this offer* and did not contact Lead Plaintiff before making the proposal in the Joint Stipulation. *Id.* at 2. The fact that defendants' rejection included a professed willingness to "further consider" *Lead Plaintiff's* proposal under certain ambiguous conditions hardly transforms it into an

reciprocal discovery to rebut their assertions. *See* Joint Stip. at 35-37. Moreover, defendants have not produced internal emails referenced in their initial disclosures that would support these defenses. At the July 13, 2020 hearing, the Court noted "I just want to remind Stamps that it has to be prepared to try the case on the basis of what it produced in its initial disclosures. So I, just in that sense it seems to me odd . . . that there wouldn't have been e-mails, or essentially these internal documents disclosed, but as that may be." Ex. B at 24:16-23.

- 8 -

"offer." This is particularly true as defendants have recently clarified that they are demanding an unrebuttable veto power over Lead Plaintiff's selected custodians, which would not only allow them to block discovery from whichever custodians they know to be most important, but provide no recourse for Lead Plaintiff to make a good-cause showing to the Court. *See* Joint Stip. at 56-58. The nearly guaranteed prejudice from such unfettered power is self-evident.

In an attempt to allay defendants' fears of burdensome, duplicative or privileged discovery, on July 8, 2020, Lead Plaintiff proposed that defendants' veto power be limited to (1) custodians who do not fall within the three categories of custodians described in the Joint Stipulation; (2) require the parties to meet and confer to identify a suitable replacement custodian or to appropriately tailor the scope of production from the vetoed custodian; and (3) permit Lead Plaintiff to move to compel production of the vetoed custodian's documents. Ex. C. Moreover, the parties should also be required to add as custodians any additional witnesses identified in any supplemental Rule 26 disclosures – as those individuals would be presumptively relevant under the Federal Rules of Civil Procedure. *Id*. Defendants rejected this further proposal, but Lead Plaintiff submits that it best addresses the parties' concerns and should be adopted by the Court.

## IV.    Lead Plaintiff's Motion Solely Concerns Proportional Discovery

While Lead Plaintiff is focused on obtaining discovery pertinent to the issues central to resolving this case and tailored through the use of search terms and custodians, defendants waste time raising meritless burden arguments unsupported by any analysis of the proportionality factors identified. Joint Stip. at 28-29.

Defendants manufacture burden arguments by describing Lead Plaintiff's document requests as encompassing every document relating to the Reseller Program. Even if such a characterization was true,[10] which it is not, Stamps' use of the Reseller

---

[10]    Defendants claim Lead Plaintiff's proposed discovery time period returns twice as many documents as defendants' proposal, but do not provide the total number of

Program is highly relevant to this case and justifies the purportedly increased burden on the producing party. *See* Joint Stip. at 28. In contrast, defendants propose categorical exclusions to discovery on these issues despite Lead Plaintiff's substantial efforts to limit the requested documents to only those returned by search terms for 18 custodians. Thus, the Court should find that Lead Plaintiff has proposed a balanced approach to discovery which is proportional to the issues and needs in this complex case.

For the reasons stated in its portion of the Joint Petition and as described above, Lead Plaintiff's Motion should be granted in full.

DATED: July 15, 2020

ROBBINS GELLER RUDMAN & DOWD LLP
STEVEN W. PEPICH
JASON A. FORGE
ERIC I. NIEHAUS
HILLARY B. STAKEM
KEVIN S. SCIARANI

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

---

documents returned – presumably because such number would reveal defendants' contentions to be meritless. *See* ECF No. 126, ¶20. Defendants' assertions are meaningless without further context and should be given minimal weight by this Court. *See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ("The party who resists discovery has the burden . . . of clarifying, explaining, and supporting its objections.").

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 15, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ericn@rgrdlaw.com

- 11 -

Cases\4815-5413-2674.v1-7/15/20

# Mailing Information for a Case 2:19-cv-01828-MWF-SK Matt Karinski v. Stamps.com, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christina Lucen Costley**
  christina.costley@kattenlaw.com,tamara.vazquez@katten.com,courtalertlax@katten.com

- **Jason A Forge**
  jforge@rgrdlaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com

- **John T Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,edewan@scott-scott.com,tlaughlin@scott-scott.com,aweas@scott-scott.com,efile@scott-scott.com

- **Adam C McCall**
  amccall@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw

- **Steven W Pepich**
  stevep@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Vincent Prongay**
  info@glancylaw.com,CLinehan@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com,rprongay@glancylaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Kevin S Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Hillary B Stakem**
  hstakem@rgrdlaw.com

- **Paul Satoshi Yong**
  paul.yong@kattenlaw.com,paula.phillips@katten.com,courtalertlax@katten.com,victoria.lippman@katten.com

- **Richard H Zelichov**
  richard.zelichov@katten.com,tamara.vazquez@katten.com,courtalertlax@katten.com,jonathan.rotenberg@katten.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

- 12 -