RICHARD H. ZELICHOV (SBN 193858)
richard.zelichov@katten.com
CHRISTINA L. COSTLEY (SBN 227134)
christina.costley@katten.com
PAUL S. YONG (SBN 303164)
paul.yong@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471

*Attorneys for Stamps.com Inc., Kenneth McBride, Kyle Huebner, and Jeff Carberry*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:19-cv-01828-MWF (SK) |
| | **DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANTS AND IN SUPPORT OF DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER** |
| Plaintiff, | |
| v. | |
| STAMPS.COM, INC., KENNETH MCBRIDE, KYLE HUEBNER, and JEFF CARBERRY, | Judge:       The Honorable Steve Kim<br>Date:        Taken Under Submission<br>Courtroom:   540 |
| Defendants. | |

Pursuant to Local Rule 37-2.3 and the Court's scheduling order dated July 2, 2020 (Dkt. No. 130), Defendants respectfully submit this Supplemental Memorandum in opposition to Lead Plaintiff's motion to compel discovery from Defendants (Dkt. No. 133, at 1-30) and in support of Defendants' request for a protective order (Dkt. No. 133, at 30-58).[1]  Specifically, Defendants make this submission to: (1) update the Court on Judge Fitzgerald's recent order on the Motion for Clarification and demonstrate that the order supports Defendants' position on the scope of discovery and date range disputes; (2) address Plaintiff's attempts, since the Joint Stipulation was filed on July 1, 2020, to renege on its prior commitments on the custodian issue; (3) report on Plaintiff's attempts, since July 1, 2020, to circumvent Defendants' request for a protective order; (4) describe in detail Defendants' diligent efforts to collect, review, and produce relevant and proportional documents; and (5) refute once and for all Plaintiff's baseless and irresponsible claims concerning supposed "document destruction."

**A.** **Judge Fitzgerald's Order on the Motion for Clarification Confirms the Limited Nature of the Remaining Action and Supports Defendants' Positions on the Scope of Discovery and Date Ranges**

On July 15, 2020, Judge Fitzgerald issued an order on Defendants' Motion for Clarification ("Clarification Order").  Yong Supp. Decl., Ex. 31.[2]  The Court's Clarification Order confirmed that the only remaining theory of liability is that Defendants misrepresented that its partnership with the USPS was strong and held that Stamps made allegedly false or misleading statements in this regard only on May 3, 2017, August 2, 2017, August 1, 2018, and October 31, 2018.  *Id*. at 3.  While Judge

---

[1]    All capitalized terms in this Supplemental Memorandum have the same meanings as in Defendants' portion of the Joint Stipulation (Dkt. No. 133, at 30-58).

[2]    The Court previously advanced the hearing on Defendants' Motion for Clarification to July 13, 2020 so that it could be heard concurrently with Defendants' Motion for Extension.  A copy of Defendants' Reply in Support of the Motion for Clarification is attached as Exhibit 32 to the Supplemental Declaration of Paul S. Yong.

1

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Fitzgerald acknowledged that he "need not decide the scope of discovery" (*id.* at 4) and that this was the proper domain of the Magistrate Judge, the Clarification Order unquestionably supports Defendants position on the scope of discovery and the proposed time periods for production of documents.

In discussing the reasons for keeping paragraph 92 in the case, Judge Fitzgerald noted that the statement, made on October 31, 2018, could be misleading "if the USPS were critical of certain aspects of Stamps's business model and were in the process of terminating certain aspects of the partnership at the time." *Id.* at 8. This expression clearly defines the bounds of relevance in this case on the key elements of falsity and scienter and is completely consistent with the 9 broad topics proposed by Defendants in the meet and confer process and the Joint Stipulation. *See* Joint Stip., at 45-46. It is wholly inconsistent, however, with Plaintiff's demand for every document in Stamps' possession having anything to do with reseller rates or the reseller program. *See* Joint Stip., at 19-21. Under Judge Fitzgerald's definition of this case, the documents Plaintiff is seeking are both irrelevant and disproportionate.[3]

The Clarification Order also supports Defendants' proposed date ranges. *See* Joint Stip., at 42, 52-55. Judge Fitzgerald has now confirmed that there are *no* remaining alleged false or misleading statements between August 2, 2017 and August 1, 2018 (a one-year span) (Yong Supp. Ex. 31, at 6),[4] and completely ignored Plaintiff's attempt to justify its expansive view of this case based on a "scheme" theory or "duty to correct" that was never mentioned in the Complaint or Motion to

---

[3]    Plaintiff's response to the Motion for Clarification made an argument concerning discovery that Plaintiff did not make in its portion of the Joint Stipulation. Plaintiff argued that information relating to the "context" of the alleged misleading statements is relevant to scienter and materiality and that somehow expands the scope of permissible discovery. Dkt. No. 116, at 4-5. Plaintiff's new means of framing its argument with the word "context" is no different from its earlier theories that it is entitled to documents related to the "subject matter" of the litigation. Both are wrong and reflect no limiting principle on what would constitute the "subject matter" or "context" underlying the lawsuit.

[4]    The other remaining statements were made on May 3, 2017 and October 31, 2018. Yong Supp. Ex. 31, at 5-7.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Dismiss briefing. Defendants' proposed date ranges of March 2017 to August 2017 and June 2018 to May 2019 are, therefore, proportional to the needs of this case because they cover at least a two-month period prior to all of the alleged misstatements. Plaintiff complains that any break in the date range during the putative class period is unusual (Joint Stip., at 23), but so is having a year-long break between alleged misstatements.

## B.    Plaintiff is Working to Undo the Parties' Agreement on Custodians

Attempting to negotiate with Plaintiff on custodians has been one step forward, two steps back. Defendants originally offered to review and produce documents from the 8 custodians identified in their initial disclosures. Ex. 10, at 3.[5] After some discussions with Plaintiff, Defendants agreed to review and produce documents from 10 key custodians and to revisit the issue as to further additional custodians after Plaintiff had the opportunity to digest the materials and was in a better position to make an informed decision. Ex. 9, at 3-4. Plaintiff said that was unworkable because reopening a meet and confer later in the discovery period would be impractical, could prejudice Plaintiff because all discovery disputes would need to be heard by the discovery deadline, and the parties should not burden the Court at a later date. *See* Joint Stip., at 26-27. Plaintiff instead requested that it be entitled to select up to 8 additional custodians at least 30 days prior to the discovery deadline. Ex. 3 (E. Niehaus email on June 17, 2020, at 5:36 PM). While this approach was a step forward, it gave Plaintiff unilateral control to select the additional custodians without any input from Defendants. As a result, prior to Plaintiff sending its portion of the Joint Stipulation, Defendants stated that they could consider the offer if Defendants were entitled to a veto right with respect to certain custodians. *See* Ex. 3 (R. Zelichov email on June 19, 2020, at 3:56 PM). This would provide Plaintiff with considerable

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

[5]    The exhibits ("Exs.") cited in this Supplemental Memorandum refer to the exhibits attached to the Declaration of Eric I. Niehaus (Dkt. No. 125) (Exs. 1-13) and the Declaration of Paul S. Yong (Dkt. No. 126) (Exs. 14-30) filed in support of the Joint Stipulation. Supplemental Exhibits 31-37 cited herein are attached to the Supplemental Declaration of Paul S. Yong filed concurrently with this Supplemental Memorandum ("Yong Supp. Decl." and "Yong Supp. Exs.").

latitude in selecting custodians, provide Defendants with the ability to challenge a limited number of custodians, and avoid additional meet and confer and motion practice, which were Plaintiff's stated concerns. Further, in response to complaints in Plaintiff's portion of the Joint Stipulation concerning the need for custodians from among Stamps' subsidiary CEOs, USPS relations employees, and national sales managers, Defendants then agreed not to use vetoes on those three categories of individuals. An agreement on the issue of custodians appeared to be ripe.

Unfortunately, since that time, Plaintiff has actively attempted to unravel months of progress on the custodian issue. On July 8, 2020, a week after receiving Defendants' portion of the Joint Stipulation, Plaintiff's counsel sent an email to Defendants rejecting Defendants' proposal, effectively reneging on its prior commitments on custodians, and contradicting Plaintiff's representations to the Court in the Joint Stipulation. Yong Supp. Ex. 33, at 2 (the "July 8 Email"). The July 8 Email claims that Plaintiff cannot agree to the limited veto right because it "would give defendants a unilateral right to eliminate the two most important custodians identified by plaintiff."[6] *Id.* This is not a well-founded concern because Defendants have already agreed to produce documents from the 10 key custodians (including all of the Defendants) and to not use the vetoes on any individual within the three categories identified by Plaintiff in the Joint Stipulation as being of utmost importance. It is also surprising since, without any vetoes, Plaintiff's proposal would give Plaintiff unilateral right to select the remaining custodians, precisely what it incorrectly claims is problematic about Defendants' limited veto proposal.

---

[6] The July 8 Email also contains two factual errors. It repeats the false claim made in the Joint Stipulation that Defendants had not proposed the veto compromise prior to Plaintiff providing its portion of the Joint Stipulation. Yong Supp. Ex. 31, at 2; Joint Stipulation (generally ignoring this offer). This is false. *See* Ex. 3 (R. Zelichov email on June 19, 2020, at 3:56 PM). The July 8 Email also feigns ignorance concerning how the veto would work. This was clearly explained in the Joint Stipulation (at 58) and was necessary to address Plaintiff's assertions that it would be impractical, prejudicial, and burdensome for the Court if the parties were to reengage in a meet and confer further down the road.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

DEFENDANTS' SUPPLEMENTAL MEMORANDUM ISO JOINT STIPULATION RE MOTION TO COMPEL

In the July 8 Email, Plaintiff further requested that, instead of vetoes, if Defendants object to a custodian, the parties should "meet and confer to identify a suitable replacement custodian or to appropriately tailor the scope of production . . . and . . . permit plaintiff to move to compel production of the vetoed custodian's documents." *Id*. While this suggestion may sound reasonable in a vacuum, it flatly contradicts everything Plaintiff told Defendants during the meet and confer process, as well as what Plaintiff told the Court in the Joint Stipulation concerning the reasons why it could not agree to revisit the custodian issue later during the discovery period, when it stated that:

> Defendants' preferred course of action to reopen custodian negotiations at a later time is impractical and potentially prejudicial to Lead Plaintiff because the Court requires that discovery disputes be heard by the discovery deadlines in this case . . . . Prior to filing its briefing, Lead Plaintiff would need the time to review documents, develop an evidentiary record for its request, and then meet and confer with defendants . . . . Rather than embark on this highly inefficient process, Lead Plaintiff seeks to resolve the issue now and avoid unnecessarily burdening the Court at a later unknown date . . . [Plaintiff's] proposal allows the parties to meet the existing case deadlines without burdening the Court with additional disputes on threshold issues.

Joint Stip., at 26-27.

Apparently, Plaintiff is perfectly fine with "prejudicing" itself, being "inefficient" and "impractical," or "burdening the Court" when it sees some advantage to it. When a party, like Plaintiff here, says everything and it's opposite, it is very difficult to engage it in a good faith meet and confer.

But that was not even the worst of it. Plaintiff's email then goes on to demand that, in addition to the 10 agreed-upon custodians and 8 additional custodians, Defendants also collect, review, and produce documents from "all witnesses defendants identify in any supplemental Rule 26 disclosures." Yong Supp. Ex. 33, at 2. This eleventh hour demand would undermine months of productive negotiations on the custodian issue, which has already been briefed for resolution by the Court.

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

5

*Compare* Yong Supp. Ex. 33, at 2 (demanding that any individuals identified in a supplemental Rule 26 disclosure be added as custodians and these individuals "would not count against the number of custodians plaintiff is entitled to name"), *with* Joint Stip., at 25 (Plaintiff's proposal is "the right to add up to eight documents custodians of its choosing").

Defendants' proposal in the Joint Stipulation is a reasonable compromise made in a good faith effort to meet Plaintiff in the middle and directly addresses the concerns Plaintiff has raised over the course of the meet and confer process and in the Joint Stipulation. But as Plaintiff's July 8 Email shows, the more Defendants compromise, the more Plaintiff demands. This is not the way good faith negotiations are supposed to go and demonstrates precisely why this Court should enter a protective order in favor of Defendants' custodian proposal: the 10 agreed-upon custodians plus 8 additional custodians selected by Plaintiff, subject only to two vetoes by Defendants which cannot be used on custodians falling into the three key categories identified by Plaintiff. *See* Joint Stipulation, at 43, 56-58; Yong Supp. Ex. 33, at 1 (J. Rotenberg email on July 10, 2020, at 3:37 PM).

### C.   Plaintiff Served Subpoenas on Five Additional Non-Parties Seeking Irrelevant and Non-Proportional Documents

Rather than seek a compromise on its demand for every single reseller program-related document from an overbroad date range, Plaintiff has actively set out to circumvent any potential compromise or order the Court might issue on the scope and date range disputes since the filing of the Joint Stipulation. On July 7, 2020, Plaintiff's counsel notified Defendants that it would be serving document subpoenas on five non-parties, including three of Stamps' business partners.[7] Yong Supp. Decl. ¶ 2.[8] The subpoenas each seek broad categories of documents unrelated to this case

---

[7] The identities of the subpoena recipients and the subpoenas themselves are not included here due to confidentiality concerns. Defendants stand ready to make this information available to the Court immediately upon request.

[8] These five additional subpoenas are in addition to a subpoena that Plaintiff issued to the United States Postal Service ("USPS") on or about April 15, 2020 that

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

from February 1, 2016 to the date of production (a range that is over two years longer than the putative class period itself) and mandate production of documents on August 6, 2020. *Id.* Given that Rule 45 requires non-parties to serve objections to subpoenas no later than 14 days after service, the subpoenas (depending on when Plaintiff effectuates service) quite possibly require the non-parties to serve their objections before this Court even has an opportunity to rule on the proper scope of discovery in connection with this Motion. *See* Fed. R. Civ. P. 45(d)(2)(B) (requiring objections "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served"). The subpoenas are thus nothing more than a thinly-disguised runaround of Defendants' request for a protective order.

### D. Defendants Have Been Diligently Collecting, Reviewing, and Producing Documents Relevant and Proportional to Plaintiff's Remaining Claims

On July 14, 2020, Judge Fitzgerald issued an order granting in part Defendants' Motion for Extension of Pretrial Schedule and directed the parties to meet and confer concerning extending dates for document production and otherwise. Yong Supp. Ex. 34. As Judge Fitzgerald acknowledged at the hearing, "everything is taking longer because of the pandemic." Yong Supp. Ex. 35 (July 13, 2020 Hr'g Tr.), at 25:14-15. Despite these challenges, Defendants have nonetheless made significant progress in document discovery.

***Defendants' document collection from the 10 agreed-upon custodians is complete.*** Although Defendants' document collection efforts have been frustrated by Plaintiff's ever-expanding discovery demands (in addition to numerous complications caused by the continuing COVID-19 pandemic), Defendants have collected documents from the 10 agreed-upon custodians and ingested them into a document review platform. Defendants have also collected and ingested documents from several

included 25 requests for production of documents that also go well beyond what might be relevant in this litigation. Defendants do not know the status of Plaintiff's effort to obtain documents from the USPS.

DEFENDANTS' SUPPLEMENTAL MEMORANDUM ISO JOINT STIPULATION RE MOTION TO COMPEL

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

additional Stamps employees identified by Plaintiff as having potentially relevant documents. Furthermore, starting nearly immediately after Stamps' initial stock price drop on February 21, 2019, Stamps has sent ever-expanding litigation holds, both as to scope and custodians, over the course of this case. Thus, at present, Stamps has sent and/or implemented litigation holds to preserve the documents of over 100 Stamps employees either expressly identified or indirectly implicated in Plaintiff's shotgun demands. Yong Supp. Decl. ¶ 3.

*Defendants are currently reviewing millions of pages of documents for production.* Defendants have assembled a large team of contract attorneys that is working under outside counsel's supervision and is actively reviewing documents for production. Both in the spirit of cooperation and to avoid any potential delay, Defendants are reviewing millions of pages of documents hitting on over 100 search strings from the 10 agreed-upon custodians—even though the actual scope of what Defendants must produce remains in dispute, as reflected in Lead Plaintiff's motion to compel discovery from Defendants (Dkt. No. 133, at 1-30) and Defendants' request for a protective order (Dkt. No. 133, at 30-58).[9] *See* Ex. 8, at 6-11 (listing Plaintiff's 101 proposed search strings that Defendants are currently reviewing); Yong Supp. Decl. ¶ 4. As with Defendants' document collection efforts, Defendants' document review has been severely hampered by the COVID-19 crisis, which has forced Defendants' document review team to work remotely and has introduced numerous inefficiencies.[10] Nonetheless, Defendants are working very diligently to review documents as quickly as possible.

---

[9] Although the parties have not yet agreed on search terms, Defendants are reviewing all documents from the 10 agreed-upon custodians hitting on Plaintiff's 101 proposed search strings, despite their over-breadth and imprecision. Defendants are doing so in good faith and continue to reserve their rights to further negotiate and refine search terms.

[10] Under normal circumstances, the document review team would be working at a document review center with dedicated secure networks and computers, under the direct supervision of onsite project managers and outside counsel. Due to the stay-at-home orders and the epidemiological risks associated with in-person gatherings, Defendants' contract attorneys are working remotely on home networks without direct onsite supervision. Thus, in order to protect the confidentiality of Stamps' highly-

8

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Defendants have produced thousands of pages of documents to Plaintiff and will continue making substantive document productions.*  As explained in the Joint Stipulation, Defendants have already searched for and produced numerous categories of documents relevant to the merits of the case.  *See* Joint Stipulation, at 42 (listing document categories produced to Plaintiff).  On July 9, 2020, Defendants made a further production of key documents to Plaintiff, including additional "highly confidential" Board minutes and presentations, document retention policies, an agreement between the USPS and one of Stamps' subsidiaries, and hundreds of organizational charts for virtually all of Stamps' employees from three different dates during the putative class period.[11]  Yong Supp. Decl. ¶ 5.  In addition, Defendants will be making rolling productions of the documents that its large team of contract attorneys are currently reviewing and will promptly produce certain internal emails from the 10 agreed-upon custodians once that review is complete.

### E.     Plaintiff's Accusations of "Document Destruction" Are Baseless

Lastly, in an attempt to tarnish Defendants, Plaintiff has resorted to spinning a false narrative accusing Stamps of document destruction.  It is a false narrative because Plaintiff did not raise it as a concern at all when it was initially told that Stamps did not still have documents from certain former employees.  *Compare* Ex. 3

---

sensitive business information, the security provided by basic home networks has been supplemented by an additional security layer which, although necessary, has increased latency and slowed down the review process.  This slowdown has been further compounded by inefficiencies resulting from not having the entire review team in a single physical location and the team working irregular hours due to childcare responsibilities and otherwise.

[11]     Plaintiff complained at the hearing on the motion for clarification and motion for extension that Defendants have not produced a single internal email.  This ignores all of the documents that Defendants have in fact produced, many of which reflect internal discussions of the most important issues affecting the company.  It also misses that Defendants could not even efficiently commence an email review until the parties had an agreement on search terms and a resolution had been reached on the scope dispute.  The parties never actually reached agreement on search terms as set forth in Defendants' June 9, 2020 letter to Plaintiff (Ex. 9) or the scope issue (which is the subject of this Motion), but Defendants are nonetheless reviewing the emails from the 10 agreed-upon custodians without such an agreement.  Moreover, Plaintiff has not produced a single internal email either (despite claiming that it has completed its production).

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

DEFENDANTS' SUPPLEMENTAL MEMORANDUM ISO JOINT STIPULATION RE MOTION TO COMPEL

(R. Zelichov email from June 17, 2020, at 4:32 PM, indicating that Stamps no longer had documents from certain custodians), *with* Ex. 3 (E. Niehaus emails from June 17, 2020, at 5:36 PM and 6:09 PM, and June 19, 2020, at 4:13 PM, expressing no issues concerning the non-retention of documents from certain custodians).  Moreover, as explained in Defendants' Reply in Support of Motion for Extension of Pretrial Schedule, Plaintiff's charge of "destruction" merely refers to Stamp's routine and ordinary course deletion of its former employees' documents when they left Stamps, all of which happened ***before*** Plaintiff brought this lawsuit.[12]  Yong Supp. Ex. 36, at 1, 7; Yong Supp. Ex. 34, at 3.  For example, while Plaintiff focuses its attack on William Clayton, a former employee of Stamps' subsidiary ShipWorks (Joint Stip., at 27), Mr. Clayton in fact departed from Stamps in March 2018 (one year before the lawsuit was filed).[13]  Yong Supp. Ex. 37; Yong Supp. Ex. 36, at 7.  The fact that Mr. Clayton's documents were not retained after he left Stamps is neither suspicious nor noteworthy.  As explained above, Defendants have implemented litigation holds for all of Stamps' employees believed to be relevant to the litigation.  Defendants, thus, have undertaken all reasonable steps to preserve relevant evidence.  Plaintiff's tactical accusations of document destruction are baseless.

### F.   Conclusion

For the forgoing reasons and the reasons discussed in Defendants' portion of the Joint Stipulation, the Court should enter a protective order in favor of Defendants and deny Plaintiff's motion to compel.

---

[12]   Throughout discovery, Defendants have been forthcoming with Plaintiff regarding Stamps' document retention practices. *See, e.g.*, Ex. 3 (R. Zelichov email on June 17, 2020, at 4:32 PM).

[13]   Furthermore, it is unlikely Mr. Clayton's documents would be relevant or proportional to the claims remaining in this case.  As Plaintiff itself admits, multicarrier brands like ShipWorks and ShippingEasy ***never*** had an "exclusive" package business incentive agreement ("PBIA") with the USPS. *See* Ex. 2, at ¶ 108. Thus, throughout the putative class period, multicarrier brands were expressly allowed by the USPS to partner with private shipping carriers, like UPS and FedEx, and its business was not implicated in Plaintiff's remaining theory of liability (*i.e.*, that Stamps' alleged improper use of reseller rates for existing and/or low-volume USPS customers jeopardized Stamps' "exclusive" relationship with the USPS).

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Dated:  July 15, 2020

KATTEN MUCHIN ROSENMAN LLP

By      */s/ Richard H. Zelichov*
Richard H. Zelichov
richard.zelichov@katten.com
Christina L. Costley
christina.costley@katten.com
Paul S. Yong
paul.yong@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  (310) 788-4400
Facsimile:  (310) 788-4471
*Attorneys for Stamps.com Inc., Kenneth McBride, Kyle Huebner, and Jeff Carberry*

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

11