# EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

MATT KARINSKI, et al.,          )
                                )
          Plaintiffs,           )
                                )
              vs.               )
                                )   2:19-CV-1828-MWF (SKx)
STAMPS.COM, INC., et al.,       )
                                )
          Defendants.           )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Monday, July 13, 2020

_____

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here:  www.amydiazfedreporter.com*

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
13

2

APPEARANCES OF COUNSEL:


For the Plaintiffs:


                    ROBBINS GELLER RUDMAN & DOWD LLP
                    By:  Jason Forge, Attorney at Law
                         Eric Niehaus, Attorney at Law
                         Kevin Sciarani, Attorney at Law
                         Hillary Stakem, Attorney at Law
                    655 West Broadway, Suite 1900
                    San Diego, California 92101



For the Defendants:

                    KATTEN MUCHIN ROSENMAN LLP
                    By:  Richard Zelichov, Attorney at Law
                         Christina Costley, Attorney at Law
                         Victoria Litman, Attorney at Law
                    2029 Century Park East, Suite 2600
                    Los Angeles, California 90067]

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
14

THE CLERK:  Calling item number four, case number CV-19-1828-MWF, Matt Karinski vs. Stamps.com, Inc., et al.

Counsel, state your appearance for the record, beginning with plaintiffs' counsel.

MR. FORGE: Jason Forge on behalf of lead plaintiff, Indiana Public Retirement System.  Good morning, Your Honor.

MR. NIEHAUS: Good morning, Your Honor.  Eric Niehaus on behalf of the lead plaintiff, Robbins Geller Rudman & Dowd.

MS. STAKEM: Good morning, Your Honor.  Hillary Stakem from Robbins Geller Rudman & Dowd.

MR. SCIARINI: Good morning, Your Honor.  Kevin Sciarini on behalf of lead plaintiff from Robbins Geller Rudman & Dowd.

MR. ZELICHOV: Good morning, Your Honor.  Richard Zelichov from Katten Muchin on behalf of the defendants.

MS. COSTLEY: Good morning, Your Honor.  Christina Costley, also from Katten Muchin on behalf of defendants.

MS. LITMAN: Good morning, Your Honor.  Victoria Litman from Katten Muchin on behalf of defendants.

THE COURT:  Good morning, counsel.

In light of the tentative, let me hear first from the defendant.

And let me begin by saying that, you know, when I get my report on my cases, it is sent out automatically every

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
15

night at 2:00 in the morning, and I see there is a motion for clarification, I inwardly groan, because nine times out of 10 it means that it's a motion for reconsideration that counsel know really is improper, they can't really make out the various factors that are set forth in Ninth Circuit law and the local rules.

Here, it really is a motion for clarification, and legitimately so, and obviously, the parties did their best to try to resolve things.  So I appreciated that.

Now, the motions for the extension, which we'll deal with second, is in fact somewhat of a motion for reconsideration on that.  But in light of everything that has been going on, I can understand even that.

But for right now, let's start with the motion for the clarification.  And as I said, I'll hear first from the defendants.

MR. ZELICHOV: Good morning, Your Honor, Richard Zelichov.  And may it please the Court?  I want to thank you for advancing the dates of arguments on both of these motions, and for acknowledging that our motion for clarification really is a motion for clarification.

I think rather than address all statements that the Court has addressed, I would like to try and just focus my argument on two of them, or two dates that the Court has said it deemed to be falsely misleading in connection with its

5

order on the motion to dismiss.  And those are the statements in paragraph 89 on August 1st, 2018, and the statements in paragraph 92 from October 31st, 2018.

And I want to really parse those statements, sort of maybe with a fine tooth comb, or very carefully, because what I think that there are two primary arguments that apply to both of those two sets of statements that I want to make sure are, or I repeat, or at least make clearer, and then there is a second argument, or a further argument with respect to one of the statements on October 31st.

So I think if we take a look specifically at what Stamps said on August 1st, 2018, I think if you read that statement, and you read that statement in its natural understanding, and what it says, what it says is, it doesn't say that Stamps has a strong relationship with the USPS. What it says is that a task force report that is going to be coming out will be coming out strongly in favor of partnerships between the USPS and private industry.  And so that is different, very different, than saying that Stamps has a strong relationship or partnership with the USPS.

The second part of that statement says, well, it's going to come out strongly in favor of these partnerships between the USPS and private industry like the partnerships we've had with the USPS.

So when it describes the relationship between Stamps

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
17

6

and with a partnership between Stamps and the USPS, there is no characterization of that partnership, other than just saying, "Hey, there is a partnership that we've had with the USPS," and it doesn't -- the adjective of strongly does not apply to that relationship, it applies to what is expected to come out in that report.

And then that takes me to the second point, which I think, at least the second point with respect to that paragraph, and I think this is also important, is plaintiffs' argument is that the truth, or these statements were revealed to be false when Stamps made various statements on February 21st, 2019 and May 8th, 2019.  But that doesn't apply to this particular set of statements because the truth or falsity of these particular statements about what the task force report will say, are revealed when the task force report is released by the U.S. government on December 4th, 2018.

So you have both the facts here, but the word strongly is both not defining the partnership between Stamps and the USPS, but is defining the report itself.

And then further, that the report itself, the truth or falsity of that report, or Stamps's characterization of what that report would say, is not something that is revealed on February 21st, 2019, or May 8th, 2019, the purported corrected disclosures here, it's December 4th, 2018 when the

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
18

report comes out.  So there is a fundamental disconnect there both as to where the word strongly is used in that sentence, and then when the truth or falsity of that statement is revealed in light of plaintiffs' theory.

And then you get that same exact point, I think, with paragraph 92, not the first part of paragraph 92 --

THE COURT:  Let me just say, before we go to paragraph 92, counsel, you know, I'm sure the jury would enjoy hearing that argument, and they might perhaps be persuaded by it, but other than the idea that it is somehow inconsistent with plaintiffs' own theory, what is it about this that as a matter of law right now that would suggest?  I mean, if six or eight people were to disagree with that and unanimously find otherwise, it would certainly be an uphill battle to say based on the wording that, oh, no rational juror could ever reach that conclusion.  And I understand your -- and, you know, obviously Rule 9(b).

So the real issue here, then, is there is just something about it, which just as a matter of law combined with logic, it's just going to possibly be, and you know, such with those statements that I've already gotten rid of. And it just seems to me that this is, while it may or may not factually have been that, but what other than the issue of the revelation would suggest that this is kind of a legal thing, it's a categorical thing, it's a matter of logic, as

8

opposed to just reaching a conclusion that you don't like. And, you know, and perhaps no juror would reach it, but that is obviously not what I'm dealing with right now on this motion.

MR. ZELICHOV: And I understand. And I think that is where you go to the very text of the statement itself. If this statement had said, "The task force reports would come out in favor of partnerships between the USPS and private industry like the strong partnership we've had with the USPS," I would say to Your Honor, I wouldn't be making this argument right now. I would be telling you, okay, we will prove later that we had a strong partnership with the USPS as of August 1, 2018. But the language and the words and the structure of that sentence matters. The word strongly is not describing the partnership between Stamps and the USPS, it's describing a task force report, which is something very different than the actual relationship between Stamps and the USPS, which is what this case, I understand, or we understand, to be about.

And that is really, frankly, the same thing that applies in connection with the second part of the sentence, is the second oldest aspect of paragraph 92, where what the sentence says, language matters when it comes to when you are defining something as false or misleading. And it says that, "The USPS is going to be increasingly embracing partnerships

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

9

like ours."  It's just, all that says is it's going to embrace partnerships like ours.  It doesn't say our partnership is strong or that the USPS, the relationship is great, it is saying that the USPS is going to move towards more public private partnerships than keeping everything or more things in-house that's being run by the government.  And that is a -- or run by the USPS.  And that is very different than saying that it has a strong partnership with Stamps.

So I think that is why -- and that argument about the December report, I mean, I think it's worth noting that anyone who -- anyone could read that December 4th report on December 4th and decide for itself whether did that come out strongly in favor of partnerships?  Did it embrace partnerships?  No one had to wait, to think until, well, I know that report -- Stamps said that report is going to come out embracing partnerships.  That report came out embracing partnerships.  At that point in time, we can determine the truth or falsity of those statements, which are also predictions, by the way, without regard to anything specific as to Stamps itself.  So I think that is -- the language here is what I think really matters, and where the adverb or adjectives are actually placed.

I want to go back to the first part of paragraph 92, which I think, you know, is a little different from the first two that I've talked about, because it isn't just speaking to

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
21

this past report, it is more broadly addressed, or more narrowly addressed, depending how you want to frame that, to the interaction between Stamps and the USPS.

But here is what we've got, is what Stamps says, "As the USPS has many competing priorities, process takes time, we expect" -- again, a forward-looking statement, but nonetheless, I understand where the Court is coming from, to some extent, on that -- "that the U.S. will continue to reflect the critical role that we play in the e-commerce package business."

And it doesn't just leave it at that.  If Stamps had just left that at that particular point, I think I would understand where the Court's opinion is coming from, or the Court's motion is coming from.  But then Stamps goes on to tell its stockholders exactly why it thinks we have a critical role.  It says, "We have the largest private sales force focused on driving USPS growth."  Plaintiff has never argued that that statement is false or misleading.  "We processed more than a third of their priority mail volume." Stamps -- the plaintiff has never claimed that that statement is false or misleading.  And then, "Working hand in hand through our partnership, we have contributed to a significant portion of overall USPS e-commerce package growth over the past five years."

Again, plaintiff has not stated that that is -- that

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

that, those underlying facts are false or misleading, and frankly it can't. I mean, that last portion is just a repetition by our CEO of something that the USPS's CFO had said just a couple of months earlier.

And you can say, well, so what? You provided the underlying basis for it, but you still gave a misleading impression.

The Supreme Court in *Omnicare*, which is a decision that came out in 2015, just a few years ago, it explicitly said, and this is on page -- well, the *Omnicare* cite is 135 Supreme Court 1318, and on page 1332, what the Supreme Court says, and it says, "And to avoid exposure for admissions under Section 11" -- and the Ninth Circuit has adopted the standard for 10(b), even though 10(b) actually should have a higher standard than Section 11, which is the strict liability statute -- "an issuer need only divulge an opinion basis to ensure that it doesn't mislead."

And what have we done in this October 31st statement? Our CEO has divulged the basis for his opinion that we play a critical role in the e-commerce package business. It says, "We have the largest private sales force focused on driving USPS growth." True. "We process more than a third of their priority mail volume." True. And, "We have contributed to a significant portion of overall e-commerce package growth over the last five years." True.

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
23

So when you look at these statements -- and what I've tried to do is sort of break this down -- when you look at the language of the statements, there is absolutely nothing that is false or misleading about those statements. They are entirely true.  They are entirely accurate.

And we believe that, based on the reasoning that the Court put in its order denying, or granting in part and denying in part the motion to dismiss, these statements were dismissed from the case.

And that is all I have to say at least on the motion for clarification.

THE COURT:  All right.  Thank you, counsel.

Let me hear for counsel from the lead plaintiff.

MR. FORGE: Thank you, Your Honor.  This is Jason Forge.

I'll address this issue.  I think defense counsel, in the very first sentence of his argument, shows the big disparity between his perspectives and the law -- and obviously our perspective is consistent with the law -- when he said that he wants to, quote, "parse those statements with a fine tooth comb."  He then proceeded to parse those statements with a fine tooth comb, almost making an argument that grammatically it's impossible for this statement to mislead an audience.

And it's that level of hypertechnicality, and

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
24

13

impracticality, I think that is clearly rejected by the courts, and it is wholly inconsistent with the universal legal doctrine that even a statement that is literally true can still be actionably misleading.

So all of his arguments about, "Well, we did do one-third of their mail," and, "We are the largest," that does not in any way, shape or form prevent these statements from being misleading.

The perspective that I always try to use -- and this is not one of my invention, this is straight from the statute itself -- when we are talking about misleadingly incomplete statements, we are talking about under the statute itself whether the statement omits to state a material fact necessary in order to make the statement, made in light of the circumstances in which they were made, not misleading.

So what does that mean in practice?  In practice I think the test is, would this statement, whatever statement we are talking about, would it convey a significantly different message? Would it give a significantly different impression if the omitted information had been included within it?

And here, Your Honor, there is no question that the statements in paragraph 89 and 92 would create a vastly different impression if they had included the information that is alleged to have been omitted?  That being, that the

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
25

14

USPS as a whole was unhappy with Stamps's business practices, and was working on stopping Stamps from continuing with this reseller program.

People would be -- heads would be turning a further degree than a dog's head when they hear a loud-pitched noise if Mr. McBride had said, "We do think based on our conversations that the report will come out strongly in favor of the partnerships between the USPS and private industry, like the partnerships we've had with the USPS."

But bear in mind the USPS as a whole is unhappy with our business practices, and is working on stopping us from continuing with our reseller program.  It would have been a completely different impression.

So there is no doubt in my mind, there is no doubt in the view of the law, that when you apply that test, both of these statements would convey a vastly different impression.  And even if you think there is some doubt in there, I think Your Honor hit the nail on the head, that is what trials are for.  That is what juries are for.

Maybe some folks will think that the defense makes a decent argument that a task force would come out strongly in favor of a partnership between USPS and private industry like Stamps's partnership, if in fact USPS was unhappy with Stamps's business practices and was working with stopping Stamps from continuing with its reseller program, maybe they

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
26

15

will convince a jury.

But to Your Honor's point, there is no rational way we can say that as a matter of law no jury could draw that conclusion that this statement was misleadingly incomplete.

And the same thing applies to paragraph 92.  I would, Your Honor, respectfully disagree with the paragraphs that in your -- in the Court's tentative, Your Honor thinks are not actionable, because I also think that those two statements, and I'm talking about now paragraph 80 and paragraph 86, paragraph 80, again, we are not parsing this with a fine tooth comb.  We are looking at the overall impression the statement creates, and then we are asking whether that overall impression would be significantly different, in other words, would a reasonable investor find it important if that statement had included omitted information.

And so in paragraph 80, when Stamps is saying, "We succeed" -- "As you know, we succeed when they succeed," and there is no question they are referring to the USPS, yes, it's true, it's kind of a flipped version of, you know, they win, we win, but it's the same message.  And it is conveying that Stamps's success is in synch with the USPS's success.

And that naturally implies that if Stamps is happy, the USPS is happy, because we are both in the same type of win/win impression.

16

So again, we apply this test.  If they had said, "As you know, we succeed when they succeed, however, USPS as a whole is unhappy with our business practices and is working on stopping us from continuing with its reseller program," again, we would be talking about a vastly different impression that this sentence conveys.

And it's the same thing in paragraph 86, because they are talking about continuing on creating value for the USPS, and that their help in USPS's success is -- creates the type of long-term partnerships that we've seen.  That overarching impression from that statement is that things are going great, and this is a long-term partnership.  "Not only is this partnership healthy, but because of the way we are handling this partnership, we are going to have even more -- we are going to create even more of these long-term partnership opportunities."  Which is wholly inconsistent with the information that was omitted.

And so, again, look, I know we have a number of people on this call, but none of them are jurors.  I'm not trying to convince Your Honor to give us a ruling as a matter of law, but to foreclose the possibility that we can argue to a jury that these statements give a misleading impression because they omitted that information, I think is premature, Your Honor, and I think it is far too strict of a standard at this stage.

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
28

I would be very surprised if a jury ruled in our favor under these statements if Your Honor would take that burden away from us under a conclusion that no rational -- no reasonable juror could conclude that those statements were misleading by virtue of the omitted information.

And if Your Honor wouldn't take that verdict away from us, I would urge you not to take away from us an opportunity to get that verdict.

THE COURT:  Thank you, counsel.

Let me hear from defendants, a brief reply in regard to 89 and 92, and then your response on 80 and 86.

MR. ZELICHOV: I think I can do this relatively quickly.

Your Honor, plaintiff is presenting a statement of the law that is absolutely not correct.  There is no duty to make your statements complete.  The question isn't, if you disclosed the facts that plaintiff did -- would that be understood differently.  The standard is, if your statements affirmatively create an impression of a state of affairs that differs in a material way from the one that actually existed. This is in *Brody*.  And *Brody* specifically says there is no duty to make your statements complete.

What plaintiff is arguing, by saying that the statements would be understood differently if we had included this additional information, is the effective argument that

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

18

you need to make your statements complete.  And that the Ninth Circuit has consistently rejected.

I think I may have -- in using the statement fine tooth comb, I may have gone too far.  What I was saying is you need to look at the text of the word.  You can't just get some general gestalt, you need to look at the text of the word and determine whether they affirmatively created an impression of a state of affairs that differs in a material way from the one that actually existed.

And I don't think any of our statements in 89 and 92 did that for the reasons I've explained.

With respect to 80 and 86, plaintiff is -- plaintiff has just ignored the entire context of where that statement is coming from.  That statement was about how Stamps and the USPS are succeeding, vis-a-vis UPS and FedEx, whereby where UPS and FedEx increased their prices, that thereby makes the USPS more competitive, and then we succeed when they succeed.  Because as plaintiff has acknowledged, 87 percent of our revenue was generated through the USPS.

So to the extent that their competitors become less competitive, we succeed when they succeed.  That is an absolutely accurate statement, and especially in the context that we have there.

And then with respect to the other statements, the May 13th, 2000 statement, this is one where plaintiff is now

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B

30

busy talking about the long-term partnership aspect of those statements. They didn't put that aspect of that statement in bold in their Exhibit A, by which they limited or defined the actual statements that they were challenging were false or misleading.

So frankly, by trying to bring that up now, they are actually seeking to frankly change the Complaint that they filed, and are making basically the equivalent of a motion for reconsideration, not clarification on a Complaint that they didn't file.

And I think for the same reasons otherwise, if you look at the context of those statements, again, there is nothing -- there is nothing about those statements that affirmatively creates an impression of a state of affairs that differs in a material way, and there is no duty under the federal securities laws to ensure that the statements you make are complete.

And that is all I have.

THE COURT: Let me just say, counsel, that even if I end up agreeing with you through the existing Complaint, of course they are free to seek leave to file an Amended Complaint, it won't necessarily be granted, but certainly under Rule 15 and Rule 16 they are free to seek that.

Let's move now to the motion for extension of the pretrial schedule. Again, let me hear from the defendants

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

20

first in that regard.

MR. ZELICHOV: Your Honor, thank you.  I mean --

THE COURT:  Let me just say as a preface -- excuse me, counsel, for inviting you to speak and then cutting you off -- look, you know, I don't know what is going to happen.  Nobody does.  You know, earlier this morning there was a case where counsel were arguing on whether a huge music festival was, in fact, going to take place on the postponed date.  And finally we all agreed that we would just allow the Complaint to be amended near the date of the festival, when it would be clear whether it was taking place or not.

You know, nobody has any idea whether it's going to take place or not on the postponed date.  And here, I don't know what dates will work with you.  Counsel seem to be, in general, seem to be doing a pretty good job with making stuff happen.  On the other hand, I don't know when we are going to be restarting jury trials.  You know, the Superior Court, for obvious reasons here in Los Angeles County, has felt compelled to delay that, and that might very well happen here in District Court, as well.

But I have a bit more of a sense of what can happen before then, and I also have a sense that things are, while they are happening, they are taking more time.  So it does seem to me appropriate that there be some more time, but I don't necessarily know that we should go beyond that, which

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

is why my tentative is what it is.

So let me hear from defendants in regard to the extension of the pretrial schedule.

MR. ZELICHOV: Your Honor, with respect to the extension of the pretrial schedule, we are presently -- we are -- have nothing to add to, if the Court were to stick with the tentative ruling, we would be fine with that.

We appreciate the additional time to oppose the motion for class certification, which additional time we very definitely need. We appreciate the additional time to get documents produced. We are -- you know, we are working very hard to review those documents and to review documents and produce documents. We've made certain merits production documents. We are -- we have a very large team of attorneys reviewing the electronic documents, but it's a lot, and it's just going to take more time.

And we do -- you know, given the uncertainty of where we all are, we are just sort of asking for some additional flexibility because things are taking more time. Yes, we are -- we have been getting a lot done, but that doesn't mean that it doesn't take longer, and it doesn't mean if we don't need, say, additional time that we are asking, but if the Court is to stick with its tentative with respect to the motion for the extension, we have nothing further to say.

THE COURT:  All right.  Let me hear from the lead plaintiff.

MR. FORGE: Thank you, Your Honor.  This is Jason Forge again.

Your Honor, the only reason we are here on this scheduling issue, which frankly, I believe is the first time in my entire career that we've had to have the Court decide a dispute over a briefing schedule, the only reason we are here is because the defendants have openly defied the Court's rejection of the bifurcation schedule, and effectively bifurcated discovery.

Do I think they need 68 days to write an opposition to a motion?  Of course not.  Your Honor, I'm -- you know, benefited or handicapped by the fact that I spent most of my career as an AUSA, so the 70-day Speedy Trial Act is just burned in my memory.  And the notion that a group of lawyers would need just about that much time, 68 days to write an opposition to a motion, is just stunning to me.  But that is a disease that all civil practitioners seem to have.  I'm not trying to spite that.

The problem is that when counsel said, "Oh, that they have produced certain documents."  Let me just say this, Your Honor, because this will sum up for you just how brazenly they have defied the bifurcation.  We are six months since the Court denied their motion to dismiss, and as we all

sit here today, they have not produced a single internal e-mail, not one, not a single internal e-mail.  That is not good faith cooperation.  That is not following Rule 1 of the Federal Rules of Civil Procedure to make all efforts to have cases litigated efficiently.

So that is the only reason we are here on this class certification.  If they want an excessive amount of time, and it is an excessive amount of time, if they want an excessive amount of time to do an opposition to a class cert motion, fine, so long as it doesn't work to our detriment.  That is the issue that I have.

And the way you see this, Your Honor, is the downstream of deadlines.  And here is what I mean by that: In the existing schedule, in the existing schedule, they are required to complete their document production by August 28th, 2020.  Our reply brief for -- our motion in support of our motion for class certification, is not due until three weeks after that date.  So we will have all of the documents in this case for three full weeks before we have to do our reply brief.

Under this new schedule, Your Honor, unless we also move other dates, they are not going to complete their document production until two months after our reply brief, and that raises a significant, potential problem that is not just theoretical, we have seen it.

The defense has repeatedly made arguments about documents that they haven't even produced.  We saw this at the motion -- well, I didn't see it, but I read it, at the motion to dismiss hearing when the defense argued about the new reseller agreement, and the fact that their representation that it didn't have any changes that were at all consistent with our theory, and they make the same argument in their reply brief here concerning the deadlines.

Oh, let me --

THE COURT:  Counsel, let me ask you something, what is the state of the initial disclosures?

MR. FORGE: I'm not sure I'm following, Your Honor.

THE COURT:  I said, have the parties exchanged their initial disclosures?

MR. FORGE: Yes, Your Honor, we have.

THE COURT:  All right.  I just want to say in terms of not having produced a single e-mail, I just want to remind Stamps that it has to be prepared to try the case on the basis of what it produced in its initial disclosures.  So I, just in that sense it seems to me odd that there wouldn't have been -- that there wouldn't have been e-mails, or essentially these internal documents disclosed, but as that may be.

Look, I denied the bifurcation.  I acknowledged that as to some very discrete demands, it might be that it just,

because of the expense or the effort, it might make more sense to have those happen later, but it had to be adjudicated demand by demand by a protective order in front of the magistrate judge.  I'm sure the magistrate judge understands this, and what is going on here, which is that there is not a general bifurcation.  And obviously, you know, counsel for lead plaintiff are quite capable, that is why the lead plaintiff is the lead plaintiff, and is quite capable of forcing the issue with the magistrate judge.

Not that I'm encouraging people to have discovery fights, but if it comes to that, then I'm sure that you will be able to work this -- work it out.

It's just -- you know, it's just at some point I have to acknowledge that everything is taking longer because of the pandemic.  It's just very regretfully the world in which we are living right now.  And all the regrets that all of us can have about this, this one is pretty low on the totem pole of COVID regrets.  So just work together on this.

But the reason I -- you know, I -- the reason I mentioned at the beginning was while I was pleased the motion for clarification was not a motion for reconsideration, I did in some ways feel that this is, and in that sense, if the time comes where the defense wants something from me, then, yes, I have to decide what the schedule is, not the magistrate judge.  But of course I'm going to talk to the

magistrate judge and be guided by which party I think has been forthcoming and cooperative, and which party hasn't. It's just common sense.  So --

MR. FORGE: Your Honor, if I may? I apologize for interrupting.  But again, I'm not arguing against a later deadline for their opposition.  What I would ask the Court to do, though, however, is to adjust the other deadlines that are tied to their complete document production, because -- and this is what I meant by the downstream deadlines, previously -- or not previously, currently, their complete document production is due August 28th.  The last day for us to amend or add parties is three and a half months later. If -- which is totally appropriate.  Because we are -- I mean, the defense can't have it both ways.  They can't say, "This is a massive task, and you won't believe how many pages of documents we have here," but then argue that we only need a few weeks to go over them.

So we have three and a half months under the current schedule, but if Your Honor only moves the document production deadline and does not move the last day to amend pleadings, we are going to go from three and a half months to three weeks that will take place entirely over the holiday. So that is not fair to us.

And similarly, Your Honor, the current fact discovery cutoff deadline is five months after the defendants

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

have to complete their production.  Under the revised schedule, if we don't move that date, it will only be a month, and that includes the holidays.  That is -- that is not only very unfair to us -- to the plaintiffs, but it's also very impractical.  Because I can just tell you from experience, scheduling depositions the last month, even almost the last two months of the year, is very, very difficult.

And so this is a situation where we are not going to schedule depositions, let's say, I'm not going to schedule the CEO's deposition without getting all of the CEO's documents.  And so if their deadline isn't until December 15th, 2020, that puts us in an impossible position.

THE COURT:  All right.  Counsel, I understand -- counsel, I understand the point you are making.

Very briefly from defendants in regard to changing -- in regard to not giving you more time for your opposition, but then some of the other practical issues that were being raised by the lead plaintiff.

MR. ZELICHOV: Your Honor, we are happy to meet and confer with plaintiffs about a further schedule thereafter. We are willing to do that.

And I do want to just say, I am -- I take a little offense at the way that plaintiff is defining our document production.  The parties negotiated about search terms in the

scope of discovery for a while. Until those search terms -- and even then, plaintiff presented us with search terms. We are -- we are running all of their search terms, all 101 through our document production. That takes a long time.

I mean, they have -- we told them initially some of these were too broad, but they then interpreted that as a, you are not producing documents, you are trying to delay documents. So we are doing searches through documents that have words like END, and then a string extender, which I think they think is supposed to include like the end of a contract. But our subsidiary Endicia comes up through that. So every single document with the word Endicia, that is coming up.

THE COURT: Counsel, one of the advantages of being a District Judge is that I --

MR. ZELICHOV: I apologize, Your Honor, I just, we are happy to meet and confer with plaintiffs about the further deadline, I just felt that I needed to indicate that the idea that we have bifurcated discovery in some way sua sponte or on our own in violation of the Court's order is just absolutely inaccurate. And I actually needed -- I needed to make that statement because I am wrongly being accused of doing that.

MR. FORGE: Your Honor, if I may?

THE COURT: No, counsel, I had a matter at 11:00.

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
40

29

Counsel are waiting on the phone for the 11:00 calendar patiently, so I have to get to that.

But I understand, obviously having litigated a number of civil cases, the points that you are raising, and I will either have those reflected in the final order or invite you to meet and confer. It's not my intention that somebody is going to get caught short or that somebody has to put in a crazy amount of work over the holidays.

Thank you, counsel. The matters are taken under advisement.

*****     *****     *****

I certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

---------------------------

Amy C. Diaz, RPR, CRR                July 13, 2020

S/  Amy Diaz

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

Exhibit B
41