ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH (116086)
JASON A. FORGE (181542)
ERIC I. NIEHAUS (239023)
HILLARY B. STAKEM (286152)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
jforge@rgrdlaw.com
ericn@rgrdlaw.com
hstakem@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>STAMPS.COM, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:19-cv-01828-MWF-SK<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION<br><br>DATE:　November 2, 2020<br>TIME:　10:00 a.m.<br>CTRM:　5A<br>JUDGE:　Hon. Michael W. Fitzgerald |

4822-9162-7470.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................ 1

    A.    Plaintiff's Claim Is Typical of Those of Absent Class Members ......... 1

    B.    Plaintiff Has Established that Common Questions Predominate ......... 6

        1.    Defendants Fail to Rebut the *Basic* Presumption of Reliance ................................................................................. 7

            a.    Defendants Concede Price Impact Following the Alleged Corrective Disclosures ....................................... 7

        2.    Defendants Cannot Rebut Price Impact by Focusing on Dates of the Alleged Misrepresentations ................................. 10

        3.    There Is No Reason to Shorten the Class Period ...................... 13

III.  DAMAGES CAN BE ESTABLISHED ON A CLASSWIDE BASIS ........ 15

IV.   CONCLUSION ........................................................................................... 19

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 6

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...................................................................................... 9

*Angley v. UTi Worldwide Inc.*,
311 F. Supp. 3d 1117 (C.D. Cal. 2018)....................................................... 17

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
955 F.3d 254 (2d Cir. 2020) .................................................................... 7, 12

*Baker v. SeaWorld Ent., Inc.*,
2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ...........................................*passim*

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................. 7, 9, 10

*Beach v. Healthways, Inc.*,
2009 WL 3245393 (M.D. Tenn. Oct. 5, 2009)............................................... 5

*Beach v. Healthways, Inc.*,
2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010) .............................................. 5

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 WL 4098741 (D. Minn. July 28, 2016)................................................. 5

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)................................................................. 17, 18

*Buttonwood Tree Value Partners, LP v. Sweeney*,
2013 WL 12125980 (C.D. Cal. Sept. 12, 2013).................................... 17, 18

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ...................................................................................... 15

*Cooper v. Thoratec Corp.*,
2018 WL 2117337 (N.D. Cal. May 8, 2018) ................................ 10, 12, 16, 17

- ii -

**Page**

*Di Donato v. Insys Therapeutics, Inc.*,
   333 F.R.D. 427 (D. Ariz. 2019)..................................................................11, 18

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ...................................................................................9, 18

*Erickson v. Snap, Inc.*,
   2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sept. 18, 2017)................................3

*FindWhat Inv. Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011).......................................................................12

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
   917 F. Supp. 2d 246 (S.D.N.Y. 2013)................................................................3

*George v. China Auto. Sys., Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ......................................................3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)...........................................................................12

*Greenberg v. Crossroads Sys. Inc.*,
   364 F.3d 657 (5th Cir. 2004)...........................................................................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) .....................................................................................7, 8

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016).....................................8, 9, 11, 15

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ..............................................14, 15

*Huberman v. Tag-It Pac., Inc.*,
   314 F. App'x 59 (9th Cir. 2009)..........................................................................1

*IBEW Loc. 98 Pension Fund v. Best Buy Co.*,
   818 F.3d 775 (8th Cir. 2016)...........................................................................12

- iii -

4822-9162-7470.v1

**Page**

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ................................................................9, 16

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) ...................................................................4

*In re Centurylink Sales Pracs. & Sec. Litig.*,
2020 WL 5517483 (D. Minn. Sept. 14, 2020) ..................................... 10, 11, 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ....................................................................3

*In re Diamond Foods, Inc. Sec. Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013) ...................................................................15

*In re Finisar Corp. Sec. Litig.*,
2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ...................................................12

*In re Intuitive Surgical Sec. Litig.*,
2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) .............................................5, 10

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..........................................................18

*In re McKesson HBOC, Inc. Sec. Litig.*,
97 F. Supp. 2d 993 (N.D. Cal. 1999).................................................................4

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019) ....................................................................14

*In re Stec Inc. Sec. Litig.*,
2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) .....................................................9

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018) ....................................................................18

*In re UTStarcom, Inc. Sec. Litig.*,
2010 WL 1945737 (N.D. Cal. May 12, 2010) ...............................................2, 3

4822-9162-7470.v1

**Page**

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ........................................................................... 15

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) .................................................. 5

*Milbeck v. TrueCar, Inc.*,
2019 WL 2353010 (C.D. Cal. May 24, 2019) ..................................................... 3

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019) ...................................................................... 15

*Petrie v. Elec. Game Card, Inc.*,
308 F.R.D. 336 (C.D. Cal. 2015) ....................................................................... 3

*Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*,
2004 WL 5326262 (N.D. Cal. May 27, 2004) ..................................................... 4

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
2020 WL 5757695 (D. Minn. Sept. 28, 2020) .................................................. 11

*Pub. Emps.' Ret. Sys. of Miss., P.R. Tchrs' Ret. Sys. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ............................................................................ 10

*Ravens v. Iftikar*,
174 F.R.D. 651 (N.D. Cal. 1997) ..................................................................... 14

*Rooney v. EZCORP, Inc.*,
330 F.R.D. 439 (W.D. Tex. 2019) ...................................................................... 8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
335 F.R.D. 276 (N.D. Cal. 2020) ....................................................... 4, 8, 15, 18

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) ......................................................................... 5

*Todd v. STAAR Surgical Co.*,
2017 WL 821662 (C.D. Cal. Jan. 5, 2017) .............................................. 2, 6, 16

- v -

**Page**

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
  325 F.R.D. 280 (D. Minn. 2018) ......................................................................... 14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b) ........................................................................................................... 6, 16
  §78t-1 .................................................................................................................. 16
  §78u-4 ................................................................................................................... 5

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................... 1
  Rule 23(a) ..................................................................................................... 1, 6, 19
  Rule 23(b)(3) ............................................................................................... 1, 15, 19

17 C.F.R.
  §240.10b-5 ........................................................................................................... 16
  §243.100 ................................................................................................................. 6
  §243.101 ................................................................................................................. 6
  §243.102 ................................................................................................................. 6
  §243.103 ................................................................................................................. 6

**SECONDARY AUTHORITIES**

*Congress, the Supreme Court, and the Rise*
*of Securities-Fraud Class Actions*
  132 Harv. L. Rev. 1067 (2019) ............................................................................ 7

4822-9162-7470.v1

## I.   INTRODUCTION

Defendants[1] concede that the vast majority of Federal Rule of Civil Procedure 23's ("Rule 23") requirements for class certification are satisfied here. *See* Memorandum of Law in Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 159-1) ("Opp."). They do not dispute that the Class is numerous; that Lead Plaintiff Indiana Public Retirement System ("Plaintiff" or "INPRS") will be an adequate Class Representative and Lead Counsel adequate Class Counsel; and that there are numerous questions of fact and law common to all Class members. *See generally* Opp. Nor do they dispute that a class action is a superior means of litigating the securities fraud claims brought against them. *Id.* Defendants do not even contest that Plaintiff can properly invoke the fraud-on-the-market presumption of reliance. *Id.* at 10. Instead, Defendants' opposition contains meritless arguments relating only to Rule 23(a)'s "typicality" requirement, and Rule 23(b)(3)'s "predominance" requirement. But as in virtually all securities fraud actions proceeding on a fraud-on-the-market theory of reliance, these elements, too, are satisfied. Plaintiff's motion for class certification should be granted.

## II.   ARGUMENT

### A.   Plaintiff's Claim Is Typical of Those of Absent Class Members

Plaintiff easily satisfies Rule 23(a)'s typicality requirement: it was damaged by purchasing Stamps.com common stock during the Class Period at prices inflated by Defendants' fraudulent scheme, and therefore suffered the same injury as absent Class members during the Class Period.[2] *See Huberman v. Tag-It Pac., Inc.*, 314 F. App'x 59, 62 (9th Cir. 2009) ("'Under [Rule 23(a)'s] permissive standards, representative

---

[1]   The "Defendants" are Stamps.com Inc. ("Stamps.com" or the "Company"), Kenneth McBride ("McBride"), Kyle Huebner and Jeff Carberry.

[2]   "Class Period" refers to the period between May 3, 2017 and May 8, 2019, inclusive.

- 1 -

claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'"); *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *3 (C.D. Cal. Jan. 5, 2017) (in determining typicality, "'[t]he court should look at whether the class members have similar injuries, whether the wrongful activity is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct'").[3]    Defendants' smattering of arguments to the contrary are unpersuasive, inconsistent with well-established law in this Circuit, and should be rejected.

First, though the case law is clear that the relevant inquiry for typicality purposes concerns a proposed class representative's **class period** trades, Defendants improperly rely on Plaintiff's **post-Class Period** trading in Stamps.com stock to argue that its trading pattern is atypical of the Class.  Opp. at 8-9.  For example, citing Plaintiff's holdings in Stamps.com stock as of June 5, 2020 – more than a year after the Class Period ends – Defendants argue that Plaintiff's Stamps.com trades resulted in **unrealized** gains of over $16 million, and so Plaintiff cannot represent a class of investors who lost money during the Class Period.  *Id.* at 8.  This apples-to-oranges comparison is a red herring.  Plaintiff, like all other Class members, lost money on its Class Period trades of Stamps.com stock, and Defendants do not contest this fact.  *See id.* at 7-8.  This is sufficient to establish that Plaintiff suffered the same injury as putative Class members for purposes of typicality.  *See, e.g.*, *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *5 (N.D. Cal. May 12, 2010) (rejecting argument that proposed class representative was atypical where the plaintiff represented that he had suffered a net loss).

Nor does the fact that Plaintiff purchased Stamps.com shares after the alleged corrective disclosures subject it to a unique defense.  Courts recognize that purchases of shares after a disclosure "'where the fraud is only partially revealed (and the stock

---

[3]    All citations and footnotes are omitted and emphasis is added unless otherwise noted.

- 2 -

price only partially adjusted),'" as it was here, "'or where factual uncertainty persists regarding the extent to which [the] disclosure revealed the fraud, the presumption [of reliance on the alleged misrepresentations] is not defeated." *Id.* Rather, it is well-established that there are many reasons an investor may make post-disclosure purchases other than non-reliance on the alleged misstatement. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602-03 (C.D. Cal. 2009) (rejecting argument that purchases during the corrective disclosure period defeated typicality of proposed representative). Accordingly, "many district courts in the Ninth Circuit have held that post-disclosure or even post-class period purchases do not necessarily defeat typicality." *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 347-48 (C.D. Cal. 2015); *see also Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *3 (C.D. Cal. May 24, 2019) ("As other courts have noted, there are many reasons to make post-disclosure purchases such that 'other class members also presumably purchase[] [stock] after . . . corrective disclosure[s].'").[4]

Indeed, the record contains evidence demonstrating that Plaintiff's investment managers relied on the alleged misrepresentations and the integrity of the market price just like all other members of the Class. Declarations of Nicholas Hansen, Rob Nicoski and Frederick Martin (ECF No. 159-3) ("DGI Decls."), ¶¶4, 7. Defendants'

---

[4] Defendants' cases do not support their argument. In *Erickson v. Snap, Inc.*, 2017 U.S. Dist. LEXIS 221050, at *8-*9 (C.D. Cal. Sept. 18, 2017), the Court found, in deciding which lead plaintiff applicant was "most adequate," that an applicant's purchase of 60% of his **class period** shares after the first corrective disclosure could render the applicant atypical. In *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261-62 (S.D.N.Y. 2013), the court did not consider typicality for purposes of class certification, but rather found that summary judgment on an individual plaintiff's claim was appropriate following a class action trial, because the plaintiff used a specific investment strategy that did not rely on the integrity of the market. The court noted that, "an investor's lack of reliance on the market price and/or post-disclosure purchases may not defeat the typicality requirement for class certification. But that does not imply that non-class plaintiffs may assert res judicata on the reliance issue as soon as a class has been certified." *Id.* at 260. And as the Court in *Petrie* noted, *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013), is inapplicable, as the Second Circuit follows a different rule on post-disclosure purchases than district courts in the Ninth Circuit have applied. *See, e.g.*, *Petrie*, 308 F.R.D. at 346 (declining to follow *George* and *GAMCO*).

- 3 -

attempt to manufacture an issue by pointing to irrelevant and misleading calculations of Plaintiff's post-disclosure purchases should be rejected. Again, Defendants' calculations improperly include shares purchased after the Class Period ended when the ***only*** post-corrective disclosure purchases that arguably have any bearing on Plaintiff's typicality are those that were made ***during the Class Period***. Opp. at 8-9. Plaintiff purchased 12,773 shares after the first alleged partial corrective disclosure but before Defendants' fraudulent scheme was fully revealed (*see* ECF No. 76) – an unremarkable 31% of the shares that Plaintiff acquired during the Class Period. These stock purchases do not defeat typicality. *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020) ("Plaintiff's post-disclosure purchases during the remainder of the class period are neither disproportionate to its prior purchases, nor indicative of the purported fact that plaintiff did not rely on the market to value the shares following the [partial corrective] disclosure.").

Furthermore, Defendants' argument that Plaintiff was a "net seller" (and therefore purportedly atypical) is wrong. Opp. at 9. INPRS was not a net seller during the Class Period; it held 2,170 shares at the beginning of the Class Period, purchased 41,074 shares during the Class Period, but sold only 390 shares during the Class Period. ECF No. 76. And even had Plaintiff been a net seller, that is not a relevant consideration at class certification. *See Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262, at *3 (N.D. Cal. May 27, 2004) (rejecting argument that proposed class representative was atypical because "under [t]he FIFO accounting method, the notion of 'net seller' would appear to be largely irrelevant" and "post-class period purchases do not defeat typicality").[5]

---

[5] Both of Defendants' cited cases address lead plaintiff motions. *See In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) (expressly limiting decision to "lead plaintiff motions, not to ultimate questions of liability or damages," and looking only at class period transactions in evaluating whether plaintiff was a "net seller"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (noting, in deciding which applicant to appoint lead plaintiff, that applicants with net profits on class period sales would have a harder time establishing damages than other applicants).

- 4 -

4822-9162-7470.v1

Nor does the fact that one of Plaintiff's investment advisors met with Stamps.com defeat typicality. As the court in *Beach v. Healthways, Inc.*, 2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010), stated:

> Mere communication with corporate insiders will not render a class representative atypical for class certification purposes ***absent the exchange of non-public information***. Courts have consistently certified classes where there was no evidence that the named plaintiff received non-public information from a corporate officer. In general, the cases hold that if the plaintiff has received information from company insiders that confirms, reflects, repeats or even digests publicly available market information, that plaintiff is an appropriate class representative.

*Id.* at *4.[6]

Indeed, it is very common for institutional investors like Plaintiff, who are encouraged to serve as class representatives on behalf of other investors under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), to meet or communicate directly with corporate officials – consequently, finding atypicality under these circumstances would frustrate the PSLRA. *See Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *4 (C.D. Cal. Aug. 27, 2010); *see also In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *5-*6 (N.D. Cal. Dec. 22, 2016) (fact that investment managers met with company officials on occasion does not, without more, render plaintiff atypical of the proposed class); *Baker v. SeaWorld Ent., Inc.*, 2017 WL 5885542, at *7 (S.D. Cal. Nov. 29, 2017) (same); *Beaver Cnty. Emps.' Ret. Fund v.*

---

[6] Defendants rely on a prior class certification decision by the court in *Beach* in which it found substantial evidence that the proposed class representative's investment manager had knowledge of material, non-public information regarding the subject of the alleged misrepresentations, rendering plaintiff subject to a unique defense, and making that case factually distinguishable from the circumstances present here. *Beach v. Healthways, Inc.*, 2009 WL 3245393, at *5 (M.D. Tenn. Oct. 5, 2009). Defendants' reliance on *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 314 (E.D. Va. 2007) is misplaced. Unlike here, in *Shiring*, defendants' argument that plaintiff did not rely on publicly-available market information had "firm support in the record." *Id.* at 313.

- 5 -

*Tile Shop Holdings, Inc.*, 2016 WL 4098741, at \*5 (D. Minn. July 28, 2016) (rejecting argument that proposed representative was atypical based on meetings with corporate executive because "the record lacks support for Defendants' contention that non-public investment information was disclosed").

Far from making the requisite evidentiary showing needed to substantiate their argument, Defendants do not even *suggest* that Plaintiff's investment advisor obtained material non-public information from its meetings with Stamps.com executives. *See* Opp. at 7, 9. Indeed, to do so would amount to an admission that Stamps.com executives violated SEC Regulation FD, 17 CFR §§243.100-243.103, which requires that material information only be disclosed to the public through means designed to promote broad, non-exclusionary distribution. *See* Opp. at 9. And Disciplined Growth Investors, Inc. explicitly stated that it monitored and analyzed Stamps.com's public statements and other publicly available information in making its investment decisions on behalf of Plaintiff. DGI Decls., ¶¶4, 7; Opp. at 7.

In sum, Plaintiff suffered the same injury as absent Class members, and is not subject to any unique defense that would threaten to overwhelm litigation of the common questions in this action. Plaintiff has satisfied Rule 23(a)'s typicality requirement. *See Todd*, 2017 WL 821662, at \*5.

**B.     Plaintiff Has Established that Common Questions Predominate**

"Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Defendants do not contest that the majority of elements required to prove the putative Class's §10(b) claim – including falsity, materiality, scienter, and loss causation – will be proved through common evidence. Unable to demonstrate under this Circuit's precedent that the final two elements of this claim, reliance and damages, will require individualized proof, Defendants pin their hopes on inapposite, out-of-Circuit case law and erroneous and premature merits-based arguments that courts in this Circuit have

- 6 -

regularly rejected when granting class certification.  In sum, Defendants fail to show that individual questions will predominate.

### 1. Defendants Fail to Rebut the *Basic* Presumption of Reliance

Plaintiff has satisfied its burden to establish the applicability of the *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ("*Basic*") presumption of classwide reliance.  Plaintiff has shown that Stamps.com stock traded in an efficient market during the Class Period, that the alleged misrepresentations were publicly made, and that Plaintiff's trades "'took place "between the time the misrepresentations were made and the time the truth was revealed."'"  *See Baker*, 2017 WL 5885542, at *9; *see also Basic*, 485 U.S. at 248 n.27.  Indeed, Defendants do not contest that Plaintiff has satisfied the elements necessary to invoke the *Basic* presumption.  Opp. at 10.  Accordingly, Defendants face the heavy burden of rebutting the *Basic* presumption by demonstrating by a preponderance of the evidence that the alleged misrepresentations did not in fact have any impact on the price of Stamps.com stock.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) ("*Halliburton II*").[7]  As discussed below, Defendants do not (and cannot) make this showing.

### a. Defendants Concede Price Impact Following the Alleged Corrective Disclosures

Plaintiff has produced uncontested evidence that the alleged misrepresentations impacted Stamps.com's share price.  Plaintiff's expert, Dr. Zachary Nye, conducted a robust event study – which even Defendants do not challenge – and determined that there were statistically significant share price declines following the alleged corrective disclosures on February 21, 2019 and May 8, 2019.  *See* Expert Report of Zachary

---

[7]  After *Halliburton II*, in 70% of the federal district court cases in which a defendant attempted to rebut the *Basic* presumption, securities plaintiffs proceeded on a price maintenance theory.  And in ***every single one***, the defendants failed to rebut the *Basic* presumption.  *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 266 n.9 (2d Cir. 2020) (citing *Congress, the Supreme Court, and the Rise of Securities-Fraud Class Actions*, 132 Harv. L. Rev. 1067, 1077 (2019)).

4822-9162-7470.v1

Nye, Ph.D., dated June 29, 2020 (ECF No. 122-2) ("Nye Rpt."), Ex. 11B at 10 (finding that the 57.77% share price decline on February 22, 2019 was statistically significant at the 95% confidence level); *id.* at 11 (finding that the 55.75% share price decline on May 9, 2019 was statistically significant at the 95% confidence level). Defendants do not dispute this dispositive evidence of price impact.  And, the market unmistakably responded to the revelation of the concealed adverse facts such that Defendants cannot, as a matter of law, establish a lack of price impact. *Halliburton II*, 573 U.S. at 282 (to meet their burden, Defendants must "show[] that the alleged misrepresentation[s] did not actually affect the stock's market price"); *SEB*, 335 F.R.D. at 287 (defendants failed to rebut price impact where defendants' own expert admitted that corrective disclosure dates were followed by statistically significant price declines); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at \*8 (N.D. Cal. Mar. 16, 2016) (same); *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019) ("A statistically significant price adjustment following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price.").

Defendants' expert, Dr. Paul Zurek, does not contest that Stamps.com's share price suffered statistically significant residual declines following the alleged corrective disclosures. *See* Opp. at 11-12; Rebuttal Report of Paul Zurek, Ph.D., dated August 31, 2020 (ECF No. 157-2), ¶¶78-80.  Instead, Defendants urge the Court to find that, contrary to its two prior rulings, Plaintiff does not plead any corrective disclosure at all. Opp. at 12-19.  This flawed and premature challenge to the merits of Plaintiff's claims should be rejected as wholly inappropriate at the class certification stage.

First, Defendants claim that there could be no "corrective" disclosure concerning Stamps.com's positive statements regarding its relationship with the United States Postal Service ("USPS") because "[n]umerous market commentators published negative information about that relationship" before the start of the Class

- 8 -

Period.  Opp. at 12, 14.  This truth-on-the-market argument has no place at the class certification stage, where materiality is assumed.  *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 475, 482 (2013); *In re Stec Inc. Sec. Litig.*, 2012 WL 6965372, at \*12 (C.D. Cal. Mar. 7, 2012) ("[T]he Court cannot properly consider Defendants' truth-on-the-market defense at the class certification stage because this defense is a 'method of refuting an alleged misrepresentation's **materiality**,' and 'a plaintiff need not prove materiality at the class certification stage to invoke the [*Basic*] presumption.'") (emphasis in original).

Second, the Court already rejected Defendants' argument that the May 3, 2017 and August 2, 2017 disclosures were somehow "corrective" when finding that Plaintiff adequately pled loss causation. Order re: Defendants' Motion to Dismiss (ECF No. 89) ("MTD Order") at 32.  But even if the Court had not already rejected these arguments, Defendants' attack on the merits of Plaintiff's loss causation theory would still be inappropriate for resolution on class certification – especially here, where Defendants' own expert conceded he did not perform a loss causation analysis and thus there is no evidence to support their purported truth-on-the-market defense. *See* Declaration of Eric I. Niehaus in Support of Lead Plaintiff's Reply in Further Support of Its Motion for Class Certification ("Niehaus Decl."), filed concurrently herewith, Ex. 1 (Deposition Transcript of Paul Zurek, Ph.D., dated October 5, 2020) at 119:24-120:10; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("Loss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory."); *Baker*, 2017 WL 5885542, at \*12 (argument that plaintiffs failed to plead a corrective disclosure, rather than that there was no statistically significant price reaction following the alleged corrective disclosure, was "'a class loss causation argument that is premature'"); *Hatamian*, 2016 WL 1042502, at \*9 ("Defendants attack the 'fit' between an alleged corrective disclosure and a prior alleged fraudulent statement. This is nothing more than an attack on loss causation . . . ."); *In re Banc of Cal. Sec.*

- 9 -

*Litig.*, 326 F.R.D. 640, 650 (C.D. Cal. 2018).[8]  Finally, Defendants' erroneous and unsupported assertions about what the market purportedly knew certainly do not defeat predominance, as "arguments about loss causation and that the market already was aware of [the] allegations[] are ***common questions*** that can be adjudicated on a class-wide basis." *In re Centurylink Sales Pracs. & Sec. Litig.*, 2020 WL 5517483, at *13 (D. Minn. Sept. 14, 2020).

### 2. Defendants Cannot Rebut Price Impact by Focusing on Dates of the Alleged Misrepresentations

Recognizing that they cannot dispute the price impact following the alleged corrective disclosure, Defendants contend they can rebut the *Basic* presumption based on a lack of price increase following the alleged misrepresentations.  Again, Defendants' argument fails for several independent reasons.

First, Defendants ignore entirely that Plaintiff has pled a "price maintenance" theory of loss causation in this action.  Under a price maintenance theory, the alleged misleading statement(s) do not necessarily introduce inflation into the stock price, such that one would expect the market price of the company's stock to increase on the day of the alleged misrepresentation.  Niehaus Decl., Ex. 2 (Expert Reply Report of Zachary Nye, Ph.D., dated October 15, 2020) ("Nye Rebuttal"), ¶¶13, 18-20; *Cooper v. Thoratec Corp.*, 2018 WL 2117337, at *4 (N.D. Cal. May 8, 2018) ("[T]hat Smith's May 11, 2011 statement did not lead to any significant increase in stock price is

---

[8]  *Pub. Emps.' Ret. Sys. of Miss., P.R. Tchrs.' Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014), on which Defendants rely, is inapposite, as it concerned the appeal of an order denying reconsideration of a motion to dismiss, such that consideration of whether a disclosure could be corrective was appropriate. *Greenberg v. Crossroads Sys. Inc.*, 364 F.3d 657, 665-66 (5th Cir. 2004), is similarly irrelevant, as it addressed the merits of plaintiff's loss causation theory at ***summary judgment***. And unlike in *Intuitive Surgical*, 2016 WL 7425926, at *15-*16, where the corrective disclosure alleged was only related to alleged misstatements that were previously dismissed, here the Court has affirmed that both corrective disclosures alleged relate to the very misstatements left in the case – those concerning the strength of its relationship with the USPS and that the USPS fully approved its use of the reseller program. *See* MTD Order at 32; Order Granting in Part Defendants' Motion to Clarify Order on Motion to Dismiss Case (ECF No. 143) ("7/14/20 Order").

- 10 -

entirely consistent with Plaintiffs' theory that this misrepresentation prolonged the artificial inflation of Thoratec's stock price . . . . Defendants' proffered evidence of lack of price impact is irrelevant to Plaintiffs' theory. . . .").  Rather, the alleged misleading statement(s) prevent inflation from leaving the stock price, preventing the decline in stock price that would have occurred had the truth concealed by the alleged misrepresentations or omissions been disclosed.  Nye Rebuttal, ¶¶13, 18-20. Accordingly, one would not necessarily expect to see a statistically significant stock price movement attributable to an alleged misleading statement or omission on the day it was made.  *Hatamian*, 2016 WL 1042502, at *7 ("[L]ack of a statistically significant price increase does not necessarily equate to lack of price impact. . . .  It is . . . possible that 'a misstatement could serve to maintain the stock price at an artificially inflated level without also causing the price to increase further.'"); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 444 (D. Ariz. 2019) (in a price maintenance case, "[t]he ***lack*** of statistically significant proof that a statement affected the stock price is not statistically significant proof of the opposite, *i.e.*, that it did ***not*** actually affect the stock price") (emphasis in original); *Centurylink*, 2020 WL 5517483, at *11 ("misstatements or omissions can maintain artificial inflation in a stock regardless of whether a stock's price increases significantly, decreases significantly, or does neither").

Second, in a case such as this involving price maintenance, Defendants cannot show a lack of price impact by focusing on the lack of price increase on the front-end of the Class Period.  "Because price impact can be observed on the 'front-end' (*i.e.,* misstatements causing or maintaining inflation) or on the 'back-end' (*i.e.*, a decline in price caused by the corrective disclosures), Defendants must affirmatively disprove ***both*** to satisfy their burden." *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2020 WL 5757695, at *11 (D. Minn. Sept. 28, 2020). *See also Baker*, 2017 WL 5885542, at *11-*12 ("Defendants cannot rebut the presumption of reliance by ***only*** arguing that the alleged misrepresentations did not affect the stock price.").  Defendants' reliance

- 11 -

on the Eighth Circuit's opinion in *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782-83 (8th Cir. 2016), to argue the contrary is misplaced.  Opp. at 11 (citing *Best Buy*, 818 F.3d at 782-83).  Not only has *Best Buy* not been adopted by the Ninth Circuit, but it is contrary to the standard for establishing a lack of price impact adopted by courts around the country, including the Second, Seventh and Eleventh Circuits.  *See Baker*, 2017 WL 5885542, at *11; *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 418 (7th Cir. 2015); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1316 (11th Cir. 2011); *Goldman Sachs*, 955 F.3d at 271.

Accordingly, courts in this Circuit regularly reject the argument advanced by Defendants that a lack of statistically significant price increase on the day of the alleged misstatements is sufficient, by itself, to demonstrate a lack of price impact in a price maintenance action.  In *Baker*, for example, the defendants made the same exact argument as Defendants do here: that the court should apply *Best Buy* to find that the lack of statistically significant price impact on the dates of the alleged misstatements was dispositive of price impact.  *Baker*, 2017 WL 5885542, at *11.  But as the *Baker* court explained when rejecting the defendants' argument, "*Best Buy* is distinguishable . . . .  There, the Eighth Circuit noted that the 'allegedly "inflated price" was established by a non-fraudulent' disclosure.  Here, in contrast, Plaintiffs contend that each of the allegedly false misstatements 'propped up SeaWorld's stock price.'" *Id.*; *see also Cooper*, 2018 WL 2117337, at *4.  Defendants' reliance on *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017), is misplaced as, like *Best Buy*, that was not a price maintenance action.  *Finisar*, 2017 WL 6026244, at *12; *Cooper*, 2018 WL 2117337, at *4 n.2 ("Because the plaintiff in *In re Finisar* . . . was 'not proceeding on a price maintenance theory,' that case is inapposite.").

- 12 -

### 3.     There Is No Reason to Shorten the Class Period

Defendants' final price impact argument is that the Class Period must be shortened, either to December 4, 2018, because that is when the Task Force Report that was purportedly the subject of certain of the alleged misstatements was issued, or to February 21, 2019, when Stamps.com disclosed that its negotiations with the USPS regarding renewal of its PBIA failed.  Opp. at 17-19.  Both arguments rely on deeply flawed mischaracterizations of Plaintiff's allegations.

Neither McBride's August 1, 2018 misrepresentation (Complaint, ¶89)[9] nor his October 31, 2018 misrepresentation (*id.*, ¶92) is alleged to have been misleading because of any representation as to the contents of the not-yet released Task Force Report.  *Compare* Opp. at 17-18.  Nor was the October 31, 2018 statement alleged to be false because it specifically concerned the renewal of the PBIA.  *Compare* Complaint, ¶93 *with* Opp. at 18-19.  Rather, as the Court stated in its July 14, 2020 order on Defendants' motion for clarification, the misrepresentations are alleged to be misleading because they "could communicate that Stamps had a strong relationship with the USPS and/or tout the relationship in positive terms."  7/14/20 Order at 5.  The USPS Task Force Report did not reveal the truth as to the failing health of Stamps.com's relationship with the USPS or the USPS's dissatisfaction with Defendants' abuse of the reseller program, and so did not remove the artificial inflation in Stamps.com's stock price introduced as a result of Defendants' fraudulent scheme.  Nye Rebuttal, ¶¶35-37.  Nor did Stamps.com's February 21, 2019 disclosure fully reveal the extent of Defendants' fraudulent scheme – Defendants also falsely maintained that Stamps.com had walked away from its exclusive relationship with the USPS in order to explore opportunities with other shipping carriers, and failed to disclose that the USPS relationship had soured with regard to the Company's reseller

---

[9]  "Complaint" herein refers to the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 71).

4822-9162-7470.v1

partners as well.  Complaint, ¶¶122, 127; Nye Rebuttal, ¶41.  Indeed, the Court previously rejected this same argument when Defendants raised it in their motion to dismiss.  *See* MTD Order at 30 (finding Defendants' February 21, 2019 disclosure is alleged to have falsely represented the true facts surrounding termination of the USPS contract, noting: "However, Plaintiff alleges that this claim was false, which is demonstrated by the Company's prior disclosures about the contract negotiations, which made clear that they were initiated by the USPS, and not Stamps.").

But even if Defendants' argument did not rest on a mischaracterization of Plaintiff's factual allegations, it still would not justify shortening the Class Period as pled.  It is well-established that any inquiry as to "precisely when the truth was fully disclosed to the market is best reserved for resolution on the merits," and should not result in a narrowing of the class period at class certification unless the defendant ***unequivocally*** disclosed the alleged prior misrepresentation.  *See In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 225 (C.D. Cal. 2019); *Centurylink*, 2020 WL 5517483, at *15.[10]  As discussed above, neither the February 21, 2019 corrective disclosure pled by Plaintiff nor the December 24, 2018 corrective disclosure claimed by Defendants unequivocally disclosed Defendants' fraudulent scheme nor that the USPS relationship had been deteriorating due to years-long abuses of the reseller program.[11]

---

[10] Defendants' cases are thus distinguishable.  *See Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *8-*9 (N.D. Cal. Dec. 22, 2016) (shortening class period to date of defendant company's explicit disclosure that its prior financial reports should no longer be relied upon, as reliance on the fraudulent financial reports would be unreasonable after that date); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 294-95 (D. Minn. 2018) (noting disagreement among district courts as to whether it is appropriate to consider the "correctiveness" of disclosures alleged, but ultimately finding that where medical journal unequivocally disclosed financial ties between physician-authors and defendant company, subsequent articles repeating the same facts alleged in medical journal could not constitute corrective disclosures); *Ravens v. Iftikar*, 174 F.R.D. 651, 670-71 (N.D. Cal. 1997) (in finding lead plaintiff notice to class members inadequate, court found alleged class period inappropriate because while "[a] partially corrective disclosure leaves something uncorrected[,] Plaintiffs do not share what it was").

[11] Defendants' argument that "any class period related to [Stamps.com's 2017] statements should end by August 24, 2017" because at that point *The Capitol Forum* had published the articles cited in the Complaint fails for the same reasons.  *See* Opp.

- 14 -

Moreover, that there were statistically significant stock price drops after the December 4, 2018 Task Force Report was issued and after the February 21, 2019 corrective disclosure, which Defendants do not dispute, is telling. Plainly, the price of Stamps.com shares during the time period after the December 4, 2018 Task Force Report was issued and before the final corrective disclosure on May 8, 2019 remained artificially inflated. *See, e.g.*, *SEB*, 335 F.R.D. at 287; *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395-96 (N.D. Ga. 2019). This is more than sufficient evidence at the class certification stage; "[w]hether plaintiff will ultimately prevail in demonstrating a significant market impact that was in fact caused by the alleged fraudulent misrepresentations is a matter for proof at trial, or summary judgment." *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 254 (N.D. Cal. 2013).

## III. DAMAGES CAN BE ESTABLISHED ON A CLASSWIDE BASIS

Defendants' *Comcast* argument fails.[12] First, "*Comcast* does not require certification proponents to rely on a class-wide damages model to demonstrate predominance." *Hayes*, 2016 WL 7406418, at \*9; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). Courts in the Ninth Circuit read *Comcast* "to demand only that plaintiffs 'be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Hatamian*, 2016 WL 1042502, at \*8 (quoting *Leyva*, 716 F.3d at 514). Plaintiff has done just that.

---

at 19 n.9. Defendants actively disputed that there were problems in their relationship with the USPS through the end of the alleged Class Period by continuously representing that their relationship with the USPS was strong, making any "disclosure" Defendants assert based on *The Capitol Forum*'s publications far from unequivocal.

[12] *See* Opp. at 20 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).

- 15 -

4822-9162-7470.v1

Plaintiff's opening motion, the Expert Report of Dr. Zachary Nye, and the Rebuttal Report of Dr. Zachary Nye set forth how, as in virtually all securities fraud class actions, damages in this case can be calculated using a common, widely-accepted methodology for all Class members. Specifically, for the Class's §10(b) claims, Dr. Nye proposes a three-step framework:

- *First*, Dr. Nye would utilize an event study "to isolate Company-specific price movement caused by the revelation of true facts related to the alleged fraud from price movement caused by other factors."  Nye Rpt., ¶60.

- *Second*, Dr. Nye would use the results of the event study to estimate the price inflation due to the alleged fraud for each day during the Class Period.  *Id.*

- *Third*, Dr. Nye would calculate damages for each Class member based on the "out-of-pocket" damages method in accordance with the statutory formula set forth in Rule 10b-5, depending on when the Class member purchased and sold their shares.  *Id.*, ¶¶61-62.

For the alleged §20A claims, Dr. Nye would use a similar methodology to calculate the damages of those Class members who purchased Stamps.com stock contemporaneously with defendant McBride's insider trades, but would cap damages in accordance with the limit set forth in 15 U.S.C. §78t-1.  *Id.*, ¶63.  Dr. Nye's damages methodology has been routinely accepted by courts examining these same issues at class certification.  *See Cooper*, 2018 WL 2117337, at *7 (approving Dr. Nye's event study method for calculating per-share damages); *Banc of Cal.*, 326 F.R.D. at 651; *Todd*, 2017 WL 821662, at *11 ("'[t]he event study method is an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation'").

Defendants' contention that Dr. Nye's model is not limited to, and so does not "fit," Plaintiff's theory of liability is flatly wrong.  Plaintiff's single theory of liability

- 16 -

4822-9162-7470.v1

is that Defendants engaged in a scheme to defraud investors, including by making misrepresentations and omissions about Stamps.com's relationship with the USPS and abuse of the USPS reseller program. *See, e.g.*, *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1128-29 (C.D. Cal. 2018) (approving use of an event study and out-of-pocket loss calculation to determine classwide damages tied to plaintiff's theory of liability – artificially inflated prices paid by the class for UTi stock during the class period based on the alleged misrepresentations/omissions); *Cooper*, 2018 WL 2117337, at *7 (approving Dr. Nye's event study method for calculating per-share damages and rejecting defendants' argument that the "methodology is insufficient because it fails to take into consideration what Defendants characterize as competing sets of misrepresentations"). Defendants urge the Court to accept a mischaracterization of Plaintiff's allegations, dismantling Plaintiff's unitary theory of liability into individual categories of misrepresentations. Opp. at 22-23.[13] This is wholly improper: not only does it ignore how damages for §10b claims are calculated (*i.e.* measuring the ***total*** amount of inflation in a stock on a given day by looking at what the price of the stock would be had the truth about the alleged misrepresentations been known), it is contrary to the law, which requires the Court to accept Plaintiff's allegations as pled in evaluating class certification. *See Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975); Nye Tr. at 115:3-13, 116:15-22; *Buttonwood Tree Value Partners, LP v. Sweeney*, 2013 WL 12125980, at *2 (C.D. Cal. Sept. 12, 2013) ("In determining whether certification is proper, a district court must take the substantive allegations of the complaint as true . . . .").

---

[13] Defendants' suggestion that Dr. Nye did not understand Plaintiff's theory of liability in offering his opinion that damages could be calculated on a class-wide basis is meritless. *Id.* at 23. Dr. Nye testified that he reviewed and considered the Court's motion to dismiss order in reaching his opinions, and described Plaintiff's theory of liability from an economic perspective, noting that there "may be a legal nuance" to how it is characterized in terms of being an "omissions" case. Niehaus Decl., Ex. 3 (Deposition Transcript of Zachary Nye, Ph.D., dated August 14, 2020) ("Nye Tr.") at 94:5-8, 95:14-22, 96:25-97:7, 102:5-13 (noting his understanding that Plaintiff's theory of liability is that Defendants were "basically not allegedly telling the truth about their relationship with the, you know, USPS").

- 17 -

4822-9162-7470.v1

Defendants' arguments that Plaintiff will be unable to disaggregate the artificial inflation resulting from the actionable misrepresentations and omissions from other purportedly confounding sources are not attacks on Plaintiff's damages model – they are a challenge to loss causation, which is not analyzed at the class certification stage. *See* Nye Rebuttal, ¶¶64, 69; *Halliburton*, 563 U.S. at 813; *SEB*, 335 F.R.D. at 288; *Di Donato*, 333 F.R.D. at 447-48 (finding event study and out-of-pocket damages model sufficient because "'regardless of how the finder of fact ultimately weighs the evidence and determines the appropriate percentage of the abnormal stock price movement to be applied as artificial inflation . . . the ***methodology*** for calculating damages will remain the same and apply equally to each class member.'") (emphasis in original).

Finally, Defendants' argument that Dr. Nye's well-accepted out-of-pocket damages methodology would lead to an "economically impossible result" also fundamentally misunderstands the purpose of an event study methodology. Opp. at 25; Nye Rebuttal, ¶¶70-73. The damages methodology that Dr. Nye proposes would measure investors' actual losses based on the prices they paid for Stamps.com stock and what the stock price would have been had the truth about Stamps.com's relationship with the USPS been known. Nye Rpt., ¶¶60-62. And, to the extent that Defendants wish to contest the specific amount of inflation in the stock price on a given day at summary judgment or trial, it will be an issue common to all Class members. *See Blackie*, 524 F.2d at 909-10.[14]

---

[14] Defendants' single-line argument that "in/out traders" must be excluded from the Class should be rejected as premature. Opp. at 2. Discovery has not yet been completed, and "[the plaintiffs] may prove that some of the truth 'leaked out' prior to the corrective disclosures and caused injury at an earlier date" such that in/out traders would also have been harmed by the alleged misconduct. *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1188 (N.D. Cal. 2017); *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 625 (N.D. Cal. 2018); *Buttonwood*, 2013 WL 12125980, at *15.

4822-9162-7470.v1

## IV.   CONCLUSION

This action is ideally suited for class treatment.  Defendants do not dispute that Plaintiff has satisfied the numerosity, adequacy, or commonality requirements of Rule 23(a), nor the superiority requirement of Rule 23(b)(3).  Their challenges to the remaining two requirements for class certification, that Plaintiff's claims be typical of the Class, and that common questions predominate, fail for the reasons described herein.  Accordingly, Plaintiff respectfully requests that the Court grant its motion for class certification, appoint Lead Plaintiff INPRS as Class Representative, and appoint Lead Counsel Robbins Geller Rudman & Dowd LLP as Class Counsel.

DATED:  October 15, 2020                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH
JASON A. FORGE
ERIC I. NIEHAUS
HILLARY B. STAKEM
KEVIN S. SCIARANI


                                         s/ ERIC I. NIEHAUS
                                         ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

- 19 -

4822-9162-7470.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 15, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ericn@rgrdlaw.com

- 20 -

4822-9162-7470.v1

**Mailing Information for a Case 2:19-cv-01828-MWF-SK Matt Karinski v. Stamps.com, Inc. et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christina Lucen Costley**
  christina.costley@kattenlaw.com,tamara.vazquez@katten.com,courtalertlax@katten.com

- **Jason A Forge**
  jforge@rgrdlaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com

- **John T Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,edewan@scott-scott.com,tlaughlin@scott-scott.com,aweas@scott-scott.com,efile@scott-scott.com

- **Adam C McCall**
  amccall@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw

- **Steven W Pepich**
  stevep@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Vincent Prongay**
  info@glancylaw.com,CLinehan@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com,rprongay@glancylaw.com

- **Jonathan Rotenberg**
  jonathan.rotenberg@katten.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Kevin S Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Hillary B Stakem**
  hstakem@rgrdlaw.com

- **Paul Satoshi Yong**
  paul.yong@kattenlaw.com,paula.phillips@katten.com,courtalertlax@katten.com,victoria.lippman@katten.com

- **Richard H Zelichov**
  richard.zelichov@katten.com,tamara.vazquez@katten.com,courtalertlax@katten.com,jonathan.rotenberg@katten.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

- 21 -