# Exhibit 2

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MATT KARINSKI, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

      vs.

STAMPS.COM, INC., KENNETH
MCBRIDE, KYLE HUEBNER, and JEFF
CARBERRY

      Defendants.

Case No. 2:19-cv-01828-MWF (SK)

---

**<u>DECLARATION OF NICHOLAS HANSEN</u>**

Nicholas Hansen, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am over the age of 18 and am fully competent to testify regarding the facts set forth in this declaration. I make this declaration under the penalty of perjury and, if called as a witness, I could and would personally testify thereto.

2.     I am a Lead Portfolio Manager at Disciplined Growth Investors (DGI) and have been employed at DGI since 2006. I know the following to be true based on my own personal knowledge.

3.     Disciplined Growth Investors, Inc. ("DGI") and the Indiana Public Retirement System ("INPRS") are parties to an Investment Management Agreement dated November 13, 2012 and a First Amendment to the Investment Management Agreement dated March 2, 2020. While the November 13, 2012 agreement had a five-year term with month-to-month extensions for a period not to exceed six months, the parties treated the November 12, 2012 agreement as the operative agreement between the parties until they signed the First Amendment on March 2, 2020. In accordance with these agreements, INPRS employed DGI to act as an investment advisor with discretion to manage, invest, and reinvest certain assets allocated to DGI. The agreed-upon strategy

for the assets allocated to DGI was and is to invest in DGI's Mid-Cap Growth portfolio, which invests in medium capitalization companies publicly traded on U.S. stock exchanges.

4.  In addition to its Mid-Cap Growth strategy, DGI also has a Small-Cap Growth strategy in which it invests client assets on a discretionary basis, as well as proprietary assets. DGI has owned (or had investment discretion for clients that owned) the common stock of Stamps.com Inc. ("Stamps") in its Small-Cap Portfolio since no later than December 31, 2013. As of March 31, 2017, DGI owned or had investment discretion over 397,394 shares of Stamps common stock. Between March 31, 2017 and October 31, 2018, DGI periodically sold shares of Stamps common stock that it owned directly or over which it had investment discretion, such that it held 395,447 shares on June 30, 2017, 330,982 shares on September 30, 2017, 329,189 shares on December 31, 2017, 326,810 shares on March 31, 2018, 288,861 shares on June 30, 2018 and 282,290 shares on October 31, 2018. This information is reported in SEC Forms 13-F that DGI filed quarterly with the SEC and can be found on the SEC's website (www.sec.gov).  DGI monitors and analyzes the SEC filings, earnings press releases, conference calls, and other publicly available information of portfolio holdings on an ongoing basis. DGI did not purchase any Stamps's stock for itself or for INPRS between May 3, 2017 and November 20, 2018 in reliance on any of Stamps's statements in SEC filings, earnings press releases, conference calls, or otherwise. DGI was actually selling Stamps's stock between March 2017 and October 2018 as disclosed in its Form 13-Fs.

5.  In November 2018, DGI made a decision to buy shares of Stamps's stock for its Mid-Cap Growth portfolio, including acquiring 27,841 shares on behalf of INPRS between November 21, 2018 and November 26, 2018. DGI then made further decisions to buy shares of Stamps's stock on behalf of INPRS acquiring 12,763 shares on or about February 25, 2019. DGI also purchased another 45,348 shares on behalf of INPRS between June 11, 2019 and June 26, 2019. With respect to this last group of purchases, DGI obtained specific written approval from the Chief Investment Officer of INPRS because, although DGI had discretion to invest for INPRS under the agreements, Stamps's stock was trading at a price such that the company's market capitalization was below the minimum specified by INPRS' investment policy.

7. Between 2016 through 2019, DGI had several one-on-one meetings or calls with Stamps's personnel in which the only participants were employees of Stamps and employees of DGI. Beginning in August 2017, through the present, DGI was aware of the allegations published by the Capitol Forum concerning the USPS and Stamps and considered that information along with information provided by Stamps and other publicly available information. As a result of this review, DGI has been aware since no later than August 2017 that there was public information indicating that the USPS was analyzing and considering changes to what is regularly described as the USPS "reseller program" in part based on purported concerns that the USPS had with how Stamps was using the "reseller program."

8. During the period from May 3, 2017 through May 8, 2019, DGI reviewed Stamps's risk disclosures in its Form 10-Ks and Form 10-Qs, which contained certain information relating to Stamps's contracts with the USPS, reseller's contracts with the USPS, and Stamps's contracts with the resellers. In its Form 10-Ks filed on March 1, 2017 and February 28, 2018, Stamps stated that "[t]he USPS could modify or terminate agreements and other financial compensation arrangements, which would have an adverse effect on our revenues and operating results" and "[s]trategic business partners or carriers could modify or terminate agreements and other financial compensation arrangements, which could materially adversely affect our results of operations and prospects." In the February 28, 2018 10-K, Stamps stated that "[w]e also earn compensation by offering customers a discounted postage rate that is provided to the customers by our integration partners. If the USPS decides to withdraw certain discounts or even remove the discounts entirely, our revenue and operating results will suffer" and "there can be no assurance that our integration partners will continue to have access to such discounts or that they will continue to make them available to our customers on favorable terms or at all." Stamps included a risk disclosure in its Form 10-Q filed on August 8, 2018 stating: "[T]here is a risk that renegotiation is unsuccessful and leads to materially less favorable terms or that the USPS decides to not renew one or more of these financial compensation arrangements. In such case, our revenue and operating results will be materially affected."

Dated: August 28, 2020

_____

Nicholas Hansen

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

MATT KARINSKI, Individually and on
Behalf of All Others Similarly Situated,

     Plaintiff,                    Case No. 2:19-cv-01828-MWF (SK)

     vs.

STAMPS.COM, INC., KENNETH
MCBRIDE, KYLE HUEBNER, and
JEFF CARBERRY

     Defendants.

---

### DECLARATION OF ROB NICOSKI

Rob Nicoski, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am over the age of 18 and am fully competent to testify regarding the facts set forth in this declaration. I make this declaration under the penalty of perjury and, if called as a witness, I could and would personally testify thereto.

2.     I am a Lead Portfolio Manager at Disciplined Growth Investors (DGI). I know the following to be true based on my own personal knowledge.

3.     Disciplined Growth Investors, Inc. ("DGI") and the Indiana Public Retirement System ("INPRS") are parties to an Investment Management Agreement dated November 13, 2012 and a First Amendment to the Investment Management Agreement dated March 2, 2020. While the November 13, 2012 agreement had a five-year term with month-to-month extensions for a period not to exceed six months, the parties treated the November 12, 2012 agreement as the operative agreement between the parties until they signed the First Amendment on March 2, 2020. In accordance with these agreements, INPRS employed DGI to act as an investment advisor with discretion to manage, invest, and reinvest certain assets allocated to DGI. The agreed-upon strategy for the assets allocated to DGI was and is to invest in DGI's Mid-Cap Growth portfolio,

which invests in medium capitalization companies publicly traded on U.S. stock exchanges.

4.      In addition to its Mid-Cap Growth strategy, DGI also has a Small-Cap Growth strategy in which it invests client assets on a discretionary basis, as well as proprietary assets. DGI has owned (or had investment discretion for clients that owned) the common stock of Stamps.com Inc. ("Stamps") in its Small-Cap Portfolio since no later than December 31, 2013. As of March 31, 2017, DGI owned or had investment discretion over 397,394 shares of Stamps common stock. Between March 31, 2017 and October 31, 2018, DGI periodically sold shares of Stamps common stock that it owned directly or over which it had investment discretion, such that it held 395,447 shares on June 30, 2017, 330,982 shares on September 30, 2017, 329,189 shares on December 31, 2017, 326,810 shares on March 31, 2018, 288,861 shares on June 30, 2018 and 282,290 shares on October 31, 2018. This information is reported in SEC Forms 13-F that DGI filed quarterly with the SEC and can be found on the SEC's website (www.sec.gov). DGI monitors and analyzes the SEC filings, earnings press releases, conference calls, and other publicly available information of portfolio holdings on an ongoing basis. DGI did not purchase any Stamps's stock for itself or for INPRS between May 3, 2017 and November 20, 2018 in reliance on any of Stamps's statements in SEC filings, earnings press releases, conference calls, or otherwise. DGI was actually selling Stamps's stock between March 2017 and October 2018 as disclosed in its Form 13-Fs.

5.      In November 2018, DGI made a decision to buy shares of Stamps's stock for its Mid-Cap Growth portfolio, including acquiring 27,841 shares on behalf of INPRS between November 21, 2018 and November 26, 2018. DGI then made further decisions to buy shares of Stamps's stock on behalf of INPRS acquiring 12,763 shares on or about February 25, 2019. DGI also purchased another 45,348 shares on behalf of INPRS between June 11, 2019 and June 26, 2019. With respect to this last group of purchases, DGI obtained specific written approval from the Chief Investment Officer of INPRS because, although DGI had discretion to invest for INPRS under the agreements, Stamps's stock was trading at a price such that the company's market capitalization was below the minimum specified by INPRS' investment policy.

7.      Between 2016 through 2019, DGI had several one-on-one meetings or calls with Stamps's personnel in which the only participants were employees of Stamps and employees of DGI. Beginning in August 2017, through the present, DGI was aware of the allegations published by the Capitol Forum concerning the USPS and Stamps and considered that information along with information provided by Stamps and other publicly available information. As a result of this review, DGI has been aware since no later than August 2017 that there was public information indicating that the USPS was analyzing and considering changes to what is regularly described as the USPS "reseller program" in part based on purported concerns that the USPS had with how Stamps was using the "reseller program."

8.      During the period from May 3, 2017 through May 8, 2019, DGI reviewed Stamps's risk disclosures in its Form 10-Ks and Form 10-Qs, which contained certain information relating to Stamps's contracts with the USPS, reseller's contracts with the USPS, and Stamps's contracts with the resellers. In its Form 10-Ks filed on March 1, 2017 and February 28, 2018, Stamps stated that "[t]he USPS could modify or terminate agreements and other financial compensation arrangements, which would have an adverse effect on our revenues and operating results" and "[s]trategic business partners or carriers could modify or terminate agreements and other financial compensation arrangements, which could materially adversely affect our results of operations and prospects." In the February 28, 2018 10-K, Stamps stated that "[w]e also earn compensation by offering customers a discounted postage rate that is provided to the customers by our integration partners. If the USPS decides to withdraw certain discounts or even remove the discounts entirely, our revenue and operating results will suffer" and "there can be no assurance that our integration partners will continue to have access to such discounts or that they will continue to make them available to our customers on favorable terms or at all." Stamps included a risk disclosure in its Form 10-Q filed on August 8, 2018 stating: "[T]here is a risk that renegotiation is unsuccessful and leads to materially less favorable terms or that the USPS decides to not renew one or more of these financial compensation arrangements. In such case, our revenue and operating results will be materially affected."

**Dated: August 27, 2020**

Rob Nicoski

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MATT KARINSKI, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

    vs.

STAMPS.COM, INC., KENNETH
MCBRIDE, KYLE HUEBNER, and JEFF
CARBERRY

        Defendants.

Case No. 2:19-cv-01828-MWF (SK)

## DECLARATION OF FREDERICK MARTIN

Frederick Martin, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am over the age of 18 and am fully competent to testify regarding the facts set forth in this declaration. I make this declaration under the penalty of perjury and, if called as a witness, I could and would personally testify thereto.

2.     I am a Lead Portfolio Manager at Disciplined Growth Investors (DGI). I know the following to be true based on my own personal knowledge.

3.     Disciplined Growth Investors, Inc. ("DGI") and the Indiana Public Retirement System ("INPRS") are parties to an Investment Management Agreement dated November 13, 2012 and a First Amendment to the Investment Management Agreement dated March 2, 2020. While the November 13, 2012 agreement had a five-year term with month-to-month extensions for a period not to exceed six months, the parties treated the November 12, 2012 agreement as the operative agreement between the parties until they signed the First Amendment on March 2, 2020. In accordance with these agreements, INPRS employed DGI to act as an investment advisor with discretion to manage, invest, and reinvest certain assets allocated to DGI. The agreed-upon

strategy for the assets allocated to DGI was and is to invest in DGI's Mid-Cap Growth portfolio, which invests in medium capitalization companies publicly traded on U.S. stock exchanges.

4. In addition to its Mid-Cap Growth strategy, DGI also has a Small-Cap Growth strategy in which it invests client assets on a discretionary basis, as well as proprietary assets. DGI has owned (or had investment discretion for clients that owned) the common stock of Stamps.com Inc. ("Stamps") in its Small-Cap Portfolio since no later than December 31, 2013. As of March 31, 2017, DGI owned or had investment discretion over 397,394 shares of Stamps common stock. Between March 31, 2017 and October 31, 2018, DGI periodically sold shares of Stamps common stock that it owned directly or over which it had investment discretion, such that it held 395,447 shares on June 30, 2017, 330,982 shares on September 30, 2017, 329,189 shares on December 31, 2017, 326,810 shares on March 31, 2018, 288,861 shares on June 30, 2018 and 282,290 shares on October 31, 2018. This information is reported in SEC Forms 13-F that DGI filed quarterly with the SEC and can be found on the SEC's website (www.sec.gov). DGI monitors and analyzes the SEC filings, earnings press releases, conference calls, and other publicly available information of portfolio holdings on an ongoing basis. DGI did not purchase any Stamps's stock for itself or for INPRS between May 3, 2017 and November 20, 2018 in reliance on any of Stamps's statements in SEC filings, earnings press releases, conference calls, or otherwise. DGI was actually selling Stamps's stock between March 2017 and October 2018 as disclosed in its Form 13-Fs.

5. In November 2018, DGI made a decision to buy shares of Stamps's stock for its Mid-Cap Growth portfolio, including acquiring 27,841 shares on behalf of INPRS between November 21, 2018 and November 26, 2018. DGI then made further decisions to buy shares of Stamps's stock on behalf of INPRS acquiring 12,763 shares on or about February 25, 2019. DGI also purchased another 45,348 shares on behalf of INPRS between June 11, 2019 and June 26, 2019. With respect to this last group of purchases, DGI obtained specific written approval from the Chief Investment Officer of INPRS because, although DGI had discretion to invest for INPRS under the agreements, Stamps's stock was trading at a price such that the company's market capitalization was below the minimum specified by INPRS' investment policy.

7.      Between 2016 through 2019, DGI had several one-on-one meetings or calls with Stamps's personnel in which the only participants were employees of Stamps and employees of DGI.  Beginning in August 2017, through the present, DGI was aware of the allegations published by the Capitol Forum concerning the USPS and Stamps and considered that information along with information provided by Stamps and other publicly available information. As a result of this review, DGI has been aware since no later than August 2017 that there was public information indicating that the USPS was analyzing and considering changes to what is regularly described as the USPS "reseller program" in part based on purported concerns that the USPS had with how Stamps was using the "reseller program."

8.      During the period from May 3, 2017 through May 8, 2019, DGI reviewed Stamps's risk disclosures in its Form 10-Ks and Form 10-Qs, which contained certain information relating to Stamps's contracts with the USPS, reseller's contracts with the USPS, and Stamps's contracts with the resellers. In its Form 10-Ks filed on March 1, 2017 and February 28, 2018, Stamps stated that "[t]he USPS could modify or terminate agreements and other financial compensation arrangements, which would have an adverse effect on our revenues and operating results" and "[s]trategic business partners or carriers could modify or terminate agreements and other financial compensation arrangements, which could materially adversely affect our results of operations and prospects." In the February 28, 2018 10-K, Stamps stated that "[w]e also earn compensation by offering customers a discounted postage rate that is provided to the customers by our integration partners. If the USPS decides to withdraw certain discounts or even remove the discounts entirely, our revenue and operating results will suffer" and "there can be no assurance that our integration partners will continue to have access to such discounts or that they will continue to make them available to our customers on favorable terms or at all." Stamps included a risk disclosure in its Form 10-Q filed on August 8, 2018 stating: "[T]here is a risk that renegotiation is unsuccessful and leads to materially less favorable terms or that the USPS decides to not renew one or more of these financial compensation arrangements. In such case, our revenue and operating results will be materially affected."

Dated: August 28, 2020

_____

Frederick Martin