# Exhibit 9

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____
                              )
MATT KARINSKI, individually   )
and on Behalf of All Others   )
Similarly Situated,           )
                              )
        Plaintiff,            )   No. 2:19-cv-01828-MWF(SK)
                              )
    vs.                       )
                              )
STAMPS.COM, INC., KENNETH     )
MCBRIDE, KYLE HUEBNER, and    )
JEFF CARBERRY,                )
                              )
        Defendants.           )
_____)

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

REMOTE VIDEOTAPED DEPOSITION

30(b)(6) WITNESS FOR

INDIANA PUBLIC RETIREMENT SYSTEM

DAVID W. STELSEL III

Thursday, July 30, 2020

Volume I

Reported by:

NADIA NEWHART

CSR No. 8714

Job No. 4199448

PAGES 1 - 340

Page 1

Exhibit 9 at 1

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____
                              )
MATT KARINSKI, individually   )
and on Behalf of All Others   )
Similarly Situated,           )
                              )
          Plaintiff,          )   No. 2:19-cv-01828-MWF(SK)
                              )
     vs.                      )
                              )
STAMPS.COM, INC., KENNETH     )
MCBRIDE, KYLE HUEBNER, and    )
JEFF CARBERRY,                )
                              )
          Defendants.         )
_____)

        Remote videotaped deposition of DAVID W. STELSEL III, Volume I, taken on behalf of Defendants, with all participants appearing remotely via videoconference, beginning at 11:05 a.m. and ending at 7:24 p.m. on Thursday, July 30, 2020, before NADIA NEWHART, Certified Shorthand Reporter No. 8714.

Veritext Legal Solutions
866 299-5127

Exhibit 9 at 2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

APPEARANCES:


For Plaintiff:

    ROBBINS GELLER RUDMAN & DOWD, LLP

    BY:  ERIC I. NIEHAUS

    Attorney at Law

    655 West Broadway, Suite 1900

    San Diego, California 92101

    619-231-1058

    ericn@rgrdlaw.com

    (Videoconference appearance.)


For Defendants:

    KATTEN MUCHIN ROSENMAN, LLP

    BY:  PAUL S. YONG

    BY:  CHRISTINA L. COSTLEY

    BY:  BRUCE G. VANYO

    Attorneys at Law

    2029 Century Park East, Suite 2600

    Los Angeles, California 90067-3012

    310-788-4464

    paul.yong@kattenlaw.com

    christina.costley@kattenlaw.com

    bruce@katten.com

    (Videoconference appearance.)

Page 3

Exhibit 9 at 3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

APPEARANCES (Continued):


Also Present:

JEFFREY GILL, ESQ., in-house counsel for INPRS

(Videoconference appearance.)


Videographer:

JEFF NICHOLS

(Videoconference appearance.)

Page 4

Exhibit 9 at 4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Q   Of the public equities asset class.

Would you consider it high or low?

A   Relative to the other asset classes in the INPRS portfolio?

Q   Yes.                                            02:02:11

A   It is middle high.  It's above the middle but not the top.

Q   How many positions under the top do you think it is?

A   Two or three.                                   02:02:25

Q   Mr. Stelsel, do you consider INPRS to be aggressive or conservative when it comes to how it manages its portfolio in public companies?

A   Relative to what?

Q   Relative to its peers.                          02:02:41

A   How it invests public equities?  Probably median among peers.

Q   And what is your basis for that evaluation?

A   Relative to data I've seen on other -- other plans.                                             02:03:00

Q   Mr. Stelsel, what role, if any, does the public equity group have in selecting particular securities that are purchased on behalf of INPRS?

A   There -- there is no selection of individual securities by INPRS.                               02:03:18

Page 138

Exhibit 9 at 5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Q    If INPRS is not selecting individual securities, then who is?

A    The investment managers, the external -- external investment managers.

Q    And these external investment managers are third parties, correct?    02:03:30

A    They -- yes.

Q    They aren't employees of INPRS?

A    That is correct.

Q    Would you say that the decision as to which individual securities to invest in is at the full discretion of INPRS' third party investment managers?    02:03:41

A    Yes.

Q    Full discretion?    02:04:03

A    Yes.

Q    Would you say that the timing is also --

A    I -- I would like to revisit that.  It is at the discretion; however, within our contracts, there are sometimes limitations.    02:04:18

Q    And what are those limitations?

A    An example is state law not allowing securities to be purchased under Sudan anti-terror laws and anti-Israel boycott and divestment statute.

Q    Other than the restriction on purchasing    02:04:37

Page 139

Exhibit 9 at 6

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

securities related to the Sudan and Israel boy- --

anti-Israel boycott, are there any other

limitations?

    A    On individual securities, no -- well, I mean,

I -- I should say it -- again, it's in the                02:05:00

contracts.  It will depend upon the manager.  There

may be -- there may be -- it may have to be within

an index, benchmark index.

        It may have to be within a market cap range.

There -- there -- it depends on the investment          02:05:16

manager.  There may be ranges, but on an individual

basis, it all -- it is within the investment

management agreement with the manager.

    Q    Mr. Stelsel, does INPRS delegate full

discretion regarding the timing of its purchases of    02:05:35

individual securities?

    A    Yes.

    Q    Are there any limitations?

    A    No.  The only -- no, no.

    Q    Okay.                                          02:05:50

    A    I was just going to say that we --

    Q    Mr. Stelsel, you've answered my question.

    A    Oh, yeah.  Please repeat the question, and

I'll answer it.

    Q    No, you've -- you've answered it.              02:06:03

Page 140

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

A   Okay.

Q   It was a yes-or-no question.

Mr. Stelsel, does INPRS dele- -- fully delegate the decision-making process to its third party investment advisors regarding the quantity of a particular security purchase?   02:06:13

A   Yes.

Q   Are there any limitations?

A   Yes.

Q   What are those limitations?   02:06:23

A   The limitations are within the investment management agreement and will depend upon the manager, generally benchmark related to size.

Q   When securities are purchased on INPRS' behalf by its investment advisors, who owns those securities?   02:06:39

A   IN- -- INPRS and -- yeah.

Q   Do the investment advisors own the securities?

A   They do not.   02:06:54

Q   Would you say that the investment advisors are fiduciaries for INPRS?

A   Yes.

Q   Is it fair to say that INPRS fully delegates the decision as to which stocks to trade, when to   02:07:12

Page 141

Exhibit 9 at 8

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

trade them and in what quantities to its third party investment managers?

A   Yes, depending upon the terms within the con- -- individual contracts.

Q   Do you know whether INPRS' transactions in   02:07:29 Stamps securities between February 2016 and December 2019 were made by INPRS' third party investment advisors?

A   I want to make sure I understood the full question.  Can you please repeat.   02:07:45

MR. YONG:  Nadia, can you repeat the question, please.

THE REPORTER:  Sure.

(Record read as follows:

"Q:  Do you know whether INPRS'   02:07:29 transactions in Stamps securities between February 2016 and December 2019 were made by INPRS' third party investment advisors?")

THE WITNESS:  Yes, they were.   02:08:06

BY MR. YONG:

Q   Were all of the transactions made by INPRS' third party investment advisors?

A   Yes.

Q   And who were those investment advisors?   02:08:13

Page 142

Veritext Legal Solutions
866 299-5127

Exhibit 9 at 9

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

discretion in transacting in securities on INPRS'

behalf?

    A    They have discretion, but it's unique because

it's a index, a passive strategy with, again,

discretion relative to the contract.                03:32:39

    Q    But does RhumbLine have full discretion as to

when to purchase securities on INPRS' behalf?

    A    They do, yes.

    Q    And do they have full discretion as to in

what quantity to purchase securities on INPRS'      03:32:57

behalf?

    A    Within the context of the contract, yes.

    Q    When was the first time that INPRS learned

that RhumbLine was transacting in Stamps securities

on its behalf?                                      03:33:08

    A    Me personally, I became -- became aware in

July.

    Q    July of what year?

    A    2020.

    Q    And that's this month, correct?            03:33:32

    A    That is correct.

    Q    Did you first become aware that INPRS --

strike that.

        Was it counsel that first informed you that

RhumbLine had invested in Stamps securities on      03:33:50

Page 199

Exhibit 9 at 10

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

or part of the July 2019 to July 2020 watch list period?

A    I would have -- if you could direct me to those documents, I could -- could show you specifically.  I just don't recall the date, but I recall -- I know that date.    03:49:35

Q    Would you say that Discipline Growth has full discretion in trading securities on INPRS' behalf?

A    Within the context of the contract, yes.

MR. YONG:  I think we can take a short break for lunch now.  Can we go off the record?    03:49:54

THE VIDEOGRAPHER:  We are going off the record.  The time is 3:50.

(Lunch recess.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 4:23.    04:23:33

BY MR. YONG:

Q    Welcome back, Mr. Stelsel.

So we're back from lunch now.  I now want to ask you some questions about this lawsuit.    04:23:44

At a high level what is INPRS' understanding of what this lawsuit is about?

A    It is about Stamps.com and misleading statements and omissions by three named defendants.

Q    Is it your understanding that this lawsuit is    04:24:06

Page 213

Exhibit 9 at 11

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: this 14 day of August, 2020.

_Nadia Newhart_

NADIA NEWHART

CSR NO. 8714

Page 340

Exhibit 9 at 12

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

Exhibit 9 at 13