UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-1828-MWF (SKx)          **Date:** November 9, 2020
**Title:** Matt Karinski v. Stamps.com, Inc., et al.

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**     ORDER GRANTING MOTION FOR CLASS CERTIFICATION [119]

    Before the Court is Lead Plaintiff Indiana Public Retirement System's ("Lead Plaintiff" or "Plaintiff") Motion for Class Certification (the "Motion"), filed on June 29, 2020. (Docket No. 119). Defendants Stamps.com, Inc. ("Stamps" or the "Company"), Kenneth McBride, Kyle Huebner, and Jeff Carberry (collectively, "Individual Defendants") filed an opposition on August 31, 2020. (Docket No. 157). Lead Plaintiff filed a reply on October 15, 2020. (Docket No. 161).

    The Court has read and considered the papers filed in connection with the motions and held a telephonic hearing on November 2, 2020, pursuant to General Order 20-09 arising from the COVID-19 pandemic.

    The Motion is **GRANTED**. The proposed Class satisfies all requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) for certification. Rule 23(g) supports appointment of Robbin Geller as Class Counsel. Defendants cobbled together technical arguments based on nonbinding caselaw and their expert's conclusions. The Court approached the Motion in that light and addressed these arguments. It is important, however, to step back from these arguments, as Plaintiff's counsel did at the hearing. Plaintiff's counsel correctly argued that, given the interrelationship of Stamps and the Postal Service, common sense dictates that this Motion must be granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-1828-MWF (SKx)**                **Date:  November 9, 2020**
**Title:     Matt Karinski v. Stamps.com, Inc., et al.**

## I.     **BACKGROUND**

The facts and procedural history are well known to all parties.  Therefore, the Court limits its recitation of facts to those necessary for context in ruling on the motions.

On March 13, 2019, Plaintiff Matt Karinski commenced this action.  (*See generally* Complaint (Docket No. 1)).  On June 5, 2019, the Court appointed Indiana Public Retirement System as Lead Plaintiff.  (Docket No. 62).  On August 5, 2019, Lead Plaintiff filed a Consolidated Complaint ("Complaint").  (Docket No. 71).  Lead Plaintiff brings a securities fraud class action on behalf of all persons who purchased the common stock of Stamps.com between May 3, 2017, and May 8, 2019, (the "Class Period") and were harmed thereby (the "Class").  (Complaint ¶¶ 1, 135).

The Complaint alleges that Stamps exploited its contractual relationships with the USPS by providing customers unauthorized-discounted USPS shipping under what was known as the "reseller program."  (*Id.* ¶ 2).  Although Stamps publicly represented throughout the Class Period that its strong operating performance was the result of the Company's healthy partnership with the USPS, the Complaint alleges that a majority of Stamps' reported revenue and earnings growth during the Class Period was the product of undisclosed, improper, and unsustainable business practices.  (*Id.* ¶¶ 4, 5).  The Complaint alleges that Defendants made a number of material misrepresentations and omissions.  (*Id.* ¶¶ 65-97).  Specifically, the Complaint alleges that Defendants made the following misrepresentations:

- On May 3, 2017, Defendant McBride told investors and analysts on the Company's first quarter 2017 conference call that they had a "great partnership" with the USPS, and that the "USPS is very happy with the approach they've taken and business model.  They're very happy with the relationship with Stamps.com.  We talk to them constantly, to the most senior folks there.  So we're happy and they're happy."  (*Id.* ¶¶ 68-70);

- On the Company's August 1, 2018 conference call, McBride dismissed market concerns about the investigation, assuring analysts that based on the Company's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | |
|---|---|
| **Case No.** CV 19-1828-MWF (SKx) | **Date:** November 9, 2020 |
| **Title:** Matt Karinski v. Stamps.com, Inc., et al. | |

conversations, "the [Task Force] report will come out strongly in favor of the partnerships between the USPS and private industry like the partnerships we've had with the USPS." (*Id.* ¶ 89);

- On August 2, 2017, Defendants issued a release stating: "We continue to enjoy a great partnership with the Postal Service and feel that we have created a sustainable win-win model for both of us, which will result in a continued growth of USPS packages and ecommerce and online postage more generally." (*Id.* ¶ 74);

- On October 31, 2018, McBride stated that the Company "expect[s] that updates to our agreements with the USPS will continue to reflect the critical role that we play in their e-commerce package business." (*Id.* ¶ 92).

On May 8, 2019, Stamps announced it was lowering its earnings guidance because of potential unfavorable negotiations and terminations of certain contracts between the USPS and the Company's reseller partners. (*Id.* ¶ 12). As a result of the news, the Company's stock price dropped another $46 per share on record trading volume of 16.8 million shares, a decline of over 56%. (*Id.*). This drop, combined with the steep decline on February 21, 2019, amounted to a 76% loss in value in less than three months, as the truth regarding Stamps' deteriorating relationship with the USPS was revealed. (*Id.*).

The Complaint asserts three claims: (1) violations of § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 (against all Defendants); (2) violations of § 20(a) of the 1934 Act (against Individual Defendants); and (3) violations of the § 20(a) of the 1934 Act (against Defendant McBride only). (*Id.* ¶¶ 141-169).

On January 17, 2020, the Court issued an Order denying Defendants' motion to dismiss ("MTD Order"). (Docket No. 89). In the MTD Order, the Court noted that the alleged misrepresentation or omission in Plaintiff's Complaint center around three theories: "(1) Stamps' alleged abuse of the USPS reseller program; (2) Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | | | |
|---|---|---|---|
| **Case No.** | CV 19-1828-MWF (SKx) | **Date:** | November 9, 2020 |
| **Title:** | Matt Karinski v. Stamps.com, Inc., et al. | | |

representations that its partnership with the USPS was 'strong'; and (3) Defendants' historical results and growth estimates." (*See id.* at 18).

The Court determined that Plaintiff sufficiently alleged one of these theories. Specifically, Plaintiff sufficiently alleged that "Defendants' representation that it had a strong relationship with USPS or that USPS was 'very happy' with Plaintiff's business practice was [allegedly] misleading." (*Id.* at 25). However, the Court determined that Plaintiff failed to demonstrate the two other theories that: (1) Defendants omitted material information about Stamps' alleged abuse of the USPS reseller program; and (2) "Stamps' discussion of, and positive statements about, its past and future financial results were misleading." (*Id.* at 19, 26).

## II. **DISCUSSION**

Lead Plaintiff seeks to certify a class consisting of:

> All persons who purchased or otherwise acquired Stamps.com, Inc. ("Stamps.com" or the "Company") common stock between May 3, 2017, and May 8, 2019, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are Defendants and their immediate families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

(Motion at 7).

Federal Rule of Civil Procedure 23(a) requires the putative class to meet four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). In addition, the proposed class must satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-1828-MWF (SKx)                    Date:  November 9, 2020
Title:    Matt Karinski v. Stamps.com, Inc., et al.

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

    **A.**    **Numerosity**

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable . . . ."  Fed. R. Civ. P. 23(a)(1).  Plaintiff presents evidence that, on average, over 2.3 million shares of Stamps stock were exchanged on a weekly basis during the Class Period.  (Declaration of Eric Niehaus ("Niehaus Decl."), Ex. 2, Expert Report of Zachary Nye, Ph.D. ("Nye Rpt.") ¶ 25 (Docket No. 122-2)).  Defendants do not dispute numerosity.  Given the weekly trading volume of 2.3 million shares, the Court determines that the numerosity requirement is satisfied.  *Maiman v. Talbott*, SACV 09-00012 AG (ANx), 2011 WL 13065750, at *3 (C.D. Cal. Aug. 29, 2011) (Given the weekly trading volume of 1.32 million shares, "common sense dictates that the proposed class is surely sufficiently large to make joinder impracticable.") (citation omitted).

    **B.**    **Commonality**

Rule 23(a)(2) requires that the case present "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), clarified that to demonstrate commonality, the putative class must show that their claims "depend upon a common contention . . . that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.  That requirement is met here, as each member of the proposed Class would seek resolution of the same legal and factual issues at trial, whether:  (1) Defendants violated the Exchange Act; (2) Defendants misrepresented and/or omitted material facts; (3) Defendants knowingly or recklessly disregarded that their statements were misleading; (4) the price of Stamps common stock was artificially inflated as a result of Defendants' allegedly misleading statements; (5) Defendant McBride engaged in illicit insider trading of Stamps stock.  (Motion at 10).

    **C.**    **Typicality**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-1828-MWF (SKx)          **Date:** November 9, 2020
**Title:** Matt Karinski v. Stamps.com, Inc., et al.

Rule 23(a)(3) requires the putative class to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claims of the representative parties need not be identical to those of the other putative class members; "[i]t is enough if their situations share a 'common issue of law or fact,' and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (internal citations omitted).

In cases alleging violations of the Exchange Act, "so long as a putative class representative can show that he purchased the stock at the market price and did not consider any unique, *e.g.* insider, information in deciding to purchase it, the putative class representative's claims will likely be typical of the class." *Todd v. STAAR Surgical Corp.*, CV 14-05263-MWF (RZx), 2017 WL 821662 (C.D. Cal. Jan. 5, 2017), at *4. Typicality is satisfied even if a class representative's "damages differ from the damages of some class members." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Defendants argue that Lead Plaintiff and its investment advisor's unique trading patterns of Stamps stock render Lead Plaintiff atypical. (Opposition at 8). This argument is unpersuasive because it relies on Lead Plaintiff's holding in Stamps stock as of June 5, 2020, more than a year after the Class Period ends. *See Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C 01-20418 JW, 2004 WL 5326262, at *3 (N.D. Cal. May 27, 2004) ("post-class period purchases do not defeat typicality").

Defendants next argue that Lead Plaintiff cannot satisfy typicality because Lead Plaintiff bought 71% its stock after the alleged corrective disclosures on February 21, 2019, and May 8, 2019. (Opposition at 8) (citing *Erickson v. Snap, Inc.*, 2017 U.S. Dist. LEXIS 221050, at *8-9 (C.D. Cal. Sep. 18, 2017) (holding that a plaintiff was atypical because it purchased 60% of its shares post-disclosure). Again, Defendants' argument is misleading because Defendants' calculations improperly include shares purchased after the Class Period ended. Plaintiff purchased 12,773 shares after the first alleged partial corrective disclosure, representing 31% of the total shares that Lead

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-1828-MWF (SKx)          **Date:** November 9, 2020
**Title:** Matt Karinski v. Stamps.com, Inc., et al.

Plaintiff purchased during the Class Period. (*See* Schedule of Securities Transactions (Docket No. 76)). The Court determines that Lead Plaintiff's post-disclosure purchases do not defeat typicality because they are not disproportionate to its prior purchases or indicative of non-reliance on the alleged misstatements. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020) ("Plaintiff's post-disclosure purchases during the remainder of the class period are neither disproportionate to its prior purchases, nor indicative of the purported fact that plaintiff did not rely on the market to value the shares following the [alleged corrective] disclosure."); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 347-48 (C.D. Cal. 2015) ("many district courts in the Ninth Circuit have held that post-disclosure or even post-class period purchases do not necessarily defeat typicality"). Lead Plaintiff has presented evidence demonstrating that Lead Plaintiff's investment managers relied on the alleged misrepresentations and the integrity of the market price just like all other members of the Class. (*See* Declarations of Nicholas Hansen, Rob Nicoski, and Frederick Martin ("DGI Decls.") ¶¶ 4, 7 (Docket No. 159-3)).

      Defendants also argue that Lead Plaintiff cannot satisfy typicality because its investment advisors were "net sellers" for most of the putative class period, potentially subjecting Lead Plaintiff to unique defenses. (Opposition at 9). Whether a plaintiff was a net seller is not a relevant consideration at the class certification stage. *See Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262, at *3 (N.D. Cal. May 27, 2004) (rejecting argument that proposed class representative was atypical because "under [t]he FIFO accounting method, the notion of 'net seller' would appear to be largely irrelevant" and "post-class period purchases do not defeat typicality"). Even if being a net seller were a relevant consideration, Lead Plaintiff was not a net seller during the Class Period. (Schedule of Securities Transactions (Docket No. 76)).

      Finally, Defendants argue that one of Lead Plaintiff's investment advisors had individual meetings with Stamps that give rise to unique defenses. (Opposition at 9). Because Defendant has not argued that Lead Plaintiff's investment advisor obtained material, non-public information from these meetings, the Court determines that these meetings do not defeat typicality. *Beach v. Healthways, Inc.*, No. 3:08–0569, 2010

---

**CIVIL MINUTES—GENERAL**                7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-1828-MWF (SKx)**                **Date:  November 9, 2020**
**Title:     Matt Karinski v. Stamps.com, Inc., et al.**

WL 1408791 (M.D. Tenn. Apr. 2, 2010) ("Mere communication with corporate insiders will not render a class representative atypical for class certification purposes absent the exchange of non-public information.").

Lead Plaintiff purchased Stamps securities at market prices during the Class Period and was injured by the same type of allegedly materially misleading statements that injured all proposed Class members.  (*See* Schedule of Securities Transactions; DGI Decls. ¶¶ 4, 7).  Lead Plaintiff's claims are premised on the same facts and legal theories as the other Class members.  (*See* Motion at 11).  Accordingly, the typicality requirement is satisfied.

### D. <u>Adequacy</u>

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In making this determination, courts must consider two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Additionally, "the honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation omitted).

As to the first prong, the Court perceives no obvious conflicts between Lead Plaintiff and the other Class members.  As to the second prong, the Court is satisfied that Lead Plaintiff and its counsel have vigorously prosecuted this action, Plaintiff's counsel have substantial experience litigating similar types of class actions, and there is no reason to believe that Plaintiffs and their counsel would not vigorously pursue this action on behalf of the Class.  The adequacy requirement is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No. CV 19-1828-MWF (SKx)          Date: November 9, 2020

Title:     Matt Karinski v. Stamps.com, Inc., et al.

      All of the requirements imposed by Rule 23(a) are therefore satisfied. The Court next considers whether the additional requirements of Rule 23(b)(3) are met.

### E.     Predominance

      "The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). That is, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

      With respect to the putative Class's §10(b) claim, Defendants argue that reliance on the alleged misrepresentations cannot be proved through common evidence. Plaintiff's reliance argument relies on the fraud-on-the-market theory, which asserts a plaintiff can show indirect reliance on misrepresentations by establishing reliance on stock price:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic, Inc. v. Levinson*, 485 U.S. 224, 242-43 (1988) (citing *Peil v. Speiser,* 806 F.2d 1154, 1160-61 (3d Cir. 1986)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-1828-MWF (SKx)  **Date:** November 9, 2020
**Title:**   Matt Karinski v. Stamps.com, Inc., et al.

The Supreme Court in *Basic* applied a rebuttable presumption of reliance based in part on the fraud-on-the-market theory. *See id.* at 247. The *Basic* presumption allows a plaintiff to substitute reliance on a company's stock price for actual reliance on a company's false statement so long as a company's stock trades in an efficient market. *Id.* at 246-47. The presumption is premised on the fact that "the market price of shares traded on well-developed markets reflects all publicly available information" and that investors in such markets transact "in reliance on the integrity of that price." *Id.* Application of the *Basic* presumption dispenses with the requirement that each Class member prove individual reliance on Defendants' alleged misstatements or omissions. *See id.* at 241-42.

Defendants do not contest that Plaintiff has satisfied the elements necessary to invoke the *Basic* presumption. (Opposition at 10). Instead, Defendants seek to rebut the *Basic* presumption by demonstrating by a preponderance of the evidence that the alleged misrepresentations did not have any impact on the price of Stamps stock. (Opposition at 10-11) (citing *Arkansas Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 486 (2d Cir. 2018) ("If a defendant shows that an 'alleged misrepresentation did not, for whatever reason, actually affect the market price' of defendant's stock, 'there is no grounding for any contention that the investor indirectly relied on that misrepresentation through his reliance on the integrity of the market price.'") (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 264, 283 (2014)).

Plaintiff has produced ample evidence that the alleged misrepresentations impacted Stamps' share price. Specifically, Plaintiff's expert, Dr. Zachary Nye, conducted a robust event study and determined that there were statistically significant share price declines following the alleged corrective disclosures on February 21, 2019, and May 8, 2019. (*See* Nye Rpt. at 10) (finding that the 57.77% share price decline on February 22, 2019 was statistically significant at the 95% confidence level); (*id.* at 11) (finding that the 55.75% share price decline on May 9, 2019 was statistically significant at the 95% confidence level).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 19-1828-MWF (SKx)                              Date:  November 9, 2020
Title:       Matt Karinski v. Stamps.com, Inc., et al.

     Defendants attempt to rebut the *Basic* presumption by showing that the stock price failed to rise after the May 3, 2017 and August 2, 2017 statements.  (*See* Consolidated Complaint ¶¶ 66-70, 72-76; Declaration of Richard Zelichov ("Zelichov Decl."), Ex. 1 (Rebuttal Report of Paul Zurek, Ph.D. ("Zurek Rpt.")) ¶ 45 (Docket No. 157-2) ("there is no economic evidence that information released on Stamps.com's May 3, 2017, conference call caused its stock price to increase")).  At the hearing, Defendants emphasized Dr. Paul Zurek's opinion that the stock price did not change because the "alleged misstatements did not convey new and value relevant information to the market about the probabilities of an adverse outcome to the economics of Stamps.com's relationship with the USPS."  (*See* Zurek Rpt. ¶ 6).

     These arguments are not persuasive because Lead Plaintiff has pled a "price maintenance" theory of loss causation, asserting that the alleged misrepresentation prolonged the artificial inflation of the stock price, ***preventing the decline*** in stock price that would have occurred had the truth been disclosed.  *See Hatamian*, 2016 WL 1042502, at *7 ("[L]ack of a statistically significant price increase does not necessarily equate to lack of price impact. . . . It is . . . possible that 'a misstatement could serve to maintain the stock price at an artificially inflated level without also causing the price to increase further.'").  Defendants argued at the hearing that Plaintiff's price maintenance theory was raised for the first time in its Reply brief.  The Court disagrees.  Plaintiff's price maintenance theory is made clear in the Complaint, which alleges that the Defendants "falsely assured the market that the Company's strong revenue and profit growth was based on its mutually-beneficial and stable relationship with the USPS," and that these assurances allowed Defendants to "sell the vast majority of their Stamps shares at artificially inflated prices before the truth about defendants' misconduct was revealed."  (*See* Complaint ¶¶ 8, 26).

     Defendants next challenge the materiality of the alleged misrepresentations, arguing that there could be no "corrective" disclosure with respect to the May 3, 2017 and August 2, 2017 statements because market commentators had already published negative information about the relationship.  (*See* Opposition at 12).  This argument amounts to a truth-on-the-market defense and is not properly considered at the class certification stage because materiality is assumed.  *See Amgen, Inc. v. Conn. Ret. Plans*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-1828-MWF (SKx)          **Date:** November 9, 2020
**Title:**      Matt Karinski v. Stamps.com, Inc., et al.

*& Tr. Funds*, 568 U.S. 455, 475, 482 (2013) ("the potential immateriality of Amgen's alleged misrepresentations and omissions is no barrier to finding that common questions predominate"); *In re Stec Inc. Sec. Litig.*, SACV 09-01304-JVS (MLGx), 2012 WL 6965372, at *12 (C.D. Cal. Mar. 7, 2012) ("[T]he Court cannot properly consider Defendants' truth-on-the-market defense at the class certification stage because this defense is a 'method of refuting an alleged misrepresentation's *materiality*,' and 'a plaintiff need not prove materiality at the class certification stage to invoke the [*Basic*] presumption.'") (citation omitted).

  At the hearing, Defendants argued that their challenge to the materiality of the May 3, 2017 and August 2, 2017 statements does not amount to a truth-on-the-market defense because they have presented evidence that the statements did not convey new information and did not affect stock price. (*See* Zurek Rpt. ¶ 6). "The truth-on-the-market defense requires a showing that the market "was already aware of the truth behind the defendant's supposed falsehoods and thus those falsehoods did not affect the market price." *In re Stec Inc. Sec. Litig.*, 2012 WL 6965372, at *12 (citation omitted). Even if the Court did not view Defendants' arguments as a truth-on-the-market defense — which it does — these arguments do not defeat predominance because "arguments about whether particular statements were actually disclosures, like arguments about loss causation and that the market already was aware of [the] allegations, are common questions that can be adjudicated on a class-wide basis." *In re Centurylink Sales Pracs. & Sec. Litig.*, 2020 WL 5517483, at *13 (D. Minn. Sept. 14, 2020).

  Defendants next argue that the Class Period must be shortened, either to December 4, 2018 (when the Task Force Report that was purportedly the subject of certain of the alleged misstatements was issued), or to February 21, 2019 (when Stamps disclosed that its negotiations with the USPS regarding renewal of its PBIA failed). (Opposition at 17-19). Defendants reiterated these arguments at the hearing.

  The Court declines to shorten the class period because the Court is not convinced that the issuance of the Task Force Report or the disclosure of the failed PBIA negotiations (a) revealed the full extent to which Stamps's relationship with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | |
|---|---|
| **Case No.** CV 19-1828-MWF (SKx) | **Date:** November 9, 2020 |
| **Title:** Matt Karinski v. Stamps.com, Inc., et al. | |

USPS had deteriorated or (b) removed the alleged artificial inflation in Stamps stock price. (*See* Niehaus Decl., Ex. 2, Expert Reply Report of Zachary Nye, Ph.D., ("Nye Rebuttal") ¶¶ 35-37) (Docket No. 162-2) ("When the Task Force Report was released on December 4, 2018, it by no means revealed the alleged true state of the Company's relationship with the USPS and its resellers during the Class Period."). Furthermore, any inquiry as to "precisely when the truth was fully disclosed to the market is best reserved for resolution on the merits," and should not result in a narrowing of the class period at class certification unless the defendant unequivocally disclosed the alleged prior misrepresentation. *See In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 225 (C.D. Cal. 2019); *In re Centurylink*, 2020 WL 5517483, at *15 ("[A]t the class certification stage, the Court will not shorten the Class Period.").

The Court is satisfied that reliance can be proved through common evidence because Plaintiff has produced ample evidence that the alleged misrepresentations impacted Stamps' share price and Defendants have failed to rebut the *Basic* presumption.

Finally, Defendants argue that Plaintiff has not provided a class-wide damages model as required by *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). However, courts in the Ninth Circuit read *Comcast* "to demand only that plaintiffs 'be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Hatamian*, 2016 WL 1042502, at *8 (quoting *Levya*, 716 F.3d at 514). Here, Lead Plaintiff has demonstrated that damages can be calculated using a common, widely-accepted methodology for all Class members. (*See* Nye Rpt. ¶¶ 60-63). Dr. Nye's damages methodology has been routinely accepted by courts examining these same issues at class certification. *See Cooper v. Thoratec Corp.*, No. 14-CV-0360 CW, 2018 WL 2117337, at *7 (N.D. Cal. May 8, 2018) (approving Dr. Nye's event study method for calculating per-share damages); *In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 651 (C.D. Cal. 2018) (same); *Todd*, 2017 WL 821662, at *11 ("'[t]he event study method is an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation'") (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | | | |
|---|---|---|---|
| **Case No.** | CV 19-1828-MWF (SKx) | **Date:** | November 9, 2020 |
| **Title:** | Matt Karinski v. Stamps.com, Inc., et al. | | |

Accordingly, the predominance requirement is satisfied.

**F.     <u>Superiority</u>**

Rule 23(b)(3) sets out four factors that together indicate that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1779 at 174 (3d ed. 2005)).

*First*, the Court determines that individual Class members would likely have little interest in prosecuting separate actions. Each putative class member's claim is likely too small to justify the cost or risk of litigation. Thus, a class action is a more efficient means for each individual class member to pursue his or her claims. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

*Second*, there does not appear to be any other litigation currently or previously pending concerning similar claims to those at issue in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | | | |
|---|---|---|---|
| **Case No.** | CV 19-1828-MWF (SKx) | **Date:** | November 9, 2020 |
| **Title:** | Matt Karinski v. Stamps.com, Inc., et al. | | |

***Third***, concentrating the litigation in this Court would eliminate the risk of inconsistent adjudication and promote the fair and efficient use of the judicial system. *Todd*, 2017 WL 821662, at *11 ("'Concentrating litigation in one forum is desirable where a company was listed on a national exchange, and no one has identified a meaningful difficulty in managing this class action.'").

***Fourth***, the Court does not foresee any management difficulties that will preclude this action from being maintained as a class action.

Accordingly, the superiority requirement is satisfied.

**G.    <u>Class Counsel</u>**

Lead Plaintiff requests that the Court appoint Robbins Geller as Class Counsel. In appointing class counsel, the Court considers: (1) the work done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1).

Considering these factors, the Court concludes that Robbins Geller will "fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(4). The Court is satisfied that Robbins Geller has vigorously prosecuted this action and has substantial experience litigating similar types of class actions.

Accordingly, the Court grants Lead Plaintiff's unopposed request to appoint Robbins Geller as Class Counsel.

**III.    <u>CONCLUSION</u>**

The Motion is **GRANTED**. The proposed Class satisfies all requirements of Rule 23(a) and Rule 23(b)(3) for certification. Rule 23(g) supports appointment of Robbin Geller as Class Counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-1828-MWF (SKx)          **Date:** November 9, 2020
Title:     Matt Karinski v. Stamps.com, Inc., et al.

IT IS SO ORDERED.