ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH (116086)
JASON A. FORGE (181542)
ERIC I. NIEHAUS (239023)
HILLARY B. STAKEM (286152)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
jforge@rgrdlaw.com
ericn@rgrdlaw.com
hstakem@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>STAMPS.COM, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:19-cv-01828-MWF-SK<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE<br><br>DATE:　　September 13, 2021<br>TIME:　　10:00 a.m.<br>CTRM:　　5A<br>JUDGE:　Hon. Michael W. Fitzgerald |

4839-1771-1602.v2

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................ 1

II.    OVERVIEW OF THE LITIGATION ......................................................... 2

III.   THE SETTLEMENT TERMS .................................................................... 4

IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................................................................................ 6

       A.    Lead Plaintiff and Its Counsel Have Adequately Represented the Class ........................................................................................... 7

       B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation ......................................... 8

       C.    The Relief Provided to the Class Is Adequate ................................... 9

             1.    The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval ............................................................... 9

             2.    The Proposed Method for Distributing Relief Is Effective ...... 11

             3.    Attorneys' Fees ..................................................................... 12

             4.    Other Agreements Made in Connection with the Global Resolution of the Case ......................................................... 13

             5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably and Does Not Provide Any Preferential Treatment ............................................................. 13

       D.    The Remaining Ninth Circuit Factors Are Satisfied ......................... 14

             1.    The Extent of Discovery Completed and the Stage of the Proceedings at Which the Settlement Was Achieved Strongly Supports Preliminary Approval ................................ 14

             2.    Risk of Maintaining Class Action Status Through Trial .......... 15

             3.    Experience and Views of Counsel ......................................... 15

V.     THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ......................... 16

VI.    PROPOSED SETTLEMENT SCHEDULE ............................................... 18

VII.   CONCLUSION ......................................................................................... 19

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009)...............................................................................9

*Ciuffitelli v. Deloitte & Touche LLP*,
  No. 3:19-cv-00580-AC, 2019 WL 1441634
  (D. Or. Mar. 19, 2019).......................................................................................14

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...........................................................................................16

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980),
  *aff'd*, 661 F.2d 939 (9th Cir. 1981) ...................................................................15

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989)..............................................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)..............................................................................7

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 6619983
  (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020)..................................................................*passim*

*In re Deepwater Horizon*,
  No. 13-30095, slip op. (5th Cir. Oct. 16, 2013) ................................................13

*In re Genworth Fin. Sec. Litig.*,
  No. 3:14-cv-682-JAG, 2016 WL 7187290
  (E.D. Va. Sept. 26, 2016) ..................................................................................12

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389
  (C.D. Cal. June 10, 2005)...................................................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019)................................................................................6

- ii -

**Page**

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 15

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ......................................................................... 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................ 13

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ................................................................................ 10

*In re OSI Sys., Inc. Derivative Litig.*,
   No. CV-14-2910-MWF, 2017 WL 5634607
   (C.D. Cal. Jan. 24, 2017) ....................................................................................... 8

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................................. 12

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................................ 6

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
   No. 3:13-cv-03567-EMC, 2016 WL 8201593
   (N.D. Cal. July 29, 2016) ..................................................................................... 12

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007-JSC, 2015 WL 6471171
   (N.D. Cal. Oct. 27, 2015) ..................................................................................... 13

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................... 11

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ........................................................................... 12

- iii -

4839-1771-1602.v2

**Page**

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ................................................................................. 17

*Norris v. Mazzola*,
No. 15-cv-04962-JSC, 2017 WL 6493091
(N.D. Cal. Dec. 19, 2017)......................................................................... 15

*Pataky v. Brigantine, Inc.*,
No. 17-cv-00352-GPC-AGS, 2018 WL 3020159
(S.D. Cal. June 18, 2018) ............................................................................ 8

*Redwen v. Sino Clean Energy, Inc.*,
No. CV-11-3936-PA(SSx), 2013 WL 12129279
(C.D. Cal. Mar. 13, 2013)................................................................ 7, 10, 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)........................................................... 6, 11, 16

*Salazar v. Midwest Servicing Grp., Inc.*,
No. 17-CV-0137-PSG-KS, 2018 WL 3031503
(C.D. Cal. June 4, 2018) ........................................................................... 10

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) .............................................................. 13

*Tawfilis v. Allergan, Inc.*,
No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716
(C.D. Cal. Aug. 27, 2018) ........................................................................ 12

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993),
*aff'd*, 881 F.3d 1111 (9th Cir. 2018) ......................................................... 11

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)....................................................................... 6

*Weeks v. Kellogg Co.*,
No. CV 09-08102(MMM)(RZx), 2013 WL 6531177
(C.D. Cal. Nov. 23, 2013) ........................................................................ 10

- iv -

4839-1771-1602.v2

**Page**

*Young v. LG Chem Ltd.*,
   783 F. App'x 727 (9th Cir. 2019) ........................................................................ 6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4 .................................................................................................................. 2
   §78u-4(a)(4) ..........................................................................................4, 5, 17, 18

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................... 16
   Rule 23(c)(1) ...................................................................................................... 15
   Rule 23(c)(2)(B) ................................................................................................ 16
   Rule 23(e) ............................................................................................................ 2
   Rule 23(e)(1)(ii) .................................................................................................. 6
   Rule 23(e)(1)(B) ............................................................................................. 6, 16
   Rule 23(e)(2) ............................................................................................. 6, 7, 16
   Rule 23(e)(2)(A) .................................................................................................. 7
   Rule 23(e)(2)(B) .................................................................................................. 8
   Rule 23(e)(2)(C)(i) .............................................................................................. 9
   Rule 23(e)(2)(C)(ii) ........................................................................................... 11
   Rule 23(e)(2)(C)(iii) .......................................................................................... 12
   Rule 23(e)(2)(D) ................................................................................................ 13
   Rule 23(e)(3) ....................................................................................................... 7
   Rule 23(h)(1) ..................................................................................................... 17

4839-1771-1602.v2

## I.    INTRODUCTION

After significant merits discovery and the Court's certification of the Class, and following extensive arm's-length negotiations, the Settling Parties have reached a proposed Settlement of this securities class action in exchange for $100,000,000 for the Class's benefit.[1]  Lead Plaintiff now requests that the Court preliminarily approve the proposed Settlement.[2]  As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of the Honorable Daniel Weinstein (Ret.), a highly respected mediator that has extensive experience in complex securities litigation.  The Settlement represents a recovery that falls well within the range of possible approval and is a very good result for the Class.

Lead Plaintiff reached the Settlement only after developing a thorough appreciation for the strengths and weaknesses of the case.  Lead Plaintiff: (i) engaged in an extensive investigation, (ii) filed a detailed Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 71) ("Complaint"), (iii) successfully defeated, in part, Defendants' motion to dismiss the Complaint, (iv) successfully moved to certify the Class, (v) completed extensive fact discovery – which included the review of approximately 300,000 pages of documents from Defendants and third parties, three fact and expert depositions, and

---

[1]    The "Class" is defined in the Stipulation as "all persons who purchased or otherwise acquired Stamps.com common stock between May 3, 2017, and May 8, 2019, inclusive, and were damaged thereby.  Excluded from the Class are Defendants and their immediate families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest."  The Class definition tracks the Court's November 9, 2020 Minute Order (ECF No. 172) certifying the Class. Also excluded from the Class are those Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

[2]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement, dated August 16, 2021 ("Stipulation"), submitted herewith.

- 1 -

4839-1771-1602.v2

(vi) participated in two full-day, in-person mediations with an experienced mediator. By building its case through discovery, Lead Plaintiff was able to secure a substantial recovery for the Class with the assistance of Judge Weinstein. As set out below, the Settlement recovers a significant percentage of Lead Plaintiff's estimated recoverable damages, as compared to the median recovery percentage in securities class actions in 2020.

Additionally, Lead Plaintiff seeks approval of the form and substance of the Notice of Pendency and Settlement of Class Action ("Notice"); Claim Form; and the Summary Notice appended as Exhibits A-1, A-2, and A-3 to the Preliminary Approval Order. Lead Plaintiff also seeks the Court's approval of Gilardi & Co. LLC ("Gilardi") as Claims Administrator and the means and methods for disseminating notice of the Settlement, and a finding that such notice comports with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*

The Settlement easily meets the standards for preliminary approval, in that it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e). By granting preliminary approval, the Court enables Lead Plaintiff to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to consider whether to finally approve the Settlement.

## II.    OVERVIEW OF THE LITIGATION

The initial complaint in this Litigation was filed on February 28, 2019, in the United States District Court for the Central District of California (the "Court"). On June 5, 2019, the Court issued an order appointing Indiana Public Retirement System as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On August 5, 2019, Lead Plaintiff filed the Complaint. On October 4, 2019, Defendants moved to dismiss the Complaint, which motion was opposed by Lead Plaintiff. On January 17, 2020, the Court granted in part and denied in part

- 2 -

4839-1771-1602.v2

Defendants' motion to dismiss, holding that Lead Plaintiff had adequately alleged that Defendants made false or misleading representations that Stamps.com had a strong relationship with the United States Postal Service ("USPS") and that the USPS fully approved the Company's use of the reseller program.

Defendants then moved for bifurcation of merits and class certification discovery. That motion was denied. On June 22, 2020, Defendants moved for clarification of the Court's January 17, 2020 order asking the Court to "identify specifically which statements alleged in the [Complaint]" remain in the case. The Court granted in part and denied in part Defendants' motion for clarification holding Lead Plaintiff had adequately alleged that certain statements alleged in seven paragraphs of the Complaint were false or misleading.

On January 31, 2020, Defendants filed their Answer to the Complaint, and on April 20, 2020, the Settling Parties filed a joint report and Rule 26(f) discovery plan. Shortly thereafter, the Settling Parties began formal discovery. Lead Plaintiff served written discovery on Defendants and issued eight subpoenas to third parties. At the time the Settlement was reached, Lead Plaintiff had collected hundreds of thousands of pages of documents from Defendants and various third parties. Lead Plaintiff has taken three fact and expert depositions to date. Similarly, Defendants collected thousands of pages of documents from Lead Plaintiff, its investment managers and other third parties, and have taken one fact and one expert deposition.

In the course of the Litigation, the Settling Parties engaged the services of Judge Weinstein, a nationally recognized mediator. The Settling Parties participated in an in-person mediation session with Judge Weinstein on December 1, 2020. The Settling Parties did not reach an agreement to settle the Litigation at the mediation and continued litigating the case. The Settling Parties participated in a second in-person mediation session with Judge Weinstein on March 23, 2020. While the Settling Parties did not reach an agreement to settle the Litigation at this second mediation, they continued settlement negotiations with the assistance of

- 3 -

4839-1771-1602.v2

Judge Weinstein. Judge Weinstein subsequently provided the Settling Parties with a Mediator's Proposal to settle the Litigation for $100,000,000, which the Settling Parties accepted on May 28, 2021.

In sum, the Settlement was reached after certain discovery was completed and a class was certified. Accordingly, Lead Plaintiff and Lead Counsel were well informed of the strengths and weaknesses of Lead Plaintiff's claims, as well as the risks of continued litigation, and had a strong foundation for negotiating the Settlement.

## III.    THE SETTLEMENT TERMS

This Settlement requires Defendants to pay, or cause to be paid, $100 million into the Escrow Account, which amount plus interest comprises the Settlement Fund.

Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stipulation, ¶2.8. Lead Plaintiff proposes a nationally recognized class action settlement administrator, Gilardi, to be retained subject to the Court's approval. The proposed notice plan and plan for claims processing is discussed below in §V and in the Declaration of Peter Crudo Regarding Notice and Administration ("Crudo Declaration"), submitted herewith.

The Notice provides that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 16.75% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation not in excess of $600,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Further, as explained in the Notice, Lead Plaintiff intends to request an amount not to exceed $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. The Notice explains that such fees and expenses shall be paid from the Settlement Fund.

- 4 -

4839-1771-1602.v2

Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses and any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing of their Stamps.com common stock purchases, acquisitions, and sales.

The Settling Parties have entered into a Supplemental Agreement, which provides that if prior to the Settlement Hearing, the aggregate number of shares of Stamps.com common stock purchased or acquired during the Class Period, represented by valid claims by Persons who would otherwise be members of the Class, but who request exclusion from the Class, exceeds a certain amount, Defendants shall have the option to terminate the Stipulation.  Stipulation, ¶7.3. Last, in exchange for the benefits provided under the Stipulation, Class Members will release any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, that Lead Plaintiff or any other members of the Class asserted or could have asserted in any forum that arise out of or are based upon or relate in any way to both: (1) the purchase, acquisition or holding of Stamps.com common stock during the Class Period, and (2) the facts, claims, matters, allegations, transactions, events, occurrences, disclosures, representations, statements, acts, or omissions or failures to act that were alleged, asserted, contended, set forth, related to, or referred to in the Litigation.  Stipulation, ¶1.30.

- 5 -

4839-1771-1602.v2

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019);[3] *see also Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. 2019) (same); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same).  Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure ("Rule") 23(e) requires judicial approval for a settlement of claims brought as a class action.  Pursuant to Rule 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  As to Rule 23(e)(1)(ii), the Court need not determine whether it could certify a class here because it has already certified the Class.

Rule 23(e)(2) provides:

(2)    ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only if after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

---

[3]    All citations are omitted unless otherwise noted.

- 6 -

4839-1771-1602.v2

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit uses the following factors for preliminary approval, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[4]

As discussed below, the proposed Settlement here easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that Notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.

### A.   Lead Plaintiff and Its Counsel Have Adequately Represented the Class

As explained above, Lead Plaintiff and its counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation, including, among other things, investigating and drafting the Complaint; successfully

---

[4]   Because notice of the Settlement has not yet been provided to the Class, the Court does not yet have the benefit of the Class's reaction. *See Redwen v. Sino Clean Energy, Inc.*, No. CV-11-3936-PA(SSx), 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013).

- 7 -

opposing Defendants' motion to dismiss; obtaining and reviewing approximately 300,000 pages of documents from Defendants and various third parties; taking and/or actively participating in three fact and expert depositions; obtaining class certification over Defendants' vigorous opposition and opposing Defendants' request for review of the class certification under Rule 23(f); and engaging in mediation with Judge Weinstein to resolve the Litigation. Thus, it is without question that Lead Plaintiff and Lead Counsel have adequately represented the Class. *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at \*6 (N.D. Cal. Dec. 18, 2018) (finding, in finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

**B.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

The Rule 23(e)(2)(B) factor is a procedural one, asking whether "the [settlement] proposal was negotiated at arm's length." The use of an experienced mediator, like the one used in this case, weighs in favor of this factor. *See In re OSI Sys., Inc. Derivative Litig.*, No. CV-14-2910-MWF (MRWx), 2017 WL 5634607, at \*3 (C.D. Cal. Jan. 24, 2017). In addition, "[a] settlement is presumed to be fair if reached in arms-length negotiations after relevant discovery has taken place." *Pataky v. Brigantine, Inc.*, No. 17-cv-00352-GPC-AGS, 2018 WL 3020159, at \*3 (S.D. Cal. June 18, 2018).

As noted above, the proposed Settlement follows extensive, hard-fought litigation, including certain discovery, class certification and arm's-length negotiations. The Settlement was achieved only after two all-day, in-person mediations with Judge Weinstein. The negotiations were at all times adversarial and at arm's length, and produced a result that is certainly in the Class's best interests. As part of the settlement discussions, Lead Counsel and Defendants' Counsel

- 8 -

4839-1771-1602.v2

prepared and presented submissions concerning, among other things, their respective views on the merits of the Litigation, including Defendants' defenses and issues relating to causation and damages, along with supporting evidence obtained through discovery.

After intensive back-and-forth negotiations in the months following the second mediation, including multiple emails and phone calls with Judge Weinstein, the parties reached an agreement-in-principle to settle the Litigation for $100 million in accordance with the mediator's recommendation. The protracted negotiations under the supervision of a neutral and experienced mediator evidence that the Settlement was reached at arm's length. *See Hefler*, 2018 WL 6619983, at *6 ("[T]he Settlement was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls supervised by [an experienced mediator].").

### C.   The Relief Provided to the Class Is Adequate

#### 1.   The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement," are also satisfied because the $100 million recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation. *Hefler*, 2018 WL 6619983, at *3. "'[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Id.* at *13. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation).

- 9 -

4839-1771-1602.v2

While Lead Plaintiff remains confident in its ability to ultimately prove its claims, further litigation – including a trial – is always a risky proposition. *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval). Further, complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome in order to ultimately secure a recovery. *See, e.g., Redwen*, 2013 WL 12129279, at *5 ("Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation. Courts experienced with securities fraud litigation '"routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."'"); *e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation). While Lead Plaintiff would be required to prove all elements of its claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire action.

Here, Defendants advanced several arguments disputing both liability and damages. For instance, Defendants raised numerous challenges disputing the falsity of their alleged misstatements and scienter. Defendants also repeatedly asserted that the alleged corrective disclosure on May 8, 2019, was not "corrective" because it did not reveal information that was not previously publicly available – arguments Defendants advanced at both the motion to dismiss and class certification stages. Each of these issues would present significant obstacles to Lead Plaintiff's success at summary judgment or trial. *See, e.g., Weeks v. Kellogg Co.*, No. CV 09-08102(MMM)(RZx), 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue, which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair.").

- 10 -

4839-1771-1602.v2

Moreover, Lead Plaintiff would need to prevail at summary judgment, pretrial motions, trial, and subsequent appeals, a process that could possibly extend for years. Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *aff'd*, 881 F.3d 1111 (9th Cir. 2018)).

The Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Litigation through a trial, the $100 million Settlement is a significant recovery that is in the Class's best interests.

**2.      The Proposed Method for Distributing Relief Is Effective**

As demonstrated below in §V and in the Crudo Declaration submitted herewith, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. Crudo Decl., ¶¶8-13. In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Claim Form, and Preliminary Approval Order. *Id.*, ¶17.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiff's damages

- 11 -

4839-1771-1602.v2

expert and is based primarily on the expert's event study and analysis estimating the amount of artificial inflation in the price of Stamps.com common stock during the Class Period.  A thorough claim review process, including how deficiencies are addressed, is also explained in the Crudo Declaration.  *Id.*, ¶¶26-27.

### 3.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  As discussed above (*supra* §III), Lead Counsel intends to seek an award of attorneys' fees of no more than 16.75% of the Settlement Amount and expenses in an amount not to exceed $600,000, plus interest on both amounts.  Significantly, this fee request is well below the 25% benchmark and even further below other settlements approved in the Ninth Circuit.  *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash settlement); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving a fee award of one-third of a $12 million settlement fund); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (awarding one-third of a $27.78 million settlement fund); *Tawfilis v. Allergan, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding one-third of $13.45 million settlement fund in antitrust class action).  In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  *See In re Vocera Commc'ns, Inc. Sec. Litig.*, No. 3:13-cv-03567-EMC, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this Order"); *In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682-JAG, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

- 12 -

4839-1771-1602.v2

### 4. Other Agreements Made in Connection with the Global Resolution of the Case

Defendants and Lead Plaintiff have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of shares of Stamps.com publicly traded common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3. Such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 6619983, at \*7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.") (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)) (finding that settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"). While the Supplemental Agreement is identified in the Stipulation (Stipulation, ¶7.3), the terms are confidential. *See In re Deepwater Horizon*, No. 13-30095, slip op. at 1 (5th Cir. Oct. 16, 2013) (denying motion to unseal the settlement opt-out threshold following briefing on the issue); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement and permitting it to be filed under seal).

### 5. The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably and Does Not Provide Any Preferential Treatment

Rule 23(e)(2)(D) asks whether the proposal, here the Plan, treats class members equitably relative to each other. Drafted with the assistance of Lead Plaintiff's damages expert, the Plan here is fair, reasonable, and adequate because it does not treat the Lead Plaintiff or any other Class Member preferentially. *See In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at \*10 (N.D. Cal. Oct. 27, 2015). The Plan, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. Specifically, the Plan

- 13 -

provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of Stamps.com common stock on the open market during the Class Period and when they sold.

Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan.  Lead Plaintiff, just like all other Class Members, will be subject to the same formula for the *pro rata* distribution of the Settlement.  *See Ciuffitelli v. Deloitte & Touche LLP*, No. 3:19-cv-00580-AC, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses").

**D.    The Remaining Ninth Circuit Factors Are Satisfied**

**1.    The Extent of Discovery Completed and the Stage of the Proceedings at Which the Settlement Was Achieved Strongly Supports Preliminary Approval**

The extent of discovery completed and the stage of the proceedings also support preliminary approval of the Settlement.  Lead Plaintiff's decision to enter into the Settlement was based on its thorough understanding of the strengths and weaknesses of its claims and Defendants' defenses.  This understanding was based on Lead Counsel's diligent prosecution of the Litigation, discussed above in §II, including briefing Defendants' motion to dismiss and Lead Plaintiff's motion for class certification and conducting certain key discovery.  There can be no question that, at the time the Settlement was reached, Lead Plaintiff was able to knowledgably evaluate the Settlement.  *See Redwen*, 2013 WL 12129279, at *6 (determining the parties were well positioned "to determine whether settlement is a viable alternative" where "[t]he Settlement Agreement was reached only after Defendants filed multiple motions to dismiss, after some discovery, and after protracted negotiations through a neutral mediator").

- 14 -

4839-1771-1602.v2

### 2.    Risk of Maintaining Class Action Status Through Trial

Even though the Court granted class certification, Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits.  Based on further discovery completed after the Court ruled on certification, Defendants could have moved to decertify the Class or shorten the Class Period.  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that defendants would attempt to shorten the class period based on evidence produced during discovery supported settlement).

### 3.    Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight.  *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017); *see also Hefler*, 2018 WL 6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country.  *See* www.rgrdlaw.com.  Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).

Lead Plaintiff actively litigated this case since being appointed by this Court, defeating Defendants' motion to dismiss and obtaining class certification.  At the same time, Lead Counsel aggressively pursued certain key discovery from Defendants and numerous third parties and developed evidence in support of the claims asserted in the Litigation.  By the time settlement discussions began, Lead

- 15 -

4839-1771-1602.v2

Counsel had a firm understanding of the strengths and weaknesses of the claims, both factually and legally. In connection with the settlement negotiations, Lead Counsel consulted with sophisticated experts who assisted Lead Plaintiff in preparing for settlement discussions and developing the Plan.

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. Given the litigation risks involved, the complexity of the underlying issues and the skill of defense counsel, the $100 million recovery is significant. It could not have been achieved without the full commitment by Lead Plaintiff and its counsel. The Settlement is fair, adequate, and reasonable, and meets each of the applicable factors such that notice of the Settlement should be sent to the Class.

## V.   THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Courts evaluating proposed notice documents have held that "'[n]otice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'" *Rodriguez*, 563 F.3d at 962.

Here, the Settling Parties propose to mail, by first class mail, postage prepaid, individual copies of the Notice, together with a copy of the Claim Form, to all potential Class Members who can reasonably be identified and located. Crudo Decl., ¶¶8-12. In addition, the Summary Notice will be published in *The Wall Street Journal* and over a national newswire service. *Id.*, ¶13. The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Hefler*, 2018 WL 6619983, at *5

- 16 -

4839-1771-1602.v2

(finding sufficient notice provided to class members where the claims administrator mailed notice packets to potential class members, and published notice in *The Wall Street Journal* and the *Los Angeles Times* and over the *PR Newswire*).[5]

The proposed Notice provides detailed information in plain English. It includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and Due Process. The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the Litigation; (2) the definition of the Class and who is excluded; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (9) the maximum amount Lead Plaintiff will request pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class; (10) the plan for allocating the Settlement proceeds to the Class; and (11) the date, time, and place of the Settlement Hearing. The content of the proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 16.75% of the

---

[5] The Notice and Summary Notice are annexed as Exhibits A-1 and A-3 to the Stipulation.

- 17 -

4839-1771-1602.v2

Settlement Amount and litigation expenses not to exceed $600,000, to be paid from the Settlement Fund.  The Notice also notes the application for an award of no more than $10,000 to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

In sum, the notice program proposed in connection with the Settlement and the form and content of the Notice and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA. Accordingly, in granting preliminary approval of the Settlement, the Court should also approve the proposed form and method of giving notice to the Class.

## VI.   PROPOSED SETTLEMENT SCHEDULE

Lead Plaintiff proposes the following schedule for notice, Settlement Hearing and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Notice and Claim Form to potential Class Members (the "Notice Date") | No later than 21 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶8) |
| Publication of the Summary Notice | No later than 10 calendar days following the Notice Date (Preliminary Approval Order, ¶9) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶20) |
| Deadline for requests for exclusion or objections | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶15, 18) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶20) |
| Claim Form submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶12) |
| Date for the Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

- 18 -

4839-1771-1602.v2

## VII.   CONCLUSION

For each of the foregoing reasons, the Court should enter the Preliminary Approval Order, which will: (a) preliminarily approve the Settlement; (b) approve the form and manner of providing notice of pendency and Settlement to the Class; and (c) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

DATED:  August 16, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH
JASON A. FORGE
ERIC I. NIEHAUS
HILLARY B. STAKEM
KEVIN S. SCIARANI

s/Eric I. Niehaus
ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

- 19 -

4839-1771-1602.v2

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 16, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/Eric I. Niehaus
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ericn@rgrdlaw.com

-20-

# Mailing Information for a Case 2:19-cv-01828-MWF-SK Matt Karinski v. Stamps.com, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christina Lucen Costley**
  christina.costley@katten.com,tamara.vazquez@katten.com,courtalertlax@katten.com

- **Jason A Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com

- **John T Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,edewan@scott-scott.com,dcolonna@scott-scott.com,tlaughlin@scott-scott.com,efile@scott-scott.com

- **Adam C McCall**
  amccall@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,asoto@pomlaw.c

- **Steven W Pepich**
  stevep@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Vincent Prongay**
  info@glancylaw.com,CLinehan@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com,rprongay@glancylaw.com

- **Jonathan Rotenberg**
  jonathan.rotenberg@katten.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin S Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paul Satoshi Yong**
  paul.yong@kattenlaw.com,paula.phillips@katten.com,courtalertlax@katten.com

- **Richard H Zelichov**
  richard.zelichov@katten.com,tamara.vazquez@katten.com,courtalertlax@katten.com,carrie.stickel@katten.com,jonathan.rotenberg@katten.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)