ROBBINS GELLER RUDMAN
   & DOWD LLP
STEVEN W. PEPICH (116086)
JASON A. FORGE (181542)
ERIC I. NIEHAUS (239023)
HILLARY B. STAKEM (286152)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
jforge@rgrdlaw.com
ericn@rgrdlaw.com
hstakem@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT KARINSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>STAMPS.COM, INC., et al.,<br><br>    Defendants. | Case No. 2:19-cv-01828-MWF-SK<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF PLAN OF ALLOCATION; (3) AWARD OF ATTORNEYS' FEES AND EXPENSES; AND (4) AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)<br><br>DATE:    January 24, 2022<br>TIME:    10:00 a.m.<br>CTRM:    5A<br>JUDGE:   Hon. Michael W. Fitzgerald |

4884-5789-2101.v2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND .................................. 4

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS .............................................................................. 4

    A.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2) ...................................................................... 6

          1.    Lead Plaintiff and Its Counsel Have Adequately Represented the Class ................................................ 6

          2.    The Proposed Settlement Was Negotiated at Arm's Length and Was Not the Product of Collusion .......................... 7

          3.    The Proposed Settlement Is Adequate in Light of the Costs, Risk and Delay of Trial and Appeal ............................. 8

               a.    The Risks of Proving Falsity and Scienter ....................... 9

               b.    Risks Related to Proving Loss Causation and Damages ................................................................ 10

               c.    The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation ...... 11

          4.    The Proposed Method for Distributing Relief Is Effective ...... 12

          5.    Attorneys' Fees ................................................................ 12

          6.    Other Agreements ............................................................ 13

          7.    The Proposed Plan of Allocation Treats Class Members Equitably ........................................................ 14

    B.    The Remaining Ninth Circuit Factors Are Satisfied ........................... 14

          1.    Lead Plaintiff Had Sufficient Information to Determine the Propriety of Settlement ....................................... 14

          2.    Counsel View This Good-Faith Settlement as Fair, Reasonable, and Adequate ............................................ 15

          3.    The Reaction of Class Members to the Settlement .................. 16

          4.    The Settlement Amount .................................................... 17

IV.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ....... 17

V.   NOTICE TO THE CLASS SATISFIES DUE PROCESS ......................... 19

- i -

4884-5789-2101.v2

**Page**

VI.    AWARD OF ATTORNEYS' FEES ........................................................... 20

    A.    A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ....... 20

    B.    Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee in This Case ..................................... 22

        1.    Counsel Achieved a Favorable Result for the Class ................ 22

        2.    The Litigation Was Risky and Complex .................................. 23

        3.    The Skill Required and Quality of Work ................................. 25

        4.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ............................................. 25

        5.    The Requested Fee Award Is Within the Range Awarded in Similar Complex, Contingent Litigation ............................ 27

        6.    Reaction of the Class Supports Approval of the Attorneys' Fees Requested ...................................................... 28

        7.    A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable ............................................................... 29

VII.    LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE ..................................................................................... 30

VIII.    LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE ........................................... 32

IX.    CONCLUSION .................................................................................... 33

- ii -

4884-5789-2101.v2

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009)........................................................................24

*Blum v. Stenson*
   465 U.S. 886 (1984) .....................................................................................21

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .....................................................................................20

*Buccellato v. AT&T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 3348055
   (N.D. Cal. June 30, 2011).............................................................................30

*Buccellato v. AT&T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 4526673
   (N.D. Cal. June 30, 2011).............................................................................32

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004).................................................................4, 5, 9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992).......................................................................18

*de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*,
   No. SACV 18-00236 AG (JCGx), 2018 WL 6003560
   (C.D. Cal. Nov. 5, 2018) ................................................................................7

*Dusek v. Mattel, Inc.*,
   No. CV 99-10864-MRP, 2003 WL 27380801
   (C.D. Cal. Sept. 29, 2003) ............................................................................32

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06-04149 MMM, 2008 WL 8150856
   (C.D. Cal. July 21, 2008)..............................................................................29

4884-5789-2101.v2

**Page**

*Figueroa v. Allied Bldg. Prods. Corp.*,
No. SACV 16-02249 AG (KESx), 2018 WL 4860034
(C.D. Cal. Sept. 24, 2018) ...............................................................................27

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009)...............................................................21, 29

*Gribble v. Cool Transps. Inc.*,
No. CV 06-04863 GAF, 2008 WL 5281665
(C.D. Cal. Dec. 15, 2008)................................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).........................................................................16

*Herman v. Andrus Transp. Servs., Inc.*,
No. EDCV 16-02365 AG (DTBx), 2018 WL 6307902
(C.D. Cal. May 30, 2018)................................................................................. 6

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983
(N.D. Cal. Dec. 18, 2018)...............................................................13, 17, 23, 30

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................22

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV 10-06352 MMM, 2014 WL 10212865
(C.D. Cal. July 28, 2014)...........................................................................21, 29

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG, 2016 WL 10571773
(C.D. Cal. Oct. 25, 2016).................................................................................18

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677
(D. Ariz. Apr. 20, 2012) ..................................................................................29

*In re Banc of California Sec. Litig.*,
No. SACV 17-00118 DMG (DFMx), slip op.
(C.D. Cal. Mar. 16, 2020)................................................................................27

4884-5789-2101.v2

**Page**

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...................................................................... 21, 22

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2021 WL 5709250
(N.D. Ill. Dec. 1, 2021) ..................................................................................... 23

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab.
Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232
(N.D. Cal. May 3, 2019) ...................................................................................... 6

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-cv-04883-BLF, 2019 WL 3290770
(N.D. Cal. July 22, 2019) .................................................................................. 14

*In re Galena Biopharma, Inc. Sec. Litig.*,
No. 3:14-cv-00367-SI, 2016 WL 3457165
(D. Or. June 24, 2016) ....................................................................................... 22

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT, 2005 WL 1594389
(C.D. Cal. June 10, 2005) ............................................................................ 23, 28

*In re Hewlett–Packard Co. Sec. Litig.*,
No. SACV 11-1404-AG, 2014 WL 12656737
(C.D. Cal. Sept. 15, 2014) ................................................................................. 13

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) ........................................................................... 4, 5

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................ 24

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................... 20, 29

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW (EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) ................................................................................. 26

- v -

4884-5789-2101.v2

**Page**

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
No. CV 07-05107 SJO, 2013 WL 7985367
(C.D. Cal. Dec. 23, 2013)...................................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000).......................................................................14, 17

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 4:14-md-2541-CW, 2017 WL 6040065
(N.D. Cal. Dec. 6, 2017),
*aff'd*, 768 Fed. App'x 651 (9th Cir. 2019) .......................................................30

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................*passim*

*In re Omnivision Techs. Inc. Sec. Litig.*,
No. 5:11-cv-05235-RMW, 2015 WL 3542413
(N.D. Cal. June 5, 2015)....................................................................................20

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)............................................................................. 13

*In re Oracle Corp. Sec. Litig.*,
No. C01-00988 SI, 2009 WL 1709050
(N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010) ..................................................................26

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)..........................................................................23, 27

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ..............................................................................21

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)............................................................................. 4

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................17

4884-5789-2101.v2

**Page**

*In re Tezos Sec. Litig.*,
   No. 3:17-cv-06779-RS, slip op.
   (N.D. Cal. Aug. 28, 2020) ..............................................................................27

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ...............................................................29

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010).....................................................................32

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018),
   *cert. denied*, 139 S. Ct. 2645 (2019) ...............................................................5

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)..........................................................................26

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
   No. SAML 17-02797 AG (KESx), 2019 WL 6219875
   (C.D. Cal. Nov. 4, 2019) .................................................................................16

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008).....................................................................20

*In re Xcel Energy, Inc. Sec., Derivative, & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................32

*Jimenez v. O'Reilly Automotive Inc.*,
   No. SACV 12-00310 AG (JPRx), 2018 WL 6137591
   (C.D. Cal. June 18, 2018)................................................................................27

*Keith v. Volpe*,
   501 F. Supp. 403 (C.D. Cal. 1980)..................................................................30

*Kmiec v. Powerwave Tech., Inc.*,
   No. SACV 12-00222-CJC, 2016 WL 5938709
   (C.D. Cal. July 11, 2016)...........................................................................28, 29

4884-5789-2101.v2

**Page**

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367
   (N.D. Cal. Feb. 2, 2009) ....................................................................................... 31

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................................ 6

*Lopez v. Youngblood*,
   No. CV-F-07-0474 DLB, 2011 WL 10483569
   (E.D. Cal. Sept. 2, 2011) ...................................................................................... 22

*Morgan v. Childtime Childcare, Inc.*,
   No. SACV 17-01641 AG (KESx), 2020 WL 218515
   (C.D. Cal. Jan. 6, 2020) ....................................................................................... 16

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ........................................................................... 27

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 11, 15, 28

*NECA-IBEW Pension Trust Fund (the Decatur Plan), et al. v.*
*Precision Castparts Corp., et al.*,
   No. 3:16-cv-01756-YY, slip op.
   (D. Or. May 7, 2021) ............................................................................................ 27

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 8, 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ................................................................................ 21

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................... 6, 15, 20

*Schulein v. Petroleum Dev. Corp.*,
   No. SACV 11-1891 AG (ANx), 2015 WL 12698312
   (C.D. Cal. Mar. 16, 2015) ....................................................................................... 5

4884-5789-2101.v2

**Page**

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2019 WL 2103379
(N.D. Ill. May 14, 2019) ................................................................................... 6

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................. 13, 27, 32

*Sudunagunta v. NantKwest, Inc.*,
No. CV 16-1947-MWF, 2019 WL 2183451
(C.D. Cal. May 13, 2019) ............................................................................... 8, 27

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ............................................................................. 18

*Tawfilis v. Allergan, Inc.*,
No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716
(C.D. Cal. Aug. 27, 2018) ................................................................................ 28

*Taylor v. Shippers Transp. Express, Inc.*,
No. CV 13-02092-BRO, 2015 WL 12658458
(C.D. Cal. May 14, 2015) ................................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ......................................................................................... 20

*Todd v. Staar Surgical Co., et al.*,
No. CV-14-5263 MWF, 2017 WL 4877417
(C.D. Cal. Oct. 24, 2017) ............................................................................. 27, 32

*Todd v. Staar Surgical Co., et al.*,
No. CV-14-5263 MWF (GJS), slip op.
(C.D. Cal. Oct. 23, 2017) ................................................................................. 13

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .............................................................................. 21

*van Wingerden v. Cadiz, Inc.*,
No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263
(C.D. Cal. Feb. 8, 2017) ................................................................................... 26

- ix -

4884-5789-2101.v2

**Page**

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977)..............................................................................21

*Vincent v. Reser*,
    No. C 11-03572 CRB, 2013 WL 621865
    (N.D. Cal. Feb. 19, 2013) .................................................................................31

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293
    (C.D. Cal. May 6, 2014) ....................................................................................17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)....................................................................*passim*

*Weeks v. Kellogg Co.*,
    No. CV 09-08102 (MMM), 2013 WL 6531177
    (C.D. Cal. Nov. 23, 2013) .................................................................................29

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997)..............................................................................25

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4)............................................................................................ 1, 2, 3, 32
    §78u-4(a)(6)......................................................................................................21
    §78u-4(a)(7)......................................................................................................19

- x -

4884-5789-2101.v2

**Page**

Federal Rules of Civil Procedure
  Rule 23.................................................................................................18-20
  Rule 23(e) .......................................................................................... 1, 4
  Rule 23(e)(1)(B) ....................................................................................... 19
  Rule 23(e)(2)......................................................................................4, 5, 6
  Rule 23(e)(2)(A) ...................................................................................... 6, 7
  Rule 23(e)(2)(C) ........................................................................................ 8
  Rule 23(e)(2)(C)(i) ..................................................................................... 8
  Rule 23(e)(2)(C)(ii) .................................................................................. 12
  Rule 23(e)(2)(C)(iii) ................................................................................. 12
  Rule 23(e)(3).............................................................................................. 5
  Rule 23(f)................................................................................................ 7, 24

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*
  (NERA January 25, 2021) .........................................................................*passim*

*Manual for Complex Litigation*
  §14.121 (4th ed. 2004).............................................................................. 22

4884-5789-2101.v2

# I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff and  Class Representative Indiana Public Retirement System ("Lead Plaintiff") submits this memorandum in support of its motion for: (1) final approval of the Settlement of this securities class action for $100 million in cash; (2) approval of the Plan of Allocation; (3) award of attorneys' fees and expenses; and (4) award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).  The terms of the Settlement are set forth in the Stipulation of Settlement, dated August 16, 2021 ("Stipulation"), which was previously filed with the Court.[1]  ECF No. 196.

The $100 million, all-cash Settlement is a tremendous result for the Class.  It comes after extensive motion practice, including Defendants' motion to dismiss and Lead Plaintiff's motion for class certification, Defendants' attempt to bifurcate discovery, the completion of certain fact discovery, and protracted arm's-length settlement negotiations.  During fact discovery, among other things, Lead Counsel deposed three fact and expert witnesses and reviewed and analyzed over two hundred thousand pages of documents produced by Defendants and third parties.  There is no question that as a result of these extensive litigation efforts and arm's-length settlement negotiations, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Class's claims and the propriety of settlement.[2]

While Lead Counsel believes that the Class's claims have significant merit based on the evidence adduced, from the outset Defendants adamantly denied liability

---

[1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

[2]   The efforts of Lead Counsel in obtaining this favorable result are set forth in greater detail in the accompanying Declaration of Eric I. Niehaus in Support of Lead Plaintiff's Motion for: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Niehaus Decl.").

- 1 -

4884-5789-2101.v2

and asserted they possessed absolute defenses to the Class's claims. During extensive settlement negotiations, including two all-day, in person mediations with Judge Daniel Weinstein (Ret.), Lead Counsel made it clear that while it was prepared to fairly assess the strengths and weaknesses of this case, it would continue to litigate (and, in fact, did) rather than settle for less than fair value. Indeed, Lead Plaintiff and its counsel persisted for several months from the initial mediation until the mediator issued his Mediator's Proposal on March 30, 2021, and they achieved an amount they believe is in the best interest of the Class.

Lead Counsel, who is highly experienced in prosecuting securities class actions, has concluded that the Settlement is a very good result and in the best interest of the Class based on an analysis of all the relevant factors present here, including, *inter alia*: (i) the substantial risk, expense, and uncertainty in continuing the Litigation through summary judgment and *Daubert* motions, trial, probable post-trial motion(s), and appeal(s); (ii) the relative strengths and weaknesses of the claims and defenses asserted; (iii) a complete analysis of the evidence obtained and the legal and factual issues presented; (iv) past experience in litigating complex actions similar to this Litigation; and (v) the serious disputes between the parties concerning the merits and damages. Importantly, the Settlement is fully supported by Lead Plaintiff, who is the type of institutional investor favored to serve as lead plaintiff by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA").[3]

The reaction of the Class thus far also supports the Settlement and Plan of Allocation. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 199), 84,600 copies of the Notice were sent to potential Class Members and nominees, and notice was published

---

[3]  *See* Declaration of Jeffrey M. Gill in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of Plan of Allocation and for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Gill Decl."), ¶¶2-3, submitted herewith.

- 2 -

4884-5789-2101.v2

over *Business Wire* and in *The Wall Street Journal*. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, dated December 17, 2021 ("Murray Decl."), ¶¶11-12, submitted herewith. To date, there have been no objections to the Settlement or requests for exclusion from the Class.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. The Plan of Allocation governs how claims will be calculated and how settlement proceeds will be distributed among Authorized Claimants. It was prepared in consultation with Lead Plaintiff's damages expert, and is based on the out-of-pocket measure of damages, *i.e.*, the difference between what Class Members paid for their Stamps.com Inc. ("Stamps" or the "Company") common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made. It is fair, reasonable, and adequate, and should be approved.

Lead Counsel also respectfully applies for an award of attorneys' fees in the amount of 16.75% of the Settlement Amount and litigation expenses of $526,792.79, plus interest on both amounts. Lead Counsel's fee request, approved by Lead Plaintiff (*see* Gill Decl., ¶5), is well below both the Ninth Circuit benchmark of 25% as well as the median fees awarded in securities class action cases settling between $100 million and $500 million over the last ten years of 22.3%. Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* ("2021 NERA Study") (NERA January 25, 2021), Figure 19 at 23.[4] It is also reasonable when viewed against the stellar result achieved here and the many risks Lead Counsel was able to overcome. Finally, Lead Counsel applies for an award of litigation expenses of $526,792.79 and an award to Lead Plaintiff, pursuant to 15 U.S.C. §78u-4(a)(4), of $9,150 for its efforts representing the Class. Gill Decl., ¶6.

---

[4] NERA is an economic consulting firm that, among other things, applies statistical analysis to examine trends in securities class action resolutions.

4884-5789-2101.v2

## II.    PROCEDURAL AND FACTUAL BACKGROUND

To avoid repetition, the Court is respectfully referred to the accompanying Niehaus Declaration for a full discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and Lead Counsel over the course of the Litigation, the negotiations leading to this Settlement and the risks of continued litigation.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action.  The Court may approve a proposed settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Ninth Circuit recognized there is a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (same).[5]

Rule 23(e)(2) (amended as of December 1, 2018), sets forth the factors to be considered in determining whether a settlement warrants final approval:

(2)    ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

---

[5]    All citations are omitted and emphasis added throughout unless otherwise stated.

- 4 -

4884-5789-2101.v2

> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

In addition, courts in the Ninth Circuit consider the following factors, some of which overlap with Rule 23(e)(2): "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; . . . and (8) the reaction of the class members to the proposed settlement." *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2015 WL 12698312, at *2 (C.D. Cal. Mar. 16, 2015) (quoting *Churchill*, 361 F.3d at 575).

As the Ninth Circuit recently emphasized:

> Deciding whether a settlement is fair is ultimately "an amalgam of delicate balancing, gross approximations and rough justice," best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings – the whole gestalt of the case. Accordingly, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge."

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2645 (2019).

Therefore, approval of a class action settlement will be reversed only if "the district court clearly abused its discretion." *Hyundai*, 926 F.3d at 556. However, because "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements,'" courts should not convert settlement approval into an inquiry into the merits. *Herman v. Andrus Transp.*

- 5 -

*Servs., Inc.*, No. EDCV 16-02365 AG (DTBx), 2018 WL 6307902, at *2 (C.D. Cal. May 30, 2018) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *see Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (the Ninth Circuit "has long deferred to the private consensual decision of the parties").

This Court's Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors in assessing the Settlement and found that "[a]fter a preliminary review, the Settlement appears to be fair, reasonable, and adequate." ECF No. 199 at 1. The Court's conclusion on preliminary approval is equally true now as little, if anything, has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

Lead Plaintiff respectfully submits that the proposed Settlement satisfies both Rule 23(e)(2) and the relevant Ninth Circuit factors and warrants final approval as fair, reasonable, and adequate.

**A.   The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1.   Lead Plaintiff and Its Counsel Have Adequately Represented the Class**

As described in the Niehaus Declaration, Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on behalf of the Class, including, among other things, investigating the facts and drafting the complaint, successfully opposing Defendants' motion to dismiss, successfully opposing Defendants' request to bifurcate class and

- 6 -

4884-5789-2101.v2

merits discovery and Defendants' motion to clarify, obtaining, reviewing and analyzing over two hundred thousand pages of documents, participating in three fact and expert depositions, obtaining two orders compelling discovery, pursuing extensive non-party discovery from the United States Postal Service ("USPS") and other non-parties, obtaining class certification over Defendants' vigorous opposition and opposing Defendants' Rule 23(f) petition to the Ninth Circuit, working with experts on complex loss causation and damages issues, preparing a detailed mediation statement, and engaging in mediation with Judge Weinstein to resolve the Litigation. Niehaus Decl., ¶¶5, 25-70.  Lead Plaintiff and Lead Counsel stood ready to, and at all times did, advocate for the best interests of the Class, and were actively preparing for additional depositions and summary judgment motions at the time the proposed Settlement was reached.  Thus, Lead Plaintiff satisfies Rule 23(e)(2)(A).

### 2.      The Proposed Settlement Was Negotiated at Arm's Length and Was Not the Product of Collusion

In the Ninth Circuit, a "'strong presumption of fairness'" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, No. SACV 18-00236 AG (JCGx), 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, No. CV 13-02092-BRO (PLAx), 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("'A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.'"); *see also* ECF No. 199 at 1 ("The Settlement: (a) resulted from arm's-length negotiations overseen by an experienced mediator . . . .").

As detailed in the Niehaus Declaration, over the course of the Litigation, the parties attended two in-person mediation sessions with Judge Weinstein, a highly experienced mediator.  *See* Niehaus Decl., ¶¶6, 91.  The first mediation, on December 1, 2020, was unsuccessful, and the parties continued to aggressively litigate the case. *Id.*, ¶6.  The second mediation, on March 23, 2021, was initially unsuccessful but the

- 7 -

parties continued settlement discussions with the mediator's oversight. *Id*. Ultimately, the parties accepted the Mediator's Proposal to resolve the Litigation on May 28, 2021. *Id*.

Also of relevance is the fact that this Settlement was reached after vigorous prosecution by Lead Plaintiff and Lead Counsel, and the settlement negotiations were undertaken by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of their respective claims and defenses. *See Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) (Fitzgerald, J.) ("'The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create a presumption that the agreement is fair.'").

Lead Counsel has many years of experience in litigating securities class actions like this one and has negotiated hundreds of settlements of these types of cases, which have been approved by courts across the country. *See* www.rgrdlaw.com. Defendants are also represented by a well-respected defense firm, Katten Muchin Rosenman LLP, who zealously represented its clients.

Collectively, these facts demonstrate that the Settlement is entitled to a presumption of fairness and is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risk and Delay of Trial and Appeal

Both Rule 23(e)(2)(C) and district courts in the Ninth Circuit consider the substantive adequacy of the proposed Settlement in determining final approval. Rule 23(e)(2)(C)(i) considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of plaintiffs' case;

- 8 -

4884-5789-2101.v2

[and] the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575.

While Lead Plaintiff believes its claims have significant merit and the Class would survive Defendants' summary judgment motions, it nevertheless recognizes the numerous risks and uncertainties in proceeding to trial.  As discussed below, and in the Niehaus Declaration (¶¶76-88), the many risks of continued litigation, when weighed against the substantial and certain recovery for the Class, confirm the reasonableness of the Settlement.

**a.     The Risks of Proving Falsity and Scienter**

Throughout the Litigation, Defendants asserted that nothing about Defendants' alleged misstatements were either material or misleading.  Defendants vigorously contested each of the foregoing allegations, and made clear their plan to marshal evidence at trial which they hoped would convince the jury that: (i) the alleged misstatements were not false or misleading; (ii) any alleged misstatement was not material; (iii) Defendants did not make the alleged misstatements with the requisite scienter; and (iv) Lead Plaintiff cannot establish loss causation and damages.

For example, Defendants have asserted that (i) the alleged omissions regarding the reseller program were, in fact, fully disclosed; (ii) the alleged misstatements about Stamps's relationship with the USPS were not material and in any event were not misleading; (iii) the "truth-on-the market defense" applies, *i.e.*, that the market already knew particulars of Stamps's use of the USPS reseller program; and (iv) Lead Plaintiff had misinterpreted key portions of the documents and the mechanics of Stamps' business model and suggested that if the USPS was not happy with Stamps, it was not clearly communicated to Defendants.  Niehaus Decl., ¶¶11, 27.

In fact, Defendants have put forth various theories in support of their position that the alleged statements contained non-material omissions or misrepresentations and that Lead Plaintiff had no damages.  For example, Defendants claimed that multiple USPS officials have spoken positively about Stamps and the reseller

- 9 -

program, and thus even if Lead Plaintiff could show that some USPS officials were unhappy with Stamps's conduct, it would be a mere difference of opinion within the USPS. Defendants also challenged Lead Plaintiff's scienter allegations as insufficient on the basis that the Complaint fails to allege particularized facts.

As a result of these challenges, Lead Plaintiff faced the very real risk that the Court or the jury could have accepted Defendants' arguments that it had failed to establish the elements of falsity and scienter.

### b. Risks Related to Proving Loss Causation and Damages

Lead Plaintiff also faced risk in proving loss causation and damages. To establish these elements, Lead Plaintiff would have to prove that the revelation of the alleged fraud proximately caused the declines in Stamps's stock price during the Class Period and that those fraud-related causes could be parsed out from any potential non-fraud related news or publicly released information. Lead Plaintiff believed that it would bring forth sufficient evidence to support both the finding of loss causation and damages at summary judgment and trial. However, Defendants argued in their motion to dismiss and in opposition to class certification (and no doubt would have argued on summary judgment) that Stamps's stock price declines alleged in the Complaint were not due (even in part) to the revelation of the alleged fraud in both alleged corrective disclosures. For example, Stamps argued in its opposition to class certification that the alleged corrective disclosures did not sufficiently relate to the alleged misrepresentations, *e.g.*, Stamps's purportedly strong relationship with USPS. Niehaus Decl., ¶66.

Defendants also challenged Lead Plaintiff's damage model as being inconsistent with its underlying claims. On summary judgment, Defendants likely would have also argued, consistent with their loss causation arguments, that Lead Plaintiff's damages methodology is inherently unreliable because it fails to take into account other causes of Lead Plaintiff's claimed losses. For instance, Defendants

- 10 -

4884-5789-2101.v2

have asserted that the alleged misstatements were fully corrected prior to the first corrective disclosure, and thus preclude all damages, or at a minimum, were fully corrected by the February 21, 2019 alleged corrective disclosure, significantly reducing the Class Period and eliminating damages related to the May 8, 2019 alleged corrective disclosure. Niehaus Decl., ¶¶66, 84. While Lead Counsel believes it and its expert(s) would have overcome these arguments or defenses, there is certainly no assurance that the jury would agree with Lead Plaintiff's arguments.

Because the determination of loss causation and damages is a complicated process requiring expert testimony, compounding the above factors was a risk that the Court would grant, in whole or in part, Defendants' motion(s) to exclude the opinion and testimony of Lead Plaintiff's loss causation and damages experts at trial. Even if Lead Plaintiff prevailed on these motions, the jury's loss causation and damage assessments of the expert evidence could vary substantially at trial, reducing this crucial element to a "battle of experts."

**c.**     **The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation**

Though the Litigation was at an advanced stage, there still remained much work to do. For instance, if the Settlement was not reached, the parties would be faced with taking and/or defending many additional fact and expert depositions, briefing summary judgment motions and motions to exclude, trying the case before a jury, and litigating the inevitable appeals. Each of these steps is both complex and expensive and the case likely would not be resolved until several years down the road. Moreover, many hours of the Court's time and resources have also been spared as a result of the Settlement, which is potentially considerable given the number of docket entries so far entered in this case.

The $100 million Settlement, at this juncture, results in an immediate, substantial and tangible recovery, without the considerable risk, expense and delay of summary judgment motions, trial and post-trial litigation. *See Nat'l Rural Telecomms.*

- 11 -

4884-5789-2101.v2

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("'[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'").

### 4. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken substantial efforts to insure that the Class is notified about the proposed Settlement. Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim were mailed to potential Class Members; the Summary Notice was published in *The Wall Street Journal* and over the *Business Wire* on November 5, 2021; and a settlement-specific website was created where key documents are posted, including the Stipulation, Notice, Proof of Claim and Preliminary Approval Order. Murray Decl., ¶¶4-14.

The claims process, which is similar to that commonly used in securities class action settlements, is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. (*See* §§III.A.7. and IV below for a more detailed discussion of the Plan of Allocation.) Thus, this factor supports final approval for the same reason that it supported preliminary approval.

### 5. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in §VI below, Lead Counsel seeks an award of attorneys' fees of 16.75% of the Settlement Amount and expenses of $526,792.79, plus interest on both amounts. This fee request was fully disclosed in the Notice (Murray Decl., Ex. A, Notice at ¶5), approved by Lead Plaintiff (Gill Decl.,

- 12 -

4884-5789-2101.v2

¶5), and is well below both the Ninth Circuit benchmark of 25%[6] and the median fee award in securities class action settlements between $100 million and $500 million. 2021 NERA Study, Figure 19 at 23. *See* §VI.B.5 (discussion of case law supporting fee request).

In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See, e.g.*, *Todd v. Staar Surgical Co., et al.*, No. CV-14-5263 MWF (GJS), slip op. at 6 (¶12) (C.D. Cal. Oct. 23, 2017) (Fitzgerald, J.) (ECF No. 183) (attorneys' fees and expenses to be paid "no later than five (5) business days following the entry of this Order"); *In re Hewlett–Packard Co. Sec. Litig.*, No. SACV 11-1404-AG (RNBx), 2014 WL 12656737, at *2 (C.D. Cal. Sept. 15, 2014) (ordering that "attorneys' fees and litigation expenses shall be paid to [Lead Counsel] from the Settlement Fund immediately upon entry of this Order").

### 6.   Other Agreements

As discussed in Lead Plaintiff's preliminary approval brief (ECF No. 194 at 13) and in the Stipulation (¶7.3), Defendants and Lead Plaintiff have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of shares of Stamps publicly-traded common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.") (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)).[7]

---

[6]   *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

[7]   As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose

- 13 -

**7.     The Proposed Plan of Allocation Treats Class
Members Equitably**

The Plan of Allocation, discussed in more detail in §IV below, and which is set out in the Notice, details how the settlement proceeds will be distributed among Authorized Claimants.  It provides a formula for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of Stamps common stock on the open market during the Class Period and when they sold.  It is fair, reasonable and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("Under the Agreement, class members who have submitted timely claims will receive payments on a *pro rata* basis based on the value of their original claim and the number of claims filed.  In granting preliminary approval, the Court found that this proposed allocation did not constitute improper preferential treatment.  The Court adheres to its view that the allocation plan is equitable.").  Each eligible Class Member, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation.  Lead Plaintiff, just like all other Class Members, will be subject to the same formulas for distribution of the Settlement.

**B.     The Remaining Ninth Circuit Factors Are Satisfied**

**1.     Lead Plaintiff Had Sufficient Information to
Determine the Propriety of Settlement**

In reviewing a class action settlement, the Court may also consider the stage of the proceedings and the discovery thus far completed.  *See Officers for Justice*, 688 F.2d at 625; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  Here, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the strengths and weaknesses of

---

of leveraging the Termination Threshold to exact an individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

- 14 -

4884-5789-2101.v2

Lead Plaintiff's case and the propriety of the Settlement could be made.  As discussed above and in the Niehaus Declaration, this Litigation has involved extensive motion practice and discovery, including several depositions and the production of over two hundred thousand pages of documents.  Niehaus Decl., ¶20.  The parties also participated in extensive settlement negotiations, including two in person mediation sessions with Judge Weinstein, where the parties' claims and defenses were fully vetted.  *Id.*, ¶6.  Prior to the mediation, the parties exchanged detailed mediation statements which further highlighted the factual and legal issues in dispute.  *Id*., ¶¶6, 91-93.  As a result, Lead Counsel was able to assess the strengths and weaknesses of the claims asserted and resolve the Litigation on a highly favorable basis for the Class.

### 2.    Counsel View This Good-Faith Settlement as Fair, Reasonable, and Adequate

As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965.  Courts have recognized that ""'[g]reat weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *DIRECTV*, 221 F.R.D. at 528; *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'").  Indeed, in a case like this which has progressed almost to summary judgment, "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *Gribble v. Cool Transps. Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008).

Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has many years of experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country.  *See* www.rgrdlaw.com.  Having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against

- 15 -

Defendants, the likelihood of prevailing on these claims, the risk, expense, and likely duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did prevail against Defendants at trial, Lead Counsel has concluded that the Settlement is a very good result for the Class. *See* Niehaus Decl., ¶¶88, 96-97. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. Importantly, Lead Plaintiff, who was active in the Litigation, authorized counsel to settle it and supports the reasonableness of the Settlement. *See* Gill Decl., ¶4.

### 3. The Reaction of Class Members to the Settlement

The reaction of the Class to the Settlement also supports approving the Settlement. *See In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797 AG (KESx), 2019 WL 6219875, at \*4 (C.D. Cal. Nov. 4, 2019) ("Together, the requests for exclusion and objections represents slightly more than 0.0037% of the total class. This small percentage shows a positive class reaction to the settlement agreement and further supports a finding that the settlement is fair, reasonable, and adequate."); *Omnivision*, 559 F. Supp. 2d at 1043 ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'").

The deadline to object to any aspect of the Settlement or to exclude oneself from the Settlement is January 3, 2022. To date, no objections have been received, and there have been no requests for exclusion. Murray Decl., ¶16; *see also Morgan v. Childtime Childcare, Inc.*, No. SACV 17-01641 AG (KESx), 2020 WL 218515, at \*2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement."). Lead Plaintiff will address objections, if any, in its reply.

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see*

- 16 -

4884-5789-2101.v2

*also Mego Fin.*, 213 F.3d at 459 (that there was only one opt out supports upholding district court's approval of settlement); *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *4 (C.D. Cal. May 6, 2014) ("There have been no objections to the Settlement itself, and so the Court finds this factor weighs in favor of the Settlement.").

### 4.    The Settlement Amount

In evaluating the settlement amount, "'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Hefler*, 2018 WL 6619983, at *8; *see In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Here, Defendants' payment of $100 million in cash provides an immediate, tangible, significant recovery to the Class and eliminates the risk that the Class could recover less than the Settlement Amount, or nothing at all, if the Litigation continued.

Specifically, the recovery is between approximately 7.2% (as a percentage of Lead Plaintiff's estimated damages) and 13.3% (as a percentage of damages if the Court had accepted Defendants' argument for a reduced class period).  This range of recovery far outpaces recent securities settlements, and is multiples above the reported 1.7 median ratio of securities class action settlements to investor losses in 2020.  2021 NERA Study, Figure 16 at 20.  *See Omnivision*, 559 F. Supp. 2d at 1042 (finding that settlement amount was reasonable in part because it was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

### IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Lead Plaintiff also seeks approval of the Plan of Allocation.  The Plan of Allocation is set forth in full in the Notice mailed to potential Class Members.  Murray Decl., Ex. A, Notice at ¶¶29-44.

- 17 -

4884-5789-2101.v2

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016).  District courts enjoy "'broad supervisory powers over the administration of class action settlements to allocate the proceeds among the claiming class members equitably.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).  An allocation formula need only have a "'reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *Radient*, 2014 WL 1802293, at *5.

The Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation).  The Plan of Allocation was developed by Lead Counsel with the assistance of Lead Plaintiff's damages expert and is "grounded in a formula that will compensate class members for the losses related to their" purchases of Stamps common stock. *Amgen*, 2016 WL 10571773, at *8.  Individual claimants' recoveries will depend on when during the Class Period they bought Stamps stock, and whether and when they sold their shares.  Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their recognized loss, calculated under the Plan of Allocation using the transactional information provided by claimants in their Claim Forms.  As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims.  No preferential treatment is provided, and there have been no objections to the Plan of Allocation filed by Class Members.  The Plan of Allocation is fair and reasonable and should be approved.

4884-5789-2101.v2

## V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS

The Court previously approved the form and content of the Notice, Claim Form and Summary Notice and found Lead Plaintiff's proposal to mail and publish notice satisfied Rule 23 and due process. Preliminary Approval Order, ¶5. In response, Lead Plaintiff, through its counsel and the Claims Administrator, has disseminated 84,600 copies of the Court-approved Notice to potential Class Members and their nominees who could be identified with reasonable effort, from multiple sources. *See* Murray Decl., ¶11. In addition, the Court-approved Summary Notice was published in the national edition of *The Wall Street Journal*, and published electronically over the *Business Wire*. *Id*., ¶12. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website. *Id*., ¶14. This method of giving notice is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement. It informs the Class of, among other things: (1) the amount of the Settlement; (2) the reasons why the parties propose the Settlement; (3) the estimated average recovery per damaged share of Stamps stock; (4) the maximum amount of attorneys' fees and expenses that will be sought and the per share cost of such fees and expenses; (5) the name, telephone number, and address of representatives of Lead Counsel who will be reasonably available to answer questions from Class Members concerning matters contained in the Notice; (6) the right of Class Members to object to the Settlement or seek exclusion from the Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. §78u-4(a)(7). The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Claim Forms under the Plan of Allocation as described in the Notice.

- 19 -

4884-5789-2101.v2

Accordingly, the Notice is sufficient because it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962; *see also In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008). In sum, the notice program here fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007).

## VI.    AWARD OF ATTORNEYS' FEES

### A.    A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a $100 million common fund for the benefit of the Class, Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees. The percentage method of awarding fees has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[8] Likewise, it has long been recognized in the Ninth Circuit that "'a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorney's fees.'" *In re Omnivision Techs. Inc.*

---

[8]    The Supreme Court has emphasized that private securities actions, like this action, are "'a most effective weapon'" and "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 318 (2007).

- 20 -

*Sec. Litig.*, No. 5:11-cv-05235-RMW, 2015 WL 3542413, at \*1 (N.D. Cal. June 5, 2015) (citing *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)).

In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984). While courts have discretion to employ either a percentage-of-recovery or lodestar method in determining an attorneys' fee award, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO (AGRx), 2013 WL 7985367, at \*1 (C.D. Cal. Dec. 23, 2013). Thus, the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Other circuits are in accord.

The PSLRA also authorizes courts to award attorneys' fees and expenses to counsel for the plaintiff class provided the award does not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at \*20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

The percentage-of-recovery method is particularly appropriate in common fund cases like this because "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Glass v. UBS*

- 21 -

4884-5789-2101.v2

*Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 3:14-cv-00367-SI, 2016 WL 3457165, at *5 (D. Or. June 24, 2016) (percentage-of-recovery method preferred over lodestar method in cash settlement); *Omnivision*, 559 F. Supp. 2d at 1046 (recognizing that the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees). Among other benefits, the percentage-of-recovery method decreases the burden imposed on courts by eliminating a detailed and "more time-consuming" lodestar analysis. *Bluetooth*, 654 F.3d at 942; *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'In practice, the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation* §14.121 (4th ed. 2004)).

### B. Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee in This Case

Courts in this Circuit consider the following factors when determining whether a fee is fair and reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) the amount of a lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048-50).

Application of each of these factors confirms that the requested 16.75% fee is fair and reasonable.

### 1. Counsel Achieved a Favorable Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" they must consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord Omnivision*, 559 F. Supp. 2d at 1046 (applying *Hensley* to common fund case). Put differently, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a

- 22 -

4884-5789-2101.v2

lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar" rejecting a declining percentage award).

Here, the $100 million cash recovery is an excellent result for the Class by any measure. The recovery is certain and has been obtained through the considerable efforts of Lead Counsel without the expense, delay, and uncertainty of continued litigation. *See* §III.A.3.a. and b., above. It is a very large financial settlement in both absolute terms when compared to the 2020 median securities class action settlement of $13 million,[9] and in relative terms when measured as a percentage of estimated damages. The recovery is between 7.2% and 13.3% of reasonably recoverable damages, as explained above in §III.B.4., a range that far exceeds the median ratio for securities class actions in 2020 of just 1.7%. *Id.*, Figure 16 at 20.

In the end, the Class cares most about getting a great result. This outstanding result obtained for the Class supports Lead Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

### 2. The Litigation Was Risky and Complex

The risks of the Litigation, as well as the complexity and difficulty of the issues presented, are also important factors in determining a fee award. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (holding fees justified "because of the complexity of the issues and the risks"); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Securities class actions are notoriously complex, difficult to prove, and risky. *See In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (noting that class actions, and particularly securities class actions, are typically complex); *Hefler*, 2018 WL

---

[9] 2021 NERA Study, Figure 15 at 17. This figure excludes settlements over $1 billion. *Id.*

- 23 -

4884-5789-2101.v2

6619983, at *13 ("'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, in securities class actions fee awards typically exceed the 25% benchmark recognized in the Ninth Circuit, *Omnivision*, 559 F. Supp. 2d at 1047, although here Lead Counsel seeks significantly less than both the benchmark and the median fee percentage of 22.3% for settlements of this size. 2021 NERA Study, Figure 19 at 23.

As discussed above in §III.A.3, and in the Niehaus Declaration (¶¶76-88), Lead Plaintiff faced significant risks and uncertainties in this case, including in connection with Defendants' motion to dismiss and Lead Plaintiff's motion for class certification. Defendants' motion to dismiss challenged almost every aspect of Lead Plaintiff's claims, including materiality, falsity, scienter and loss causation. ECF No. 79. Likewise, in opposing class certification, Defendants challenged price impact, loss causation and Lead Plaintiff's damages model and had successfully petitioned the Ninth Circuit to hear an appeal under Fed. R. Civ. 23(f). ECF No. 157. Lead Plaintiff would have faced still further risk at summary judgment and trial in proving falsity, materiality and that Defendants acted with the requisite scienter as well as loss causation and damages.

While Lead Plaintiff believes it had sufficient evidence to prove the elements of its claims, Defendants' arguments also created significant uncertainties at summary judgment and trial. That a $100 million recovery was achieved in the face of these risks certainly supports a 16.75% fee award.

- 24 -

4884-5789-2101.v2

### 3.     The Skill Required and Quality of Work

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  This case involved unique and complex issues, which were successfully prosecuted and managed by Lead Counsel. *Omnivision*, 559 F. Supp. 2d at 1047 ("'[P]rosecution and management of a complex national class action requires unique legal skills and abilities.'").  Robbins Geller is a nationally recognized firm in securities class actions and complex litigation.  *See* www.rgrdlaw.com.  The highly favorable recovery obtained for the Class, both in nominal terms and relative to estimated recoverable damages reflects the substantial skill and experience of Lead Counsel, who has vigorously prosecuted this case.

Moreover, Defendants were represented by a respected defense firm, Katten Muchin Rosenman LLP, who contested Lead Plaintiff's claims throughout the Litigation.  Courts recognize that the quality of opposing counsel should be considered in assessing the requested fee.  *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class counsel's work considered "the quality of opposition counsel and [defendant's] record of success in this type of litigation").

This factor weighs in favor of granting Lead Counsel's request for a 16.75% fee award.

### 4.     The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

- 25 -

4884-5789-2101.v2

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of non-payment in common fund cases." *van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. For example, in *In re Oracle Corp. Sec. Litig.*, No. C01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Lead Counsel prosecuted, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million. In another PSLRA case, after a lengthy trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in defendants' favor. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort. Nevertheless, Robbins Geller committed significant resources of both time (over 7,500 hours) and money (over $526,000 in litigation expenses) to vigorously and successfully prosecute this action for the Class's benefit. *See* Declaration of Eric I. Niehaus Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), ¶¶4, 5. The contingent nature of counsel's representation supports approval of the requested fee.

- 26 -

4884-5789-2101.v2

### 5.   The Requested Fee Award Is Within the Range Awarded in Similar Complex, Contingent Litigation

The benchmark for fee awards in the Ninth Circuit is 25%, *Staton*, 327 F.3d at 968,[10] and district courts may adjust that 25% benchmark when special circumstances justify it. *See Childtime Childcare*, 2020 WL 218515, at *4; *see also Jimenez v. O'Reilly Automotive Inc.*, No. SACV 12-00310 AG (JPRx), 2018 WL 6137591, at *3 (C.D. Cal. June 18, 2018) (upward departure from the 25% benchmark to a 33.33% award was justified because of "complicated nature" of the case and "class counsel's success in achieving class certification"); *Figueroa v. Allied Bldg. Prods. Corp.*, No. SACV 16-02249 AG (KESx), 2018 WL 4860034, at *3 (C.D. Cal. Sept. 24, 2018) (awarding 33% fee award in complex class action wage and hour case).

Indeed, the Ninth Circuit and numerous district courts have awarded fees in excess of 25% in other complex class action cases. *See Schulein*, 2015 WL 12698312, at *6 (awarding attorneys' fees in the amount of 30% of a $37.5 million cash settlement in class action merger case); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash settlement in consumer class action); *Pac. Enters.*, 47 F.3d at 379 (approving a fee award of one-third of a $12 million settlement fund in derivative and securities class actions); *NECA-IBEW Pension Trust Fund (the Decatur Plan), et al. v. Precision Castparts Corp., et al.*, No. 3:16-cv-01756-YY, slip op. at 4 (D. Or. May 7, 2021) (ECF No. 169) (awarded 33-1/3% of $21 million recovery, plus expenses); *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS, slip op. at 2 (N.D. Cal. Aug. 28, 2020) (ECF No. 262) (awarded one-third of $25 million recovery, plus expenses); *In re Banc of California Sec. Litig.*, No. SACV 17-00118 DMG (DFMx), slip op. at 1 (C.D. Cal.

---

[10] This Court awarded the 25% benchmark in two securities class actions. *Sudunagunta*, 2019 WL 2183451, at *5 (Fitzgerald, J.) (awarding 25% of $12 million recovery) and *Todd v. Staar Surgical Co., et al.*, No. CV-14-5263 MWF (GJSx), 2017 WL 4877417, at *5-*6 (C.D. Cal. Oct. 24, 2017) (Fitzgerald, J.) (awarding 25% of $7 million recovery).

- 27 -

4884-5789-2101.v2

Mar. 16, 2020) (ECF No. 613) (awarded 33% of $19.75 million recovery, plus expenses); *Heritage Bond*, 2005 WL 1594389, at *9 (awarding one-third of a $27.78 million settlement fund in securities class action); *Tawfilis v. Allergan, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding one-third of $13.45 million settlement fund in antitrust class action).

Here, while Lead Counsel achieved a remarkable result, it seeks an award well below the percentages awarded in these cases and below the 25% benchmark. The requested percentage is also well below the median award of attorneys' fees for settlements of this size, between $100 million and $500 million, from 2011 to 2020, of 22.3%. 2021 NERA Study, Figure 19, at 23.

### 6. Reaction of the Class Supports Approval of the Attorneys' Fees Requested

District courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529; *see also Kmiec v. Powerwave Tech., Inc.*, No. SACV 12-00222-CJC (JPRx), 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) (a "small number of objections and requests for exclusion supports final approval").

Class Members were informed in the Notice that Lead Counsel would move the Court for an award of attorneys' fees in an amount of no more than 16.75% of the Settlement Amount and for payment of litigation expenses not to exceed $600,000. Class Members were also advised of their right to object to the fee and expense request, and that such objections are required to be filed with the Court and served on counsel no later than January 3, 2022.

- 28 -

4884-5789-2101.v2

While the time to object has not expired, to date, not a single objection has been received.  Should any objections be received, Lead Counsel will address them in its reply papers.  "[T]he lack of objection from any Class Member supports the attorneys' fees award." *Immune Response*, 497 F. Supp. 2d at 1177.

Finally, as Lead Plaintiff also supports Lead Counsel's fee and expense request (Gill Decl., ¶5), this factor strongly supports Lead Counsel's request.

### 7. A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable

"Courts commonly – even after having decided to utilize the percentage-of-recovery method – perform a 'lodestar cross-check' by comparing the percentage-of-recovery figure with a 'rough calculation of the lodestar . . . to assess the reasonableness of the percentage award.'" *Kmiec*, 2016 WL 5938709, at *5 (quoting *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013)); *see also Vizcaino*, 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award").

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass*, 331 F. App'x at 456.[11]  In this case, the lodestar method demonstrates the reasonableness of the requested fee.  Lead Counsel spent a total of 7,552.90 hours of professional and paraprofessional time prosecuting this action from its inception

---

[11] *See also Am. Apparel*, 2014 WL 10212865, at *23 ("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008) (same).

- 29 -

through October 18, 2021.[12] RGRD Decl., Ex. A.  Based on Lead Counsel's current rates, its total lodestar for this period is $6,094,809.25. *Id.*[13]  The requested 16.75% fee amounts to a lodestar multiplier of 2.75.  Many courts have found a positive multiplier between one and four to be reasonable.  *See Vizcaino*, 290 F.3d at 1051 (approving 3.65 multiplier and finding that multipliers ranged as high as 19.6, though most run from 1.0 to 4.0); *see also Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *1-*2 (N.D. Cal. June 30, 2011) (awarding 25% fee; collecting cases and stating that a "multiplier of 4.3 is reasonable"); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5).  Accordingly, this fee request is reasonable and should be approved.

## VII.  LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Lead Counsel also requests an award of its litigation expenses in the amount of $526,792.79 incurred in prosecuting and resolving the action on behalf of the Class. RGRD Decl., ¶5.  Attorneys who create a common fund for the benefit of a class are entitled to an award of their expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of

---

[12]  In addition to the time expended to date, Lead Counsel will expend additional time preparing Lead Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, and directing the claims administration process. Lead Counsel will not seek additional compensation for this work.

[13]  Lead Counsel's rates have been approved in the Central District and are consistent with other attorneys engaged in similar complex, class action litigation. *See Negrete v. Allianz Life Insurance Company of North America*, No. CV-05-6838-CAS(MANx), Amended Final Order at 26 (C.D. Mar. 17, 2015) (ECF No. 1293) ("[T]he Court finds Class Counsel's hourly rates reasonable for complex class action litigation in Los Angeles.  The hourly rates are commensurate with the skill and experience of the participating attorneys and their legal support.").

4884-5789-2101.v2

the action. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Lead Counsel was aware that it might not recover any of its expenses or, at the very least, would not recover anything until the action was successfully resolved. Lead Counsel also understood that, even if the case was ultimately successful, payment of its expenses would not compensate it for the lost use of funds advanced to prosecute the action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action.

Lead Counsel's litigation expenses are detailed in the accompanying Robbins Geller Rudman & Dowd LLP fee and expense declaration setting forth the specific categories of expenses incurred and the amounts. RGRD Decl., ¶¶5, 6 and Ex. B. These expenses were necessarily incurred in this Litigation and are the type of expenses routinely charged to clients billed by the hour. These include expenses associated with, among other things, experts and consultants, online legal and factual research, travel, and mediation. *Id.*; *see, e.g.*, *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at \*5 (N.D. Cal. Feb. 19, 2013) (granting award of costs and expenses for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at \*7 (N.D. Cal. Feb. 2, 2009) (granting award because "[a]ttorneys routinely bill clients for all of these expenses").

A large component of Lead Counsel's expenses is for the costs of experts and consultants, all of whom were qualified and necessary to litigate this action. The RGRD Declaration explains each experts' qualifications and their role in the Litigation. *See* RGRD Decl., ¶6(d).

The Notice informed potential Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $600,000. *See* Murray

- 31 -

Decl., Ex. A, Notice at ¶5.  The amount of expenses for which payment is now sought is $526,792.79 and to date, no Class Member has objected.

## VIII.  LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Lead Plaintiff seeks an award of $9,150 pursuant to §78u-4(a)(4) in connection with its representation of the Class, as detailed in the accompanying Gill Declaration. Under the PSLRA, a class representative may seek an award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.  *See* 15 U.S.C. §78u-4(a)(4); *see also Staton*, 327 F.3d at 977 (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement). Thus, courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class.  *See, e.g.*, *Dusek v. Mattel, Inc.*, No. CV 99-10864-MRP (CWx), 2003 WL 27380801, at *1 (C.D. Cal. Sept. 29, 2003) (awarding $117,426 to three lead plaintiffs).

When evaluating the reasonableness of a lead plaintiff award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation'" among others.  *Staton*, 327 F.3d at 977.  As detailed in the Gill Declaration, Lead Plaintiff devoted significant time and effort to monitoring the Litigation and providing input on litigation and settlement strategy.  Gill Decl., ¶3.  Lead Plaintiff searched for and produced responsive documents and information and also provided deposition testimony.  *Id.*  Courts have approved as reasonable awards for class representatives sums that are greater than what Lead Plaintiff is requesting here.  *See, e.g.*, *Staar Surgical*, 2017 WL 4877417, at *6 (Fitzgerald, J.) (awarding $10,000 award); *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 award); *In re Xcel*

- 32 -

4884-5789-2101.v2

*Energy, Inc. Sec., Derivative, & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to lead plaintiffs because of "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"). The requested $9,150 award is reasonable in light of Lead Plaintiff's significant contribution to this Litigation in order to protect the interests of absent Class Members.

## IX.   CONCLUSION

Based on the foregoing and the entire record, Lead Plaintiff and Lead Counsel respectfully request that the Court approve: the Settlement and the Plan of Allocation; Lead Counsel's request for an award of attorneys' fees of 16.75% of the Settlement Amount and payment of $526,792.79 in expenses, plus interest earned thereon; and an award of $9,150 to Lead Plaintiff, as allowed by the PSLRA.

DATED:  December 20, 2021          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH
JASON A. FORGE
ERIC I. NIEHAUS
HILLARY B. STAKEM
KEVIN S. SCIARANI


                                          s/ ERIC I. NIEHAUS
                                          ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

- 33 -

4884-5789-2101.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 20, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ericn@rgrdlaw.com

-34-

# Mailing Information for a Case 2:19 cv 01828 MWF SK Matt Karinski v. Stamps.com, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christina Lucen Costley**
  christina.costley@katten.com,marsha.davis@katten.com,courtalertlax@katten.com

- **Jason A Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com

- **John T Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,edewan@scott-scott.com,dcolonna@scott-scott.com,tlaughlin@scott-scott.com,efile@scott-scott.com

- **Adam C McCall**
  amccall@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,lobas@pomlaw.c

- **Steven W Pepich**
  stevep@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Jonathan A. Rotenberg**
  jonathan.rotenberg@katten.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin S Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paul Satoshi Yong**
  paul.yong@katten.com,paula.phillips@katten.com,courtalertlax@katten.com

- **Richard H. Zelichov**
  richard.zelichov@katten.com,marsha.davis@katten.com,courtalertlax@katten.com,carrie.stickel@katten.com,jonathan.rotenberg@katten.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)